IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC CAINE, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 11 C 8996 |
| | ) | |
| JON BURGE, JAMES PIENTA, RAYMOND | ) | Judge Virginia M. Kendall |
| MADIGAN, WILLIAM MARLEY, | ) | |
| WILLIAM PEDERSON, DANIEL | ) | |
| MCWEENY, CITY OF CHICAGO and | ) | |
| UNIDENTIFIED EMPLOYEES OF THE | ) | |
| CITY OF CHICAGO, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Eric Caine served twenty-five years in prison for a murder conviction which was later vacated. He now sues the City of Chicago, former City of Chicago police officers Jon Burge, James Pienta, Raymond Madigan, William Marley, William Pederson, Daniel McWeeny, and unidentified employees of the City of Chicago (collectively "the Defendants") alleging that he was tortured into confessing to the murder. Caine now seeks redress in this Court for the allegedly unconstitutional acts of the individual Defendants in connection with his arrest, torture and prosecution. He also seeks redress from the City of Chicago for sanctioning, through official policy or custom, the allegedly unconstitutional acts of the individual Defendants. Caine asserts claims under 42 U.S.C. § 1983 for the

1

denial of due process (Count I); for being coerced into giving a false confession in violation of the Fourteenth Amendment (Count III); for being coerced into giving a false confession in violation of the Fifth Amendment (Count IV); for a violation of the equal protection of the laws (Count V); for conspiracy under 42 U.S.C. § 1985 (Count VI); for conspiracy under 42 U.S.C. § 1983 (Count VII); and for a failure to intervene (Count IX). In addition, Caine brings supplemental state-law claims for malicious prosecution (Count X); intentional infliction of emotional distress (Count XI); *respondeat superior* (Count XII); and indemnification (Count XIII).[1] Defendants move to dismiss certain counts of his Complaint.

## I. Background

In deciding the instant Motion, the Court assumes the veracity of the well-plead allegations in the Complaint and construes all reasonable inferences in Caine's favor. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)). On April 19, 1986, an elderly Hispanic couple, Rafaela and Vincent Sanchez, were discovered dead in their Chicago home. Among the officers present at the crime scene was Chicago Police Lieutenant Jon Burge, who was also the Chicago Police Department's Area Two Commander at the time. On April 22, 1986, Area Two detectives arrested Michael Arbuckle in connection with the murders. While at Area Two, Arbuckle was placed in an office and questioned about the murders by Burge and Gang Crimes

---

[1]Caine has dropped Count II for false imprisonment and Count VIII for denial of access to the courts.

Officer Kolowitz. The officers told Arbuckle that the person they really wanted to arrest was Aaron Patterson and they attempted to get Arbuckle to implicate Patterson in the Sanchez murders. When Arbuckle refused, Burge threatened him with the death penalty and told him that he would get him to cooperate one way or another. The next morning, Burge questioned Arbuckle again and threatened him that he would get some drug dealers to testify against him for the murders if he refused to cooperate. Despite Burge's threats, Arbuckle denied any involvement in the murders and refused to implicate Patterson.

On April 30, 1986, Chicago police arrested Aaron Patterson in connection with the Sanchez murders. Defendants Pienta, Marley, and Pederson transferred him to Area Two headquarters. Later than day, Defendants Pienta, Marley, Pederson and other Defendant Officers questioned him about the Sanchez murders in an interrogation room while he was hand-cuffed to the wall. In the evening, Pienta told Patterson that he was "tired of this bullshit." Patterson denied any involvement in the murders. Pienta left the interrogation room and returned with a gray plastic typewriter cover. At the time Patterson was hand-cuffed behind his back. Pienta, Marley, and Pederson, together with other Defendant Officers, turned off the lights, placed the plastic cover over Patterson's head, and struck him repeatedly in the chest. The typewrite cover was held against his mouth and nose, constricting his breathing for over a minute. According to Patterson, when he still did not confess he was beaten and suffocated a second time by the same officers. Afraid that he

3

would be suffocated to death, Patterson acquiesced and told the Officers that he would do "anything you say" in order to make the torture stop.

Patterson says that while alone in the interrogation room, he scratched into the bench that he was tortured and that his statement to the police was false. Later, Assistant State's Attorney Kip Owen and Burge came to speak with him. Patterson asked Owen to force Burge to leave, and when Owen agreed, Patterson told Owen that he wanted a lawyer and had nothing to say. Owen immediately opened the door, revealing Burge on the other side. Owen told Burge that Patterson refused to give a statement. When Owen left the room, Burge entered, screaming "You're fucking up," pulled out his revolver and placed it on top of the table. According to Patterson, Burge told him that "if you don't do what we tell you to, you're going to get something worse than before. . .it will have been a snap compared to what you will get." Burge continued to threaten Patterson, telling him that he could do anything he wanted to do to him.

Later, Assistant State's Attorney Peter Troy entered the interrogation room with Madigan. Patterson told them that he would confess if he could call his family and an attorney. Troy and Madigan agreed. After Patterson made the calls he refused to make a statement or sign a statement written by Troy. Madigan, accompanied by Troy, then beat Patterson again. Defendant McWeeny then entered the room and explained that he was one of the "good cops" at Area Two; one who did not torture detainees. McWeeny urged

Patterson to cooperate because the other detectives "could do something serious to him if he didn't." After McWeeny left, Patterson scratched another message into the bench, saying that he signed a false statement to murders and that "Tonto" on the statement is the code word. A third message was scratched into the door frame of the interrogation room. The message simply said, "Aaron lied." All of Patterson's etchings were later documented in a memorandum by Pienta to Burge. On May 1, 1986, at 2:45 p.m., according to Patterson, he finally broke down in the face of continuing torture and made a false oral statement implicating himself in the Sanchez murders and claiming that Caine was present at the murder scene.

On May 1, 1986, Defendants Pienta and Pederson, and Area Two Sergeant Wilson arrested Caine based solely on Patterson's statement. No other evidence pointed to Caine's involvement in the Sanchez murders. During the ride to the police station, Caine repeatedly denied any involvement in the murders. Pienta told Caine that they would have killed him during the arrest but for Caine's mother's friendship with Sgt. Wilson. When brought to Area Two headquarters, Pienta and Marley interrogated Caine. Pienta told Caine that Patterson had confessed to the murders. Caine insisted that he knew nothing about the killings.

At 11:45 p.m., Pienta brought Caine into Patterson's interrogation room. When Caine saw Patterson he looked like he had been beaten. When Caine was returned to his

own interrogation room, Pienta struck Caine in the chest and told him that he would get the same treatment as Patterson unless he was "cool." Caine spent the night locked in an interrogation room at Area Two headquarters.

While interrogating Caine the next day, Madigan began describing the murders. For a long period of time, while Caine remained silent, Madigan repeated key points of the confession that he wanted Caine to recite. Shortly thereafter, Madigan presented Caine with his notes for Caine to study and so that he could sign them as his own statement. When Caine refused to sign the false confession, Madigan struck Caine with a cupped hand on the side of his head. Caine heard a loud pop and felt a rush of pain. Caine cried out and doubled over in agony, as Madigan tried to quiet him. The strike to Caine's head ruptured his eardrum.

Tired, fearful, and in pain from his ruptured eardrum, Caine signed the notes because he feared additional violence and wanted to go home. Later that day, Caine was brought into a room with Assistant State's Attorneys Peter Troy and William Lacey and Madigan. At 5:15 a.m. the next morning, in excruciating pain from being struck in the head and held all night, Caine signed the false confession.

No evidence other than Caine's and Patterson's false and coerced confessions was ever introduced at Caine's trial. The police found fingerprints at the crime scene that did not match Caine or Patterson or any of the victims. Caine testified in his own defense at

his trial and continued to maintain his innocence. Caine also testified about the physical violence that he suffered at the hands of Madigan and Pienta while being interrogated. The jury nevertheless convicted Caine of murder, home invasion and residential burglary. Caine was sentenced to a term of life imprisonment.

Caine's jury did not hear testimony from Mack Ray at Caine's trial. Ray subsequently testified that Wayne Washington confessed to him that he and his brother Willie Washington actually committed the Sanchez murders. Unknown to Caine, and following his coerced confession, according to Ray, Ray went to the police station at 103rd Street and tried to tell several detectives that Washington had confessed to the murders. But the detectives threatened Ray and said he would "end up dead" if he did not stay quiet. In fear that something would happen to him if he interfered, Ray left town. Willie Washington lived next door to the Sanchezes. Washington has since been convicted of several other incidents of felony residential burglary and home invasion. Washington is currently serving a 30-year sentence for a home invasion in which he broke into the home of his neighbor and stabbed her nine times in the neck, seven times in the upper spine, eight times in the chest, and once in the hand. Caine's jury never heard this exculpatory evidence from Ray because the Defendant Officers withheld it from Caine, his defense team, and the Cook County State's Attorney's Office.

In January, 2003, then Governor of Illinois George Ryan granted Patterson and three

other death row inmates allegedly tortured by Burge and other Area Two detectives pardons on the basis of their innocence.[2]  On March 16, 2011, Caine's conviction was vacated.  The State immediately dismissed the charges and Caine was subsequently released from jail after spending twenty-five years in custody.

Caine alleges that the violations occurred at Burge's direction and that Burge was deliberately indifferent to them.  Absent knowing participation from the command personnel responsible for supervising the Defendant Officers, specifically Burge who was the Area Two Commander, the misconduct could not have happened according to Caine. Caine also alleges that there was a policy and practice on the part of the Chicago Police Department, including the Defendant Officers, to systematically suppress *Brady* material by intentionally secreting discoverable information in so-called "street files."  These clandestine street files were then routinely withheld from the State's Attorney's Office and from criminal defendants, and were subsequently destroyed.  Consistent with this policy and practice, the Defendants in this case concealed exculpatory evidence within street files that were never disclosed to Caine's criminal defense team and that have since been destroyed.  Caine claims that this street files practice was consciously approved by the

---

[2]The Court takes judicial notice of *Patterson v. Burge*, 328 F. Supp. 2d 878, 885 (N.D. Ill. 2004), in which the district court found that Patterson was pardoned by Governor Ryan on the basis of his actual innocence. This Court may take judicial notice of public court documents in deciding a motion to dismiss without converting it into a motion for summary judgment.  *See Hensen v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

highest level of policymakers in the Police Department and was a proximate cause of his injuries. The street files practice was enjoined by a court order and supposedly discontinued prior to the investigation of the Sanchez murders. However, contrary to the Department's public pronouncements, the street files practice continued through and including the Sanchez investigation. Caine alleges that all of the individual Defendants acted under color of law and within the scope of their employment while engaging in the illegal acts that Caine alleges they committed against him.

## II. Standard of Review

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all the well-plead facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. *See Killingsworth*, 507 F.3d at 618 (citing *Savory*, 469 F.3d at 670); *accord Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To properly state a valid claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true ... 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To determine whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. If the factual allegations are well-plead, the Court assumes their

veracity and then proceeds to determine whether they plausibly give rise to an entitlement to relief. *See Id.* at 679. A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 678.

## III. Discussion

The Defendants do not seek to dismiss Caine's Complaint in its entirety. Instead they object to certain Counts in the Complaint. The Defendants seek to dismiss Count I, alleging it contains a claim for relief for malicious prosecution, which is not a cognizable constitutional tort actionable under 42 U.S.C. § 1983.[3] Next, they seek to dismiss Count IV, alleging that Caine's Fifth Amendment claim is time-barred. They seek to dismiss Counts VI and VII, alleging that the Plaintiff's conspiracy claims fail to state a claim. The Defendants also seek to dismiss portions of Count V, alleging an equal protection violation and Count IX, the failure to intervene claim, alleging that they are time-barred or otherwise subject to dismissal. The Defendants also argue that to the extent Counts I through IX are based on insufficient constitutional claims against the individual Defendants, the City cannot be held liable under *Monell*, and that therefore the *Monell* claims should be dismissed. Finally, the Defendants argue that to the extent that the Complaint seeks to

---

[3]The Defendants initially argued that Count III, alleging that Caine's confession was coerced in violation of the Fourteenth Amendment, was time-barred. They have since withdrawn their objection to Count III based on the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).

impose vicarious liability on the City in Count XII, under the doctrine of *respondeat superior*, and Count XIII, on the basis of the Illinois indemnity law, those Counts should be dismissed as untimely or otherwise improper.

### A. Count I: Due Process

The Defendants argue that Count I, which alleges a due process violation, contains an impermissible claim for relief, specifically a malicious prosecution allegation. The Defendants concede that portions of Count I contain a valid and plausible claim for a violation of due process based on the suppression of potentially material exculpatory evidence which violates the Fourteenth Amendment's Due Process Clause under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. But they argue that Count I also contains what is in actuality a claim for malicious prosecution, which is not a cognizable federal constitutional tort actionable through a cause of action under 42 U.S.C. § 1983. In particular, Defendants focus on Paragraph 64 of the Complaint, which states: "In the manner more fully described above, the Defendants deliberately withheld exculpatory evidence, and fabricated false reports and other evidence, thereby misleading the criminal prosecution of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued." Defendants specifically object to the portion of the claim that alleges that Defendants "fabricated false reports and other evidence." They argue that this is a claim for malicious prosecution, and not one for due process, and as such it is

prohibited by the Seventh Circuit's rejection of a constitutional tort for malicious prosecution in cases in which state law provides an adequate remedy, as Illinois does. *See, e.g., Newsome v. McCabe*, 256 F.3d 747, 750-751 (7th Cir. 2001) ("[T]he existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution...[W]e have recognized that *Albright* scotches any constitutional tort of malicious prosecution when state courts are open."); *accord Miller v. Rosenberg*, 749 N.E.2d 946, 951-952 (Ill. 2001) (affirming the existence of a cause of action for malicious prosecution in Illinois).

Courts may dismiss a portion of a claim for relief contained within a count of a complaint when that portion is contrary to law. *See Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 747 F.2d 384, 405 (7th Cir. 1984) (upholding the dismissal of a portion of a count in a complaint alleging that the defendant conducted its own affairs through a pattern of racketeering activity); *see, e.g., Frederic v. Northwestern Memorial Hospital*, No. 04 C 4443, 2005 WL 1563136, *3 (N.D. Ill. June 7, 2005) (dismissing Title VII portion of a count in a complaint that alleged retaliation); *Sienko v. Village of Woodridge*, No. 96 C 1429, 1996 WL 396107, *4 (N.D. Ill. July 12, 1996) (dismissing a portion of a count in a complaint).

Defendants are correct that Plaintiff cannot bring a claim for a violation of due process "by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment." *McCann v. Mangialardi*, 337 F.3d 782,

786 (7th Cir. 2003). In *McCann*, the Seventh Circuit rejected an argument similar to the one Caine is attempting to make here. In that case, the plaintiff alleged that the defendant violated his right to due process by "causing him to suffer a deprivation of liberty from a prosecution and contrived conviction. . . deliberately obtained from the use of false evidence." *Id.* at 786. The court held that such a claim is one for malicious prosecution, and not a due process violation. *See Id.*

In *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009), the plaintiff alleged City of Chicago police officers had deprived him of due process of law by "not disclosing known exculpatory evidence, perjuring themselves, submitting false charges as contained in the criminal complaints, submitting false police reports, and otherwise acting to deny plaintiff a fair trial." The court held that Brooks's allegations that criminal proceedings were instituted against him based on false evidence or testimony was, in essence, a claim for malicious prosecution, rather than a due process violation. *See Id.* As such, Brooks was barred from bringing his claim for a due process violation against the defendant officers. *See Id; accord Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010) (plaintiff's due process claim consisted of "nothing more than a hybrid" of his false arrest and malicious prosecution claims and was barred).

What Caine alleges in Count I is, in part, that the Defendants fabricated reports and evidence resulting in a wrongful prosecution of Caine. An attempt to plead such acts as

13

violations of due process is foreclosed and does not give rise to an entitlement for relief under § 1983. *See McCann*, 337 F.3d at 786; *Brooks*, 564 F.3d at 833; *Fox*, 600 F.3d at 841.

Caine argues that allegations of fabrication and falsification of reports could be considered "omissions" of material information that could plausibly give rise to a *Brady* claim. Allegations that police officers failed to provide favorable or exculpatory information by disclosing or admitting that fabrications occurred does not give rise to a due process violation. *See Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007) (The plaintiff "essentially seeks an extension of *Brady* to provide relief if a police officer makes a false statement to a prosecutor by arguing that an officer is 'suppressing' evidence of the truth by making false statements. This court has already foreclosed this extension."); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("Nor can *Brady* serve as the basis of a cause of action against the officers for failing to disclose these circumstances [a coerced confession] to the prosecutor. . .The Constitution does not require that police testify *truthfully*; rather the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies.") (emphasis in original) (internal quotations omitted); *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003) ("We find the proposed extension of *Brady* [to require the police to render truthful records of interrogations to the prosecutors] difficult even to understand. It implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence."). Nor is Caine's argument

persuasive that if the Court were to dismiss the relevant portions of Count I it would thereby render the fabrication evidence entirely out of the case. Caine has brought a state-law malicious prosecution claim in Count X, and under *Newsome* such a cause of action is the proper vehicle for allegations that the police fabricated evidence or falsified reports. As the Defendants concede, Count I plausibly gives rise to a due process claim. However, Caine cannot bootstrap onto a proper due process claim a cause of action for malicious prosecution. Therefore, the Court dismisses that portion of Count I that seeks to hold the Defendants liable for "fabricat[ing] false reports and other evidence."

### B. Count IV: Coerced Confession in Violation of the Fifth Amendment

Defendants seek to dismiss Count IV as time-barred. Section 1983 does not contain an express statute of limitations. In order to determine the statute of limitations in a suit arising under § 1983, the Court must look to the forum state's statute of limitations for personal injury claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). Though state law determines the limitations period, federal law controls when the claim accrues. *See Wallace*, 549 U.S. at 388 ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.") (emphasis in original); *Sellers v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996). The statute of limitations for § 1983 cases filed in Illinois is two years as provided for in 735 ILCS

§ 5/13-202. *See Brooks*, 564 F.3d at 832; *Ashafa*, 146 F.3d at 462. Under federal law, a § 1983 claim accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (quoting *Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California*, 522 U.S. 192, 201 (1997)) (internal citations and quotations omitted).

Caine argues that his Fifth Amendment claim that his confession was coerced should be governed by the rule in *Heck*, 512 U.S. at 486-487, in which the Supreme Court held that a constitutional claim cannot be brought in federal court until after the conviction is invalidated if a successful constitutional claim would undermine the conviction. Accrual of such causes of action is thus deferred to the time when the plaintiff's conviction is nullified. *Id*. at 486-490. Defendants argue that Caine's position in attempting to tie Count III, alleging that the Defendants coerced a confession in violation of the Fourteenth Amendment, to Count IV by virtue of the rule in *Heck* suggests that the conviction itself is the constitutional injury caused by the Defendants' alleged violation of Caine's Fifth Amendment rights. If this is the case, Defendants argue, then there is no meaningful difference between the claims in Counts III and IV, and the relief sought is duplicative. Defendants argue that if the deferral rule of *Heck* applies to Count IV then it should be dismissed as duplicative of Count III.

A plaintiff can seek damages under § 1983 for a violation of his Fifth Amendment

16

right against self-incrimination when his confession is obtained without the requisite *Miranda* warnings and subsequently is used against him in criminal proceedings. *See Sorenberger v. City of Knoxville,* 434 F.3d at 1026-1027. In *Sorenberger,* the Seventh Circuit found that the accrual of the plaintiff's cause of action in that case occurred at the time that the confession was first introduced as evidence of the plaintiff's guilt during criminal proceedings. *See Id.* ("This use of [Plaintiff's] confession, if the confession is indeed found to have been elicited without *Miranda* warnings, allows a suit for damages under § 1983.").

In *Wallace v. City of Chicago,* 440 F.3d 421 (7th Cir. 2006), *aff'd sub nom., Wallace v. Kato,* 549 U.S. 384 (2007), the Seventh Circuit held that many constitutional tort claims "accrue at the time of the injury," rather than "after the criminal conviction has been set aside." *Wallace,* 440 F.3d at 427. In affirming the Seventh Circuit, the Supreme Court retreated from the *Heck* deferral rule in many cases of constitutional torts, rejecting a principle "that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Wallace,* 549 U.S. at 393. At least one court in this District has held that *Wallace* applies to the accrual time for Fifth Amendment claims, and that the claim accrues at the time of the injury (that is, when the confession is first used in criminal proceedings) rather than after the criminal conviction has been set aside. *See, e.g., Lanza v. City of Chicago,* No. 08 C 5103, 2009 WL 1543680, *3 (N.D. Ill. June 2, 2009) (Anderson, J.) (citing *Wallace,* 549 U.S. at 388) ("[Plaintiff's] Fifth Amendment claim is

17

barred by the two-year statute of limitations because the Supreme Court has held that a plaintiff's Section 1983 claim accrues at the moment the alleged constitutional violation occurs.")

In this case, Caine's confession was allegedly coerced in May 1986. Although the Complaint is silent with respect to whether Caine challenged the confession in any pretrial proceedings such as a motion to suppress, the Court takes notice of *People v. Caine*, 630 N.E.2d 1037 (Ill. App. Ct. 1994).[4] Caine challenged his confession as coerced through a motion to suppress at the trial court stage which the court denied. *Id.* at 601-606. Thus, Caine knew at least by the time he filed his motion to suppress that his allegedly coerced confession was being used against him. It was certainly used against him in his criminal trial in 1989. Caine's Fifth Amendment § 1983 coerced confession claim therefore accrued in 1989, and he had two years from that time to commence a timely civil action. *See, e.g., Lanza*, 2009 WL 1543680, *3 (Anderson, J.) (citing *Wallace*, 549 U.S. at 388) ("[Plaintiff] learned of the coerced confession at his 2001 probable cause hearing and moved to have it suppressed at a hearing in 2002. Therefore, [Plaintiff] had a complete cause of action in either 2001 or 2002 and knew or reasonably should have known of the use of the confession against him at that time."); *Hudson v. Cassidy*, No. 05 C 5623, 2006 WL 3524420, *7 (N.D. Ill.

---

[4]The Court takes judicial notice of *People v. Caine*, 630 N.E.2d 1037 (Ill. App. Ct. 1994). This Court may take judicial notice of public court documents in deciding a motion to dismiss without converting it into a motion for summary judgment. *See Hensen*, 29 F.3d at 284.

Dec. 5, 2006) (Schenkier, M.J.) ("Plaintiff was on notice as early as January 2000, when the suppression hearing commenced, that the State sought to use the confession (which [Plaintiff] says was illegally coerced) against him in the criminal proceeding. Thus, any fifth amendment claim resulting from an attempt to use that confession accrued as early as January 2000. This suit was filed nearly six years after that date, on September 29, 2005."). Caine did not file his Complaint in this case until December 20, 2011, roughly 22 years after the accrual of his Fifth Amendment claim. Count IV therefore is dismissed as untimely.

### C.  Counts VI and VII: Section 1985 and Section 1983 Conspiracy

Defendants argue that Caine's allegations of conspiracy to deprive him of the equal protection of the laws, his constitutional rights, and exculpatory materials to which he was lawfully entitled under 42 U.S.C. § 1985 and 42 U.S.C. § 1983 are insufficiently vague and too speculative to give rise to an entitlement to relief. In addition, they argue that Caine has not plead the necessary underlying violations of his constitutional rights to support a claim for conspiracy.

Although claims for conspiracy are subject to slightly higher pleading standards than are normally required under Rule 8 of the Federal Rules of Civil Procedure, all that a complaint alleging a § 1985 and § 1983 conspiracy needs to aver is the parties to the alleged conspiracy, the general purpose of the alleged conspiracy, and the approximate

date of the alleged conspiracy. *See Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) ("Even before *Bell Atlantic Corp. v Twombly* and *Ashcroft v. Iqbal*, a bare allegation of conspiracy was not enough to survive a motion to dismiss for failure to state a claim. It was too facile an allegation. But it was a narrow exception to the notice-pleading standard of Rule 8 of the civil rules—a rare example of a judicially imposed requirement to plead facts in a complaint governed by Rule 8.") (internal citations and quotations omitted); *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) (citing, *inter alia, Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 858-860 (7th Cir. 1999)) ("Although conspiracy is not something that Rule 9(b) of the Federal Rules of Civil Procedure requires be proved with particularity, and so a plain and short statement will do, it differs from other claims in having a degree of vagueness that makes a bare claim of 'conspiracy' wholly uninformative to the defendant. Federal pleading entitles a defendant to notice of the plaintiff's claim so that he can prepare responsive pleadings. That is why courts require the plaintiff to allege the parties, the general purpose, and the approximate date of the conspiracy.") (internal citations and quotations omitted).

Here, Caine's Complaint meets the requisite pleading standards for claims of conspiracy. Caine identifies the parties engaged in the alleged conspiracy–the six individually named Defendants and presently unidentified officers who may have participated in the conspiracy that led to Caine's wrongful conviction. In addition, Caine

alleges the general purpose of the conspiracy; namely, to secure the wrongful prosecution and conviction of Caine for a crime he did not commit and to use unlawful means to accomplish those ends. Finally, Caine alleges the approximate dates of the conspiracy. He alleges that the conspiracy to frame him began immediately after the April 16, 1986 Sanchez murders and that it was part of a larger conspiracy to frame and torture Black men than lasted through the 1980s. He further identifies specific acts that the individual Defendants took in furtherance of their conspiracy to deprive him of the equal protection of the laws, his constitutional rights, and exculpatory materials to which he was lawfully entitled, and he places those allegation in the context of the general conspiracy at Area Two to frame innocent Black men, often through the use of torture. In addition, Caine's Complaint adequately puts the Defendants on notice of the alleged claims against them. Thus, Caine's § 1985 and § 1983 conspiracy claims contained in Counts VI and VII are sufficient to withstand the Defendants' Motion to Dismiss. *See, e.g., Tillman v. Burge*, 813 F. Supp. 2d 946, 976-977 (N.D. Ill. 2011) (Pallmeyer, J.) (declining to dismiss § 1985 and § 1983 conspiracy claims where the plaintiff alleged specific instances of misconduct by the defendants and alleged that the misconduct was part of a larger pattern of abuse, torture and misconduct directed towards Black men); *Fields v. City of Chicago*, 805 F. Supp. 2d 536, 544 (N.D. Ill. 2011) (Kennelly, J.) (refusing to dismiss conspiracy claims where the plaintiff's complaint provided sufficient notice to the defendants of the claims alleged against them);

*Patterson v. Burge*, 328 F. Supp. 2d 878, 903 (N.D. Ill. 2004) (Gottschall, J.) (refusing to dismiss allegations of conspiracy made by Caine's co-defendant in the Sanchez murders). The Defendants' Motion to Dismiss Counts VI and VII is denied.

### D. Count V: Equal Protection and Count IX: Failure to Intervene

The Defendants argue that to the extent that Counts V and IX are based on allegations that are time-barred or otherwise subject to dismissal, those portions of these Counts are likewise subject to dismissal. A plaintiff cannot assert an equal protection claim for allegations that are time-barred. *See Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir. 1999). Where a Complaint alleges a number of acts, a plaintiff cannot assert a § 1983 action for an equal protection violation for those acts which are time-barred or otherwise subject to dismissal. Here, the Court has concluded that Count I impermissibly contains allegations that Defendants fabricated and falsified evidence, and therefore dismissed those parts of that Count. In addition, Count IV, alleging that the Defendants coerced a confession in violation of the Fifth Amendment, is time-barred. These allegations cannot form part of Caine's claim that the Defendants deprived him of the equal protection of the laws. With the exception of allegations arising out of Count I and Count IV, Caine may proceed on his equal protection claim contained in Count V.

To recover on a failure to intervene claim, the plaintiff must allege that the Defendants violated his constitutional rights. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th

22

Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation."). The Complaint sufficiently alleges deprivations of Caine's constitutional rights that can form the basis of a failure to intervene claim. For example, the Defendants admit that Caine has a plausible claim for relief in Count I for violations of his right to due process of law under the Fourteenth Amendment. This alone can form the basis of a failure to intervene claim. *See Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994) ("An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that: (1) excessive force was being used; (2) a citizen has been unjustifiably arrested, or (3) any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring."). However, the allegations of fabricated and falsified evidence contained in Count I, which states a prohibited claim for malicious prosecution, and the allegations of a coerced confession in violation of the Fifth Amendment contained in Count IV, which is time-barred, cannot form part of Caine's failure to intervene claim contained in Count IX.

### E. The Monell Claims and Vicarious Liability

Caine alleges in each of his Counts arising under federal law that the Defendants acted under color of law and pursuant to an official custom or policy of the City of Chicago,

thus giving rise to municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). The Defendants argue that to the extent that Counts II, III, IV, VI, VII, and VIII should be dismissed, the *Monell* claims arising out of those Counts should likewise be dismissed. A *Monell* claim depends upon the validity of the underlying substantive claim. *See Bielanski v. County of Kane*, 550 F.3d 632, 645 (7th Cir. 2008) ("Because [Plaintiff's] *Monell* claim depended entirely on the validity of her first two claims, we affirm the dismissal of the *Monell* claim as well."). The Court has found that the allegation that the individual Defendants fabricated evidence or falsified reports contained in Count I is prohibited by the rule prohibiting a constitutional tort of malicious prosecution. *See Newsome*, 256 F.3d at 750-751. The Court has also found that Claim IV is time-barred. Thus, the allegations arising out of these claims cannot form the basis for municipal liability under *Monell*. Caine can proceed with his *Monell* claims pursuant to Count I, Count III, Count V, Count VI, Count VII, and Count IX.

The Defendants similarly argue that to the extent that Caine seeks relief from the City vicariously in Count XII (state-law *respondeat superior*) and Count XIII (state-law indemnity), those claims should be dismissed to the extent that the underlying Counts are time-barred or subject to dismissal. Section 2-109 of the Tort Immunity Act provides that a "local public entity is not liable for any injury resulting from an act or omission of its employees where the employee is not liable." 745 ILCS 10/2-109. Thus, where a municipal

24

employee is not liable, the municipal entity for which that employee works is similarly absolved from liability by virtue of the Act. Therefore, the City cannot be held vicariously liable under the doctrine of *respondeat superior*, nor can the City be required to pay indemnity, for the allegations of fabricated or falsified evidence in Count I or the allegations of Count IV. Caine may proceed with Counts XII and XIII for the allegedly illegal acts of the Defendants contained in the Counts of his Complaint that are not time-barred or otherwise subject to dismissal.

## IV. Conclusion

For the reasons set forth above, the Defendants' Joint Motion to Dismiss Portions of Plaintiff's Complaint is granted in part and denied in part. The Court dismisses that portion of Court I which alleges that the Defendants fabricated or falsified evidence. Count IV of the Complaint is dismissed as untimely. Counts II and VIII are dismissed pursuant to Caine's stipulation that he no longer wishes to prosecute them. Caine may proceed on Counts VI and VII, as they are properly before the Court and not subject to dismissal. To the extent that Counts V and IX rely on the allegations of other claims in the Complaint, they cannot be predicated on that part of Count I which is dismissed or on Count IV. Similarly, Caine may seek to impose *Monell* liability on the City of Chicago pursuant to Counts I, III, V, VI, VII, and IX, but as to Count I he may not do so on the basis of allegations of falsified or fabricated evidence. Finally, for state-law vicarious liability under

Counts XII and XIII, Caine cannot seek redress for that portion of Count I that is dismissed or for Count IV, which is time-barred.



_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 27, 2012