**In The Matter Of:**

*Eric Caine*
*vs.*
*Jon Burge, et al.*

_____

**William Pedersen**

**July 10, 2012**

_____

**MERRILL CORPORATION**
LegaLink, Inc.
311 South Wacker Drive
Suite 300
Chicago, IL 60606
Phone: 312.386.2000
Fax: 312.386.2275

EXHIBIT
11

---

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIC CAINE,                           )
                                      )
                    Plaintiff,        )
                                      )
        -vs-                          ) Case No. 11-CV-08996
                                      )
JON BURGE, JAMES PIENTA,              )
RAYMOND MADIGAN, WILLIAM              )
MARLEY, WILLIAM PEDERSEN,             )
DANIEL MCWEENY, CITY OF               )
CHICAGO and UNIDENTIFIED              )
EMPLOYEES OF THE CITY OF              )
CHICAGO,                              )
                                      )
                    Defendants.       )

        Videotaped deposition of WILLIAM L.

PEDERSEN, taken before MARGARET A. BACHNER, CSR, RMR,

CRR, and Notary Public, pursuant to the Federal Rules

of Civil Procedure for the United States District

Courts pertaining to the taking of depositions for

the purpose of discovery, at Suite 100, 312 North May

Street, Chicago, Illinois, on the 10th day of July,

A.D. 2012, at 10:25 a.m.

---

Page 2

```
 1          There were present at the taking of this
 2    deposition the following counsel:
 3
 4    LOEVY & LOEVY
      BY:  MR. RUSSELL AINSWORTH
 5         312 North May Street, Suite 100
           Chicago, Illinois  60607
 6         312-243-5900
           russell@loevy.com
 7
                on behalf of the Plaintiff;
 8
 9    THE SOTOS LAW FIRM, P.C.
      BY:  MS. CHRISTINA S. GUNN
10         550 East Devon, Suite 150
           Itasca, Illinois  60143
11         630-735-3300
           cgunn@jsotoslaw.com
12
                on behalf of the Defendants Jon Burge,
13              James Pienta, Raymond Madigan, William
                Marley, William Pedersen and Daniel
14              McWeeny;
15    DYKEMA GOSSETT PLLC
      BY:  MR. HARRY N. ARGER
16         10 South Wacker Drive, Suite 2300
           Chicago, Illinois  60606
17         312-627-2127
           harger@dykema.com
18
                on behalf of the Defendant The City of
19              Chicago.
20
21    ALSO PRESENT:
22         MR. RICK KOSBERG, Videographer,
           312-952-8100
23         rkosberg@ameritech.net.
24
```

---

Page 3

```
 1                  I N D E X
 2    WITNESS                              EXAMINATION
 3    WILLIAM L. PEDERSEN
 4      By Mr. Ainsworth                         4
 5
 6              E X H I B I T S
 7    PEDERSEN DEPOSITION EXHIBIT    FOR IDENTIFICATION
 8      Exhibit 1 - X72869-2876, Supplementary      65
 9              Report
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

William Pedersen    June 10, 2012

Page 4

```
10:14:56  1         THE VIDEOGRAPHER:  This is the deposition of
10:25:23  2    William Pedersen taken by Loevy & Loevy in the matter
10:25:26  3    of Eric Caine versus Jon Burge, James Pienta, Raymond
10:25:26  4    Madigan, William Marley, William Pedersen, Daniel
10:25:33  5    McWeeny, City of Chicago, et al., Case Number
10:25:38  6    11-CV-08996, held in the offices of Loevy & Loevy,
10:25:42  7    312 North May, Chicago, Illinois.
10:25:44  8         Today is July 10th, 2012.  The time is
10:25:47  9    10:25.  The court reporter is Margo Bachner.  The
10:25:53 10    videographer is Rick Kosberg.
10:25:56 11         Counsel can now introduce themselves, and
10:25:59 12    the court reporter is free to administer the oath.
10:26:01 13         MR. AINSWORTH:  This is Russell Ainsworth on
10:26:03 14    behalf of the plaintiff.
10:26:04 15         MS. GUNN:  Christina Gunn on behalf of the
10:26:07 16    individually named officer defendants.
10:26:09 17         MR. ARGER:  Harry Arger for the City of Chicago.
10:26:24 18              (The witness was duly sworn.)
10:26:24 19              WILLIAM L. PEDERSEN,
10:26:24 20    called as a witness herein, having been first duly
10:26:24 21    sworn, was examined and testified as follows:
10:26:26 22              EXAMINATION
10:26:26 23    BY MR. AINSWORTH:
10:26:26 24         Q.   Sir, would you please state and spell your
```

William Pedersen    June 10, 2012

Page 5

```
10:26:29  1    name for the record?
10:26:30  2         A.   William L. Pedersen.  Pedersen is spelled
10:26:34  3    P-e-d-e-r-s-e-n.
10:26:36  4         Q.   Are you currently employed, sir?
10:26:38  5         A.   I'm self-employed.
10:26:40  6         Q.   And what do you -- what is your current
10:26:42  7    occupation?
10:26:42  8         A.   I'm a private detective.
10:26:44  9         Q.   And for how long have you been a private
10:26:47 10    detective?
10:26:47 11         A.   Two, three years.
10:26:53 12         Q.   And what was your employment before you
10:26:59 13    began as a private detective?
10:27:02 14         A.   My last employment, I worked for the Cook
10:27:09 15    County Public Defender's Office as an investigator.
10:27:12 16         Q.   And for how long were you with the Public
10:27:15 17    Defender's Office?
10:27:16 18         A.   I think about eight years.
10:27:18 19         Q.   And why did you leave the Public
10:27:20 20    Defender's Office?
10:27:21 21         A.   It is my desire to answer your question
10:27:26 22    fully.  However, I'm aware that merely answering your
10:27:30 23    questions might lead to my prosecution for a criminal
10:27:33 24    offense.  Acting on the advice of my attorney, I
```

William Pedersen    June 10, 2012

Page 6

```
10:27:35  1    choose not to answer your question based on the right
10:27:38  2    afforded to me by the Fifth Amendment to the United
10:27:41  3    States Constitution.
10:27:43  4         Q.   All right.  During the 1980s did you serve
10:27:45  5    as a detective with the Chicago Police Department?
10:27:51  6         A.   It is my desire --
10:27:53  7         MS. GUNN:  I'm sorry.  Can I just interject
10:27:56  8    here?  Can we have a stipulation to have him read a
10:27:56  9    shortened version rather than have him read that
10:27:59 10    entire statement every time?  Otherwise we can go
10:28:00 11    forward with the full statement.
10:28:01 12         MR. AINSWORTH:  I'm happy to have it shortened
10:28:06 13    as long as he just refers to the Fifth.  He can adopt
10:28:09 14    his prior answer, but as long as he states that he's
10:28:12 15    declining to answer based on the Fifth Amendment,
10:28:15 16    that would be fine.
10:28:16 17         MS. GUNN:  Does that sound fair enough to you?
10:28:18 18         THE WITNESS:  Sure.
10:28:18 19    BY THE WITNESS:
10:28:18 20         A.   On the advice of my attorney I choose not
10:28:20 21    to answer your question based on my rights afforded
10:28:23 22    to me in the Fifth Amendment of the United States
10:28:25 23    Constitution.
10:28:26 24    BY MR. AINSWORTH:
```

William Pedersen    June 10, 2012

Page 7

```
10:28:27  1         Q.   And were you assigned to Area 2 when you
10:28:29  2    were a Chicago police detective?
10:28:33  3         A.   Acting on advice of my attorney I choose
10:28:35  4    not to answer your question based on my -- on the
10:28:38  5    rights afforded me in the Fifth Amendment to the
10:28:41  6    United States Constitution.
10:28:42  7         Q.   Who were your partners that you had for a
10:28:46  8    period of, say, more than two months at a time while
10:28:49  9    you were a detective with the Chicago Police
10:28:52 10    Department?
10:28:52 11         MS. GUNN:  Objection.  Assumes facts not in
10:28:54 12    evidence.
10:28:56 13         You can answer.
10:28:56 14    BY THE WITNESS:
10:28:58 15         A.   Okay.  Acting on my advice of my attorney
10:29:00 16    I choose not to answer your question based on the
10:29:02 17    rights afforded me in the Fifth Amendment to the
10:29:05 18    United States Constitution.
10:29:06 19    BY MR. AINSWORTH:
10:29:07 20         Q.   Did you review any documents in
10:29:09 21    preparation for today's deposition?
10:29:12 22         A.   Acting on advice of my attorney I choose
10:29:14 23    not to answer your question --
10:29:16 24         MS. GUNN:  You can answer that question.
```

William Pedersen   June 10, 2012

Page 8

| | | |
|---|---|---|
| 10:29:18 | 1 | THE WITNESS:  I can answer it? |
| 10:29:18 | 2 | BY THE WITNESS: |
| 10:29:19 | 3 | A.    No. |
| 10:29:19 | 4 | BY MR. AINSWORTH: |
| 10:29:27 | 5 | Q.    Did you -- please tell me what role you |
| 10:29:30 | 6 | played, if any, in the Sanchez homicide investigation |
| 10:29:33 | 7 | in April of 1986. |
| 10:29:35 | 8 | A.    Acting on advice of my attorney I choose |
| 10:29:38 | 9 | not to answer your question based on the rights |
| 10:29:40 | 10 | afforded me in the Fifth Amendment to the United |
| 10:29:43 | 11 | States Constitution. |
| 10:29:43 | 12 | BY MR. AINSWORTH: |
| 10:29:45 | 13 | Q.    Please tell me every witness that you |
| 10:29:46 | 14 | questioned during your investigation of the Sanchez |
| 10:29:48 | 15 | homicides in 19- -- in April of 1986. |
| 10:29:51 | 16 | MS. GUNN:  Objection.  Assumes facts not in |
| 10:29:53 | 17 | evidence. |
| 10:29:54 | 18 | You can answer. |
| 10:29:54 | 19 | BY THE WITNESS: |
| 10:29:55 | 20 | A.    Acting on the advice of my attorney I |
| 10:29:58 | 21 | choose not to answer your question based on the |
| 10:30:00 | 22 | rights afforded me in the Fifth Amendment to the |
| 10:30:03 | 23 | United States Constitution. |
| 10:30:08 | 24 | BY MR. AINSWORTH: |

William Pedersen   June 10, 2012

Page 9

| | | |
|---|---|---|
| 10:30:08 | 1 | Q.    Tell me what efforts you made to locate a |
| 10:30:10 | 2 | person by the name of Aaron Patterson in April of |
| 10:30:16 | 3 | 1986. |
| 10:30:17 | 4 | A.    Acting on advice of my attorney I choose |
| 10:30:19 | 5 | not to answer your question based on the rights |
| 10:30:22 | 6 | afforded me in the Fifth Amendment to the United |
| 10:30:25 | 7 | States Constitution. |
| 10:30:25 | 8 | Q.    Tell me every reason that you know of that |
| 10:30:28 | 9 | you were looking for Aaron Patterson in April of |
| 10:30:32 | 10 | 1986. |
| 10:30:32 | 11 | MS. GUNN:  Objection.  Form.  Foundation.  And |
| 10:30:35 | 12 | assumes facts not in evidence. |
| 10:30:35 | 13 | BY THE WITNESS: |
| 10:30:36 | 14 | A.    Acting on the advice of my attorney I |
| 10:30:40 | 15 | choose not to answer your question based on the |
| 10:30:42 | 16 | rights afforded me in the Fifth Amendment to the |
| 10:30:44 | 17 | United States Constitution. |
| 10:30:45 | 18 | BY MR. AINSWORTH: |
| 10:30:46 | 19 | Q.    Where were you when you first met Aaron |
| 10:30:51 | 20 | Patterson? |
| 10:30:51 | 21 | A.    Acting on the rights of my -- I'm sorry. |
| 10:30:53 | 22 | Acting on the advice of my attorney I choose not to |
| 10:30:56 | 23 | answer your question based on the rights afforded me |
| 10:30:59 | 24 | in the Fifth Amendment to the United States |

William Pedersen   June 10, 2012

Page 10

| | | |
|---|---|---|
| 10:31:01 | 1 | Constitution. |
| 10:31:01 | 2 | BY MR. AINSWORTH: |
| 10:31:02 | 3 | Q.    Did you question a person by the name of |
| 10:31:04 | 4 | Willie Washington in April of 1986? |
| 10:31:06 | 5 | A.    Acting on the advice of my attorney, I |
| 10:31:08 | 6 | choose not to answer your question based on the |
| 10:31:11 | 7 | rights afforded me in the Fifth Amendment to the |
| 10:31:13 | 8 | United States Constitution. |
| 10:31:15 | 9 | Q.    Did you speak with a person named Mack Ray |
| 10:31:20 | 10 | in regard to the Sanchez homicide investigation? |
| 10:31:23 | 11 | A.    Acting on the advice of my attorney I |
| 10:31:25 | 12 | choose not to answer your question based on the |
| 10:31:27 | 13 | rights afforded me in the Fifth Amendment to the |
| 10:31:30 | 14 | United States Constitution. |
| 10:31:31 | 15 | Q.    Isn't it true that Mack Ray told you that |
| 10:31:34 | 16 | Wayne Washington had told him that Wayne and Willie |
| 10:31:38 | 17 | Washington had committed the Sanchez murders? |
| 10:31:40 | 18 | MS. GUNN:  Objection.  Form.  Foundation.  And |
| 10:31:43 | 19 | assumes facts not in evidence. |
| 10:31:45 | 20 | BY THE WITNESS: |
| 10:31:46 | 21 | A.    Acting on the advice of my attorney I |
| 10:31:48 | 22 | choose not to answer your question based on the |
| 10:31:50 | 23 | rights afforded me in the Fifth Amendment to the |
| 10:31:52 | 24 | United States Constitution. |

William Pedersen   June 10, 2012

Page 11

| | | |
|---|---|---|
| 10:31:54 | 1 | BY MR. AINSWORTH: |
| 10:31:55 | 2 | Q.    Isn't it true that you documented the fact |
| 10:31:57 | 3 | that Mack Ray told you that Wayne Washington had told |
| 10:32:01 | 4 | him that Wayne and Willie Washington had committed |
| 10:32:04 | 5 | the Sanchez murders? |
| 10:32:05 | 6 | MS. GUNN:  Objection.  Foundation.  Assumes |
| 10:32:08 | 7 | facts not in evidence. |
| 10:32:08 | 8 | BY THE WITNESS: |
| 10:32:10 | 9 | A.    Acting on the advice of my attorney I |
| 10:32:12 | 10 | choose not to answer your question based on the |
| 10:32:14 | 11 | rights afforded me in the Fifth Amendment to the |
| 10:32:16 | 12 | United States Constitution. |
| 10:32:17 | 13 | BY MR. AINSWORTH: |
| 10:32:17 | 14 | Q.    Isn't it true that you saw documentation |
| 10:32:20 | 15 | prepared by another police officer with the Chicago |
| 10:32:24 | 16 | Police Department that Mack Ray had informed the |
| 10:32:26 | 17 | Chicago Police Department that Wayne Washington had |
| 10:32:29 | 18 | told him that Wayne and Willie Washington were |
| 10:32:33 | 19 | responsible for the Sanchez murders? |
| 10:32:35 | 20 | MS. GUNN:  Objection.  Foundation.  Assumes |
| 10:32:37 | 21 | facts not in evidence. |
| 10:32:38 | 22 | BY THE WITNESS: |
| 10:32:39 | 23 | A.    Acting on the advice of my attorney I |
| 10:32:41 | 24 | choose not to answer your question based on the |

William Pedersen   June 10, 2012

Page 12

10:32:43  1    rights afforded me in the Fifth Amendment to the
10:32:46  2    United States Constitution.
10:32:47  3    BY MR. AINSWORTH:
10:32:48  4        Q.    Isn't it true that you withheld
10:32:50  5    documentation showing that Wayne Washington had told
10:32:54  6    Mack Ray that Wayne and Willie Washington were
10:32:57  7    responsible for the Sanchez homicides from the Record
10:33:00  8    Division file at the Chicago Police Department so
10:33:04  9    that the documentation could not be obtained either
10:33:08 10    by subpoena from the defense nor from the
10:33:11 11    prosecution?
10:33:12 12        MS. GUNN:  Objection.  Form.  Foundation.
10:33:14 13    Assumes facts not in evidence.
10:33:14 14    BY THE WITNESS:
10:33:17 15        A.    Acting on the advice of my attorney I
10:33:19 16    choose not to answer your question based on the
10:33:21 17    rights afforded me in the Fifth Amendment to the
10:33:23 18    United States Constitution.
10:33:24 19    BY MR. AINSWORTH:
10:33:24 20        Q.    Isn't it true that you destroyed
10:33:32 21    documentation showing that Wayne Washington had told
10:33:35 22    Mack Ray that Wayne and Willie Washington were
10:33:37 23    responsible for the Sanchez homicides so that the
10:33:40 24    documentation could not be obtained by subpoena by

Merrill Corporation - Chicago
(312) 386-2000                                    www.merrillcorp.com/law

---

William Pedersen   June 10, 2012

Page 13

10:33:44  1    either the -- Mr. Caine's defense team or the
10:33:47  2    prosecution?
10:33:48  3        MS. GUNN:  Objection.  Form.  Foundation.
10:33:50  4    Assumes facts not in evidence.
10:33:50  5    BY THE WITNESS:
10:33:53  6        A.    Acting on the advice of my attorney I
10:33:55  7    choose not to answer your question based on the
10:33:57  8    rights afforded me in the Fifth Amendment to the
10:34:01  9    United States Constitution.
10:34:03 10    BY MR. AINSWORTH:
10:34:03 11        Q.    Isn't it true that you have personal
10:34:07 12    knowledge that one of defendants Burge, Pienta,
10:34:10 13    Madigan, Marley or McWeeny withheld documentation
10:34:15 14    showing that Mack Ray informed a Chicago police
10:34:19 15    officer that Wayne Washington had admitted to him
10:34:22 16    that Wayne and Willie Washington were responsible for
10:34:25 17    the Sanchez homicides such that the documentation
10:34:28 18    could not be provided to either the prosecution or
10:34:31 19    the defense?
10:34:32 20        MS. GUNN:  Objection.  Form.  Foundation.
10:34:35 21    Assumes facts not in evidence.
10:34:35 22    BY THE WITNESS:
10:34:37 23        A.    Acting on the advice of my attorney I
10:34:40 24    choose not to answer your question based on the

Merrill Corporation - Chicago
(312) 386-2000                                    www.merrillcorp.com/law

---

William Pedersen   June 10, 2012

Page 14

10:34:42  1    rights afforded me in the Fifth Amendment to the
10:34:44  2    United States Constitution.
10:34:45  3    BY MR. AINSWORTH:
10:34:46  4        Q.    Isn't it true that you have personal
10:34:47  5    knowledge that one of defendants Burge, Pienta,
10:34:51  6    Madigan, Marley, McWeeny destroyed documentation
10:34:57  7    showing that Mack Ray had told a Chicago police
10:35:00  8    officer that Wayne Washington had admitted that Wayne
10:35:04  9    and Willie Washington were the actual culprits of the
10:35:07 10    Sanchez murders such that the documentation could not
10:35:10 11    be provided to either the prosecution or Mr. Caine's
10:35:14 12    defense team?
10:35:14 13        MS. GUNN:  Objection.  Foundation.  Form.
10:35:18 14    Assumes facts not in evidence.
10:35:20 15    BY THE WITNESS:
10:35:21 16        A.    Acting on advice of my attorney I choose
10:35:24 17    not to answer your question based on the rights
10:35:26 18    afforded me in the Fifth Amendment to the United
10:35:28 19    States Constitution.
10:35:28 20    BY MR. AINSWORTH:
10:35:32 21        Q.    Please tell us which one of either
10:35:34 22    defendants Burge, Pienta, Madigan, Marley or McWeeny
10:35:40 23    withheld or destroyed documentation that Mack Ray had
10:35:44 24    informed a Chicago police officer that Wayne had

Merrill Corporation - Chicago
(312) 386-2000                                    www.merrillcorp.com/law

---

William Pedersen   June 10, 2012

Page 15

10:35:46  1    admitted that Wayne and Willie Washington were the
10:35:50  2    true culprits of the Sanchez murders?
10:35:54  3        MS. GUNN:  Objection.  Form.  Foundation.
10:35:57  4    Assumes facts not in evidence.
10:36:00  5    BY THE WITNESS:
10:36:01  6        A.    Acting on the advice of my attorney I
10:36:03  7    choose not to anxious your question based on the
10:36:05  8    rights afforded me in the Fifth Amendment to the
10:36:08  9    United States Constitution.
10:36:09 10    BY MR. AINSWORTH:
10:36:10 11        Q.    Isn't it true that you had a reasonable
10:36:12 12    opportunity to prevent the withholding or the
10:36:14 13    destruction of documentation showing that Mack Ray
10:36:19 14    had informed a Chicago police officer that Wayne
10:36:24 15    Washington had admitted that Wayne and Willie
10:36:27 16    Washington were the true culprits in the Sanchez
10:36:30 17    murders?
10:36:30 18        MS. GUNN:  Objection.  Form.  Foundation.
10:36:33 19    Assumes facts not in evidence.
10:36:33 20    BY THE WITNESS:
10:36:35 21        A.    Acting on the advice of my attorney I
10:36:38 22    choose not to answer your question based on the
10:36:39 23    rights afforded me in the Fifth Amendment to the
10:36:42 24    United States Constitution.

Merrill Corporation - Chicago
(312) 386-2000                                    www.merrillcorp.com/law

William Pedersen   June 10, 2012

Page 16

```
10:36:43  1    BY MR. AINSWORTH:
10:36:48  2        Q.   Isn't it true that you were at Area 2 when
10:36:52  3    Aaron Patterson was being interrogated on April 30th,
10:36:58  4    1986?
10:36:59  5        A.   Acting on the advice of my attorney I
10:37:01  6    choose not to answer your question based on the
10:37:03  7    rights afforded me in the Fifth Amendment to the
10:37:06  8    United States Constitution.
10:37:06  9        Q.   Tell me every step you took to either rule
10:37:11 10    out or rule in Willie Washington as a perpetrator of
10:37:20 11    the Sanchez homicides.
10:37:21 12        MS. GUNN:  Objection.  Form.  Assumes facts not
10:37:25 13    in evidence.
10:37:25 14    BY THE WITNESS:
10:37:26 15        A.   Acting on the advice of my attorney I
10:37:28 16    choose not to answer your question based on the
10:37:30 17    rights afforded me in the Fifth Amendment to the
10:37:32 18    United States Constitution.
10:37:33 19    BY MR. AINSWORTH:
10:37:34 20        Q.   Isn't it true that in April of 1986 you
10:37:37 21    knew that Willie Washington had been implicated as a
10:37:41 22    potential suspect in the Sanchez homicides?
10:37:45 23        MS. GUNN:  Objection.  Form.  Assumes facts not
10:37:48 24    in evidence.
```

William Pedersen   June 10, 2012

Page 17

```
10:37:48  1    BY THE WITNESS:
10:37:50  2        A.   Acting on the advice of my attorney I
10:37:52  3    choose not to answer your question based on the
10:37:54  4    rights afforded me in the Fifth Amendment to the
10:37:56  5    United States Constitution.
10:37:57  6    BY MR. AINSWORTH:
10:38:01  7        Q.   Isn't it true that you interrogated Aaron
10:38:06  8    Patterson on April 30th, 1986 alongside several other
10:38:10  9    detectives?
10:38:10 10        MS. GUNN:  Objection.  Form and foundation.
10:38:10 11    BY THE WITNESS:
10:38:14 12        A.   Acting on the advice of my attorney I
10:38:16 13    choose not to answer your question based on the
10:38:19 14    rights afforded me in the Fifth Amendment to the
10:38:21 15    United States Constitution.
10:38:23 16    BY MR. AINSWORTH:
10:38:24 17        Q.   Please tell me the name of every detective
10:38:26 18    that you witnessed interrogating Aaron Patterson on
10:38:30 19    April 30th, 1986.
10:38:34 20        A.   Acting on the advice of my attorney I
10:38:36 21    choose not to answer your question based on the
10:38:38 22    rights afforded me in the Fifth Amendment to the
10:38:40 23    United States Constitution.
10:38:42 24        Q.   Isn't it true that you interrogated Aaron
```

William Pedersen   June 10, 2012

Page 18

```
10:38:47  1    Patterson inside Area 2 while he was handcuffed to
10:38:51  2    the wall?
10:38:51  3        MS. GUNN:  Objection.  Foundation.
10:38:53  4    BY THE WITNESS:
10:38:55  5        A.   Acting on the advice of my attorney I
10:38:57  6    choose not to answer your question based on the
10:38:59  7    rights afforded me in the Fifth Amendment to the
10:39:02  8    United States Constitution.
10:39:03  9    BY MR. AINSWORTH:
10:39:03 10        Q.   Isn't it true that you interrogated Aaron
10:39:06 11    Patterson inside Area 2 with defendants James Pienta
10:39:11 12    and Bill Marley on April 30th, 1986 while Aaron
10:39:16 13    Patterson was handcuffed to the wall?
10:39:18 14        A.   Acting on the advice of my attorney I
10:39:21 15    choose not to answer your question based on the
10:39:24 16    rights afforded me in the Fifth Amendment to the
10:39:27 17    United States Constitution.
10:39:28 18        Q.   Isn't it from you that you transported
10:39:31 19    Aaron Patterson to Area 2 with defendants Pienta and
10:39:35 20    Marley?
10:39:37 21        MS. GUNN:  Objection.  Foundation.
10:39:37 22    BY THE WITNESS:
10:39:40 23        A.   Acting on the advice of my attorney I
10:39:44 24    choose not to answer your question based on the
```

William Pedersen   June 10, 2012

Page 19

```
10:39:45  1    rights afforded me in the Fifth Amendment to the
10:39:47  2    United States Constitution.
10:39:48  3    BY MR. AINSWORTH:
10:39:49  4        Q.   Did you know Aaron Patterson prior to
10:39:51  5    April 19th, 1986?
10:39:54  6        A.   Acting on the advice of my attorney I
10:39:57  7    choose not to answer your question based on the
10:39:59  8    rights afforded me in the Fifth Amendment to the
10:40:02  9    United States Constitution.
10:40:05 10        Q.   Did you know Eric Caine prior to April
10:40:08 11    19th, 1986?
10:40:09 12        A.   Acting on the advice of my attorney I
10:40:11 13    choose not to answer your question based on the
10:40:13 14    rights afforded me in the Fifth Amendment to the
10:40:15 15    United States Constitution.
10:40:18 16        Q.   Did you know Michael Arbuckle prior to
10:40:20 17    April 19th, 1986?
10:40:22 18        A.   Acting on the advice of my attorney I
10:40:24 19    choose not to answer your question based on the
10:40:27 20    rights afforded me in the Fifth Amendment to the
10:40:30 21    United States Constitution.
10:40:32 22        Q.   Did you know Illya Rowland prior to April
10:40:35 23    19th, 1986?
10:40:36 24        A.   Acting on the advice of my attorney I
```

William Pedersen   June 10, 2012

Page 20

```
10:40:38  1    choose not to answer your question based on the
10:40:41  2    rights afforded me in the Fifth Amendment to the
10:40:45  3    United States Constitution.
10:40:46  4        Q.    In April of 1986 were there typewriters in
10:40:52  5    Area 2 to your knowledge?
10:40:54  6        MS. GUNN:  Objection.  Foundation.
10:40:54  7    BY THE WITNESS:
10:40:59  8        A.    Acting on the advice of my attorney I
10:41:02  9    choose not to answer your question based on the
10:41:04 10    rights afforded me in the Fifth Amendment to the
10:41:07 11    United States Constitution.
10:41:09 12    BY MR. AINSWORTH:
10:41:10 13        Q.    In April of 1986 were there gray
10:41:13 14    typewriter covers that were used to cover the
10:41:18 15    typewriters in April of 1986?
10:41:20 16        MS. GUNN:  Objection.  Foundation.  Assumes
10:41:22 17    facts not in evidence.
10:41:22 18    BY THE WITNESS:
10:41:24 19        A.    Acting on the advice of my attorney I
10:41:26 20    choose not to answer your question based on the
10:41:29 21    rights afforded me in the Fifth Amendment to the
10:41:33 22    United States Constitution.
10:41:34 23    BY MR. AINSWORTH:
10:41:34 24        Q.    Isn't it true that the gray typewriter
```

William Pedersen   June 10, 2012

Page 21

```
10:41:38  1    covers were placed over the heads of criminal
10:41:42  2    suspects during the 1980s at Area 2 to your
10:41:46  3    knowledge?
10:41:46  4        MS. GUNN:  Objection.  Foundation.  Form.
10:41:49  5    Assumes facts not in evidence.
10:41:52  6        MR. ARGER:  I'll join the objection in that it
10:41:54  7    is an improper use of this witness to attempt to
10:41:58  8    establish a claim against the City.  If you will give
10:42:01  9    me a standing objection to the remainder of this
10:42:04 10    deposition, I won't have to speak every time you ask
10:42:07 11    a question.
10:42:07 12        MR. AINSWORTH:  I will happily give that
10:42:09 13    standing objection.
10:42:10 14        MR. ARGER:  Thank you.
10:42:11 15    BY THE WITNESS:
10:42:13 16        A.    Acting on the advice of my attorney I
10:42:15 17    choose not to answer your question based on the
10:42:17 18    rights afforded me in the Fifth Amendment to the
10:42:20 19    United States Constitution.
10:42:20 20    BY MR. AINSWORTH:
10:42:21 21        Q.    Isn't it true that you observed Chicago
10:42:23 22    police detectives inside Area 2 during the years 1980
10:42:27 23    to 1989 place a typewriter cover over the head of a
10:42:31 24    criminal suspect in an effort to get that suspect to
```

William Pedersen   June 10, 2012

Page 22

```
10:42:34  1    give an involuntary statement?
10:42:37  2        MS. GUNN:  Objection.  Form.  Foundation.
10:42:39  3    Assumes facts not in evidence.
10:42:39  4    BY THE WITNESS:
10:42:41  5        A.    Acting on the advice of my attorney I
10:42:45  6    choose not to answer your question based on the
10:42:46  7    rights afforded me in the Fifth Amendment to the
10:42:50  8    United States Constitution.
10:42:50  9    BY MR. AINSWORTH:
10:42:52 10        Q.    Isn't it true that you heard Detective
10:43:07 11    Pienta say to Aaron Patterson that he was "tired of
10:43:10 12    this bullshit" or words to that effect on April 30th,
10:43:14 13    1986?
10:43:15 14        MS. GUNN:  Hold on.  Objection.
10:43:20 15        I'm sorry.  Can you read the question
10:43:33 16    back?
10:43:33 17            (Record read as requested.)
10:43:34 18        MS. GUNN:  No objection.
10:43:34 19    BY THE WITNESS:
10:43:36 20        A.    Acting on the advice of my attorney I
10:43:38 21    choose not to answer your question based on the
10:43:40 22    rights afforded me in the Fifth Amendment to the
10:43:43 23    United States Constitution.
10:43:45 24
```

William Pedersen   June 10, 2012

Page 23

```
10:43:45  1    BY MR. AINSWORTH:
10:43:46  2        Q.    Isn't it true that you then observed
10:43:49  3    Detective Pienta leave the interrogation room?
10:43:54  4        MS. GUNN:  Objection.  Foundation.  Assumes
10:43:57  5    facts not in evidence.
10:43:57  6    BY THE WITNESS:
10:43:58  7        A.    Acting on the advice of my attorney I
10:44:01  8    choose not to answer your question based on the
10:44:03  9    rights afforded me in the Fifth Amendment to the
10:44:06 10    United States Constitution.
10:44:09 11    BY MR. AINSWORTH:
10:44:10 12        Q.    Isn't it true that when -- that Detective
10:44:14 13    Pienta returned to the room and when he returned he
10:44:16 14    had a gray typewriter cover in his hands?
10:44:19 15        MS. GUNN:  Objection.  Assumes facts not in
10:44:22 16    evidence.
10:44:22 17    BY THE WITNESS:
10:44:23 18        A.    Acting on the advice of my attorney I
10:44:25 19    choose not to answer your question based on the
10:44:27 20    rights afforded me in the Fifth Amendment to the
10:44:30 21    United States Constitution.
10:44:30 22    BY MR. AINSWORTH:
10:44:31 23        Q.    Isn't it true that when Detective Pienta
10:44:33 24    reentered the interrogation room with the gray
```

William Pedersen   June 10, 2012

Page 24

| | |
|---|---|
| 10:44:37 | 1  plastic typewriter cover, Aaron Patterson had his |
| 10:44:41 | 2  hands cuffed behind his back? |
| 10:44:43 | 3      MS. GUNN:  Objection.  Assumes facts not in |
| 10:44:46 | 4  evidence. |
| 10:44:46 | 5  BY THE WITNESS: |
| 10:44:47 | 6      A.    Acting on the advice of my attorney I |
| 10:44:49 | 7  choose not to answer your question based on the |
| 10:44:51 | 8  rights afforded me in the Fifth Amendment to the |
| 10:44:55 | 9  United States Constitution. |
| 10:44:57 | 10  BY MR. AINSWORTH: |
| 10:44:57 | 11      Q.    Isn't it true that when James Pienta |
| 10:45:03 | 12  reentered the room with the gray plastic typewriter |
| 10:45:07 | 13  cover, the door to the interrogation room was closed |
| 10:45:09 | 14  and the lights were turned off? |
| 10:45:11 | 15      MS. GUNN:  Objection.  Assumes facts not in |
| 10:45:15 | 16  evidence. |
| 10:45:15 | 17  BY THE WITNESS: |
| 10:45:16 | 18      A.    Acting on the advice of my attorney I |
| 10:45:18 | 19  choose not to answer your question based on the |
| 10:45:20 | 20  rights afforded me in the Fifth Amendment to the |
| 10:45:22 | 21  United States Constitution. |
| 10:45:23 | 22  BY MR. AINSWORTH: |
| 10:45:23 | 23      Q.    Isn't it true that other Chicago police |
| 10:45:26 | 24  detectives from Area 2 entered the room when |

Merrill Corporation - Chicago
(312) 386-2000                           www.merrillcorp.com/law

---

William Pedersen   June 10, 2012

Page 25

| | |
|---|---|
| 10:45:34 | 1  Detective Pienta entered the room with the gray |
| 10:45:37 | 2  plastic typewriter cover? |
| 10:45:39 | 3      MS. GUNN:  Objection.  Form.  Foundation. |
| 10:45:42 | 4  Assumes facts not in evidence. |
| 10:45:46 | 5  BY THE WITNESS: |
| 10:45:46 | 6      A.    Acting on the advice of my attorney I |
| 10:45:48 | 7  choose not to answer your question based on the |
| 10:45:50 | 8  rights afforded me in the Fifth Amendment to the |
| 10:45:53 | 9  United States Constitution. |
| 10:45:53 | 10  BY MR. AINSWORTH: |
| 10:45:54 | 11      Q.    Isn't it true that defendant Pienta then |
| 10:45:57 | 12  placed the plastic typewriter cover over Aaron |
| 10:46:01 | 13  Patterson's head and held it over his head |
| 10:46:05 | 14  restricting or preventing Aaron Patterson from |
| 10:46:09 | 15  breathing? |
| 10:46:09 | 16      MS. GUNN:  Objection.  Form.  Foundation. |
| 10:46:11 | 17  Assumes facts not in evidence. |
| 10:46:12 | 18  BY THE WITNESS: |
| 10:46:13 | 19      A.    Acting on the advice of my attorney I |
| 10:46:15 | 20  choose not to answer your question based on the |
| 10:46:18 | 21  rights afforded me in the Fifth Amendment to the |
| 10:46:21 | 22  United States Constitution. |
| 10:46:21 | 23  BY MR. AINSWORTH: |
| 10:46:22 | 24      Q.    Isn't it true that while Detective Pienta |

Merrill Corporation - Chicago
(312) 386-2000                           www.merrillcorp.com/law

---

William Pedersen   June 10, 2012

Page 26

| | |
|---|---|
| 10:46:24 | 1  was holding a typewriter cover over Aaron Patterson's |
| 10:46:28 | 2  head, Aaron Patterson began to struggle? |
| 10:46:31 | 3      MS. GUNN:  Objection.  Form.  Assumes facts not |
| 10:46:33 | 4  in evidence. |
| 10:46:33 | 5  BY THE WITNESS: |
| 10:46:34 | 6      A.    Acting on the advice of my attorney I |
| 10:46:36 | 7  choose not to answer your question based on the |
| 10:46:38 | 8  rights afforded me in the Fifth Amendment to the |
| 10:46:42 | 9  United States Constitution. |
| 10:46:42 | 10  BY MR. AINSWORTH: |
| 10:46:44 | 11      Q.    Isn't it true that while the typewriter |
| 10:46:46 | 12  cover was being held over Aaron Patterson's head, you |
| 10:46:50 | 13  struck Aaron Patterson in the chest? |
| 10:46:52 | 14      MS. GUNN:  Objection.  Foundation.  Form. |
| 10:46:55 | 15  Assumes facts not in evidence. |
| 10:46:56 | 16  BY THE WITNESS: |
| 10:46:57 | 17      A.    Acting on the advice of my attorney I |
| 10:46:59 | 18  choose not to answer your question based on the |
| 10:47:02 | 19  rights afforded me in the Fifth Amendment to the |
| 10:47:05 | 20  United States Constitution. |
| 10:47:05 | 21  BY MR. AINSWORTH: |
| 10:47:07 | 22      Q.    Isn't it true that while the typewriter |
| 10:47:09 | 23  cover was held over Aaron Patterson's head you |
| 10:47:12 | 24  observed one or more of Detectives Pienta, Marley, |

Merrill Corporation - Chicago
(312) 386-2000                           www.merrillcorp.com/law

---

William Pedersen   June 10, 2012

Page 27

| | |
|---|---|
| 10:47:18 | 1  McWeeny and Madigan strike Aaron Patterson in the |
| 10:47:29 | 2  chest? |
| 10:47:31 | 3      MS. GUNN:  Objection.  Foundation.  Form. |
| 10:47:31 | 4  Assumes facts not in evidence. |
| 10:47:34 | 5  BY THE WITNESS: |
| 10:47:35 | 6      A.    Acting on the advice of my attorney I |
| 10:47:37 | 7  choose not to answer your question based on the |
| 10:47:39 | 8  rights afforded me in the Fifth Amendment to the |
| 10:47:42 | 9  United States Constitution. |
| 10:47:42 | 10  BY MR. AINSWORTH: |
| 10:47:44 | 11      Q.    Isn't it true that while the typewriter |
| 10:47:47 | 12  cover was being held over Aaron Patterson's head |
| 10:47:51 | 13  preventing him from breathing, defendant Burge struck |
| 10:47:55 | 14  Aaron Patterson in the chest? |
| 10:47:56 | 15      MS. GUNN:  Objection.  Foundation.  Form. |
| 10:47:59 | 16  Assumes facts not in evidence. |
| 10:48:00 | 17  BY THE WITNESS: |
| 10:48:01 | 18      A.    Acting on the advice of my attorney I |
| 10:48:04 | 19  choose not to answer your question based on the |
| 10:48:06 | 20  rights afforded me in the Fifth Amendment to the |
| 10:48:09 | 21  United States Constitution. |
| 10:48:09 | 22  BY MR. AINSWORTH: |
| 10:48:11 | 23      Q.    Isn't it true that on April 30th, 1986 Jon |
| 10:48:16 | 24  Burge was the Commander of Area 2 Violent Crimes? |

Merrill Corporation - Chicago
(312) 386-2000                           www.merrillcorp.com/law

Page 28

| | |
|---|---|
| 10:48:21 1 | A.   Acting on the advice of my attorney I |
| 10:48:24 2 | choose not to answer your question based on the |
| 10:48:27 3 | rights afforded me in the Fifth Amendment to the |
| 10:48:30 4 | United States Constitution. |
| 10:48:30 5 | BY MR. AINSWORTH: |
| 10:48:32 6 | Q.   Isn't it true that the cover was taken off |
| 10:48:34 7 | Aaron Patterson's head at some point? |
| 10:48:39 8 | MS. GUNN:  Objection.  Foundation.  Form. |
| 10:48:41 9 | Assumes facts not in evidence. |
| 10:48:42 10 | BY THE WITNESS: |
| 10:48:43 11 | A.   Acting on the advice -- advice of my |
| 10:48:45 12 | attorney I choose not to answer your question based |
| 10:48:49 13 | on the rights afforded me in the Fifth Amendment to |
| 10:48:52 14 | the United States Constitution. |
| 10:48:53 15 | BY MR. AINSWORTH: |
| 10:48:54 16 | Q.   Isn't it true that after the typewriter |
| 10:48:57 17 | cover was taken off of Aaron Patterson's head he |
| 10:49:02 18 | still refused to implicate himself or anyone else in |
| 10:49:05 19 | the murders of the Sanchezes? |
| 10:49:07 20 | MS. GUNN:  Objection.  Form.  Assumes facts not |
| 10:49:09 21 | in evidence. |
| 10:49:09 22 | BY THE WITNESS: |
| 10:49:10 23 | A.   Acting on the advice of my attorney I |
| 10:49:12 24 | choose not to answer your question based on the |

---

Page 29

| | |
|---|---|
| 10:49:14 1 | rights afforded me in the Fifth Amendment to the |
| 10:49:17 2 | United States Constitution. |
| 10:49:18 3 | BY MR. AINSWORTH: |
| 10:49:20 4 | Q.   Isn't it true that after Aaron Patterson |
| 10:49:22 5 | refused to implicate himself in the Sanchez murders, |
| 10:49:26 6 | the typewriter cover was placed back over his head |
| 10:49:29 7 | preventing him from breathing? |
| 10:49:31 8 | MS. GUNN:  Objection.  Form.  Assumes facts not |
| 10:49:35 9 | in evidence.  And foundation. |
| 10:49:35 10 | BY THE WITNESS: |
| 10:49:37 11 | A.   Acting on the advice of my attorney I |
| 10:49:39 12 | choose not to answer your question based on rights |
| 10:49:42 13 | afforded me in the Fifth Amendment to the United |
| 10:49:45 14 | States Constitution. |
| 10:49:45 15 | BY MR. AINSWORTH: |
| 10:49:46 16 | Q.   Isn't it true that you observed one of |
| 10:49:51 17 | Detectives Burge, Pienta, Madigan, Marley or McWeeny |
| 10:49:58 18 | hold the typewriter cover over Aaron Patterson's head |
| 10:50:03 19 | the second time in a manner that would prevent him |
| 10:50:07 20 | from breathing? |
| 10:50:08 21 | MS. GUNN:  Objection.  Form.  Assumes facts not |
| 10:50:11 22 | in evidence. |
| 10:50:11 23 | BY THE WITNESS: |
| 10:50:11 24 | A.   Acting on the advice of my attorney I |

---

Page 30

| | |
|---|---|
| 10:50:13 1 | choose not to answer your question based on the |
| 10:50:15 2 | rights afforded me in the Fifth Amendment to the |
| 10:50:18 3 | United States Constitution. |
| 10:50:18 4 | BY MR. AINSWORTH: |
| 10:50:18 5 | Q.   Isn't it true that you knew that the |
| 10:50:20 6 | typewriter cover was being held over Aaron |
| 10:50:24 7 | Patterson's head in an effort to get him to give a |
| 10:50:26 8 | false and involuntary statement? |
| 10:50:28 9 | MS. GUNN:  Objection.  Form.  Assumes facts not |
| 10:50:31 10 | in evidence.  Foundation. |
| 10:50:31 11 | BY THE WITNESS: |
| 10:50:32 12 | A.   Acting on the advice of my attorney I |
| 10:50:35 13 | choose not to answer your question based on the |
| 10:50:37 14 | rights afforded me in the Fifth Amendment to the |
| 10:50:41 15 | United States Constitution. |
| 10:50:42 16 | BY MR. AINSWORTH: |
| 10:50:42 17 | Q.   Which of defendants Burge, Pienta, |
| 10:50:45 18 | Madigan, Marley or McWeeny did you see holding the |
| 10:50:48 19 | typewriter cover over Aaron Patterson's head? |
| 10:50:51 20 | MS. GUNN:  Objection.  Form.  Assumes facts not |
| 10:50:54 21 | in evidence. |
| 10:50:54 22 | BY THE WITNESS: |
| 10:50:54 23 | A.   Acting on the advice of my attorney I |
| 10:50:57 24 | choose not to answer your question based on the |

---

Page 31

| | |
|---|---|
| 10:50:59 1 | rights afforded me in the Fifth Amendment to the |
| 10:51:02 2 | United States Constitution. |
| 10:51:03 3 | BY MR. AINSWORTH: |
| 10:51:04 4 | Q.   Isn't it true that you had an opportunity |
| 10:51:06 5 | to prevent Aaron Patterson from having the cover |
| 10:51:11 6 | being placed over his head, but you failed to stop |
| 10:51:13 7 | that from happening? |
| 10:51:14 8 | MS. GUNN:  Objection.  Form.  Assumes facts not |
| 10:51:20 9 | in evidence. |
| 10:51:20 10 | BY THE WITNESS: |
| 10:51:21 11 | A.   Acting on the advice of my attorney I |
| 10:51:23 12 | choose not to answer your question based on the |
| 10:51:25 13 | rights afforded me in the Fifth Amendment to the |
| 10:51:28 14 | United States Constitution. |
| 10:51:29 15 | BY MR. AINSWORTH: |
| 10:51:34 16 | Q.   If there is some reason why you could not |
| 10:51:36 17 | have prevented the plastic typewriter cover from |
| 10:51:40 18 | being held over Aaron Patterson's head, please tell |
| 10:51:43 19 | me what that reason is. |
| 10:51:46 20 | MS. GUNN:  Objection.  Form.  And assumes facts |
| 10:51:49 21 | not in evidence. |
| 10:51:49 22 | BY THE WITNESS: |
| 10:51:50 23 | A.   Acting on the advice of my attorney I |
| 10:51:51 24 | choose not to answer your question based on the |

William Pedersen   June 10, 2012

Page 32

```
10:51:54  1      rights afforded me in the Fifth Amendment to the
10:51:56  2      United States Constitution.
10:51:56  3      BY MR. AINSWORTH:
10:51:59  4          Q.   Isn't it true that you had talked with Jon
10:52:03  5      Burge prior to April 30th, 1986 about using a
10:52:07  6      typewriter cover as a means of suffocating criminal
10:52:15  7      suspects to get them to give false and involuntary
10:52:19  8      statements?
10:52:19  9          MS. GUNN:  Objection.  Foundation.  Form.
10:52:22 10      Assumes facts not in evidence.
10:52:23 11      BY THE WITNESS:
10:52:23 12          A.   Acting on the advice of my attorney I
10:52:25 13      choose not to answer your question based on the
10:52:28 14      rights afforded me in the Fifth Amendment to the
10:52:30 15      United States Constitution.
10:52:31 16      BY MR. AINSWORTH:
10:52:33 17          Q.   Tell me how many times you observed an
10:52:37 18      Area 2 police officer hold a typewriter cover over a
10:52:42 19      suspect's head in an effort to get that suspect to
10:52:45 20      give a false and involuntary statement.
10:52:47 21          MS. GUNN:  Objection.  Form.  Assumes facts not
10:52:51 22      in evidence.  Foundation.
10:52:51 23      BY THE WITNESS:
10:52:53 24          A.   Acting on the advice of my attorney I
```

William Pedersen   June 10, 2012

Page 33

```
10:52:55  1      choose not to answer your question based on the
10:52:57  2      rights afforded me in the Fifth Amendment to the
10:53:01  3      United States Constitution.
10:53:01  4      BY MR. AINSWORTH:
10:53:02  5          Q.   Tell me how many times you observed a
10:53:06  6      Chicago police officer in Area 2 hold a plastic
10:53:10  7      bag -- plastic typewriter cover over a suspect's
10:53:13  8      head.
10:53:13  9          MS. GUNN:  Objection.  Form.  Foundation.
10:53:15 10      Assumes facts not in evidence.
10:53:16 11      BY THE WITNESS:
10:53:17 12          A.   Acting on the advice of my attorney I
10:53:19 13      choose not to answer your question based on the
10:53:22 14      rights afforded me in the Fifth Amendment to the
10:53:24 15      United States Constitution.
10:53:24 16      BY MR. AINSWORTH:
10:53:26 17          Q.   In May of 1986 did you observe the
10:53:29 18      following message etched into the bench that Aaron
10:53:32 19      Patterson had been sitting on:  "Aaron.  4:30.  I lie
10:53:37 20      about murders.  Police threaten me with violence.
10:53:40 21      Slapped and suffocated me with plastic.  No lawyer or
10:53:44 22      dad.  No phone"?
10:53:45 23          MS. GUNN:  Objection.  Form.  Assumes facts not
10:53:48 24      in evidence.
```

William Pedersen   June 10, 2012

Page 34

```
10:53:48  1      BY THE WITNESS:
10:53:48  2          A.   Acting on the advice of my attorney I
10:53:51  3      choose not to answer your question based on the
10:53:53  4      rights afforded me in the Fifth Amendment to the
10:53:56  5      United States Constitution.
10:53:56  6      BY MR. AINSWORTH:
10:53:57  7          Q.   Isn't it true that Aaron Patterson
10:53:59  8      requested a lawyer during his interrogation while you
10:54:03  9      were present?
10:54:04 10          MS. GUNN:  Objection.  Form.  Assumes facts not
10:54:08 11      in evidence.
10:54:08 12      BY THE WITNESS:
10:54:09 13          A.   Acting on the advice of my attorney I
10:54:11 14      choose not to answer your question based on the
10:54:14 15      rights afforded me in the Fifth Amendment to the
10:54:18 16      United States Constitution.
10:54:19 17      BY MR. AINSWORTH:
10:54:19 18          Q.   Isn't it true that Aaron Patterson asked
10:54:22 19      to speak to his father during his interrogation,
10:54:25 20      stating that his father was a Chicago police officer?
10:54:28 21          MS. GUNN:  Objection.  Form.  Assumes facts not
10:54:31 22      in evidence.
10:54:31 23      BY THE WITNESS:
10:54:33 24          A.   Acting on the advice of my attorney I
```

William Pedersen   June 10, 2012

Page 35

```
10:54:35  1      choose not to answer your question based on the
10:54:37  2      rights afforded me in the Fifth Amendment to the
10:54:40  3      United States Constitution.
10:54:40  4      BY MR. AINSWORTH:
10:54:41  5          Q.   Isn't it true that you heard Aaron
10:54:43  6      Patterson ask to speak to his dad, saying that his
10:54:47  7      dad was a Chicago police officer, during his
10:54:51  8      interrogation on April 30th, 1986?
10:54:56  9          A.   Acting on the advice of my attorney I
10:54:58 10      choose not to answer your question based on the
10:55:01 11      rights afforded me in the Fifth Amendment to the
10:55:04 12      United States Constitution.
10:55:07 13      BY MR. AINSWORTH:
10:55:08 14          Q.   Isn't it true that inside Area 2 and prior
10:55:14 15      to April 19th, 1986 you saw Jon Burge with a black
10:55:20 16      box that he used to deliver electrical charges to
10:55:23 17      suspects inside Area 2?
10:55:26 18          MS. GUNN:  Objection.  Form.  Foundation.
10:55:29 19      Assumes facts not in evidence.
10:55:30 20      BY THE WITNESS:
10:55:35 21          A.   Acting on the advice of my attorney I
10:55:37 22      choose not to answer your question based on the
10:55:39 23      rights afforded me in the Fifth Amendment to the
10:55:45 24      United States Constitution.
```

Page 36

```
10:55:46  1      BY MR. AINSWORTH:
10:55:46  2          Q.   Isn't it true that prior to April 19th,
10:55:49  3      1986 you observed Jon Burge deliver an electrical
10:55:52  4      shock to a suspect in an effort to get that suspect
10:55:55  5      to give a false and involuntary statement?
10:55:57  6          MS. GUNN:  Objection.  Form.  Foundation.
10:56:01  7      Assumes facts not in evidence.
10:56:01  8      BY THE WITNESS:
10:56:02  9          A.   Acting on the advice of my attorney I
10:56:04 10      choose not to answer your question based on the
10:56:06 11      rights afforded me in the Fifth Amendment to the
10:56:08 12      United States Constitution.
10:56:09 13      BY MR. AINSWORTH:
10:56:11 14          Q.   Prior to April 30th, 1986 did you talk
10:56:28 15      with -- strike that.
10:56:29 16               Prior to April 30th, 1986 isn't it true
10:56:33 17      that you spoke with Jon Burge about his desire to
10:56:39 18      have Aaron Patterson be implicated in the Sanchez
10:56:43 19      murders?
10:56:43 20          MS. GUNN:  Objection.  Form.  Assumes facts not
10:56:47 21      in evidence.  Foundation.
10:56:47 22      BY THE WITNESS:
10:56:48 23          A.   Acting on the advice of my attorney I
10:56:50 24      choose not to answer your question based on the
```

Page 37

```
10:56:52  1      rights afforded me in the Fifth Amendment to the
10:56:57  2      United States Constitution.
10:56:58  3      BY MR. AINSWORTH:
10:56:59  4          Q.   Isn't it true that in April of 1986 you
10:57:02  5      witnessed Jon Burge threatening Michael Arbuckle in
10:57:07  6      an interrogation room at Area 2?
10:57:11  7          MS. GUNN:  Sorry.  Objection.  Form.  Assumes
10:57:14  8      facts not in evidence.
10:57:14  9      BY THE WITNESS:
10:57:14 10          A.   Acting on the advice of my attorney I
10:57:17 11      choose not to answer your question based on the
10:57:19 12      rights afforded me in the Fifth Amendment to the
10:57:23 13      United States Constitution.
10:57:23 14      BY MR. AINSWORTH:
10:57:24 15          Q.   Isn't it true that you heard Jon Burge
10:57:27 16      threaten Michael Arbuckle that if he didn't implicate
10:57:31 17      Aaron Patterson that Jon Burge would have drug
10:57:34 18      dealers testify falsely against Michael Arbuckle?
10:57:38 19          MS. GUNN:  Objection.  Form.  Assumes facts not
10:57:41 20      in evidence.  Foundation.
10:57:41 21      BY THE WITNESS:
10:57:42 22          A.   Acting on the advice of my attorney I
10:57:45 23      choose not to answer your question based on the
10:57:47 24      rights afforded me in the Fifth Amendment to the
```

Page 38

```
10:57:50  1      United States Constitution.
10:57:50  2      BY MR. AINSWORTH:
10:57:51  3          Q.   Isn't it true that you heard Jon Burge
10:57:55  4      threaten Michael Arbuckle that if he didn't cooperate
10:57:59  5      by implicating Aaron Patterson that Jon Burge would
10:58:04  6      subject Michael Arbuckle to electric shock?
10:58:07  7          MS. GUNN:  Objection.  Form.  Assumes facts not
10:58:12  8      in evidence.  Foundation.
10:58:12  9      BY THE WITNESS:
10:58:13 10          A.   Acting on the advice of my attorney I
10:58:16 11      choose not to answer your question based on the
10:58:18 12      rights afforded me in the Fifth Amendment to the
10:58:28 13      United States Constitution.
10:58:41 14      BY MR. AINSWORTH:
10:58:41 15          Q.   Isn't it true that you saw Jon Burge enter
10:58:44 16      a room which held Aaron Patterson with his revolver?
10:58:51 17          MS. GUNN:  Is that the end of the question?
10:58:53 18      Objection.  Form.  Foundation.  Assumes facts not in
10:58:56 19      evidence.
10:58:56 20      BY THE WITNESS:
10:58:57 21          A.   Acting on the advice of my attorney I
10:59:00 22      choose not to answer your question based on the
10:59:02 23      rights afforded me in the Fifth Amendment to the
10:59:05 24      United States Constitution.
```

Page 39

```
10:59:05  1      BY MR. AINSWORTH:
10:59:06  2          Q.   Isn't it true that you observed defendant
10:59:09  3      Burge enter the room where Aaron Patterson was with
10:59:13  4      his revolver screaming, "You're fucking up?"
10:59:19  5          MS. GUNN:  Objection.  Form.  Assumes facts not
10:59:21  6      in evidence.  Foundation.
10:59:21  7      BY THE WITNESS:
10:59:22  8          A.   Acting on the advice of my attorney I
10:59:24  9      choose not to answer your question based on the
10:59:26 10      rights afforded me in the Fifth Amendment to the
10:59:29 11      United States Constitution.
10:59:30 12      BY MR. AINSWORTH:
10:59:31 13          Q.   Isn't it true that you observed Jon Burge
10:59:33 14      take out his revolver and place it on the table in
10:59:36 15      front of Aaron Patterson?
10:59:38 16          MS. GUNN:  Objection.  Form.  Assumes facts not
10:59:40 17      in evidence.  Foundation.
10:59:40 18      BY THE WITNESS:
10:59:42 19          A.   Acting on the advice of my attorney I
10:59:46 20      choose not to answer your question based on the
10:59:48 21      rights afforded me in the Fifth Amendment to the
10:59:51 22      United States Constitution.
10:59:52 23      BY MR. AINSWORTH:
10:59:53 24          Q.   Isn't it true that you heard Jon Burge
```

William Pedersen   June 10, 2012

Page 40

```
10:59:57  1    tell Aaron Patterson something to the effect of "If
11:00:00  2    you don't do what we tell you, you're gonna get
11:00:04  3    something worse than before.  It will have been a
11:00:07  4    snap compared to what you will get"?
11:00:09  5        MS. GUNN:  Objection.  Form.  Assumes facts not
11:00:13  6    in evidence.  Foundation.
11:00:13  7    BY THE WITNESS:
11:00:15  8        A.    Acting on the advice of my attorney I
11:00:17  9    choose not to answer your question based on the
11:00:20 10    rights afforded me in the Fifth Amendment to the
11:00:24 11    United States Constitution.
11:00:25 12    BY MR. AINSWORTH:
11:00:30 13        Q.    Isn't it true that you observed in May of
11:00:32 14    1986 etched onto the bench where Aaron Patterson had
11:00:39 15    been sitting a statement saying, "Signed false
11:00:42 16    statement to murders.  Punch on statements is the
11:00:44 17    code word.  Aaron."
11:00:46 18        MS. GUNN:  Objection to form.  Assumes facts not
11:00:48 19    in evidence.
11:00:48 20    BY THE WITNESS:
11:00:49 21        A.    Acting on the advice of my attorney I
11:00:51 22    choose not to answer your question based on the
11:00:53 23    rights afforded me in the Fifth Amendment to the
11:00:55 24    United States Constitution.
```

William Pedersen   June 10, 2012

Page 41

```
11:00:56  1    BY MR. AINSWORTH:
11:01:07  2        Q.    Isn't it true that the first time that --
11:01:10  3    well, strike that.
11:01:12  4        Isn't it true that one of your fellow
11:01:15  5    detectives in the interrogation room with Aaron
11:01:18  6    Patterson suggested to Aaron Patterson that he had
11:01:22  7    committed the Sanchez murders along with Eric Caine,
11:01:27  8    Michael Arbuckle and Illya Rowland?
11:01:32  9        MS. GUNN:  Objection.  Form.  Assumes facts not
11:01:35 10    in evidence.  Foundation.  And I think it's vague.
11:01:35 11    BY THE WITNESS:
11:01:40 12        A.    Acting on the advice of my attorney I
11:01:43 13    choose not to answer your question based on the
11:01:45 14    rights afforded me in the Fifth Amendment to the
11:01:48 15    United States Constitution.
11:01:48 16    BY MR. AINSWORTH:
11:02:02 17        Q.    Tell me which facts Aaron Patterson told
11:02:12 18    you before any detective had -- well, strike that.
11:02:23 19        Isn't it true that you reviewed the
11:02:25 20    Sanchez homicide file before interrogating Aaron
11:02:30 21    Patterson?
11:02:30 22        MS. GUNN:  Objection to form.  Assumes facts not
11:02:33 23    in evidence.
11:02:33 24    BY THE WITNESS:
```

William Pedersen   June 10, 2012

Page 42

```
11:02:33  1        A.    Acting on the advice of my attorney I
11:02:35  2    choose not to answer your question based on the
11:02:38  3    rights afforded me in the Fifth Amendment to the
11:02:41  4    United States Constitution.
11:02:46  5    BY MR. AINSWORTH:
11:02:47  6        Q.    Isn't it true that you told Aaron
11:02:49  7    Patterson details of the Sanchez homicides before
11:02:51  8    Aaron Patterson had referenced any of the facts that
11:02:56  9    you told him?
11:02:57 10        MS. GUNN:  Objection.  Form.  Assumes facts not
11:03:00 11    in evidence.  Foundation.
11:03:00 12    BY THE WITNESS:
11:03:02 13        A.    Acting on the advice of my attorney I
11:03:04 14    choose not to answer your question based on the
11:03:06 15    rights afforded me in the Fifth Amendment to the
11:03:08 16    United States Constitution.
11:03:09 17    BY MR. AINSWORTH:
11:03:12 18        Q.    Isn't it true that you or Jon Burge or
11:03:17 19    James Pienta or Raymond Madigan or William Marley or
11:03:23 20    Daniel McWeeny suggested to Aaron Patterson that the
11:03:27 21    time that the Sanchezes were killed would be the time
11:03:31 22    that Aaron Patterson later related in his statement?
11:03:35 23        MS. GUNN:  Objection to form.  Assumes facts not
11:03:37 24    in evidence.
```

William Pedersen   June 10, 2012

Page 43

```
11:03:37  1    BY THE WITNESS:
11:03:38  2        A.    Acting on the advice of my attorney I
11:03:40  3    choose not to answer your question based on the
11:03:43  4    rights afforded me in the Fifth Amendment to the
11:03:46  5    United States Constitution.
11:04:00  6    BY MR. AINSWORTH:
11:04:00  7        Q.    Tell me which facts of the Sanchez murders
11:04:03  8    Aaron Patterson volunteered before he had been told
11:04:07  9    them by an investigator in your presence.
11:04:10 10        MS. GUNN:  Objection.  Form.  Assumes facts not
11:04:14 11    in evidence.
11:04:14 12    BY THE WITNESS:
11:04:14 13        A.    Acting on the advice of my attorney I
11:04:19 14    choose not to answer your question based on the
11:04:21 15    rights afforded me in the Fifth Amendment to the
11:04:24 16    United States Constitution.
11:04:24 17    BY MR. AINSWORTH:
11:04:25 18        Q.    Isn't it true that you went to Mr.
11:04:29 19    Caine's -- Mr. Eric Caine's mother's house to arrest
11:04:33 20    him?
11:04:33 21        A.    Acting on the advice of my attorney I
11:04:35 22    choose not to answer your question based on the
11:04:38 23    rights afforded me in the Fifth Amendment to the
11:04:41 24    United States Constitution.
```

Page 44

```
11:04:44  1        Q.   Isn't it true that Eric Caine was
11:04:46  2   handcuffed while he was inside his home?
11:04:49  3        A.   Acting on the advice of my attorney I
11:04:52  4   choose not to answer your question based on the
11:04:54  5   rights afforded me in the Fifth Amendment to the
11:04:57  6   United States Constitution.
11:04:57  7        Q.   Isn't it true that after Eric Caine was
11:05:01  8   handcuffed with his hands behind his back he began to
11:05:04  9   walk down the stairs in his mother's house?
11:05:07 10        MS. GUNN:  Objection.  Assumes facts not in
11:05:08 11   evidence.
11:05:08 12   BY THE WITNESS:
11:05:09 13        A.   Acting on the advice of my attorney I
11:05:11 14   choose not to answer your question based on the
11:05:13 15   rights afforded me in the Fifth Amendment to the
11:05:16 16   United States Constitution.
11:05:17 17   BY MR. AINSWORTH:
11:05:18 18        Q.   Isn't it true that after Eric Caine began
11:05:21 19   walking down the stairs with his hands cuffed behind
11:05:24 20   his back Detective Pienta pushed Eric Caine from
11:05:29 21   behind?
11:05:31 22        MS. GUNN:  Objection.  Assumes facts not in
11:05:32 23   evidence.
11:05:32 24   BY THE WITNESS:
```

Page 45

```
11:05:33  1        A.   Acting on the advice of my attorney I
11:05:35  2   choose not to answer your question based on the
11:05:37  3   rights afforded me in the Fifth Amendment to the
11:05:40  4   United States Constitution.
11:05:41  5   BY MR. AINSWORTH:
11:05:42  6        Q.   Isn't it true that after Eric Caine was
11:05:44  7   pushed from behind by Detective Pienta Eric Caine
11:05:49  8   lost his balance and fell down the stairs?
11:05:52  9        MS. GUNN:  Objection.  Form.  Assumes facts not
11:05:54 10   in evidence.
11:05:54 11   BY THE WITNESS:
11:05:55 12        A.   Acting on the advice of my attorney I
11:05:59 13   choose not to answer your question based on the
11:06:00 14   rights afforded me in the Fifth Amendment to the
11:06:03 15   United States Constitution.
11:06:03 16   BY MR. AINSWORTH:
11:06:05 17        Q.   Isn't it true that you were at the bottom
11:06:07 18   of the stairs when you saw Detective Pienta push Eric
11:06:09 19   Caine down the stairs?
11:06:11 20        MS. GUNN:  Objection to form.  Assumes facts not
11:06:14 21   in evidence.
11:06:14 22   BY THE WITNESS:
11:06:15 23        A.   Acting on the advice of my attorney I
11:06:17 24   choose not to answer your question based on the
```

Page 46

```
11:06:19  1   rights afforded me in the Fifth Amendment to the
11:06:21  2   United States Constitution.
11:06:22  3   BY MR. AINSWORTH:
11:06:22  4        Q.   Isn't it true that when Eric Caine began
11:06:26  5   to fall down the stairs, you caught him at the bottom
11:06:30  6   of the stairs, thereby preventing him from hitting
11:06:35  7   the ground?
11:06:36  8        MS. GUNN:  Objection.  Form.  Assumes facts not
11:06:41  9   in evidence.
11:06:41 10   BY THE WITNESS:
11:06:42 11        A.   Acting on the advice of my attorney I
11:06:45 12   choose not to answer your question based on the
11:06:46 13   rights afforded me in the Fifth Amendment to the
11:06:49 14   United States Constitution.
11:06:49 15   BY MR. AINSWORTH:
11:06:50 16        Q.   Isn't it true that you heard one of your
11:06:54 17   fellow detectives tell Aaron Patterson that the
11:06:59 18   detectives would have killed him if they had been the
11:07:02 19   ones to arrest him?
11:07:04 20        MS. GUNN:  Objection.  Form.  Assumes facts not
11:07:08 21   in evidence.  Foundation.
11:07:08 22   BY THE WITNESS:
11:07:09 23        A.   Acting on -- acting on the advice of my
11:07:11 24   attorney I choose not to answer your question based
```

Page 47

```
11:07:13  1   on the rights afforded me in the Fifth Amendment to
11:07:17  2   the United States Constitution.
11:07:18  3   BY MR. AINSWORTH:
11:07:19  4        Q.   Isn't it true that you heard Detective
11:07:26  5   Pienta tell Aaron Patterson that if he and his fellow
11:07:28  6   detectives had been the ones to arrest him, they
11:07:32  7   would have killed him?
11:07:33  8        MS. GUNN:  Objection.  Form.  Assumes facts not
11:07:33  9   in evidence.
11:07:33 10   BY THE WITNESS:
11:07:33 11        A.   Acting --
11:07:37 12        MS. GUNN:  Foundation.
11:07:37 13   BY THE WITNESS:
11:07:38 14        A.   I'm sorry.  Acting on the advice of my
11:07:40 15   attorney I choose not to answer your question based
11:07:42 16   on the rights afforded me in the Fifth Amendment to
11:07:46 17   the United States Constitution.
11:07:46 18   BY MR. AINSWORTH:
11:07:49 19        Q.   Isn't it true that you heard Detective
11:07:57 20   Pienta tell Eric Caine that he would have killed Eric
11:08:01 21   Caine but for the fact that Sergeant Wilson knew Eric
11:08:06 22   Caine's mother?
11:08:07 23        MS. GUNN:  Objection.  Form.  Assumes facts not
11:08:10 24   in evidence.
```

Page 48

```
11:08:10  1     BY THE WITNESS:
11:08:11  2        A.   Acting on the advice of my attorney I
11:08:13  3     choose not to answer your question based on the
11:08:16  4     rights afforded me in the Fifth Amendment to the
11:08:18  5     United States Constitution.
11:08:19  6     BY MR. AINSWORTH:
11:08:20  7        Q.   Isn't it true that when you transported
11:08:22  8     Aaron Patterson to Area 2, he was transported with
11:08:28  9     another person by the names of James Hill?
11:08:30 10        MS. GUNN:  Objection.  Form.  Assumes facts not
11:08:32 11     in evidence.
11:08:32 12     BY THE WITNESS:
11:08:34 13        A.   Acting on the advice of my attorney I
11:08:36 14     choose not to answer your question based on the
11:08:39 15     rights afforded me in the Fifth Amendment to the
11:08:42 16     United States Constitution.
11:08:42 17     BY MR. AINSWORTH:
11:08:43 18        Q.   Isn't it true that during the ride into
11:08:46 19     Area 2 in which Aaron Patterson and James Hill were
11:08:51 20     passengers one of the detectives that you were riding
11:08:53 21     with struck James Hill in the face?
11:08:56 22        MS. GUNN:  Objection.  Form.  Assumes facts not
11:08:59 23     in evidence.  Foundation.
11:08:59 24     BY THE WITNESS:
```

Page 49

```
11:09:01  1        A.   Acting on the advice of my attorney I
11:09:03  2     choose not to answer your question based on the
11:09:05  3     rights afforded me in the Fifth Amendment to the
11:09:09  4     United States Constitution.
11:09:09  5     BY MR. AINSWORTH:
11:09:11  6        Q.   Isn't it true that you struck James Hill
11:09:15  7     in the -- in the chest during the ride to Area 2?
11:09:18  8        MS. GUNN:  Objection.  Form.  Assumes facts not
11:09:21  9     in evidence.
11:09:21 10     BY THE WITNESS:
11:09:22 11        A.   Acting on the advice of my attorney I
11:09:25 12     choose not to answer your question based on the
11:09:27 13     rights afforded me in the Fifth Amendment to the
11:09:31 14     United States Constitution.
11:09:32 15     BY MR. AINSWORTH:
11:09:33 16        Q.   Isn't it true that you observed Detective
11:09:36 17     Pienta strike James Hill in the chest during the ride
11:09:38 18     to Area 2 headquarters?
11:09:40 19        MS. GUNN:  Objection.  Form.  Assumes facts not
11:09:43 20     in evidence.
11:09:43 21     BY THE WITNESS:
11:09:44 22        A.   Acting on the advice of my attorney I
11:09:47 23     choose not to answer your question based on the
11:09:49 24     rights afforded me in Fifth Amendment to the United
```

Page 50

```
11:09:54  1     States Constitution.
11:09:54  2     BY MR. AINSWORTH:
11:09:55  3        Q.   Isn't it true that you observed Detective
11:09:58  4     Marley strike James Hill on the ride to Area 2 where
11:10:03  5     Aaron Patterson was also a passenger?
11:10:06  6        MS. GUNN:  Objection.  Form.  Assumes facts not
11:10:08  7     in evidence.
11:10:08  8     BY THE WITNESS:
11:10:09  9        A.   Acting on the advice of my attorney I
11:10:12 10     choose not answer your question based on the rights
11:10:14 11     afforded me in the Fifth Amendment to the United
11:10:17 12     States Constitution.
11:10:17 13     BY MR. AINSWORTH:
11:10:28 14        Q.   Isn't it true that you interrogated Eric
11:10:31 15     Caine on April 30th and May 1st, 1986?
11:10:37 16        A.   Acting on the advice of my attorney I
11:10:39 17     choose not to answer your question based on the
11:10:42 18     rights afforded me in the Fifth Amendment to the
11:10:46 19     United States Constitution.
11:10:52 20        Q.   Isn't it true that you and Detectives
11:10:54 21     Pienta and Marley reached an agreement to use force
11:10:56 22     against Eric Caine to get him to falsely implicate
11:11:00 23     himself in the Sanchez murders?
11:11:04 24        MS. GUNN:  Objection.  Form.  Assumes facts not
```

Page 51

```
11:11:08  1     in evidence.  Foundation.
11:11:08  2     BY THE WITNESS:
11:11:09  3        A.   Acting on the advice of my attorney I
11:11:11  4     choose not to answer your question based on the
11:11:13  5     rights afforded me in the Fifth Amendment to the
11:11:16  6     United States Constitution.
11:11:17  7     BY MR. AINSWORTH:
11:11:17  8        Q.   Isn't it true that you observed Eric Caine
11:11:20  9     being brought into the room where Aaron Patterson was
11:11:23 10     after Aaron Patterson had been beaten by Area 2
11:11:26 11     detectives?
11:11:26 12        MS. GUNN:  Objection.  Form.  Assumes facts not
11:11:30 13     in evidence.
11:11:30 14     BY THE WITNESS:
11:11:34 15        A.   Acting on the advice of my attorney I
11:11:34 16     choose not to answer your question based on the
11:11:37 17     rights afforded me in the Fifth Amendment to the
11:11:40 18     United States Constitution.
11:11:41 19     BY MR. AINSWORTH:
11:11:41 20        Q.   Isn't it true that you knew that Detective
11:11:44 21     Pienta brought Eric Caine into the room where Aaron
11:11:49 22     Patterson was and that -- strike that.
11:11:51 23           Isn't it true that you observed Detective
11:11:55 24     Pienta bring Eric Caine into the room where Aaron
```

William Pedersen   June 10, 2012

Page 52

```
11:11:58  1    Patterson was and that you knew that the only reason
11:12:00  2    Eric Caine was brought into that room was to
11:12:04  3    intimidate Eric Caine into giving a false and
11:12:08  4    involuntary statement?
11:12:10  5         MS. GUNN:  Objection.  Form.  And assumes facts
11:12:17  6    not in evidence.
11:12:17  7    BY THE WITNESS:
11:12:18  8         A.   Acting on the advice of my attorney I
11:12:20  9    choose not to answer your question based on the
11:12:22 10    rights afforded me in the Fifth Amendment to the
11:12:26 11    United States Constitution.
11:12:26 12         MS. GUNN:  Can we hold on one minute?
11:12:29 13         MR. AINSWORTH:  Sure.  Let's take a break.
11:12:30 14         MS. GUNN:  Let's take a break.
11:12:33 15         THE VIDEOGRAPHER:  Off the record.  11:12.
11:23:49 16              (Recess.)
11:23:52 17         MR. AINSWORTH:  Would you read the last question
11:23:55 18    back, please?
11:23:58 19              (Record read as requested.)
11:24:00 20         THE VIDEOGRAPHER:  Back on the record.  11:24.
11:24:09 21    BY MR. AINSWORTH:
11:24:10 22         Q.   Isn't it true that you observed Detectives
11:24:13 23    Marley and Pienta provide Eric Caine with details of
11:24:18 24    the Sanchez homicide before Eric Caine had
```

William Pedersen   June 10, 2012

Page 53

```
11:24:21  1    volunteered any of those details?
11:24:23  2         MS. GUNN:  Objection.  Form.  Assumes facts not
11:24:27  3    in evidence.  Foundation.
11:24:27  4    BY THE WITNESS:
11:24:28  5         A.   Acting on the advice of my attorney I
11:24:30  6    choose not to answer your question based on the
11:24:32  7    rights afforded me in the Fifth Amendment to the
11:24:35  8    United States Constitution.
11:24:36  9    BY MR. AINSWORTH:
11:24:40 10         Q.   Isn't it true that you observed Detective
11:24:43 11    Pienta strike Eric Caine in the chest?
11:24:45 12         MS. GUNN:  Objection.  Form.  Assumes facts not
11:24:48 13    in evidence.
11:24:48 14    BY THE WITNESS:
11:24:49 15         A.   Acting on the advice of my attorney I
11:24:55 16    choose not to answer your question based on the
11:24:57 17    rights afforded me in the Fifth Amendment to the
11:25:00 18    United States Constitution.
11:25:00 19    BY MR. AINSWORTH:
11:25:01 20         Q.   Isn't it true that Detective Pienta told
11:25:03 21    you that he struck Eric Caine in the chest?
11:25:06 22         MS. GUNN:  Objection.  Form.  Assumes facts not
11:25:08 23    in evidence.  Foundation.
11:25:09 24    BY THE WITNESS:
```

William Pedersen   June 10, 2012

Page 54

```
11:25:09  1         A.   Acting on the advice of my attorney I
11:25:12  2    choose not to answer your question based on the
11:25:14  3    rights afforded me in the Fifth Amendment to the
11:25:17  4    United States Constitution.
11:25:17  5    BY MR. AINSWORTH:
11:25:18  6         Q.   Isn't it true that Detective Madigan told
11:25:20  7    you that he struck Eric Caine in the side of his
11:25:24  8    head?
11:25:25  9         MS. GUNN:  Objection.  Form.  Assumes facts not
11:25:29 10    in evidence.  Foundation.
11:25:29 11    BY THE WITNESS:
11:25:30 12         A.   Acting on the advice of my attorney I
11:25:33 13    choose not to answer your question based on the
11:25:35 14    rights afforded me in the Fifth Amendment to the
11:25:37 15    United States Constitution.
11:25:38 16    BY MR. AINSWORTH:
11:25:39 17         Q.   Isn't it true that Detective Madigan told
11:25:41 18    you that he had kicked Eric Caine in the torso during
11:25:45 19    his interrogation?
11:25:46 20         MS. GUNN:  Objection.  Form.  Assumes facts not
11:25:49 21    in evidence.  Foundation.
11:25:49 22    BY THE WITNESS:
11:25:50 23         A.   Acting on the advice of my attorney I
11:25:52 24    choose not to answer your question based on the
```

William Pedersen   June 10, 2012

Page 55

```
11:25:55  1    rights afforded me in the Fifth Amendment to the
11:25:58  2    United States Constitution.
11:25:58  3    BY MR. AINSWORTH:
11:25:59  4         Q.   Isn't it true that you heard Eric Caine
11:26:01  5    cry out in pain when he was in a room --
11:26:05  6    interrogation room with Detective Madigan?
11:26:07  7         MS. GUNN:  Objection.
11:26:09  8              Wait.  I'm sorry.  Can I have that
11:26:20  9    question read back?
11:26:20 10              (Record read as requested.)
11:26:21 11         MS. GUNN:  Objection.  Form.  Assumes facts not
11:26:23 12    in evidence.
11:26:23 13    BY THE WITNESS:
11:26:24 14         A.   Acting on the advice of my attorney I
11:26:25 15    choose not to answer your question based on the
11:26:28 16    rights afforded me in the Fifth Amendment to the
11:26:30 17    United States Constitution.
11:26:30 18    BY MR. AINSWORTH:
11:26:33 19         Q.   Isn't it true that you reached an
11:26:36 20    agreement with Detectives Burge, Pienta and Marley
11:26:40 21    and Madigan to get Eric Caine to give a false and
11:26:47 22    involuntary statement implicating himself in the
11:26:51 23    Sanchez homicides?
11:26:52 24         MS. GUNN:  Objection.  Form.  Assumes facts not
```

Page 56

```
11:26:56  1    in evidence.  Foundation.
11:26:56  2    BY THE WITNESS:
11:26:56  3        A.    Acting on the advice of my attorney I
11:26:58  4    choose not to answer your question based on the
11:27:01  5    rights afforded me in the Fifth Amendment to the
11:27:03  6    United States Constitution.
11:27:03  7    BY MR. AINSWORTH:
11:27:06  8        Q.    Isn't it true that you reached that
11:27:09  9    agreement prior to the time that Eric Caine gave a
11:27:13 10    statement to the State's Attorney on May 1st, 1986?
11:27:18 11        MS. GUNN:  Objection.  Form.  Assumes facts not
11:27:20 12    in evidence.
11:27:20 13    BY THE WITNESS:
11:27:21 14        A.    Acting on the advice of my attorney I
11:27:24 15    choose not to answer your question based on the
11:27:26 16    rights afforded me in the Fifth Amendment to the
11:27:28 17    United States Constitution.
11:27:29 18    BY MR. AINSWORTH:
11:27:57 19        Q.    Isn't it true that you had observed Area 2
11:28:01 20    police detectives strike criminal suspects on the
11:28:06 21    side of their heads in an effort to get them to give
11:28:10 22    involuntary statements prior to April 30th, 1986?
11:28:14 23        MS. GUNN:  Objection.  Form.  Assumes facts not
11:28:17 24    in evidence.  Foundation.
```

Page 57

```
11:28:22  1        MR. ARGER:  I still have a standing objection,
11:28:25  2    right?
11:28:25  3        MR. AINSWORTH:  That's why it's a standing
11:28:27  4    objection.
11:28:27  5        MR. ARGER:  Okay.  Thank you.
11:28:27  6    BY THE WITNESS:
11:28:29  7        A.    Acting on the advice of my attorney I
11:28:30  8    choose not to answer your question based on the
11:28:32  9    rights afforded me in the Fifth Amendment to the
11:28:36 10    United States Constitution.
11:28:37 11    BY MR. AINSWORTH:
11:28:38 12        Q.    Isn't it true that you -- you had observed
11:28:39 13    Detective Madigan strike a suspect in the side of the
11:28:44 14    head prior to April 30th, 1986 in an effort to get
11:28:49 15    that person to give an involuntary statement?
11:28:52 16        MS. GUNN:  Objection.  Form.  Assumes facts not
11:28:57 17    in evidence.  Foundation.
11:28:57 18    BY THE WITNESS:
11:28:59 19        A.    Acting on the advice of my attorney I
11:29:02 20    choose not to answer your question based on the
11:29:04 21    rights afforded me in the Fifth Amendment to the
11:29:07 22    United States Constitution.
11:29:07 23    BY MR. AINSWORTH:
11:29:08 24        Q.    Isn't it true that you were questioned by
```

Page 58

```
11:29:11  1    persons working with the Office of Professional
11:29:14  2    Standards during the 1980s about your work as an Area
11:29:18  3    2 police detective?
11:29:23  4        MS. GUNN:  Objection.  Foundation.
11:29:26  5    BY THE WITNESS:
11:29:27  6        A.    Acting on the advice of my attorney I
11:29:31  7    choose not to answer your question based on the
11:29:33  8    rights afforded me in the Fifth Amendment to the
11:29:36  9    United States Constitution.
11:29:37 10    BY MR. AINSWORTH:
11:29:50 11        Q.    Isn't it true that on April 30th, 1986 and
11:29:56 12    May 1st, 1986 you had no fear that if you violated a
11:30:01 13    suspect's constitutional rights that OPS would
11:30:07 14    discipline you in any way?
11:30:09 15        MS. GUNN:  Objection.  Form.  Assumes facts not
11:30:12 16    in evidence.  Foundation.
11:30:13 17    BY THE WITNESS:
11:30:14 18        A.    Acting on the advice of my attorney I
11:30:16 19    choose not to answer your question based on the
11:30:19 20    rights afforded me in the Fifth Amendment to the
11:30:25 21    United States Constitution.
11:30:25 22    BY MR. AINSWORTH:
11:30:26 23        Q.    On April 30th, 1986 were you aware of OPS
11:30:30 24    disciplining any Chicago police detective at Area 2
```

Page 59

```
11:30:35  1    for ever abusing a criminal suspect?
11:30:39  2        MS. GUNN:  Object to the form.  Assumes facts
11:30:46  3    not in evidence.
11:30:46  4    BY THE WITNESS:
11:30:47  5        A.    Acting on the advice of my attorney I
11:30:50  6    choose not to answer your question based on the
11:30:52  7    rights afforded me in the Fifth Amendment to the
11:30:55  8    United States Constitution.
11:30:56  9    BY MR. AINSWORTH:
11:31:02 10        Q.    Isn't it true that you had discussed with
11:31:08 11    your -- with fellow Area 2 detectives prior to April
11:31:12 12    30th, 1986 the fact that OPS would not discipline any
11:31:18 13    Area 2 police detective for abusing a suspect's
11:31:22 14    constitutional rights?
11:31:23 15        MS. GUNN:  Objection.  Form.  Assumes facts not
11:31:26 16    in evidence.  Foundation.
11:31:26 17    BY THE WITNESS:
11:31:27 18        A.    Acting on the advice of my attorney I
11:31:29 19    choose not to answer your question based on the
11:31:31 20    rights afforded me in the Fifth Amendment to the
11:31:34 21    United States Constitution.
11:31:34 22    BY MR. AINSWORTH:
11:31:52 23        Q.    Isn't is it true that when you were
11:31:56 24    interrogating Eric Caine you knew that he was
```

William Pedersen   June 10, 2012

Page 60

```
11:31:59  1    innocent of the Sanchez murders?
11:32:04  2        A.    Acting on the advice of my attorney I
11:32:06  3    choose not to answer your question based on the
11:32:08  4    rights afforded me in the Fifth Amendment to the
11:32:11  5    United States Constitution.
11:32:13  6        Q.    Isn't it true that when you were
11:32:17  7    interrogating Aaron Patterson you knew that he was
11:32:23  8    innocent of the Sanchez murders?
11:32:28  9        A.    Acting on the advice of my attorney I
11:32:30 10    choose not to answer your question based on the
11:32:33 11    rights afforded me in the Fifth Amendment to the
11:32:35 12    United States Constitution.
11:32:38 13        Q.    Sorry.  I should have asked you this
11:32:39 14    earlier.  But is there any -- without telling me what
11:32:43 15    it is, is there any medical condition or medication
11:32:45 16    that you're taking today that would prevent you from
11:32:48 17    being able to answer questions here truthfully and
11:32:51 18    accurately?
11:32:52 19        MS. GUNN:  You can answer.
11:32:53 20    BY THE WITNESS:
11:32:53 21        A.    No.
11:32:54 22    BY MR. AINSWORTH:
11:32:55 23        Q.    What is the good faith basis, or do you
11:32:58 24    have a good faith basis for asserting your Fifth
```

William Pedersen   June 10, 2012

Page 61

```
11:33:02  1    Amendment rights in response to questions here today?
11:33:04  2        MS. GUNN:  I'm gonna object to that and advise
11:33:06  3    him not to answer.  He's already advised you that
11:33:10  4    he's acting on the advice of his counsel.
11:33:12  5    BY MR. AINSWORTH:
11:33:12  6        Q.    You can answer, sir.
11:33:14  7        MS. GUNN:  I've advised you not to answer.
11:33:18  8        I've advised him not to answer.
11:33:19  9    BY MR. AINSWORTH:
11:33:20 10        Q.    So, you're gonna take your attorney's
11:33:23 11    advice and not answer the question?
11:33:24 12        A.    Correct.
11:33:25 13        Q.    Tell me in your mind the good faith basis
11:33:28 14    that you have to assert your Fifth Amendment rights
11:33:30 15    here today.
11:33:31 16        MS. GUNN:  I believe that's -- asked and
11:33:33 17    answered.  I believe that's the exact same question
11:33:35 18    you just asked.
11:33:36 19        MR. AINSWORTH:  No, the first question was do
11:33:38 20    you have a good faith basis.  Now I'm asking --
11:33:40 21        MS. GUNN:  Okay.  And again I will advise him
11:33:44 22    not to answer as he's already advised that he's
11:33:49 23    acting on the advice of his attorney.
11:33:51 24        MR. AINSWORTH:  So, just to be clear, are you
```

William Pedersen   June 10, 2012

Page 62

```
11:33:51  1    asserting that it's privileged under the
11:33:53  2    attorney-client privilege, or what privilege are you
11:33:54  3    asserting?
11:33:55  4        MS. GUNN:  He's -- he's already answered the
11:33:57  5    question.  He's told you his basis for asserting his
11:34:01  6    Fifth Amendment rights is the advice of his attorney.
11:34:01  7        MR. AINSWORTH:  Well, I'm just -- just tell me.
11:34:03  8    Are you asserting a privilege and directing him not
11:34:06  9    to answer. And if so --
11:34:07 10        MS. GUNN:  I'm directing him not to answer
11:34:11 11    because it's asked and answered.  And he's already
11:34:11 12    given you the basis for assertion of his Fifth
11:34:12 13    Amendment rights, acting on his attorney's advice,
11:34:14 14    and that's privileged.  My conversation with him
11:34:16 15    giving him that advice is privileged.
11:34:18 16        MR. AINSWORTH:  Okay.  So, it's the
11:34:21 17    attorney-client privilege; fair?
11:34:22 18        MS. GUNN:  Fair as I just described it to you.
11:34:26 19        MR. AINSWORTH:  Well, we can agree that -- just
11:34:32 20    because you think any question is asked and answered,
11:34:34 21    I would disagree with that.  That's not a basis to
11:34:36 22    tell somebody not to answer, right?
11:34:39 23        MS. GUNN:  Fair enough.
11:34:40 24        MR. AINSWORTH:  So, you're -- I just want the
```

William Pedersen   June 10, 2012

Page 63

```
11:34:45  1    record to be clear so that if there's any question
11:34:48  2    later, it's the attorney-client privilege that is the
11:34:51  3    basis on which you're telling him -- directing him
11:34:54  4    not to answer?
11:34:54  5        MS. GUNN:  And his Fifth Amendment privilege.
11:34:56  6    BY MR. AINSWORTH:
11:34:56  7        Q.    Okay.  Are you gonna take your attorney's
11:34:58  8    advice and not answer the -- that question?
11:35:00  9        A.    Yes, I'm going to take my attorney's
11:35:02 10    advice.
11:35:03 11        Q.    Tell me the names of every attorney that
11:35:09 12    you've consulted with in order to determine whether
11:35:12 13    or not you have a good faith basis to assert your
11:35:16 14    Fifth Amendment rights at your deposition here today.
11:35:20 15        I don't want to hear what you said about
11:35:24 16    it.  I just want to hear the attorneys that you
11:35:26 17    consulted with, the names of them.
11:35:27 18        MS. GUNN:  You can give him the names of the
11:35:29 19    attorneys.
11:35:29 20    BY THE WITNESS:
11:35:32 21        A.    On this particular case?
11:35:33 22    BY MR. AINSWORTH:
11:35:34 23        Q.    Yes.  Or for today's deposition.
11:35:34 24    BY THE WITNESS:
```

William Pedersen   June 10, 2012

Page 64

```
11:35:43  1        A.   Beth is the only other one that we've
11:35:46  2   talked to, that I've talked to.
11:35:47  3        MS. GUNN:  I can't give you the answer.
11:35:47  4   BY THE WITNESS:
11:35:50  5        A.   Yeah.  Beth.  My apologies.  I don't know
11:35:54  6   her last name.  Same firm.
11:35:56  7   BY MR. AINSWORTH:
11:35:57  8        Q.   Beth Ekl?
11:35:59  9        A.   Yes.
11:36:00 10        Q.   And Christina Gunn?  Christina, that's the
11:36:03 11   woman here today.
11:36:03 12        A.   Yes, that's -- basically that I remember,
11:36:06 13   I believe.  To the best of my knowledge those are the
11:36:08 14   only two that I've spoken to about this particular
11:36:10 15   case.
11:36:10 16        MS. GUNN:  And for the record, that's E-k-l,
11:36:14 17   Ekl.
11:36:23 18   BY MR. AINSWORTH:
11:36:23 19        Q.   Isn't it true that on April 30th, 1986 you
11:36:26 20   knew that Willie Washington had committed other home
11:36:29 21   invasions in the neighborhood of the Sanchez murders?
11:36:35 22        A.   Acting on the advice of my attorney I
11:36:38 23   choose not to answer your question based on the
11:36:40 24   rights afforded me in the Fifth Amendment to the
```

---

William Pedersen   June 10, 2012

Page 65

```
11:36:43  1   United States Constitution.
11:37:12  2        MR. AINSWORTH:  Let's mark this as Exhibit
11:37:15  3   Number 1.
11:37:16  4             (Pedersen Deposition Exhibit 1
11:37:48  5             was marked for identification.)
11:37:48  6             (Document tendered to the
11:37:48  7             witness.)
11:37:50  8   BY MR. AINSWORTH:
11:37:50  9        Q.   Showing you what's been marked as Pedersen
11:37:54 10   Exhibit Number 1, this is a -- I think it's an
11:38:01 11   eight-page document Bates number X72869 through
11:38:08 12   X72877.  And I count nine pages.
11:38:27 13        Sir, I'd ask that you take a look through
11:38:29 14   this document and tell me whether you drafted any
11:38:32 15   portion of this report.
11:38:42 16        A.   Your question is did I type this -- any of
11:38:44 17   this report?
11:38:48 18        Q.   Yes.
11:38:50 19        A.   Acting on the advice of my attorney I
11:38:52 20   choose not to answer your question based on the
11:38:54 21   rights afforded me in the Fifth Amendment to the
11:38:57 22   United States Constitution.
11:38:58 23        Q.   Are you gonna assert your Fifth Amendment
11:39:31 24   rights in response to any question that I ask you
```

---

William Pedersen   June 10, 2012

Page 66

```
11:39:32  1   about this document, Exhibit Number 1?
11:39:35  2        MS. GUNN:  You can answer that.
11:39:35  3   BY THE WITNESS:
11:39:38  4        A.   Yes.
11:39:52  5        MS. GUNN:  Will you be finished with Exhibit 1,
11:39:56  6   then?
11:39:57  7        MR. AINSWORTH:  Yes.
11:40:21  8   BY MR. AINSWORTH:
11:40:22  9        Q.   Tell me any discussions that you had with
11:40:25 10   Peter Troy in regards to the Sanchez murders.
11:40:27 11        MS. GUNN:  Objection.  Form.  Assumes facts not
11:40:29 12   in evidence.
11:40:29 13   BY THE WITNESS:
11:40:31 14        A.   Acting on the advice of my attorney I
11:40:32 15   choose not to answer your question based on the
11:40:34 16   rights afforded me in the Fifth Amendment to the
11:40:37 17   United States Constitution.
11:40:38 18   BY MR. AINSWORTH:
11:40:39 19        Q.   Tell me any -- the substance of any
11:40:42 20   discussions you had with Kip Owen.
11:40:46 21        MS. GUNN:  Objection.  Form.  Assumes facts not
11:40:48 22   in evidence.
11:40:48 23   BY THE WITNESS:
11:40:49 24        A.   Acting on the advice of my attorney I
```

---

William Pedersen   June 10, 2012

Page 67

```
11:40:50  1   choose not to answer your question based on the
11:40:52  2   rights afforded me in the Fifth Amendment to the
11:40:56  3   United States Constitution.
11:40:56  4   BY MR. AINSWORTH:
11:41:03  5        Q.   You've been convicted of a felony,
11:41:15  6   correct?
11:41:16  7        MS. GUNN:  You can answer that.
11:41:16  8   BY THE WITNESS:
11:41:18  9        A.   Yes.
11:41:18 10   BY MR. AINSWORTH:
11:41:19 11        Q.   And that was back in 1992, is that right?
11:41:23 12        A.   Yes.
11:41:23 13        Q.   And what was the crime of which you were
11:41:28 14   convicted?
11:41:30 15        A.   Theft of public records.
11:41:33 16        Q.   Have you ever been convicted of a crime
11:41:38 17   apart from that time?
11:41:39 18        MS. GUNN:  You can answer.
11:41:40 19   BY THE WITNESS:
11:41:40 20        A.   Not that I can remember.
11:41:42 21   BY MR. AINSWORTH:
11:41:42 22        Q.   If you intend to testify or if there's a
11:41:52 23   possibility you'll testify about subjects about
11:41:57 24   whether you're married and whether you have kids at
```

William Pedersen   June 10, 2012

Page 68

```
11:41:59  1    trial, I'm going to ask you those questions now.  And
11:42:02  2    you can choose to answer them or not answer them as
11:42:05  3    you see fit.  But if you don't answer them now, then
11:42:08  4    I'll ask the Court to bar you from testifying about
11:42:12  5    those topics at trial.  So, I'll ask the questions
11:42:16  6    and you and your attorney can make a determination as
11:42:19  7    we go step by step.
11:42:21  8         Are you married, sir?
11:42:22  9         MS. GUNN:  You can answer that.
11:42:22 10    BY THE WITNESS:
11:42:25 11         A.    Yes.
11:42:25 12    BY MR. AINSWORTH:
11:42:26 13         Q.    Do you have any children?
11:42:26 14         A.    Yes.
11:42:26 15         Q.    How many children do you have?
11:42:28 16         A.    Three.
11:42:29 17         Q.    If you have any adult children, I'd ask
11:42:34 18    that you tell me what their occupations are.
11:42:37 19         MS. GUNN:  You can answer.
11:42:37 20    BY THE WITNESS:
11:42:41 21         A.    I have a daughter who is a teacher.  I
11:42:45 22    have a son that's -- is a heating and
11:42:53 23    air-conditioning technician.  And I have a son that's
11:42:56 24    a building engineer.
```

Merrill Corporation - Chicago
(312) 386-2000                              www.merrillcorp.com/law

---

William Pedersen   June 10, 2012

Page 69

```
11:42:58  1    BY MR. AINSWORTH:
11:42:58  2         Q.    And what is your wife's occupation?
11:43:02  3         A.    Retired.
11:43:04  4         Q.    And what was her occupation when she was
11:43:06  5    working?
11:43:13  6         MS. GUNN:  You can answer.
11:43:13  7    BY THE WITNESS:
11:43:15  8         A.    She was an insurance agent.
11:43:18  9    BY MR. AINSWORTH:
11:43:19 10         Q.    Do you have any family members who are
11:43:21 11    police officers?
11:43:23 12         A.    No.
11:43:24 13         Q.    When was the last time you saw Jon Burge?
11:43:37 14         A.    Acting on the advice of my attorney I
11:43:38 15    choose not to answer your question based on the
11:43:41 16    rights afforded me in the Fifth Amendment to the
11:43:43 17    United States Constitution.
11:43:45 18         Q.    Tell me the last time you saw or spoke to
11:43:48 19    either James Pienta, Raymond Madigan, William Marley
11:43:52 20    or Dan McWeeny.
11:43:57 21         A.    Acting on the advice of my attorney I
11:43:58 22    choose not to answer your question based on the
11:44:00 23    rights afforded me in the Fifth Amendment to the
11:44:03 24    United States Constitution.
```

Merrill Corporation - Chicago
(312) 386-2000                              www.merrillcorp.com/law

---

William Pedersen   June 10, 2012

Page 70

```
11:44:06  1         Q.    If you know of any evidence or witnesses
11:44:08  2    who could conclusively establish that you did not in
11:44:12  3    fact violate either Aaron Patterson's or Eric Caine's
11:44:18  4    constitutional rights, please tell me the -- the
11:44:20  5    evidence that you're referring to or the names of the
11:44:23  6    witnesses that you would rely upon.
11:44:24  7         MS. GUNN:  Object to form.
11:44:25  8    BY THE WITNESS:
11:44:26  9         A.    Acting on the advice of my attorney I
11:44:30 10    choose not to answer your question based on the
11:44:32 11    rights afforded me in the Fifth Amendment to the
11:44:35 12    United States Constitution.
11:44:38 13    BY MR. AINSWORTH:
11:44:43 14         Q.    How many times have you been deposed?
11:44:44 15         MS. GUNN:  You can answer that.
11:44:44 16    BY THE WITNESS:
11:44:48 17         A.    I believe just one other time.
11:44:53 18    BY MR. AINSWORTH:
11:44:54 19         Q.    And that was in the Patterson case?
11:44:58 20         MS. GUNN:  You can answer that.
11:44:58 21    BY THE WITNESS:
11:45:00 22         A.    Yes.
11:45:02 23    BY MR. AINSWORTH:
11:45:07 24         Q.    Tell me the name of every Area 2 criminal
```

Merrill Corporation - Chicago
(312) 386-2000                              www.merrillcorp.com/law

---

William Pedersen   June 10, 2012

Page 71

```
11:45:13  1    suspect who has alleged that you or one of the
11:45:16  2    detectives you were working with used force against
11:45:19  3    them.
11:45:19  4         MS. GUNN:  Objection.  Form.  Assumes facts not
11:45:22  5    in evidence.  Foundation.
11:45:24  6    BY THE WITNESS:
11:45:25  7         A.    Acting on the advice of my attorney I
11:45:27  8    choose not to answer your question based on the
11:45:29  9    rights afforded me in the Fifth Amendment to the
11:45:32 10    United States Constitution.
11:45:33 11    BY MR. AINSWORTH:
11:45:34 12         Q.    Tell me the name of every criminal suspect
11:45:40 13    in Area 2 who alleged that you or one of the
11:45:44 14    detectives you were working with had used force
11:45:46 15    against them during their interrogation.
11:45:49 16         MS. GUNN:  Objection.  Form.  Assumes facts not
11:45:52 17    in evidence.  Foundation.
11:45:52 18    BY THE WITNESS:
11:45:53 19         A.    Acting on the advice of my attorney I
11:45:55 20    choose not to answer your question based on the
11:45:57 21    rights afforded me in the Fifth Amendment to the
11:46:00 22    United States Constitution.
11:46:03 23    BY MR. AINSWORTH:
11:46:10 24         Q.    Isn't it true that Detective Madigan told
```

Merrill Corporation - Chicago
(312) 386-2000                              www.merrillcorp.com/law

William Pedersen   June 10, 2012

Page 72

11:46:12  1    you that he used force against Eric Caine in an

11:46:15  2    effort to get him to give a false and involuntary

11:46:21  3    statement?

11:46:21  4         MS. GUNN:  Objection to form.  Assumes facts not

11:46:24  5    in evidence.  Foundation.

11:46:24  6    BY THE WITNESS:

11:46:25  7         A.   Acting on the advice of my attorney I

11:46:26  8    choose not to answer your question based on the

11:46:28  9    rights afforded me in the Fifth Amendment to the

11:46:31 10    United States Constitution.

11:46:31 11    BY MR. AINSWORTH:

11:46:46 12         Q.   Tell me every document that you prepared

11:46:49 13    during the Sanchez homicide investigation.

11:46:52 14         MS. GUNN:  Objection.  Form.  Assumes facts not

11:46:55 15    in evidence.

11:46:55 16    BY THE WITNESS:

11:46:56 17         A.   Acting on the advice of my attorney I

11:46:58 18    choose not to answer your question based on the

11:47:00 19    rights afforded me in the Fifth Amendment to the

11:47:06 20    United States Constitution.

11:47:08 21         MR. AINSWORTH:  I have no further questions for

11:47:10 22    this witness.

11:47:12 23         MR. ARGER:  I do not have any questions at this

11:47:14 24    time.  Thank you.

William Pedersen   June 10, 2012

Page 73

11:47:14  1         MS. GUNN:  I have no questions.

11:47:16  2         MR. AINSWORTH:  Signature?

11:47:19  3         MS. GUNN:  We will reserve.

11:47:21  4         THE VIDEOGRAPHER:  This concludes our video

11:47:23  5    deposition.  The time is 11:48.

          6         (Whereupon, the deposition was

          7          concluded at 11:48 a.m., this

          8          day, July 10, 2012.)

          9

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

William Pedersen   June 10, 2012

Page 74

     1    STATE OF ILLINOIS  )
                            )
     2    COUNTY OF GRUNDY  )

     3         The within and foregoing deposition of the

     4    aforementioned witness was taken before MARGARET A.

     5    BACHNER, CSR and Notary Public, at the place, date

     6    and time aforementioned.

     7         There were present during the taking of

     8    the deposition the previously named counsel.

     9         The said witness was first duly sworn and

    10    was then examined upon oral interrogatories; the

    11    questions and answers were taken down in shorthand by

    12    the undersigned, acting as stenographer and Notary

    13    Public; and the within and foregoing is a true,

    14    accurate and complete record of all of the questions

    15    asked of and answers made by the aforementioned

    16    witness, at the time and place hereinabove referred

    17    to.

    18         The signature of the witness was not

    19    waived, and the deposition was submitted, pursuant to

    20    Rules 30(e) and 32(d) of the Rules of Civil Procedure

    21    for the United States District Court, to the deponent

    22    per copy of the attached letter.

    23

    24

William Pedersen   June 10, 2012

Page 75

     1         The undersigned is not interested in the

     2    within case, nor of kin or counsel to any of the

     3    parties.

     4         Witness my official signature and seal as

     5    Notary Public in and for Grundy County, Illinois, on

     6    this 13th day of July, A.D. 2012.

     7

     8

     9                    _____
                          Margaret A. Bachner, CSR, RMR, CRR
    10                    Illinois CSR No. 84-1481
                          Notary Public, Grundy County, Illinois
    11                    My Commission Expires June 24, 2014
                          311 South Wacker Drive, Suite 300
    12                    Chicago, Illinois  60606
                          Phone:  (312) 386-2000
    13

    14

    15

    16

    17

    18

    19

    20

    21

    22

    23

    24

William Pedersen   June 10, 2012

Page 76

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3    ERIC CAINE,                      )
                                       )
 4              Plaintiff,             )
                                       )
 5       -vs-                          )  Case No. 11-CV-08996
                                       )
 6    JON BURGE, JAMES PIENTA,         )
      RAYMOND MADIGAN, WILLIAM         )
 7    MARLEY, WILLIAM PEDERSEN,        )
      DANIEL MCWEENY, CITY OF          )
 8    CHICAGO and UNIDENTIFIED         )
      EMPLOYEES OF THE CITY OF         )
 9    CHICAGO,                         )
                                       )
10              Defendants.            )

11              I, WILLIAM L. PEDERSEN, hereby certify that

12    I have read the foregoing transcript of my deposition

13    given at the time and place aforesaid, consisting of

14    Pages 1 to 76, inclusive, and I do again subscribe

15    and make oath that the same is a true, correct, and

16    complete transcript of my deposition so given as

17    aforesaid, and includes changes, if any, made by me.

18

19           _____
                     WILLIAM L. PEDERSEN
20

21    SUBSCRIBED AND SWORN TO before me this

22    _____ day of _____ 2012.

23

24    _____
              Notary Public
```

---

William Pedersen   June 10, 2012

```
                          Merrill Corporation
                     311 South Wacker Drive, Suite 300
                          Chicago, Illinois  60606
                       (312)386-2000   (800)868-0061


                                              July 13, 2012

Mr. William L. Pederson
c/o Ms. Christina S. Gunn
The Sotos Law Firm, P.C.
550 East Devon, Suite 150
Itasca, Illinois  60143

             Re:  Eric Caine v. Jon Burge, et al.
             Deponent:  William L. Pedersen
             Date Taken:  July 10, 2012

Dear Mr. Pedersen:

The above-referenced deposition has been transcribed and is ready for
review, pursuant to the Rules of Court.

Please contact our office at your earliest convenience for an
appointment to review the deposition transcript, or you may contact
counsel for a copy of the transcript for your review.

Upon failure to comply within 30 days, we shall forward an
appropriate affidavit of noncompliance to counsel without further
notice.

                              Sincerely yours,



                              _____
                              Merrill Corporation


cc:  Mr. Russell Ainsworth                          1401-201442
```

---

William Pedersen   June 10, 2012

```
 1         CASE:    Eric Caine v. Jon Burge, et al.
      DATE TAKEN:   July 10, 2012
 2      DEPONENT:   William L. Pedersen

 3    PAGE        LINE

 4    CHANGE _____

 5    REASON FOR CHANGE

 6    PAGE        LINE

 7    CHANGE

 8    REASON FOR CHANGE

 9    PAGE        LINE

10    CHANGE

11    REASON FOR CHANGE

12    PAGE        LINE

13    CHANGE

14    REASON FOR CHANGE

15    PAGE        LINE

16    CHANGE

17    REASON FOR CHANGE

18    PAGE        LINE

19    CHANGE

20    REASON FOR CHANGE

21

22    (SIGNED) _____

23    (DATE) _____

24    Reporter:  Margaret A. Bachner
```

**In The Matter Of:**

*Eric Caine*

*vs.*

*Jon Burge*

_____

## William Marley

### May 29, 2012

_____

**MERRILL CORPORATION**
LegaLink, Inc.
311 South Wacker Drive
Suite 300
Chicago, IL 60606
Phone: 312.386.2000
Fax: 312.386.2275

EXHIBIT
12

---

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
ERIC CAINE,                        )
                                   )
            Plaintiff,             )
                                   )
     -vs-                          ) No. 1:11-cv-08996
                                   )
JON BURGE, JAMES PIENTA,           )
RAYMOND MADIGAN, WILLIAM           )
MARLEY, WILLIAM PEDERSON,          )
DANIEL McWEENY, CITY OF            )
CHICAGO and UNIDENTIFIED           )
EMPLOYEES OF THE CITY OF           )
CHICAGO,                           )
                                   )
            Defendants.            )
```

The videotaped deposition of WILLIAM MARLEY, called by the plaintiff for examination, pursuant to notice and pursuant to the Rules of Civil Procedure for the United States District Courts, taken before Lydia B. Pinkawa, CSR and Notary Public in and for the County of Cook and State of Illinois, on May 29, 2012, at 10:26 a.m., at Suite 100, 312 North May Street, Chicago, Illinois.

---

```
 1   PRESENT:
 2       LOEVY & LOEVY
         By MR. RUSSELL AINSWORTH
 3       312 North May Street, Suite 100
         Chicago, Illinois  60607
 4       (312) 243-5900
         russell@loevy.com
 5
            appeared on behalf of plaintiff,
 6
         THE SOTOS LAW FIRM, P.C.
 7       By MS. ELIZABETH A. EKL
         550 East Devon, Suite 150
 8       Itasca, Illinois  60143
         (630) 735-3300
 9       eekl@jsotoslaw.com
10          appeared on behalf of defendants Jon Burge,
         James Pienta, Raymond Madigan, William
11       Marley, William Pederson and Daniel McWeeny,
12       DYKEMA GOSSETT, PLLC
         By MR. HARRY N. ARGER
13       10 South Wacker Drive, Suite 2300
         Chicago, Illinois  60606
14       (312) 627-2102
         harger@dykema.com
15
            appeared on behalf of defendant City of
16       Chicago.
17
18   ALSO PRESENT:
19       Mr. John Shelton, videographer
20
21
22
23
24
```

---

```
 1                I N D E X
 2   WITNESS
 3       William Marley
 4   EXAMINED BY                              PAGE
 5       Mr. Ainsworth                          5
 6   EXHIBITS MARKED                          PAGE
 7       Exhibit 1 (interview of R. Burnette)    28
 8       Exhibit 2 (GPR Bates X72960)            39
 9       Exhibit 3 (GPR Bates X72982-86)         43
10       Exhibit 4 (GPR Bates X72962-63)         94
11       Exhibit 5 (GPR Bates X72961)            97
12       Exhibit 6 (GPR Bates X72930-38)        120
13
14
15
16
17
18
19
20
21
22
23
24
```

1    MR. SHELTON:  Good morning.  We are going on the
2    video record at 10:26 a.m.  Today's date is May 29,
3    2012.  My name is John Shelton and I'm a legal
4    videographer in association with Merrill Legal
5    Solutions.  The court reporter today is Lydia
6    Pinkawa.  Here begins the videotaped deposition of
7    Mr. William J. Marley, taken in the matter of Eric
8    Caine vs. Jon Burge, et al., pending -- bearing case
9    number 11-CV-8996 in the U.S. District Court for the
10   Northern District of Illinois, Eastern Division.
11           The deposition is being held at 312
12   North May Street, Chicago, Illinois.  Will counsel
13   please identify yourselves for the record and state
14   whom you represent, starting with the noticing party.
15       MR. AINSWORTH:  Russell Ainsworth on behalf of
16   the plaintiff.
17       MR. ARGER:  Harry Arger for the city of Chicago.
18       MS. EKL:  Elizabeth Ekl on behalf of the
19   individually named police officer defendants
20   including the deponent, William Marley.  I'd also
21   like to put on the record our agreement that the
22   videotape of this deposition here today, my
23   understanding of the agreement is that it will not be
24   disseminated for 30 days.  Defendants have expressed

1    an intent to file a motion for a protective order
2    before the Court seeking to have, or seeking to bar
3    the video from being disseminated.  And plaintiff has
4    agreed that once that motion is filed, they will not
5    disseminate the videotape until or unless there's a
6    motion by the Court allowing them to do so.  Is that
7    correct?
8        MR. AINSWORTH:  Just that plaintiff will agree
9    not to disseminate the videotape for 30 days.  If
10   the defendants bring a motion to prevent the
11   dissemination within that time period, plaintiff will
12   agree not to -- will further agree not to disseminate
13   that videotape to anyone until that motion has been
14   ruled upon by the Court.
15           Would you swear the witness, please?
16               WILLIAM MARLEY,
17   having been first duly sworn, was examined and
18   testified as follows:
19               DIRECT EXAMINATION
20   BY MR. AINSWORTH:
21       Q   Would you please state and spell your name
22   for the record?
23       A   William J. Marley, M-a-r-l-e-y.
24       Q   Are there any medical conditions or other

1    conditions that would prevent you from truthfully and
2    accurately being able to testify here today?
3        A   No.
4        Q   You were a detective at Area 2 in 1986, is
5    that correct?
6        A   I was.
7        Q   And while you were a detective at Area 2,
8    would you please tell me the names of the partners
9    that you had between the years 1980 and 1989?
10       A   Acting on the advice of my attorney, I choose
11   not to answer your questions based on the rights
12   afforded me in the Fifth Amendment to the United
13   States Constitution.
14       MS. EKL:  And will you stipulate that if he
15       were to just state I assert my Fifth Amendment
16       rights, that he would be adopting in full that
17       statement that he just read?
18       MR. AINSWORTH:  I will so stipulate.
19       MS. EKL:  Thank you.
20   BY MR. AINSWORTH:
21       Q   Sir, have you ever had a person allege that
22   you used physical force against them, to your
23   knowledge, inside Area 2?
24       A   I assert my Fifth Amendment rights to the

1    Constitution.
2        Q   How many times have you been deposed?
3        A   I assert my Fifth Amendment rights to the
4    Constitution.
5        Q   How many times have you testified at a motion
6    to suppress a statement where the allegation was that
7    you had used physical force against a criminal
8    suspect?
9        MS. EKL:  Objection, assumes facts not in
10       evidence.
11   BY MR. AINSWORTH:
12       Q   You can answer.
13       A   I assert my Fifth Amendment rights to the
14   Constitution.
15       Q   Did you review any documents in preparation
16   for this deposition?
17       A   I assert my Fifth Amendment rights to the
18   Constitution.
19       Q   Isn't it true, sir, that while you were a
20   detective at Area 2, you used physical force against
21   criminal suspects?
22       A   I assert my Fifth Amendment rights to the
23   Constitution.
24       Q   Isn't it true, sir, that while you were a

William Marley   May 29, 2012

Page 8

```
 1   detective at Area 2 between the years 1980 and 1989,
 2   you observed other detectives use physical force
 3   against criminal suspects?
 4        A   I assert my Fifth Amendment rights to the
 5   Constitution.
 6        Q   Isn't it true, sir, that while you were a
 7   detective at Area 2 between the years 1980 to 1989,
 8   you used physical force against criminal suspects in
 9   order to get them to provide a statement?
10        A   I assert my Fifth Amendment rights to the
11   Constitution.
12        Q   Isn't it true, sir, that you observed other
13   detectives at Area 2 between the years 1980 and 1989
14   use physical force against criminal suspects in order
15   to get those criminal suspects to give a statement
16   involuntarily?
17        MR. ARGER:   Can I just make an objection?  To
18     the extent you're asking him questions that
19     you're going to use on a Monell claim against the
20     city and try to use his assertion of the Fifth
21     Amendment rights against the city, we'd object in
22     that regard and I'd ask for a standing objection
23     to those kinds of questions today.
24        MR. AINSWORTH:   I will grant you such a
```

William Marley   May 29, 2012

Page 9

```
 1   standing objection.
 2        MS. EKL:   And I object to form, foundation to
 3     that particular question.
 4        MR. AINSWORTH:   I don't know if he answered.
 5        Q   Would you mind answering it again, sir?
 6        A   I don't know what you said.  I didn't --
 7        Q   I'll re-ask the question.  Isn't it true,
 8   sir, that while you were an Area 2 detective between
 9   the years 1980 and 1989, you observed other
10   detectives use physical force against criminal
11   suspects with the intent of getting those suspects to
12   involuntarily provide a statement?
13        MS. EKL:   Objection, form, foundation.
14        MR. ARGER:   And my same standing objection,
15     which this will be the last time I say it because
16     we have an agreement.
17        A   I assert my Fifth Amendment rights under the
18   Constitution.
19   BY MR. AINSWORTH:
20        Q   Isn't it true, sir, that you were one of the
21   investigating detectives in the Sanchez homicides?
22        A   I assert my Fifth Amendment rights under the
23   Constitution.
24        Q   Who was the lead detective in the Sanchez
```

William Marley   May 29, 2012

Page 10

```
 1   homicide investigation?
 2        A   I assert my Fifth Amendment rights under the
 3   Constitution.
 4        Q   Was there more than one detective who was the
 5   lead or who were the lead detectives in the Sanchez
 6   homicide investigation?
 7        A   I assert my Fifth Amendment rights under the
 8   Constitution.
 9        Q   Was James Pienta the lead detective in the
10   Sanchez homicide investigation?
11        A   I assert my Fifth Amendment rights under the
12   Constitution.
13        Q   Was Jon Burge the lead detective in the
14   Sanchez homicide investigation?
15        A   I assert my Fifth Amendment rights under the
16   Constitution.
17        Q   Was Bill Pederson the lead detective in the
18   Sanchez homicide investigation?
19        A   I assert my Fifth Amendment rights under the
20   Constitution.
21        Q   When did you retire from the Chicago police
22   department?
23        A   I assert my Fifth Amendment rights under the
24   Constitution.
```

William Marley   May 29, 2012

Page 11

```
 1        Q   Have you had any employment since your
 2   retirement from the Chicago police department?
 3        A   Yes.
 4        Q   What employment did you have?
 5        A   I work for the Cook County state's attorney's
 6   office.
 7        Q   How long have you worked for the Cook County
 8   state's attorney's office?
 9        A   18 years.
10        Q   When did you start working for the Cook
11   County state's attorney's office?
12        A   August of 1993.
13        Q   Do you work full-time for the Cook County
14   state's attorney's office currently?
15        A   I do.
16        Q   How long have you been working full-time for
17   the Cook County state's attorney's office?
18        THE WITNESS:   He just asked the same thing.
19        MS. EKL:   You can answer.
20        A   18 years.
21   BY MR. AINSWORTH:
22        Q   What do you do for the Cook County state's
23   attorney's office?
24        A   I'm an investigator in the narcotics section.
```

```
 1      Q   What roles have you had within the Cook
 2  County state's attorney's office since your
 3  employment there in August of 1993?
 4          MS. EKL:  Objection to the form of the
 5      question, specifically to roles.
 6          MR. ARGER:  Object to the relevance.
 7      A   I don't understand the question.
 8  BY MR. AINSWORTH:
 9      Q   What have you done in the Cook County state's
10  attorney's office since you began in 1993?  Would you
11  please just tell us the various positions you've
12  held?
13      A   I'm an investigator presently in the
14  narcotics section.  I've been there about ten years.
15  Prior to that, I was in the general office.
16          MR. AINSWORTH:  Off the record for a second.
17          MR. SHELTON:  Going off the record at 10:34.
18          (Discussion off the record.)
19          MR. SHELTON:  Back on the record, 10:36.
20  BY MR. AINSWORTH:
21      Q   You're refusing to pin the microphone to your
22  lapel so that we can hear you clearly, is that
23  correct, sir?
24          MS. EKL:  I'm going to object to this,
```

```
 1  Russell.  The videographer indicated off the
 2  record that he is picking up the sound.  The fact
 3  that Mr. Marley wishes not to have that on there
 4  is not a refusal so that the sound can't be
 5  heard.  We asked whether or not the sound could
 6  be heard without it being placed on his body and
 7  it's been indicated to us that it can be heard in
 8  that manner, so there's no reason to ask him that
 9  question under oath in a deposition.  The
10  videographer has indicated that the sound is
11  being picked up.
12          MR. AINSWORTH:  No, the videographer said it
13  could be better and it would be better if he had
14  the lapel -- had the clip on his lapel.  So
15  please don't misrepresent what has been stated.
16      Q   Sir --
17          MS. EKL:  He said it can be heard, it could
18  be better.  But you're not entitled to the most
19  clear sound possible.  You're entitled to record
20  it.  It's being recorded, it's being picked up.
21  That's what the videographer indicated and I have
22  not misstated it.  If you want to have the
23  videographer put that on the record, that's fine
24  with me.  He's indicated he can pick up the sound
```

```
 1      and we've now fixed it so that perhaps it's even
 2      better than it was before.
 3  BY MR. AINSWORTH:
 4      Q   Please answer the question.
 5      A   Repeat it.
 6      Q   You are refusing to put the microphone on
 7  your lapel, is that correct?
 8      A   Correct.
 9      Q   Why?
10      A   I don't want to.
11      Q   Why don't you want to?
12          MS. Ekl:  Objection, asked and answered.  He
13      answered the question.  He answered the question,
14      Russell.  Move on.
15  BY MR. AINSWORTH:
16      Q   Why don't you want to, sir?
17          MS. EKL:  I'm going to instruct him not to
18      answer.  You're just harassing him at this point
19      in time.  He's sitting here, he's being recorded
20      by both a court reporter and by the videographer.
21      I'd ask the videographer, now that this
22      microphone has been placed within a foot of his
23      mouth, whether or not you're able to pick him up
24      better than you were before.
```

```
 1          MR. SHELTON:  I don't know.  It's hard to
 2      judge.
 3          MR. AINSWORTH:  And the videographer, ideally
 4      you would have the microphone on his lapel,
 5      correct?
 6          MR. SHELTON:  Yes, sir.
 7          MS. EKL:  It's not on his lapel.  It's less
 8      than a foot from his mouth.  Let's move on.
 9          MR. AINSWORTH:  If the question has been
10      asked and answered as to why he doesn't want to
11      have the microphone on his lapel, please tell me,
12      Ms. Ekl, what is the answer?
13          MS. EKL:  He answered that he does not want
14      it on his lapel.
15          MR. AINSWORTH:  And I asked him why.
16      Q   Why don't you want it on your lapel?
17          MS. EKL:  And now you're harassing him.  He
18      doesn't want something attached to his body.
19      He's being recorded.  That's what you're entitled
20      to.  Let's move on.
21          MR. AINSWORTH:  Why doesn't he want something
22      attached to his body?  If there's a medical
23      condition, if there's something, then certainly I
24      want to know that.
```

```
 1          MS. EKL:  You're not entitled to know that.
 2          MR. AINSWORTH:  But I'm trying to make,
 3    simply make a record of the deposition.  I would
 4    like the audio to be the best that it can be.
 5          MS. EKL:  We don't even know.  Perhaps now
 6    it's just as clear as it would have been if it's
 7    on his lapel now that we've attached it to
 8    something and it's less than a foot from his
 9    mouth.  If you'd like to call the judge and have
10    the judge decide whether or not this is going to
11    be attached to his body, I don't think the judge
12    would appreciate it, but go ahead.
13          He's not going to attach it to his body.
14    We've made accommodations.  It's being recorded
15    and for all we know, it's being recorded just as
16    clearly as if it was attached to his body.  Let's
17    move on.
18    BY MR. AINSWORTH:
19      Q   Are you refusing to answer the question why
20    don't you want to have the microphone attached to
21    your lapel?
22      A   That is my answer.  I don't want to.
23      Q   But why don't you want to, sir?
24          MS. EKL:  Objection, asked and answered.
```

```
 1          Let's move on.
 2    BY MR. AINSWORTH:
 3      Q   Why don't you want to?
 4      A   I don't want to.
 5      Q   I'm asking you why, sir.  Why don't you want
 6    to?
 7          MS. EKL:  Okay, Russell, I object to you
 8    completing --
 9          MR. ARGER:  Let me ask a question.
10    Mr. Videographer, can you hear me through the
11    microphone?
12          MR. SHELTON:  I can hear you now, sir.
13          MR. ARGER:  Well, he's closer to the
14    microphone than I am and if you can hear me, you
15    should be able to hear him.
16          MR. AINSWORTH:  Why not put the microphone on
17    the lapel?
18          MR. ARGER:  Because he doesn't want to.
19    BY MR. AINSWORTH:
20      Q   Why don't you want to, sir?
21          MS. EKL:  He's already told you he doesn't
22    want to.  That's his answer.  You can ask him ten
23    more times.  His answer is I don't want to.
24
```

```
 1    BY MR. AINSWORTH:
 2      Q   I understand that you don't want to wear the
 3    microphone on your lapel.  My question is why don't
 4    you want to?
 5          MS. EKL:  He doesn't have to have a specific
 6    reason.  He does not want to.  He's told you
 7    that.
 8    BY MR. AINSWORTH:
 9      Q   Please answer the question, sir.
10      A   I already did.  I don't want to.
11      Q   Do you know why you don't want to wear it on
12    your lapel?
13          MS. EKL:  Russell, come on.  Let's get
14    moving.
15      A   I just don't want to.
16    BY MR. AINSWORTH:
17      Q   Is there a medical --
18      A   And I won't.
19      Q   Without telling me what the medical condition
20    is, is there a medical condition that prevents you
21    from being able to comfortably wear a microphone on
22    your lapel?
23          MS. EKL:  I'm going to object at this point
24    in time and I'm going to instruct him not to
```

```
 1    answer.  If there's a medical condition
 2    that's prevent -- it quite frankly has nothing to
 3    do with this deposition.  It's harassing.
 4    BY MR. AINSWORTH:
 5      Q   Will you answer the question, sir?
 6      A   Repeat it.
 7      Q   Without telling me what the medical condition
 8    is, is there some kind of medical condition that
 9    makes it uncomfortable for you to have a microphone
10    attached to your lapel?
11      A   No.
12          MS. EKL:  Can I just ask a question?  Can you
13    see on the videotape the microphone in comparison
14    to his face?  Is that visible or can you at least
15    take a shot so we can see as we're sitting here
16    arguing, can you move the videotape so we can
17    have a shot of how close this microphone is to
18    his mouth?
19          MR. AINSWORTH:  I agree.
20          MR. SHELTON:  It's demonstrated on the screen
21    that I'm turning over.
22          MS. EKL:  I don't know if you -- I can't
23    from here tell whether or not you can see it in
24    that --
```

1     MR. AINSWORTH:  It's in the shot.

2     MR. ARGER:  I can see it.

3     MS. EKL:  Okay.

4  BY MR. AINSWORTH:

5     Q   Is there something other than a medical

6  condition that makes it uncomfortable for you to put

7  a lapel -- put a microphone on your lapel?

8     MS. EKL:  I object to this whole line of

9     questioning.  It's completely harassing.  Move

10    on.

11    A   No.

12 BY MR. AINSWORTH:

13    Q   Have you ever had a microphone pinned to your

14 lapel before?

15    MS. EKL:  Objection.  It's completely

16    harassing and it has absolutely no relevance to

17    anything.

18    A   Yes.

19 BY MR. AINSWORTH:

20    Q   Before this deposition began, when I asked

21 you to have the -- if you could put the microphone

22 attached to your lapel, did you say tough shit?

23    A   Possibly.

24    Q   Do you recall one way or the other whether

1  you said tough shit to me?

2     MS. EKL:  Objection, asked and answered.

3     A   It's a possibility.

4  BY MR. AINSWORTH:

5     Q   That's a phrase that you use, tough shit?

6     A   That's a phrase you're using.

7     Q   I'm asking you, sir, is that a phrase that

8  you use, tough shit?

9     MS. EKL:  Again, objection, it's incomplete,

10    the statement is incomplete, out of context and

11    harassing.

12    A   Possibly.

13 BY MR. AINSWORTH:

14    Q   Well, have you used that phrase before, tough

15 shit?

16    A   I assert my Fifth Amendment rights under the

17 Constitution not to answer the question.

18    Q   While you were a detective at Area 2, did you

19 use the phrase tough shit?

20    A   I assert my Fifth Amendment rights under the

21 Constitution.

22    Q   I'm going to give you one final chance and

23 you can either answer or not, but will you tell us

24 why you don't want to have the microphone on the

1  lapel?

2     MS. EKL:  Objection, asked and answered about

3     six times, harassing.

4     A   No.

5     MR. AINSWORTH:  I'm trying to see if there's

6     something taller that we can use as his mic

7     stand.

8     MR. SHELTON:  It sounds okay.  It sounds

9     better than it did when it was on the table.

10 BY MR. AINSWORTH:

11    Q   What are your current assignments as an

12 investigator in the narcotics division?

13    A   I don't know that I can tell you that.

14 They're confidential.

15    Q   Well, generally speaking, what are your

16 assignments within the state's attorney's office?

17    MS. EKL:  I'm going to object to the form.

18    Just so that he can answer fully, I don't know

19    that he understands if your meaning of

20    assignments is the same as his.  So perhaps if

21    you explain what you mean by that, he might be

22    able to answer more fully.  I don't know if

23    you're asking specific questions about cases that

24    he's working on obviously he would have

1     concerns about breaches in kind of

2     confidentiality or if you're just talking about

3     generally in terms of what his duties are as

4     opposed to actual assignments to cases.

5  BY MR. AINSWORTH:

6     Q   Generally, sir, I'm asking about what your

7  duties are in general terms without mentioning

8  specific cases.

9     A   Principally transporting witnesses to and

10 from court, to and from prison, interviewing defense

11 witnesses.  I also work in the evidence vault.

12    Q   What do you do in the evidence vault?

13    A   Take in and give out evidence for trials.

14    Q   And is that the vault that's at 26th and

15 California?

16    A   It is.

17    Q   Do you ever audio record your interviews of

18 witnesses?

19    A   Never.

20    Q   Why not?

21    A   We just don't.  I don't know if there's a

22 rule or not.  We don't.

23    Q   Did you interview with any attorneys to

24 become a Cook County state's attorney investigator?

1    A    No.

2    Q    Did you talk to anybody about getting the job

3  within the Cook County state's attorney's office?

4         MS. EKL:  Objection, foundation.

5    A    I'm not sure I understand what you mean.

6  BY MR. AINSWORTH:

7    Q    How did you go about getting your job with

8  the Cook County state's attorney's office?

9    A    I put in a written application.

10   Q    Did you speak to anyone prior to putting in

11 that application about a job with the Cook County

12 state's attorney's office?

13   A    No.

14   Q    Did you know any investigators with the Cook

15 County state's attorney's office prior to the time

16 that you applied?

17   A    I did.

18   Q    Who did you know?

19   A    Several.

20   Q    What are their names?

21   A    George Mays, Clarence Travis.

22   Q    Do you know Anthony Katalinic?

23   A    I'm sorry, I didn't hear you.

24   Q    Did you know Anthony Katalinic?

1    A    Yes.

2    Q    Did you know him to be a Cook County state's

3  attorney's investigator at the time that you applied?

4    A    I believe he worked for the sheriff.

5    Q    What are the names of the other investigators

6  that you knew at the time that you applied?

7         MS. EKL:  Just to be clear, are you referring

8         back to your initial question about investigators

9         at the Cook County state's attorney's office at

10        the time that he applied?

11        MR. AINSWORTH:  Yes.

12   A    I don't believe I knew any others.

13   Q    So Mays and Travis were the only ones you

14 knew?

15   A    To the best of my recollection, yes.

16   Q    When you started with the Cook County state's

17 attorney's office as an investigator were there any

18 other investigators, to your knowledge, who had been

19 detectives at Area 2?

20   A    Not when I started, no.

21   Q    After you started, were there any detectives

22 from Area 2 who joined the Cook County state's

23 attorney's office as an investigator?

24   A    Yes.

1    Q    Who was that?

2    A    Joe Danzel, Dan McWeeny.  Offhand, that's the

3  only ones I can think of.

4    Q    Did you speak with Officer Danzel about

5  becoming an investigator at the Cook County state's

6  attorney's office prior to the time he joined?

7    A    I don't know.

8    Q    Did you speak with Dan McWeeny about becoming

9  an investigator at the Cook County state's attorney's

10 office before he joined?

11   A    I don't know.

12   Q    Did you, when you were starting out as an

13 investigator with the Cook County state's attorney's

14 office, did you work with any of the prosecutors who

15 prosecuted cases that you worked on while you were a

16 detective at Area 2?

17   A    Probably, but I couldn't be specific about

18 it.

19   Q    Did you work with Jack Hines while you were

20 an investigator with the Cook County state's

21 attorney's --

22   A    No, I didn't.

23   Q    Cook County state's attorney's office?

24   A    No.

1    Q    Did you work with Dan -- sorry, Kevin Durkin?

2    A    No.

3    Q    And just to be clear, did you work with Kevin

4  Durkin during the time that you were an investigator

5  for the Cook County state's attorney's office?

6    A    I don't believe so.

7    Q    Have there been any complaints against you by

8  civilians during the time that you've been a Cook

9  County state's attorney investigator?

10   A    I assert my Fifth Amendment rights to the

11 Constitution not to answer the question.

12   Q    Have there been any complaints against you by

13 other co-workers within the Cook County state's

14 attorney's office during the time that you've been an

15 investigator?

16        MS. EKL:  Objection, form, vague.

17   A    I assert my Fifth Amendment rights under the

18 Constitution not to answer the question.

19 BY MR. AINSWORTH:

20   Q    Have you been accused of using physical force

21 during the time that you've been a Cook County

22 state's attorney investigator?

23   A    I assert my Fifth Amendment rights under the

24 Constitution not to answer the question.

William Marley    May 29, 2012

Page 28

1     Q   Isn't it true, sir, that you have used
2  physical force against witnesses while acting as a
3  Cook County state's attorney investigator in order to
4  get witnesses to provide involuntary statements?
5     A   I assert my Fifth Amendment rights to the
6  Constitution not to answer the question.
7     Q   Isn't it true, sir, you have observed other
8  investigators for the Cook County state's attorney's
9  office use force against witnesses in order to get
10  them to provide involuntary statements?
11     A   I assert my Fifth Amendment rights to the
12  Constitution not to answer the question.
13     Q   Tell me every step that you took in order to
14  investigate the Sanchez murders.
15        MS. EKL:  Objection, form, vague.
16     A   I assert my Fifth Amendment rights under the
17  Constitution not to answer the question.
18        MR. AINSWORTH:  Let's mark this as Exhibit 1.
19        (Document marked as Marley Deposition
20          Exhibit 1 for identification.)
21     Q   Showing you what has been marked as Exhibit
22  No. 1, did you prepare this document, sir?  It's a
23  one page document Bates numbered X73001.
24     A   I assert my Fifth Amendment rights under the

William Marley    May 29, 2012

Page 29

1  Constitution not to answer the question.
2     Q   Tell me every person that you interviewed
3  during the course of your investigation of the
4  Sanchez homicides.
5        MS. EKL:  Objection, assumes facts not in
6        evidence.
7     A   I assert my Fifth Amendment rights under the
8  Constitution not to answer the question.
9  BY MR. AINSWORTH:
10     Q   Did you question a person named Willie
11  Washington during the course of your investigation of
12  the Sanchez homicides?
13     A   I assert my Fifth Amendment rights under the
14  Constitution not to answer the question.
15     Q   Did you question a Wayne Washington during
16  the course of your investigation into the Sanchez
17  homicides?
18     A   I assert my Fifth Amendment rights under the
19  Constitution not to answer the question.
20     Q   Did Willie Washington tell you that he was
21  inside the Sanchez home at the time that they were
22  killed?
23        MS. EKL:  Objection, foundation, assumes
24        facts not in evidence.

William Marley    May 29, 2012

Page 30

1     A   I assert my Fifth Amendment rights under the
2  Constitution not to answer the question.
3  BY MR. AINSWORTH:
4     Q   Isn't it true that Willie Washington told you
5  that he committed the Sanchez murders?
6        MS. EKL:  Objection, foundation, assumes
7        facts not in evidence.
8     A   I assert my Fifth Amendment rights under the
9  Constitution not to answer the question.
10  BY MR. AINSWORTH:
11     Q   Isn't it true that you documented the fact
12  that Willie Washington had told you that he committed
13  the Sanchez murders?
14        MS. EKL:  Objection, foundation, assumes
15        facts not in evidence.
16     A   I assert my Fifth Amendment rights under the
17  Constitution not to answer the question.
18  BY MR. AINSWORTH:
19     Q   Isn't it true that you withheld the
20  documentation of the fact that Willie Washington had
21  told you that he committed the Sanchez murders from
22  the prosecution and from Eric Caine's defense team?
23        MS. EKL:  Objection, form, foundation,
24        assumes facts not in evidence.

William Marley    May 29, 2012

Page 31

1     A   I assert my Fifth Amendment rights under the
2  Constitution not to answer the question.
3  BY MR. AINSWORTH:
4     Q   What did you do with your notes when you were
5  a detective back in April of 1986 and May of 1986?
6        MS. EKL:  Objection, assumes facts not in
7        evidence.
8     A   I assert my Fifth Amendment rights under the
9  Constitution not to answer the question.
10  BY MR. AINSWORTH:
11     Q   Isn't it true that you would keep a running
12  street file of notes and documents related to
13  investigation during the time period April of 1986 to
14  May of 1986?
15        MS. EKL:  Objection, form, foundation.
16     A   I assert my Fifth Amendment rights under the
17  Constitution not to answer the question.
18        MR. ARGER:  Just so it's clear, the Monell,
19        that covers the street file stuff, too, our
20        standing objection.
21        MR. AINSWORTH:  I'll give you a standing
22        objection on that as well.
23        MR. ARGER:  Thank you.
24

BY MR. AINSWORTH:

1    Q   Isn't it true, sir, that you would withhold
2    exculpatory information that was contained in your
3    street file from the official reports that were
4    submitted to the department and available for
5    subpoena by either the prosecution or the defense?
6         MS. EKL:  Objection, form, foundation,
7    assumes facts not in evidence.
8    A   I assert my Fifth Amendment rights under the
9    Constitution not to answer the question.
10   BY MR. AINSWORTH:
11   Q   Did you ever interview a person by the name
12   of Mack Ray?
13   A   I assert my Fifth Amendment rights under the
14   Constitution not to answer the question.
15   Q   Isn't it true, sir, that Mack Ray informed
16   you that Wayne Washington had told him that Willie
17   Washington committed the Sanchez murders while Wayne
18   Washington acted as a lookout?
19        MS. EKL:  Objection, form, foundation,
20   assumes facts not in evidence.
21   A   I assert my Fifth Amendment rights under the
22   Constitution not to answer the question.

BY MR. AINSWORTH:

1    Q   Isn't it true, sir, that Wayne Washing --
2    strike that.  Isn't it true, sir, that you documented
3    the fact that Mack Ray had told you that Willie
4    Washington had told -- had committed the Sanchez
5    murders while Wayne Washington acted as a look out
6    and that you withheld that documentation from the
7    prosecution and from Eric Caine's defense team?
8         MS. EKL:  Objection, form, foundation,
9    assumes facts not in evidence.
10   A   I assert my Fifth Amendment rights under the
11   Constitution not to answer the question.
12   BY MR. AINSWORTH:
13   Q   Isn't it true, sir, that you were present
14   when Mack Ray told another police officer in your
15   presence that Willie Washington had committed the
16   Sanchez murders and that Wayne Washington had told
17   him that information along with the fact that Wayne
18   Washington had acted as a lookout while the murders
19   were committed?
20        MS. EKL:  Objection, form, foundation,
21   assumes facts not in evidence.
22   A   I assert my Fifth Amendment rights to the
23   Constitution not to answer the question.

BY MR. AINSWORTH:

1    Q   Isn't it true that you withheld documentation
2    about the fact that Wayne Washington had told Mack
3    Ray that Willie Washington had committed the Sanchez
4    murders while Wayne acted as a lookout?
5         MS. EKL:  Objection, form, foundation,
6    assumes facts not in evidence.
7    A   I assert my Fifth Amendment rights under the
8    Constitution not to answer the question.
9    BY MR. AINSWORTH:
10   Q   And isn't it true that you withheld that
11   documentation about Mack Ray's statement from the
12   prosecution and from Eric Caine's defense team?
13        MS. EKL:  Objection, form, foundation,
14   assumes facts not in evidence.
15   A   I assert my Fifth Amendment rights under the
16   Constitution not to answer the question.
17   BY MR. AINSWORTH:
18   Q   Did you play any role in investigating the
19   Sanchez murders after May 15th of 1986?
20   A   Would you repeat the question?
21   Q   Did you play any role in investigating the
22   Sanchez murders after May 15th of 1986?
23        MS. EKL:  Objection, form.

1    A   I assert my Fifth Amendment rights under the
2    Constitution not to answer the question.
3    BY MR. AINSWORTH:
4    Q   Did you question a person by the name of
5    Charles Tellery during the course of your
6    investigation of the Sanchez murders?
7    A   I assert my Fifth Amendment rights under the
8    Constitution not to answer the question.
9    Q   Isn't it true that Charles Tellery told you
10   that he had seen Willie Washington leaving the scene
11   of the Sanchezes' house?
12        MS. EKL:  Objection, foundation, assumes
13   facts not in evidence.
14   A   I assert my Fifth Amendment rights under the
15   Constitution not to answer the question.
16   BY MR. AINSWORTH:
17   Q   Did you question a person by the name of
18   James Hill?
19        MS. EKL:  Objection, foundation.
20   A   I assert my Fifth Amendment rights under the
21   Constitution not to answer the question.
22   BY MR. AINSWORTH:
23   Q   Isn't it true that while you were driving to
24   Area 2 -- well, strike that.  Isn't it true that

## Page 36

William Marley    May 29, 2012

Page 36

```
1   James Hill told you that Detective Pienta had slapped
2   him while he was riding in the back of a police car
3   with Aaron Patterson?
4        MS. EKL:  Objection, foundation, assumes
5        facts not in evidence.
6        A   I assert my Fifth Amendment rights under the
7   Constitution not to answer the question.
8   BY MR. AINSWORTH:
9        Q   Isn't it true that you documented the fact
10  that Detective Pienta had slapped James Hill while
11  driving to Area 2?
12       MS. EKL:  Objection, form, foundation,
13       assumes facts not in evidence.
14       A   I assert my Fifth Amendment rights under the
15  Constitution not to answer the question.
16  BY MR. AINSWORTH:
17       Q   That was a poor question.  Isn't it true that
18  you documented the fact that Detective Pienta slapped
19  James Hill in the back seat of a police car in which
20  Aaron Patterson was riding?
21       MS. EKL:  Objection, foundation, assumes
22       facts not in evidence.
23       A   I assert my Fifth Amendment rights to the
24  Constitution not to answer the question.
```

## Page 37

William Marley    May 29, 2012

Page 37

```
1   BY MR. AINSWORTH:
2        Q   Isn't it true that the -- that you withheld
3   documentation of the fact that Detective Pienta had
4   slapped James Hill while riding in the back seat of a
5   police car in which Aaron Patterson was also riding
6   and that you had withheld that documentation from
7   both the prosecution and from Eric Caine's defense
8   team?
9        MS. EKL:  Objection, form, foundation,
10       assumes facts not in evidence.
11       A   I assert my Fifth Amendment rights to the
12  Constitution not to answer the question.
13  BY MR. AINSWORTH:
14       Q   What follow-up investigation, if any, did you
15  conduct in regard to the information contained on
16  Exhibit No. 1?
17       A   I assert my Fifth Amendment rights to the
18  Constitution not to answer the question.
19       Q   What steps did you take to either confirm or
20  deny that Willie Washington did it?
21       MS. EKL:  Objection, form.
22       A   I assert my Fifth Amendment rights to the
23  Constitution not to answer the question.
24
```

## Page 38

William Marley    May 29, 2012

Page 38

```
1   BY MR. AINSWORTH:
2        Q   Are you going to assert your Fifth Amendment
3   rights in response to any question asked about
4   Exhibit No. 1?
5        A   Yes.
6        Q   How did Richard Burnette come to be at
7   Area 2?
8        MS. EKL:  Objection, form, foundation,
9        assumes facts not in evidence.
10       A   I assert my Fifth Amendment rights under the
11  Constitution not to answer the question.
12  BY MR. AINSWORTH:
13       Q   Was Richard Burnette handcuffed and
14  questioned?
15       MS. EKL:  Objection, assumes facts not in
16       evidence, foundation.
17       A   I assert my Fifth Amendment rights under the
18  Constitution not to answer the question.
19  BY MR. AINSWORTH:
20       Q   Was Pienta your partner on April 23, 1986?
21       A   I assert my Fifth Amendment rights under the
22  Constitution not to answer the question.
23       Q   How long had Detective Pienta been your
24  partner as of April 23, 1986?
```

## Page 39

William Marley    May 29, 2012

Page 39

```
1        MS. EKL:  Objection, assumes facts not in
2        evidence.
3        A   I assert my Fifth Amendment rights under the
4   Constitution not to answer the question.
5   BY MR. AINSWORTH:
6        Q   In April and May of 1986 how often were you
7   partnered with Detective Pienta?
8        MS. EKL:  Objection, assumes facts not in
9        evidence.
10       A   I assert my Fifth Amendment rights under the
11  Constitution not to answer the question.
12       MR. AINSWORTH:  Let's mark this as Exhibit
13       No. 2.
14       (Document marked as Marley Deposition
15       Exhibit 2 for identification.)
16       MR. AINSWORTH:  For the record, Exhibit No. 2
17  is a one page document Bates numbered X72960.
18       Q   Sir, is that your signature on the bottom
19  left-hand corner of this document?
20       A   I assert my Fifth Amendment rights to the
21  Constitution not to answer the question.
22       Q   Did you create this document that's marked as
23  Exhibit No. 2?
24       A   I assert my Fifth Amendment rights not to
```

William Marley   May 29, 2012

Page 40

1   answer the question.
2       Q   What did you mean by the phrase he is a guest
3   assisting in the investigation?
4           MS. EKL:  Objection, form, assumes facts not
5       in evidence.
6       A   I assert my Fifth Amendment rights to the
7   Constitution not to answer the question.
8   BY MR. AINSWORTH:
9       Q   Isn't it true that Eric Caine told you that
10  he had no role in the Sanchez homicides?
11          MS. EKL:  Objection, foundation.
12      A   I assert my Fifth Amendment rights to the
13  Constitution not to answer the question.
14  BY MR. AINSWORTH:
15      Q   Isn't it true that Eric Caine told you had
16  no knowledge whatsoever of how the Sanchez murders
17  were committed?
18          MS. EKL:  Objection, foundation.
19      A   I assert my Fifth Amendment rights under the
20  Constitution not to answer the question.
21  BY MR. AINSWORTH:
22      Q   Isn't it true that on April 31, 1986, Eric
23  Caine told you that he had no knowledge whatsoever of
24  the Sanchez homicides?

---

William Marley   May 29, 2012

Page 41

1           MS. EKL:  Objection, foundation as to time.
2       A   I assert my Fifth Amendment rights to the
3   Constitution not to answer the question.
4   BY MR. AINSWORTH:
5       Q   Tell me every conversation you had with
6   assistant state's attorney Kip Owens during the
7   course of the Sanchez murder investigation.
8           MS. EKL:  Objection, form, foundation,
9       assumes facts not in evidence.
10      A   I assert my Fifth Amendment rights under the
11  Constitution not to answer the question.
12  BY MR. AINSWORTH:
13      Q   Since you became an investigator with the
14  state's attorney's office in 1993, have you worked
15  with Kip Owens?
16      A   I assert my Fifth Amendment rights to the
17  Constitution not to answer the question.
18      Q   Did you take handwritten notes of your
19  questioning of Eric Caine?
20          MS. EKL:  Objection, assumes facts not in
21      evidence.
22      A   I assert my Fifth Amendment rights under the
23  Constitution not to answer the question.
24

---

William Marley   May 29, 2012

Page 42

1   BY MR. AINSWORTH:
2       Q   Isn't it true that you include in your notes
3   the fact that Eric Caine had told you that he had no
4   knowledge of the Sanchez murders whatsoever?
5           MS. EKL:  Objection, assumes facts not in
6       evidence.
7       A   I assert my Fifth Amendment rights under the
8   Constitution not to answer the question.
9   BY MR. AINSWORTH:
10      Q   How did you find out that Aaron Patterson had
11  the clap and crabs?
12          MS. EKL:  Objection, assumes facts not in
13      evidence, foundation.
14      A   I assert my Fifth Amendment rights under the
15  Constitution not to answer the question.
16  BY MR. AINSWORTH:
17      Q   Why did you say that Aaron Patterson had been
18  fed and watered?
19          MS. EKL:  Objection, assumes facts not in
20      evidence.
21      A   I assert my Fifth Amendment rights under the
22  Constitution not to answer the question.
23  BY MR. AINSWORTH:
24      Q   What did you mean that Aaron Patterson had

---

William Marley   May 29, 2012

Page 43

1   been fed and watered?
2           MS. EKL:  Objection, asked and answered,
3       assumes facts not in evidence.
4       A   I assert my Fifth Amendment rights to the
5   Constitution not to answer the question.
6   BY MR. AINSWORTH:
7       Q   Does fed and watering -- well, strike that.
8   I'm standing up simply because I have a bad back,
9   sir, not to be either rude or to be in any way, I
10  don't know, annoying.  So I'll withdraw the last
11  question and start anew.
12          Is the phrase fed and watered a code within
13  Area 2 for having used physical force against a
14  criminal suspect?
15          MS. EKL:  Objection, foundation, assumes
16      facts not in evidence.
17      A   I assert my Fifth Amendment rights to the
18  Constitution not to answer the question.
19          MR. AINSWORTH:  Let's mark this as Exhibit
20      No. 3.
21          (Documents marked as Marley Deposition Group
22          Exhibit 3 for identification.)
23      Q   Showing you what's been marked as Exhibit
24  No. 3, this is a five page document Bates numbered

1   X72982 through 986.  Sir, did you -- is that your
2   signature on the bottom left-hand corner?
3       A   I decline to answer under the rights
4   guaranteed under the Fifth Amendment of the
5   Constitution.
6       Q   Did you create the first page of this
7   document that's been marked as Exhibit No. 3?
8       A   I assert my Fifth Amendment rights under the
9   Constitution not to answer the question.
10      Q   What does this document mean where it says
11  the prints of the 12 known members of the tribe?
12          MS. EKL:  Objection, form, foundation.
13      A   I assert my Fifth Amendment rights under
14  the -- guaranteed under the Constitution not to
15  answer the question.
16  BY MR. AINSWORTH:
17      Q   Why did you request that these 12 individuals
18  have their prints run?
19          MS. EKL:  Objection, foundation, assumes
20      facts not in evidence.
21      A   I assert my rights under the Fifth Amendment
22  not to answer the question.
23  BY MR. AINSWORTH:
24      Q   Are you going to respond by asserting your

1   Fifth Amendment rights to any question asked of you
2   about Exhibit No. 3?
3       A   Yes.
4       Q   Did you transport Aaron Patterson from a
5   police station on 103rd Street to Area 2 on April 30,
6   1986?
7       A   I assert my Fifth Amendment rights under the
8   Constitution not to answer the question.
9       Q   Isn't it true that you were the driver in the
10  car that transported Aaron Patterson and James Hill
11  from police station on 103rd Street to Area 2?
12          MS. EKL:  Objection, foundation, assumes
13      facts not in evidence.
14      A   I assert my Fifth Amendment rights under the
15  Constitution not to answer the question.
16  BY MR. AINSWORTH:
17      Q   Isn't it true that Detective James Pienta was
18  riding in the back with Aaron Patterson and James
19  Hill while Bill Pederson was riding in the front
20  passenger seat during that ride from 103rd Street,
21  the police station at 103rd Street to Area 2 on
22  April 30, 1986?
23          MS. EKL:  Objection, form, foundation,
24      assumes facts not in evidence.

1       A   I assert my Fifth Amendment rights under the
2   Constitution not to answer the question.
3   BY MR. AINSWORTH:
4       Q   Isn't it true that you observed Detective
5   Pienta reach across Aaron Patterson and slap James
6   Hill in the face during the ride from the District 4
7   police station to Area 2?
8           MS. EKL:  Objection, foundation, assumes
9       facts not in evidence.
10      A   I assert my Fifth Amendment rights under the
11  Constitution not to answer the question.
12  BY MR. AINSWORTH:
13      Q   Isn't it true that you then heard Detective
14  Pienta turn to Aaron Patterson and state that if he
15  had been the officer who found him, Aaron Patterson
16  would be now dead?
17          MS. EKL:  Objection, assumes facts not in
18      evidence.
19      A   I assert my Fifth Amendment rights under the
20  Constitution not to answer the question.
21  BY MR. AINSWORTH:
22      Q   Isn't it true that you then interrogated
23  Aaron Patterson at Area 2 with Detectives Pederson
24  and Pienta?

1           MS. EKL:  Objection, foundation, assumes
2       facts not in evidence.
3       A   I assert my Fifth Amendment rights under the
4   Constitution not to answer the question.
5   BY MR. AINSWORTH:
6       Q   Isn't it true that you interrogated Aaron
7   Patterson alongside Detectives Pienta and Marley on
8   April 30, 1986?
9           MS. EKL:  Objection, foundation as to time.
10      A   I assert my Fifth Amendment rights under the
11  Constitution not to answer the question.
12  BY MR. AINSWORTH:
13      Q   What time did you start interrogating Aaron
14  Patterson on April 30, 1986?
15          MS. EKL:  Objection, assumes facts not in
16      evidence.
17      A   I assert my Fifth Amendment rights under the
18  Constitution not to answer the question.
19  BY MR. AINSWORTH:
20      Q   Where did, in which room at Area 2 did you
21  interrogate Aaron Patterson?
22          MS. EKL:  Objection, assumes facts not in
23      evidence.
24      A   I assert my rights under the Fifth Amendment

1    of the Constitution not to answer the question.
2    BY MR. AINSWORTH:
3        Q   Isn't it true that you handcuffed Aaron
4    Patterson by one wrist to the wall during that
5    initial interrogation of him at Area 2?
6        MS. EKL:  Objection, assumes facts not in
7        evidence.
8        A   I assert my Fifth Amendment rights under the
9    Constitution not to answer the question.
10   BY MR. AINSWORTH:
11       Q   Isn't it true that Aaron Patterson requested
12   an attorney during his interrogation at Area 2 on
13   April 30, 1986?
14       MS. EKL:  Objection, foundation, assumes
15       facts not in evidence.
16       A   I assert my Fifth Amendment rights under the
17   Constitution not to answer the question.
18   BY MR. AINSWORTH:
19       Q   Isn't it true that Detective Pienta responded
20   to that request by saying that he was not getting
21   Aaron Patterson a lawyer, that he was Aaron
22   Patterson's lawyer and that Aaron Patterson was going
23   to do what he told him to do?
24       MS. EKL:  Objection, form, foundation,

1    assumes facts not in evidence.
2        A   I assert my Fifth Amendment rights under the
3    Constitution not to answer the question.
4    BY MR. AINSWORTH:
5        Q   Isn't it true that at the time in April
6    of 1986, Detective Pienta was a heavyset individual?
7        MS. EKL:  Objection, foundation, assumes
8        facts not in evidence.
9        A   I assert my Fifth Amendment rights under the
10   Constitution not to answer the question.
11   BY MR. AINSWORTH:
12       Q   What was your height in 19 -- in April
13   of 1986?
14       A   I assert my Fifth Amendment rights to the
15   Constitution not to answer the question.
16       Q   What was your approximate weight in April
17   of 1986?
18       A   I assert my rights under the Fifth Amendment
19   of the Constitution not to answer the question.
20       Q   What color was your hair in April of 1986?
21       A   I assert my rights under the Fifth Amendment
22   of the Constitution not to answer the question.
23       Q   Will you please describe how you typically
24   wore your hair back in April of 1986?

1        A   I assert my rights under the Fifth Amendment
2    not to answer the question.
3        Q   In April of 1986 did you typically wear
4    facial hair?
5        A   I didn't understand that.
6        Q   In April of 1986 did you typically wear
7    facial hair?
8        A   I assert my rights under the Constitution not
9    to answer the question.
10       Q   In April of 1986 how would you describe your
11   build?
12       A   I assert my rights under the Fifth Amendment
13   not to answer the question.
14       Q   Isn't it true that you heard Detective Pienta
15   tell Aaron Patterson that I'm tired of all this
16   bullshit?
17       MS. EKL:  Objection, foundation, assumes
18       facts not in evidence.
19       A   I assert my rights under the Fifth Amendment
20   of the Constitution not to answer the question.
21   BY MR. AINSWORTH:
22       Q   Isn't it true that you heard Aaron Patterson
23   say I don't know about the rest of you, but I am
24   tired of listening to this bullshit and I'm about

1    ready to kick his ass?
2        MS. EKL:  Objection, foundation, assumes
3        facts not in evidence.
4        A   I assert my rights under the Fifth Amendment
5    not to answer the question.
6    BY MR. AINSWORTH:
7        Q   Isn't it true that after Detective Pienta
8    made the comment about kicking Aaron Patterson's ass,
9    you then said that Aaron Patterson was going to
10   cooperate and if he did cooperate, that he wouldn't
11   have to go through all that?
12       MS. EKL:  Objection, form, foundation,
13       assumes facts not in evidence.
14       A   I assert my Fifth Amendment rights under the
15   Constitution not to answer the question.
16   BY MR. AINSWORTH:
17       Q   Isn't it true that Aaron Patterson responded
18   to you by saying that he wanted a lawyer?
19       MS. EKL:  Objection, assumes facts not in
20       evidence, foundation.
21       A   I assert my rights under the Fifth Amendment
22   of the Constitution not to answer the question.
23   BY MR. AINSWORTH:
24       Q   And isn't it true when Aaron Patterson asked

William Marley    May 29, 2012

Page 52

```
1   for a lawyer at this point, Detective Pienta left the
2   room?
3        MS. EKL:  Objection, form, foundation,
4     assumes facts not in evidence.
5     A   I assert my rights under the Fifth Amendment
6   of the Constitution not to answer the question.
7   BY MR. AINSWORTH:
8     Q   Isn't it true that you then observed
9   Detective Pienta re-enter the room with a plastic
10  bag?
11       MS. EKL:  Objection, foundation, assumes
12    facts not in evidence.
13    A   I assert my rights under the Fifth Amendment
14  to the Constitution not to answer the question.
15  BY MR. AINSWORTH:
16    Q   Isn't it true that when Detective Pienta
17  returned from leaving the interrogation room, he
18  returned with a typewriter cover?
19       MS. EKL:  Objection, foundation, assumes
20    facts not in evidence.
21    A   I assert my Fifth Amendment rights under the
22  Constitution not to answer the question.
23  BY MR. AINSWORTH:
24    Q   Isn't it true that when Detective Pienta
```

William Marley    May 29, 2012

Page 53

```
1   returned with a typewriter cover, you were present in
2   the room as was Detective Pienta as was Detective
3   Pederson?
4        MS. EKL:  Objection, foundation, assumes
5     facts not in evidence.
6   BY MR. AINSWORTH:
7     Q   Isn't it true --
8     A   Same answer.  I assert my rights under the
9   Fifth Amendment not to answer the question.
10    Q   Isn't it true that when Detective Pienta
11  re-entered the room with the typewriter cover, he had
12  four additional officers with him that were not
13  either yourself or Detective Pederson?
14       MS. EKL:  Objection, foundation, assumes
15    facts not in evidence.
16    A   I assert my Fifth Amendment rights under the
17  Constitution not to answer the question.
18  BY MR. AINSWORTH:
19    Q   Isn't it true that Detective Pienta also had
20  a manila folder with him when he returned with the
21  typewriter cover?
22       MS. EKL:  Objection, foundation, assumes
23    facts not in evidence.
24    A   I assert my Fifth Amendment rights under the
```

William Marley    May 29, 2012

Page 54

```
1   Constitution not to answer the question.
2   BY MR. AINSWORTH:
3     Q   Isn't it true that when Detective Pienta
4   entered the room with the typewriter cover, one of
5   the detectives told Mr. Patterson that he had
6   committed the Sanchez murders?
7        MS. EKL:  Objection, foundation, assumes
8     facts not in evidence.
9     A   I assert my rights under the Fifth Amendment
10  to the Constitution not to answer the question.
11  BY MR. AINSWORTH:
12    Q   Isn't it true that Aaron Patterson then
13  stated that he had not committed the Sanchez murders
14  and had nothing to do with them?
15       MS. EKL:  Objection, assumes facts not in
16    evidence, foundation.
17    A   I assert my rights under the Fifth Amendment
18  to the Constitution not to answer the question.
19  BY MR. AINSWORTH:
20    Q   Isn't it true that Detective Pienta then
21  said, are you calling the other detective a liar?
22       MS. EKL:  Objection, foundation, assumes facts
23    not in evidence.
24    A   I assert my rights under the Fifth Amendment
```

William Marley    May 29, 2012

Page 55

```
1   to the Constitution not to answer the question.
2   BY MR. AINSWORTH:
3     Q   Isn't it true that Detective Pienta then
4   said, look at this jag-off, he's calling this
5   detective a liar?
6        MS. EKL:  Objection, foundation, assumes
7     facts not in evidence.
8     A   I assert my rights under the Fifth Amendment
9   to the Constitution not to answer the question.
10  BY MR. AINSWORTH:
11    Q   Isn't it true at that point that Detective
12  Pienta then un-handcuffed Aaron Patterson and
13  re-handcuffed him to the ring of the wall with both
14  of his wrists cuffed behind his back?
15       MS. EKL:  Objection, foundation, assumes
16    facts not in evidence.
17    A   I assert my Fifth Amendment rights under the
18  Constitution not to answer the question.
19  BY MR. AINSWORTH:
20    Q   Isn't it true that you assisted Detective
21  Pienta in re-handcuffing Aaron Patterson so that both
22  of his wrists would be hooked to a ring behind his
23  back?
24       MS. EKL:  Objection, foundation, assumes
```

William Marley    May 29, 2012

Page 56

```
 1        facts not in evidence.
 2        A   I assert my Fifth Amendment rights under the
 3     Constitution not to answer the question.
 4     BY MR. AINSWORTH:
 5        Q   Isn't it true that you observed Detective
 6     Pederson assist Detective Pienta handcuff Aaron
 7     Patterson's hands behind his back to a ring on the
 8     wall?
 9            MS. EKL:  Objection, foundation, assumes
10        facts not in evidence.
11        A   I assert my Fifth Amendment rights under the
12     Constitution not to answer the question.
13     BY MR. AINSWORTH:
14        Q   Isn't it true that you observed Detective
15     Madigan assist Detective Pienta to handcuff both of
16     Aaron Patterson's hands behind his back?
17            MS. EKL:  Objection, foundation, assumes
18        facts not in evidence.
19        A   I assert my Fifth Amendment rights under the
20     Constitution not to answer the question.
21     BY MR. AINSWORTH:
22        Q   Isn't it true that you assisted Detective --
23     sorry, strike that.  Isn't it true that you observed
24     Detective McWeeny assist Detective Pienta in
```

William Marley    May 29, 2012

Page 57

```
 1     handcuffing Aaron Patterson's hands behind his back?
 2            MS. EKL:  Objection, foundation, assumes
 3        facts not in evidence.
 4        A   I assert my Fifth Amendment rights under the
 5     Constitution not to answer the question.
 6     BY MR. AINSWORTH:
 7        Q   Isn't it true that you then observed
 8     Detective Pienta slap Aaron Patterson in the chest
 9     and ask him if he was going to cooperate?
10            MS. EKL:  Objection, form, foundation,
11        assumes facts not in evidence.
12        A   I assert my Fifth Amendment rights under the
13     Constitution not to answer the question.
14     BY MR. AINSWORTH:
15        Q   Isn't it true you then observed Detective
16     Pienta grab Aaron Patterson by the neck?
17            MS. EKL:  Objection, foundation, assumes
18        facts not in evidence.
19        A   I assert my Fifth Amendment rights under the
20     Constitution not to answer the question.
21     BY MR. AINSWORTH:
22        Q   Isn't it true that after Aaron Patter --
23     after Detective Pienta grabbed Aaron Patterson by the
24     neck, then another officer closed the door and turned
```

William Marley    May 29, 2012

Page 58

```
 1     out the lights?
 2            MS. EKL:  Objection, form, foundation,
 3        assumes facts not in evidence.
 4        A   I assert my Fifth Amendment rights under the
 5     Constitution not to answer the question.
 6     BY MR. AINSWORTH:
 7        Q   Isn't it true that you then observed
 8     Detective Pederson reach for the plastic typewriter
 9     cover and place it over Aaron Patterson's head?
10            MS. EKL:  Objection, foundation, assumes
11        facts not in evidence.
12        A   I assert my Fifth Amendment rights under the
13     Constitution not to answer the question.
14     BY MR. AINSWORTH:
15        Q   Isn't it true you observed Detective Pederson
16     hold the typewriter cover against Aaron Patterson's
17     face so as to cut off his breathing?
18            MS. EKL:  Objection, form, foundation,
19        assumes facts not in evidence.
20        A   I assert my Fifth Amendment rights under the
21     Constitution not to answer the question.
22     BY MR. AINSWORTH:
23        Q   Isn't it true you could tell it was Detective
24     Pederson who had the typewriter cover against Aaron
```

William Marley    May 29, 2012

Page 59

```
 1     Patterson's face because there was a little bit of
 2     light coming in from underneath the door that led to
 3     the hallway?
 4            MS. EKL:  Objection, form, foundation,
 5        assumes facts not in evidence.
 6        A   I assert my Fifth Amendment rights under the
 7     Constitution not to answer the question.
 8     BY MR. AINSWORTH:
 9        Q   Isn't it true that you then held Aaron
10     Patterson's nose while Detective Pederson held the
11     typewriter cover against Aaron Patterson's face so as
12     to cut off Aaron Patterson's breathing?
13            MS. EKL:  Objection, form, foundation,
14        assumes facts not in evidence.
15        A   I assert my Fifth Amendment rights under the
16     Constitution not to answer the question.
17     BY MR. AINSWORTH:
18        Q   Isn't it true that you observed Detective
19     Madigan hold Aaron Patterson's nose while Detective
20     Pederson held the plastic over his face so that Aaron
21     Patterson couldn't breathe?
22            MS. EKL:  Objection, form, foundation,
23        assumes facts not in evidence.
24        A   I assert my Fifth Amendment rights under the
```

William Marley   May 29, 2012

Page 60

```
 1   Constitution not to answer the question.
 2   BY MR. AINSWORTH:
 3        Q   Isn't it true that you observed Detective
 4   McWeeny hold Aaron Patterson's nose so that -- while
 5   Detective Pederson held the typewriter cover over
 6   Aaron Patterson's face so that Aaron Patterson could
 7   not breathe?
 8        MS. EKL:  Objection, form, foundation,
 9     assumes facts not in evidence.
10        A   I assert my Fifth Amendment rights under the
11   Constitution not to answer the question.
12   BY MR. AINSWORTH:
13        Q   Isn't it true that you observed Detective
14   Burge hold Aaron Patterson's nose while Detective
15   Pederson held the typewriter cover over Aaron
16   Patterson's face so that Aaron Patterson couldn't
17   breathe?
18        MS. EKL:  Objection, form, foundation,
19     assumes facts not in evidence.
20        A   I assert my rights under the Fifth Amendment
21   not to answer the question.
22   BY MR. AINSWORTH:
23        Q   Isn't it true that you observed Detective
24   Pienta hold Aaron Patterson's nose while Detective
```

William Marley   May 29, 2012

Page 61

```
 1   Pederson held the typewriter cover against Aaron
 2   Patterson's face so that Aaron Patterson could not
 3   breathe?
 4        MS. EKL:  Objection, form, foundation,
 5     assumes facts not in evidence.
 6        A   I assert my rights under the Fifth Amendment
 7   not to answer the question.
 8   BY MR. AINSWORTH:
 9        Q   Isn't it true that while the plastic
10   typewriter cover was being held over Aaron
11   Patterson's face so that he could not breathe, you
12   then punched Aaron Patterson?
13        MS. EKL:  Objection, form, foundation,
14     assumes facts not in evidence.
15        A   I assert my rights under the Fifth Amendment
16   to the Constitution not to answer the question.
17   BY MR. AINSWORTH:
18        Q   Isn't it true that while the typewriter cover
19   was being held over Aaron Patterson's face, you
20   observed other Area 2 detectives striking Aaron
21   Patterson?
22        MS. EKL:  Objection, foundation, assumes
23     facts not in evidence.
24        A   I assert my Fifth Amendment rights under the
```

William Marley   May 29, 2012

Page 62

```
 1   Constitution not to answer the question.
 2   BY MR. AINSWORTH:
 3        Q   Tell me every detective that you observed
 4   interrogating Aaron Patterson.
 5        MS. EKL:  Objection, form, foundation,
 6     assumes facts not in evidence.
 7        A   I assert my Fifth Amendment rights to the
 8   Constitution not to answer the question.
 9   BY MR. AINSWORTH:
10        Q   Tell me the name of every detective that you
11   observed interviewing Aaron Patterson on April 30,
12   1986.
13        MS. EKL:  Objection, foundation, assumes
14     facts not in evidence.
15        A   I assert my Fifth Amendment rights under the
16   Constitution not to answer the question.
17   BY MR. AINSWORTH:
18        Q   Isn't it true that you observed Detective
19   McWeeny punch Aaron Patterson in the face while he
20   was being suffocated?
21        MS. EKL:  Objection, foundation, assumes
22     facts not in evidence.
23        A   I assert my Fifth Amendment rights under the
24   Constitution not to answer the question.
```

William Marley   May 29, 2012

Page 63

```
 1   BY MR. AINSWORTH:
 2        Q   Isn't it true that you observed Detective
 3   Madigan punch Aaron Patterson in the chest while he
 4   was being inter -- suffocated?
 5        MS. EKL:  Objection, foundation, assumes
 6     facts not in evidence.
 7        A   I assert my Fifth Amendment rights under the
 8   Constitution not to answer the question.
 9   BY MR. AINSWORTH:
10        Q   Isn't it true that you observed Detective
11   Burge strike Aaron Patterson while he was being
12   suffocated?
13        MS. EKL:  Objection, foundation, assumes
14     facts not in evidence.
15        A   I assert my Fifth Amendment rights under the
16   Constitution not to answer the question.
17   BY MR. AINSWORTH:
18        Q   Isn't it true that you observed Detective
19   Pederson punch Aaron Patterson in the body while he
20   was being suffocated?
21        MS. EKL:  Objection, foundation, assumes
22     facts not in evidence.
23        A   I assert my Fifth Amendment rights under the
24   Constitution not to answer the question.
```

```
1   BY MR. AINSWORTH:
2       Q   Isn't it true that after Detective Pederson
3   removed the plastic cover from Aaron Patterson's
4   face, another detective turned on the lights?
5           MS. EKL:  Objection, foundation, assumes
6       facts not in evidence.
7       A   I assert my Fifth Amendment rights to the
8   Constitution not to answer the question.
9   BY MR. AINSWORTH:
10      Q   Isn't it true that Aaron Patterson then told
11  you and the other detectives that you were crazy for
12  doing what you had done?
13          MS. EKL:  Objection, assumes facts not in
14      evidence.
15      A   I assert my Fifth Amendment rights under the
16  Constitution not to answer the question.
17  BY MR. AINSWORTH:
18      Q   Isn't it true that Detective Pienta then
19  said, we've got to do what we've got to do, you know?
20          MS. EKL:  Objection, foundation, assumes
21      facts not in evidence.
22      A   I assert my Fifth Amendment rights under the
23  Constitution not to answer the question.
24
```

```
1   BY MR. AINSWORTH:
2       Q   Isn't it true that Detective Pienta then said
3   if you don't cooperate, we'll do something worse than
4   that if we have to?
5           MS. EKL:  Objection, foundation, assumes
6       facts not in evidence.
7       A   I assert my Fifth Amendment rights under the
8   Constitution not to answer the question.
9   BY MR. AINSWORTH:
10      Q   Isn't it true that Aaron Patterson then told
11  Detective Pienta that he wanted to see a lawyer?
12          MS. EKL:  Objection, foundation, assumes
13      facts not in evidence.
14      A   I assert my Fifth Amendment rights under the
15  Constitution not to answer the question.
16  BY MR. AINSWORTH:
17      Q   Isn't it true that Detective Pienta then
18  responded by saying no, you're not getting a mother
19  fucking attorney?
20          MS. EKL:  Objection, foundation, assumes
21      facts not in evidence.
22      A   I assert my Fifth Amendment rights under the
23  Constitution not to answer the question.
24
```

```
1   BY MR. AINSWORTH:
2       Q   Isn't it true that you prevented Aaron
3   Patterson from getting in touch with an attorney?
4           MS. EKL:  Objection, foundation, assumes
5       facts not in evidence.
6       A   I assert my Fifth Amendment rights to the
7   Constitution not to answer the question.
8   BY MR. AINSWORTH:
9       Q   Isn't it true that you knew that Aaron
10  Patterson did not want to provide a statement, but
11  you continued questioning him nonetheless?
12          MS. EKL:  Objection, form, foundation,
13      assumes facts not in evidence.
14      A   I assert my Fifth Amendment rights to the
15  Constitution not to answer the question.
16  BY MR. AINSWORTH:
17      Q   Isn't it true that Detective Pienta then
18  asked Aaron Patterson if he was going to cooperate?
19          MS. EKL:  Objection, foundation, assumes
20      facts not in evidence.
21      A   I assert my Fifth Amendment rights under the
22  Constitution not to answer the question.
23  BY MR. AINSWORTH:
24      Q   And isn't it true that Aaron Patterson then
```

```
1   said, I've said all I'm going to say?
2           MS. EKL:  Objection, foundation, assumes
3       facts not in evidence.
4       A   I assert my Fifth Amendment rights under the
5   Constitution not to answer the question.
6   BY MR. AINSWORTH:
7       Q   And isn't it true that after Aaron Patterson
8   said that he had said all he was going to say, you
9   turned off the lights?
10          MS. EKL:  Objection, foundation, assumes
11      facts not in evidence.
12      A   I assert my Fifth Amendment rights under the
13  Constitution not to answer the question.
14  BY MR. AINSWORTH:
15      Q   Were you the tallest detective of the
16  detectives that you knew of who were questioning
17  Aaron Patterson on April 30, 1986?
18          MS. EKL:  Objection, form, foundation.
19      A   I assert my Fifth Amendment rights under the
20  Constitution not to answer the question.
21  BY MR. AINSWORTH:
22      Q   And isn't it true that when the lights went
23  off, the typewriter cover was placed back on Aaron
24  Patterson's face?
```

1      MS. EKL:  Objection, form, foundation,

2   assumes facts not in evidence.

3      A   I assert my Fifth Amendment rights under the

4   Constitution not to answer the question.

5   BY MR. AINSWORTH:

6      Q   Isn't it true that when the lights went off

7   the second time, you placed the typewriter cover over

8   Aaron Patterson's face so that he couldn't breathe?

9      MS. EKL:  Objection, form, foundation,

10  assumes facts not in evidence.

11     A   I assert my Fifth Amendment rights under the

12  Constitution not to answer the question.

13  BY MR. AINSWORTH:

14     Q   Isn't it true that you observed Detective

15  Pederson place the typewriter cover over Aaron

16  Patterson's face the second time so he couldn't

17  breathe?

18     MS. EKL:  Objection, form, foundation,

19  assumes facts not in evidence.

20     A   I assert my Fifth Amendment rights under the

21  Constitution not to answer the question.

22  BY MR. AINSWORTH:

23     Q   Isn't it true that you observed Detective

24  Pienta place the typewriter cover over Aaron

1   Patterson's face so that he couldn't breathe the

2   second time?

3      MS. EKL:  Objection, asked and answered,

4   form, foundation, assumes facts not in evidence.

5      A   I assert my rights under the Fifth Amendment

6   of the Constitution not to answer the question.

7   BY MR. AINSWORTH:

8      Q   Isn't it true that you observed Detective

9   Madigan place the typewriter cover over Aaron

10  Patterson's face the second time?

11     MS. EKL:  Objection, form, foundation,

12  assumes facts not in evidence.

13     A   I assert my Fifth Amendment rights under the

14  Constitution not to answer the question.

15  BY MR. AINSWORTH:

16     Q   I left out one piece.  Isn't it true that you

17  observed Detective Madigan place the typewriter cover

18  over Aaron Patterson's face the second time so he

19  couldn't breathe?

20     MS. EKL:  Objection, form, foundation,

21  assumes facts not in evidence.

22     A   Same answer.  I assert my rights under the

23  Constitution not to answer the question.

24

1   BY MR. AINSWORTH:

2      Q   Isn't it true that you observed Detective

3   McWeeny place a typewriter cover over Aaron

4   Patterson's face the second time so that he couldn't

5   breathe?

6      MS. EKL:  Objection, form, foundation,

7   assumes facts not in evidence.

8      A   I assert my Fifth Amendment rights under the

9   Constitution not no answer the question.

10  BY MR. AINSWORTH:

11     Q   Isn't it true that you punched Aaron

12  Patterson while he was being suffocated the second

13  time?

14     MS. EKL:  Objection, form, foundation,

15  assumes facts not in evidence.

16     A   I assert my Fifth Amendment rights under the

17  Constitution not to answer the question.

18  BY MR. AINSWORTH:

19     Q   Isn't it true that you observed Detective

20  Burge place the typewriter cover over Aaron

21  Patterson's face the second time so that he couldn't

22  breathe?

23     MS. EKL:  Objection, form, foundation,

24  assumes facts not in evidence.

1      A   I assert my Fifth Amendment rights under the

2   Constitution not to answer the question.

3   BY MR. AINSWORTH:

4      Q   Isn't it true that you observed Detective

5   Burge punch Aaron Patterson in the body during the

6   second application of the typewriter cover to his

7   face so that he couldn't breathe?

8      MS. EKL:  Objection, form, foundation,

9   assumes facts not in evidence.

10     A   I assert my Fifth Amendment rights under the

11  Constitution not to answer the question.

12  BY MR. AINSWORTH:

13     Q   Isn't it true that you observed Detective

14  Pienta punch Aaron Patterson while he was being

15  suffocated the second time?

16     MS. EKL:  Objection, form, foundation,

17  assumes facts not in evidence.

18     A   I assert my Fifth Amendment rights under the

19  Constitution not to answer the question.

20  BY MR. AINSWORTH:

21     Q   Isn't it true that you observed Detective

22  Madigan punch Aaron Patterson while he was being

23  suffocated the second time?

24     MS. EKL:  Objection, form, foundation,

William Marley    May 29, 2012

Page 72

```
 1        assumes facts not in evidence.
 2        A  I assert my rights under the Fifth Amendment
 3   not to answer the question.
 4   BY MR. AINSWORTH:
 5        Q  Isn't it true that you observed Detective
 6   Pederson punch Aaron Patterson in the body while he
 7   was being suffocated a second time?
 8        MS. EKL:  Objection, form, foundation,
 9        assumes facts not in evidence.
10        A  I assert my rights under the Fifth Amendment
11   to the Constitution not to answer the question.
12   BY MR. AINSWORTH:
13        Q  Isn't it true that you observed Detective
14   McWeeny punch Aaron Patterson while he was being
15   suffocated the second time?
16        MS. EKL:  Objection, form, foundation,
17        assumes facts not in evidence.
18        A  I assert my Fifth Amendment rights under the
19   Constitution not to answer the question.
20   BY MR. AINSWORTH:
21        Q  Isn't it true that the typewriter cover was
22   held onto Aaron Patterson's face for about two
23   minutes during the second time?
24        MS. EKL:  Objection, form, foundation,
```

William Marley    May 29, 2012

Page 73

```
 1        assumes facts not in evidence.
 2        A  I assert my Fifth Amendment rights under the
 3   Constitution not to answer the question.
 4   BY MR. AINSWORTH:
 5        Q  Isn't it true that when the typewriter cover
 6   was taken off Aaron Patterson's face, he then said
 7   that he was willing to cooperate?
 8        MS. EKL:  Objection, form, foundation,
 9        assumes facts not in evidence.
10        A  I assert my Fifth Amendment rights under the
11   Constitution not to answer the question.
12   BY MR. AINSWORTH:
13        Q  Isn't it true that Aaron Patterson then said
14   I'll say anything you say after the typewriter cover
15   was taken off his face for the second time?
16        MS. EKL:  Objection, form, foundation,
17        assumes facts not in evidence.
18        A  I assert my Fifth Amendment rights under the
19   Constitution not to answer the question.
20   BY MR. AINSWORTH:
21        Q  Isn't it true that then the four additional
22   officers left and it was you, Detective Pienta and
23   Detective Pederson who were left alone in the room
24   with Aaron Patterson?
```

William Marley    May 29, 2012

Page 74

```
 1        MS. EKL:  Objection, foundation, assumes
 2        facts not in evidence.
 3        A  I assert my Fifth Amendment rights under the
 4   Constitution not to answer the question.
 5   BY MR. AINSWORTH:
 6        Q  Isn't it true you then instructed Aaron
 7   Patterson that he committed the Sanchez murders?
 8        MS. EKL:  Objection, form, foundation,
 9        assumes facts not in evidence.
10        A  I assert my Fifth Amendment rights under the
11   Constitution not to answer the question.
12   BY MR. AINSWORTH:
13        Q  Isn't it true that you provided details of
14   the crime to Aaron Patterson before he volunteered
15   any of those details?
16        MS. EKL:  Objection, foundation, assumes
17        facts not in evidence.
18        A  I decline to answer the question, asserting
19   my constitutional rights.
20   BY MR. AINSWORTH:
21        Q  Under the Fifth Amendment?
22        A  Yes, sir.
23        Q  Isn't it true that you told Aaron Patterson
24   that he needed money and that's why he went to
```

William Marley    May 29, 2012

Page 75

```
 1   Aaron -- to the Sanchezes' home that night?
 2        MS. EKL:  Objection, foundation, assumes
 3        facts not in evidence.
 4        A  I assert my Fifth Amendment rights not to
 5   answer the question.
 6   BY MR. AINSWORTH:
 7        Q  Isn't it true that you told Aaron Patterson
 8   that he needed a gun, so that's why he went to the
 9   Sanchezes' home that night?
10        MS. EKL:  Objection, foundation, assumes
11        facts not in evidence.
12        A  I assert my Fifth Amendment rights under the
13   Constitution not to answer the question.
14   BY MR. AINSWORTH:
15        Q  Isn't it true that you told Aaron Patterson
16   that Mr. Sanchez refused to give him the stuff and
17   that's why he killed him?
18        MS. EKL:  Objection, foundation, assumes
19        facts not in evidence, form.
20        A  I assert my Fifth Amendment rights under the
21   Constitution not to answer the question.
22   BY MR. AINSWORTH:
23        Q  Isn't it true that you told Aaron Patterson
24   how the victims were killed?
```

William Marley    May 29, 2012

Page 76

1       MS. EKL:  Objection, form, foundation,
2    assumes facts not in evidence.
3       A   I assert my Fifth Amendment rights under the
4    Constitution not to answer the question.
5    BY MR. AINSWORTH:
6       Q   Isn't it true that you told Aaron Patterson
7    that the victims in the Sanchez murders were stabbed
8    to death before he mentioned anything about knowing
9    that the victims had been stabbed to death?
10      MS. EKL:  Objection, foundation, assumes
11   facts not in evidence.
12      A   I assert my Fifth Amendment rights under the
13   Constitution not to answer the question.
14   BY MR. AINSWORTH:
15      Q   Isn't it true that you got Aaron Patterson
16   some bourbon to drink?
17      MS. EKL:  Objection, form, foundation.
18      A   I assert my Fifth Amendment rights under the
19   Constitution not to answer the question.
20   BY MR. AINSWORTH:
21      Q   Isn't it true that you told Aaron Patterson
22   that bourbon was better than water?
23      MS. EKL:  Objection, form, foundation,
24   assumes facts not in evidence.

William Marley    May 29, 2012

Page 77

1       A   I assert my Fifth Amendment rights under the
2    Constitution not to answer the question.
3    BY MR. AINSWORTH:
4       Q   Did you observe another Area 2 detective
5    provide Aaron Patterson with a cup of bourbon?
6       MS. EKL:  Objection, foundation.
7       A   I assert my Fifth Amendment rights under the
8    Constitution not to answer the question.
9    BY MR. AINSWORTH:
10      Q   Did you hear another detective tell Aaron
11   Patterson that bourbon was better than water?
12      MS. EKL:  Objection, foundation.
13      A   I assert my Fifth Amendment rights under the
14   Constitution not to answer the question.
15   BY MR. AINSWORTH:
16      Q   Prior to using physical force against Aaron
17   Patterson, did you speak with Jon Burge about how to
18   go about interrogating Aaron Patterson?
19      MS. EKL:  Objection, form, foundation,
20   assumes facts not in evidence.
21      A   I assert my Fifth Amendment rights under the
22   Constitution not to answer the question.
23   BY MR. AINSWORTH:
24      Q   Before any physical force was using against

William Marley    May 29, 2012

Page 78

1    Aaron Patterson, did you consult with Jon Burge about
2    using a plastic typewriter cover to suffocate Aaron
3    Patterson in an effort to get him to provide an
4    involuntary statement?
5       MS. EKL:  Objection, form, foundation,
6    assumes facts not in evidence.
7       A   I assert my Fifth Amendment rights under the
8    Constitution not to answer the question.
9    BY MR. AINSWORTH:
10      Q   Isn't it true that you, Detective Pienta and
11   Detective -- and defendant Burge reached an agreement
12   to use physical force against Aaron Patterson in an
13   effort to get him to give an involuntary and false
14   confession?
15      MS. EKL:  Objection, form, foundation,
16   assumes facts not in evidence.
17      A   I assert my Fifth Amendment rights under the
18   Constitution not to answer the question.
19   BY MR. AINSWORTH:
20      Q   Isn't it true that you knew during the course
21   of your interrogation of Aaron Patterson that he had
22   nothing to do with the Sanchez murders?
23      MS. EKL:  Objection, foundation, assumes
24   facts not in evidence.

William Marley    May 29, 2012

Page 79

1       A   I assert my Fifth Amendment rights under the
2    Constitution not to answer the question.
3    BY MR. AINSWORTH:
4       Q   Tell me how Eric Caine's name came up during
5    your interrogation of Aaron Patterson.
6       MS. EKL:  Objection, foundation, assumes
7    facts not in evidence.
8       A   I assert my Fifth Amendment rights under the
9    Constitution not to answer the question.
10   BY MR. AINSWORTH:
11      Q   Isn't it true that you were questioning Aaron
12   Patterson about members of the tribe that you had
13   referenced in your earlier GPR dated April 23, 1986?
14      MS. EKL:  Objection, foundation, assumes
15   facts not in evidence.
16      A   I assert my Fifth Amendment rights under the
17   Constitution not to answer the question.
18   BY MR. AINSWORTH:
19      Q   Isn't it true that you went through the list
20   of names that were attached to your GPR dated
21   April 23, 1986 during your interrogation of Aaron
22   Patterson on April 30?
23      MS. EKL:  Objection, form, assumes facts not
24   in evidence.

William Marley    May 29, 2012

Page 80

```
 1       A   I decline to answer the question, asserting
 2   my Fifth Amendment rights under the Constitution.
 3   BY MR. AINSWORTH:
 4       Q   Isn't it true that you suggested to Aaron
 5   Patterson that he committed the murder with Eric
 6   Caine, Michael Arbuckle and Illya Rowland?
 7           MS. EKL:  Objection, form, foundation,
 8       assumes facts not in evidence.
 9       A   I assert my Fifth Amendment rights under the
10   Constitution not to answer the question.
11   BY MR. AINSWORTH:
12       Q   Isn't it true you told Aaron Patterson to say
13   that he committed the Sanchez murders with Eric
14   Caine, Michael Arbuckle and Illya Rowland?
15           MS. EKL:  Objection, foundation, assumes
16       facts not in evidence.
17       A   I assert my Fifth Amendment rights under the
18   Constitution not to answer the question.
19   BY MR. AINSWORTH:
20       Q   Isn't it true that you observed another
21   Area 2 detective tell Aaron Patterson that he
22   committed the Sanchez murders with Eric Caine,
23   Michael Arbuckle and Illya Rowland before Aaron
24   Patterson said anything about having committed the
```

William Marley    May 29, 2012

Page 81

```
 1   murders with Eric Caine, Michael Arbuckle or Illya
 2   Rowland?
 3           MS. EKL:  Objection, foundation, assumes
 4       facts not in evidence.
 5       A   I assert my Fifth Amendment rights under the
 6   Constitution and decline to answer the question.
 7   BY MR. AINSWORTH:
 8       Q   Isn't it true that Jon Burge told you he went
 9   into the interrogation room where Aaron Patterson was
10   with a loaded gun?
11           MS. EKL:  Objection, foundation, assumes
12       facts not in evidence.
13       A   I assert my Fifth Amendment rights under the
14   Constitution not to answer the question.
15   BY MR. AINSWORTH:
16       Q   Isn't it true that Detective Burge told you
17   that if Aaron Patterson wouldn't cooperate -- strike
18   that.  Isn't it true defendant Burge told you that he
19   had a conversation with Aaron Patterson in which he
20   told Aaron Patterson if he didn't cooperate, it would
21   be worse for him and he said this while he had a
22   handgun on the table in front of Aaron Patterson?
23           MS. EKL:  Objection, form, foundation,
24       assumes facts not in evidence.
```

William Marley    May 29, 2012

Page 82

```
 1       A   I assert my Fifth Amendment rights under the
 2   Constitution not to answer the question.
 3   BY MR. AINSWORTH:
 4       Q   Isn't it true that you brought photographs in
 5   to Aaron Patterson for him to identify?
 6           MS. EKL:  Objection, foundation, assumes
 7       facts not in evidence.
 8       A   I assert my Fifth Amendment rights under the
 9   Constitution not to answer the question.
10   BY MR. AINSWORTH:
11       Q   Isn't it true that you showed Aaron Patterson
12   photographs of Eric Caine, Michael Arbuckle and Illya
13   Rowland so that he could pick them out and point to
14   them as people who committed the Sanchez murders?
15           MS. EKL:  Objection, form, foundation,
16       assumes facts not in evidence.
17       A   I assert my Fifth Amendment rights under the
18   Constitution not to answer the question.
19   BY MR. AINSWORTH:
20       Q   Isn't it true that you showed Aaron Patterson
21   photographs of Eric Caine, Michael Arbuckle and Illya
22   Rowland so that he could falsely identify them as
23   people who had committed the Sanchez murders?
24           MS. EKL:  Objection, form, foundation,
```

William Marley    May 29, 2012

Page 83

```
 1       assumes facts not in evidence.
 2       A   I assert my Fifth Amendment rights under the
 3   Constitution not to answer the question.
 4   BY MR. AINSWORTH:
 5       Q   Isn't it true that you observed another
 6   Area 2 detective show Aaron Patterson photographs of
 7   Eric Caine, Michael Arbuckle and Illya Rowland so
 8   that Aaron Patterson could falsely identify those
 9   people as persons involved in the Sanchez homicides?
10           MS. EKL:  Objection, form, foundation,
11       assumes facts not in evidence.
12       A   I assert my Fifth Amendment rights under the
13   Constitution not to answer the question.
14   BY MR. AINSWORTH:
15       Q   Did you show Aaron Patterson any photographs?
16           MS. EKL:  Objection, foundation.
17       A   I assert my rights under the Fifth Amendment
18   of the Constitution not to answer the question.
19   BY MR. AINSWORTH:
20       Q   If you did show him any photographs, why did
21   you show him photographs?
22           MS. EKL:  Objection, form, foundation,
23       assumes facts not in evidence, incomplete
24       hypothetical.
```

William Marley   May 29, 2012

Page 84

```
 1        A  I assert my rights under the Fifth Amendment
 2   of the Constitution not to answer the question.
 3   BY MR. AINSWORTH:
 4        Q  If you did show Aaron Patterson photographs,
 5   at what point during the interrogation of Aaron
 6   Patterson did you show him photographs?
 7        MS. EKL:  Objection, form, assumes facts not
 8    in evidence, incomplete hypothetical.
 9        A  I assert my Fifth Amendment rights under the
10   Constitution not to answer the question.
11   BY MR. AINSWORTH:
12        Q  Isn't it true that you were familiar with the
13   facts of the Sanchez homicides prior to the time that
14   you interrogated Aaron Patterson?
15        MS. EKL:  Objection, form, assumes facts not
16    in evidence.
17        A  I assert my Fifth Amendment rights under the
18   Constitution not to answer the question.
19   BY MR. AINSWORTH:
20        Q  Isn't it true that you, Detective Pienta,
21   Detective Madigan, Detective Pederson and Lieutenant
22   Burge came up with a plan to have Detective McWeeny
23   pretend to be the good cop and speak with Aaron
24   Patterson in an effort to get him to cooperate in the
```

William Marley   May 29, 2012

Page 85

```
 1   investigation?
 2        MS. EKL:  Objection, form, foundation,
 3   assumes facts not in evidence.
 4        A  I assert my Fifth Amendment rights under the
 5   Constitution not to answer the question.
 6   BY MR. AINSWORTH:
 7        Q  Isn't it true that as part of that plan that
 8   you developed with Detectives Burge, Madigan, Pienta,
 9   McWeeny and Pederson, you concocted a story that
10   Detective McWeeny would tell Aaron Patterson that the
11   other detectives would do something really serious if
12   he didn't agree to cooperate?
13        MS. EKL:  Objection, form, foundation,
14   assumes facts not in evidence.
15        A  I assert my Fifth Amendment rights under the
16   Constitution not to answer the question.
17   BY MR. AINSWORTH:
18        Q  When did you learn that Aaron Patterson had
19   etched anything into the bench of his interrogation
20   room?
21        MS. EKL:  Objection, assumes facts not in
22    evidence.
23        A  I assert my Fifth Amendment rights under the
24   Constitution not to answer the question.
```

William Marley   May 29, 2012

Page 86

```
 1   BY MR. AINSWORTH:
 2        Q  When did you learn that Aaron Patterson had
 3   etched something into the frame of the door to his
 4   interrogation room?
 5        MS. EKL:  Objection, assumes facts not in
 6    evidence.
 7        A  I assert my Fifth Amendment rights under the
 8   Constitution not to answer the question.
 9   BY MR. AINSWORTH:
10        Q  Did you have any discussions with any of the
11   other Area 2 detectives when you learned that Aaron
12   Patterson had etched statements about his torture
13   into the bench and the door frame of his
14   interrogation room?
15        MS. EKL:  Objection, assumes facts not in
16    evidence.
17        A  I assert my Fifth Amendment rights under the
18   Constitution not to answer the question.
19   BY MR. AINSWORTH:
20        Q  Isn't it true that you observed Detective
21   Pienta bring Eric Caine into Aaron Patterson's
22   interrogation room after Aaron Patterson had been
23   suffocated twice and struck several times?
24        MS. EKL:  Objection, form, foundation,
```

William Marley   May 29, 2012

Page 87

```
 1   assumes facts not in evidence.
 2        A  I assert my Fifth Amendment rights under the
 3   Constitution not to answer the question.
 4   BY MR. AINSWORTH:
 5        Q  Isn't it true that you knew, at the time
 6   Detective Pienta brought Eric Caine into the room, he
 7   was doing so in an effort to intimidate Eric Caine
 8   into giving an involuntary and false statement?
 9        MS. EKL:  Objection, form, foundation,
10   assumes facts not in evidence.
11        A  I assert my Fifth Amendment rights under the
12   Constitution not to answer the question.
13   BY MR. AINSWORTH:
14        Q  Isn't it true Detective Pienta told you that
15   he had punched Eric Caine in the chest on April 30,
16   1986?
17        MS. EKL:  Objection, foundation.
18        A  I assert my Fifth Amendment rights under the
19   Constitution not to answer the question.
20   BY MR. AINSWORTH:
21        Q  Isn't it true that you observed Detective
22   Pienta punch Eric Caine in the chest on April 30,
23   1986?
24        MS. EKL:  Objection, assumes facts not in
```

```
 1        evidence.
 2        Q   I assert my Fifth Amendment rights under the
 3   Constitution not to answer the question.
 4   BY MR. AINSWORTH:
 5        Q   Isn't it true that you observed Aaron
 6   Patter -- strike that.  Isn't it true that you
 7   observed Detective Pienta punch Eric Caine in the
 8   chest and tell him that if he wasn't cool, he'd get
 9   worse?
10        MS. EKL:  Objection, form, foundation,
11        assumes facts not in evidence.
12        A   I assert my Fifth Amendment rights under the
13   Constitution and decline to answer the question.
14   BY MR. AINSWORTH:
15        Q   Isn't it true --
16        (Whereupon a brief interruption occurred.)
17        Q   Were you questioned by any federal
18   investigators in regard to your duties as an Area 2
19   detective?
20        MS. EKL:  Objection, foundation.
21        A   I decline to answer, asserting my Fifth
22   Amendment rights under the Constitution.
23   BY MR. AINSWORTH:
24        Q   Have you ever given a statement to a grand
```

```
 1   jury regarding an investigation of police abuse
 2   within Area 2?
 3        A   I assert my Fifth Amendment rights under the
 4   Constitution and decline to answer the question.
 5        Q   Were you ever offered immunity for statements
 6   against other detectives in Area 2?
 7        A   I assert my Fifth Amendment rights under the
 8   Constitution and decline to answer the question.
 9        Q   Did you serve in the military?
10        A   I did.
11        Q   What years did you serve, sir?
12        A   1957 to 1960.
13        Q   What branch?
14        A   Army.
15        Q   And where were you stationed?
16        A   Germany.
17        Q   Were you stationed overseas anywhere other
18   than Germany?
19        A   No.
20        Q   What were your duties in the Army?
21        A   I was artillery repairman in an armored unit.
22        Q   Did you have any combat experience?
23        A   No.
24        Q   Isn't it true that Eric Caine told you he had
```

```
 1   nothing whatsoever to do with the Sanchez murders?
 2        MS. EKL:  Objection, foundation and asked and
 3        answered.
 4        A   I assert my Fifth Amendment rights under the
 5   Constitution not to answer the question.
 6   BY MR. AINSWORTH:
 7        Q   Isn't it true that you observed another
 8   police detective provide Eric Caine with details of
 9   the murder before Eric Caine provided any of those
10   details to investigators?
11        MS. EKL:  Objection, foundation and asked and
12        answered.  You've been through these same
13        questions before.
14        A   I assert my Fifth Amendment rights under the
15   Constitution not to answer the question.
16   BY MR. AINSWORTH:
17        Q   Isn't it true that you observed another
18   Area 2 detective tell Eric Caine that he had -- the
19   Sanchezes had been stabbed to death before Eric Caine
20   said anything about the Sanchezes being stabbed to
21   death?
22        MS. EKL:  Objection, asked and answered,
23        form, foundation, assumes facts not in evidence.
24        A   I assert my Fifth Amendment rights under the
```

```
 1   Constitution not to answer the question.
 2   BY MR. AINSWORTH:
 3        Q   Isn't it true that you told Eric Caine when
 4   the Sanchezes were stabbed before the time that Eric
 5   Caine told you anything about when the Sanchezes had
 6   been stabbed to death?
 7        MS. EKL:  Objection, form, foundation,
 8        assumes facts not in evidence.
 9        A   I assert my Fifth Amendment rights under the
10   Constitution not to answer the question.
11   BY MR. AINSWORTH:
12        Q   Isn't it true that you knew, at the time that
13   Eric Caine gave an inculpatory statement, that his
14   inculpatory statement was false?
15        MS. EKL:  Objection, foundation.
16        A   I decline to answer, invoking my Fifth
17   Amendment rights under the Constitution.
18   BY MR. AINSWORTH:
19        Q   Isn't it true that you observed Detective
20   Madigan strike Eric Caine in the side of the head
21   when Eric Caine refused to sign the notice of his --
22   that Detective Madigan had written down?
23        MS. EKL:  Objection, form, foundation,
24        assumes facts not in evidence.
```

William Marley    May 29, 2012

Page 92

1      A   I assert my Fifth Amendment rights under the
2  Constitution not to answer the question.
3  BY MR. AINSWORTH:
4      Q   Isn't it true that you observed Eric Caine
5  call out in pain after Detective Madigan struck him
6  in the side of the head with a cupped hand?
7          MS. EKL:  Objection, form, foundation,
8      assumes facts not in evidence.
9      A   I assert my Fifth Amendment rights under the
10  Constitution not to answer the question.
11  BY MR. AINSWORTH:
12      Q   Isn't it true that you observed Eric Caine
13  holding his hand over his ear in pain after Detective
14  Madigan had struck him on the side of the head?
15          MS. EKL:  Objection, form, foundation,
16      assumes facts not in evidence.
17      A   I assert my Fifth Amendment rights under the
18  Constitution not to answer the question.
19  BY MR. AINSWORTH:
20      Q   Isn't it true that you reached an agreement
21  with Lieutenant Burge, Detective Pienta, Detective
22  Madigan, Detective Pederson and Detective McWeeny to
23  use force against Eric Caine to get him to provide an
24  involuntary and false confession to the Sanchez

William Marley    May 29, 2012

Page 93

1  murders?
2          MS. EKL:  Objection, form, foundation,
3      assumes facts not in evidence.
4      A   I assert my Fifth Amendment rights under the
5  Constitution and decline to answer the question.
6  BY MR. AINSWORTH:
7      Q   Isn't it true that you reached that agreement
8  prior to the time that Eric Caine provided a false
9  and inculpatory statement?
10          MS. EKL:  Objection, form, foundation,
11      assumes facts not in evidence.
12      A   I assert my rights under the Fifth Amendment
13  of the Constitution and decline to answer the
14  question.
15  BY MR. AINSWORTH:
16      Q   Isn't it true that you were present when Eric
17  Caine asked to speak to an attorney?
18          MS. EKL:  Objection, assumes facts not in
19      evidence, foundation.
20      A   I assert my Fifth Amendment rights under the
21  Constitution and decline to answer the question.
22  BY MR. AINSWORTH:
23      Q   Isn't it true that you denied Eric Caine the
24  right to speak to an attorney?

William Marley    May 29, 2012

Page 94

1          MS. EKL:  Objection, foundation.
2      A   I assert my Fifth Amendment rights under the
3  Constitution and decline to answer the question.
4  BY MR. AINSWORTH:
5      Q   Isn't it true that you observed another
6  Area 2 detective refuse to allow to Eric Caine to
7  access an attorney?
8          MS. EKL:  Objection, form, assumes facts not
9      in evidence.
10      A   I assert my Fifth Amendment rights under the
11  Constitution and decline to answer the question.
12          MR. AINSWORTH:  Let's mark this as Exhibit
13      No. 4.
14          (Documents marked as Marley Deposition Group
15          Exhibit 4 for identification.)
16      Q   Is this your handwriting, sir, on Exhibit
17  No. 4?
18      A   I'm asserting my Fifth Amendment rights under
19  the Constitution and decline to answer the question.
20      Q   This is, Exhibit No. 4 is a two page document
21  Bates numbered X72962 and 63.  What date was this GPR
22  that's marked as Exhibit No. 4 created?
23          MS. EKL:  Objection, foundation.
24      A   I assert my Fifth Amendment rights under the

William Marley    May 29, 2012

Page 95

1  Constitution and decline to answer the question.
2  BY MR. AINSWORTH:
3      Q   Does April have 31 days, sir?
4      A   I assert my rights under the Constitution not
5  to answer the question.
6      Q   Why did you date this document Exhibit No. 4
7  as April 31st?
8          MS. EKL:  Objection, assumes facts not in
9      evidence.
10      A   I assert my rights under the Fifth Amendment
11  to the Constitution not to answer the question.
12  BY MR. AINSWORTH:
13      Q   Isn't it true that you created the document
14  that's been marked as Exhibit No. 4 on a date after,
15  or at a date and time after Eric Caine provided a
16  court reported statement?
17      A   I assert my Fifth Amendment rights under the
18  Constitution and decline to answer.
19      Q   Isn't it true that you were present when
20  another Area 2 detective told Eric Caine that he
21  should just say that he was a lookout for the Sanchez
22  murders?
23          MS. EKL:  Objection, foundation, assumes
24      facts not in evidence.

William Marley    May 29, 2012
Page 96

```
1        A   I assert my Fifth Amendment rights under the
2   Constitution and decline to answer the question.
3   BY MR. AINSWORTH:
4        Q   Isn't it true that you were present when
5   another Area 2 detective told Eric Caine that he
6   should just say that he was -- that Aaron Patterson
7   committed the murders while he was just watching?
8        MS. EKL:  Objection, foundation, assumes
9        facts not in evidence.
10       A   I assert my Fifth Amendment rights under the
11  Constitution and decline to answer the question.
12  BY MR. AINSWORTH:
13       Q   Isn't it true that you knew other detectives
14  would use force against Eric Caine in an effort to
15  get him to provide an involuntary and false
16  confession to the Sanchez murders?
17       MS. EKL:  Objection, form, foundation,
18       assumes facts not in evidence.
19       A   I assert my Fifth Amendment rights under the
20  Constitution not to answer your question.
21  BY MR. AINSWORTH:
22       Q   Isn't it true that you and your fellow Area 2
23  detectives, between the years of 1980 and 1989, had a
24  practice of using force against suspects in order to
```

William Marley    May 29, 2012
Page 97

```
1   get them to provide involuntary statements?
2        MS. EKL:  Objection, form, foundation,
3        assumes facts not in evidence.
4        A   I assert my Fifth Amendment rights under the
5   Constitution not to answer your question.
6   BY MR. AINSWORTH:
7        Q   Isn't it true that you and your fellow Area 2
8   detectives had a practice of using force against
9   suspects at Area 2 between the years 1980 and 1989 in
10  order to get them to provide false confessions?
11       MS. EKL:  Objection, form, foundation,
12       assumes facts not in evidence.
13       A   I assert my Fifth Amendment rights under the
14  Constitution not to answer your question.
15       MR. AINSWORTH:  Let's mark this as Exhibit
16  No. 5, please.
17       (Document marked as Marley Deposition
18       Exhibit 5 for identification.)
19       Q   Showing you what's been marked as Exhibit
20  No. 5, is that your handwriting on that page, sir?
21       A   I assert my Fifth Amendment rights under the
22  Constitution and decline to answer your question.
23       Q   Can you tell us why this document is dated
24  April 31, 1986?
```

William Marley    May 29, 2012
Page 98

```
1        MS. EKL:  Objection, foundation.
2        A   I assert my Fifth Amendment rights under the
3   Constitution and decline to answer your question.
4   BY MR. AINSWORTH:
5        Q   Isn't it true that this document, Bates --
6   Exhibit No. 5 was created on a date and time after
7   Eric Caine had provided a court reported statement?
8        A   I assert my Fifth Amendment rights under the
9   Constitution and decline to answer your question.
10       Q   Isn't it true that Exhibit No. 5 was created
11  at a date and time after Aaron Patterson spoke with
12  the assistant state's attorney?
13       A   I assert my Fifth Amendment rights under the
14  Constitution and decline to answer your question.
15       Q   Are you going to assert your Fifth Amendment
16  rights and refuse to answer any questions in regard
17  to any questions I ask you about Exhibit No. 5?
18       MS. EKL:  I object to the form of the
19       question, specifically his refusal to answer
20       questions.  He's answered every question that
21       you've asked him, although he has asserted his
22       Fifth Amendment rights.  So I object to the form
23       of the question to that extent.
24
```

William Marley    May 29, 2012
Page 99

```
1   BY MR. AINSWORTH:
2        Q   You can answer.
3        A   Yes.
4        Q   And are you also going to respond by
5   asserting your Fifth Amendment rights to any question
6   I ask you about Exhibit No. 4?
7        A   Yes.
8        Q   Did you interrogate a person by the name of
9   Terry Harris on or about October 29, 1984?
10       A   I assert my Fifth Amendment rights under the
11  Constitution and decline to answer your question.
12       Q   Did you play any role in the decision to have
13  Terry Harris take a lie detector test?
14       MS. EKL:  Objection, form, assumes facts not
15       in evidence.
16       A   I assert my Fifth Amendment rights under the
17  Constitution and decline to answer your question.
18  BY MR. AINSWORTH:
19       Q   Did you interrogate Terry Harris at 11th and
20  State after he had taken a polygraph test?
21       MS. EKL:  Objection, foundation.
22       A   I assert my Fifth Amendment rights under the
23  Constitution and decline to answer your question.
24
```

BY MR. AINSWORTH:

Q   Isn't it true that you then twisted -- well, strike that.  Isn't it true that you twisted Terry Harris' right arm behind his back and asked him why he wasted your time going to take the lie detector test?

MS. EKL:  Objection, form, foundation, assumes facts not in evidence.

A   I assert my Fifth Amendment rights under the Constitution and decline to answer your question.

BY MR. AINSWORTH:

Q   Is it true that you observed another Area 2 detective twist Terry Harris' arm behind his back and ask him why he wasted his time going to take the test?

MS. EKL:  Objection, form, foundation, assumes facts not in evidence.

A   I assert my Fifth Amendment rights under the Constitution not to answer your question.

BY MR. AINSWORTH:

Q   Isn't it true that you denied Terry Harris access to an attorney?

MS. EKL:  Objection, foundation, form.

A   I assert my Fifth Amendment rights under the

Constitution and decline to answer your question.

BY MR. AINSWORTH:

Q   Isn't it true that you were present when Lieutenant Burge ordered Terry Harris to strip naked inside the interrogation room at Area 2?

MS. EKL:  Objection, foundation, assumes facts not in evidence.

A   I assert my Fifth Amendment rights under the Constitution not to answer the question.

BY MR. AINSWORTH:

Q   Isn't it true that you and your fellow Area 2 detectives forced Terry Harris to spend the night sitting in an interrogation room in his underwear in the cold the night of October 29, 1984?

MS. EKL:  Objection, form, foundation.

A   I assert my Fifth Amendment rights under the Constitution not to answer the question.

BY MR. AINSWORTH:

Q   Isn't it true that you observed Terry Harris at around 7 a.m. on October 30, 1984 wearing nothing but underwear after having sat through the night in a cold room?

MS. EKL:  Objection, form, assumes facts not in evidence.

A   I assert my Fifth Amendment rights under the Constitution and decline to answer your question.

BY MR. AINSWORTH:

Q   Isn't it true that you then observed an African-American sergeant grab Terry Harris by the neck and start choking him?

MS. EKL:  Objection, assumes facts not in evidence.

A   I assert my Fifth Amendment rights under the Constitution and decline to answer the question.

BY MR. AINSWORTH:

Q   Isn't it true that you observed an African-American sergeant grab Terry Harris by the neck and ask him how would you like to be strangulated?

MS. EKL:  Objection, foundation, assumes facts not in evidence.

A   I assert my Fifth Amendment rights under the Constitution and decline to answer the question.

BY MR. AINSWORTH:

Q   Isn't it true that you then refused to allow Terry Harris access to an attorney again?

MS. EKL:  Objection, form, foundation, assumes facts not in evidence.

A   I assert my Fifth Amendment rights under the Constitution and decline to answer the question.

BY MR. AINSWORTH:

Q   Isn't it true that you swore at Terry Harris?

MS. EKL:  Objection, form, foundation.

A   I assert my Fifth Amendment rights under the Constitution and decline to answer your question.

BY MR. AINSWORTH:

Q   Isn't it true that you threatened to use violence against Terry Harris if he didn't cooperate?

MS. EKL:  Objection, form, foundation.

A   I assert my Fifth Amendment rights under the Constitution and decline to answer your question.

BY MR. AINSWORTH:

Q   Isn't it true that you used force against Terry Harris -- well, strike that.  Isn't it true that you knew that other detectives were using force against Terry Harris in an effort to get -- to provide an involuntary and false confession?

MS. EKL:  Objection, form, foundation, assumes facts not in evidence.

A   I assert my Fifth Amendment rights and decline to answer the question.

1  BY MR. AINSWORTH:
2      Q   How many times were you investigated by a
3  member of OPS in regard to your activities as a
4  detective at Area 2?
5          MS. EKL:  Objection, assumes facts not in
6      evidence.
7      A   I assert my Fifth Amendment rights under the
8  Constitution and decline to answer your question.
9  BY MR. AINSWORTH:
10     Q   How many times were you interviewed by a
11 member of the Internal Affairs Division of the
12 Chicago police department about your activities as an
13 Area 2 detective?
14         MS. EKL:  Objection, assumes facts not in
15     evidence.
16     A   I assert my Fifth Amendment rights under the
17 Constitution and decline to answer your question.
18 BY MR. AINSWORTH:
19     Q   In April of 1986 were you aware of any
20 other -- of any Chicago police detective who had been
21 disciplined by the Chicago police department for
22 using force against an arrestee during interrogation?
23     A   I assert my Fifth Amendment rights under the
24 Constitution and decline to answer your question.

1          MR. AINSWORTH:  I'm sorry.  What was the last
2      question?
3          (Question read.)
4      Q   In April of 1986 did you know that even if
5  you used force against an arrestee during the
6  interrogation, that you would be disciplined for that
7  action?
8          MS. EKL:  Objection, form, assumes facts not
9      in evidence.
10     A   I assert my Fifth Amendment rights under the
11 Constitution not to answer your question.
12 BY MR. AINSWORTH:
13     Q   Isn't it true that it was your belief that if
14 you used a force against a suspect inside Area 2 in
15 April of 1986, that you wouldn't face any discipline
16 for that action?
17         MS. EKL:  Objection, foundation.
18     A   I assert my Fifth Amendment rights under the
19 Constitution not to answer your question.
20 BY MR. AINSWORTH:
21     Q   Sir, if there's any possibility that you will
22 testify at trial about any of your family members,
23 I'm going to ask you questions about them now.  If
24 you decline to answer those questions, then we'll ask

1  the Court to bar you from testifying about those
2  topics because you decline to testify about them now.
3  So sir, are you married?
4      A   No.
5      Q   Do you have any children?
6      A   No.
7      Q   Do you have any step children or step
8  grandchildren?
9      A   No.
10     Q   Have you ever been divorced?
11     A   No.
12     Q   Do you live with anyone else?
13     A   No.
14         MR. AINSWORTH:  Let's go off the record.
15         MR. SHELTON:  Going off the record.  The time
16     is 12:10.
17         (A recess was taken, after which the
18     proceedings were had:)
19         MR. SHELTON:  We are back on the record,
20     12:17.
21         MS. EKL:  And before you get started, I just
22     want to put on the record, the videographer did
23     indicate to me off the record that the sound is
24     fine and that he's had no problem with the sound

1      with it located where it is now.
2          MR. AINSWORTH:  And?
3          MS. EKL:  Well, based on your line of
4      questioning that this was somehow causing some
5      sort of problem that he wouldn't put it on his
6      person, I just wanted to put on the record that
7      the fact that it's not on his person but located
8      on this, whatever it's attached to, that it
9      hasn't caused any problems with the recording
10     device.
11         MR. AINSWORTH:  Well, we'll find out.
12     Q   Why aren't you wearing the --
13         MS. EKL:  I'm not going to let him answer
14     this.
15 BY MR. AINSWORTH:
16     Q   -- microphone on the lapel?
17         MS. EKL:  I'm not going to let him answer
18     this.  You've already been down this and it's
19     harassment.  I'm not going to -- don't answer
20     anything.  Just don't say anything further about
21     it.
22 BY MR. AINSWORTH:
23     Q   Are you going to answer the question, sir?
24         MS. EKL:  Don't answer anything.  Just don't

```
 1      answer it.
 2   BY MR. AINSWORTH:
 3      Q   Are you going to take your attorney's advice
 4   and not answer the question?
 5          MS. EKL:  He's already asked and answered it,
 6      Russell, about five times.  So no.
 7          MR. AINSWORTH:  All he has to do is tell me
 8      I'm not going to answer that question.  Then I --
 9          MS. EKL:  He's already told you he's not
10      going to answer it.  He's not answered it.  He's
11      told you I don't want to put it on my lapel, I
12      don't want to put it on my person.  There's no
13      issue with it and that's why I'm putting it on
14      the record.  This is completely harassing.  I'm
15      instructing him not to answer anything.  So until
16      you ask him a question that goes beyond whether
17      or not, why he hasn't put this microphone on his
18      lapel, he's not going to answer.  You can sit and
19      stare at him as long as you want.
20   BY MR. AINSWORTH:
21      Q   Are you going to answer the question, sir?
22          MS. EKL:  I'm instructing him not to answer.
23   BY MR. AINSWORTH:
24      Q   Are you going to take your attorney's advice
```

```
 1   and not answer the question?
 2          MS. EKL:  Move on.  Move on.
 3          MR. AINSWORTH:  I can't move on while I have
 4      a question pending.
 5          MS. EKL:  No, this is not a question.  This
 6      is harassment.  Move on.  Just move on.
 7          MR. AINSWORTH:  All he has to do is say --
 8          MS. EKL:  He doesn't have to do anything.
 9          MR. AINSWORTH:  -- I'm not going to answer
10      the question.
11          MS. EKL:  He doesn't have to do anything.  If
12      you want to have him ordered by the Court to
13      answer that question, go right ahead.  He doesn't
14      have to do anything at this point.  It's
15      harassment.
16          Really?  You're going to sit here and go --
17      fine.  We'll be here all day.  He's not going to
18      answer the question, Russell.  He's already
19      answered it.  This is childish.  Let's go.
20          MR. AINSWORTH:  All he has to do is say I'm
21      not going to answer the question and then I can
22      ask the next question.
23          MS. EKL:  I'm telling you he's not answering
24      the question.
```

```
 1          MR. AINSWORTH:  I have a question pending.
 2          MS. EKL:  He's not answering the question.
 3          MR. AINSWORTH:  Please tell me what rule says
 4      that you can just have him answer with silence
 5      and not tell me, not perfect the record by saying
 6      I'm not going to answer that question?  As long
 7      as he does that, then I can move on.
 8          MS. EKL:  He has answered the question more
 9      than one time, multiple times.  So the answer is
10      on the record.  You don't have the right to ask
11      him the question ten times.  Move on.
12          MR. AINSWORTH:  I'd like to know what his
13      reason is now for not putting the microphone on.
14          MS. EKL:  I know you'd like to know that.
15      He's already told you that he has no reason.  He
16      does not want it on.  He's not going to give you
17      any further answer than you've already asked him
18      ten times.
19          MR. AINSWORTH:  But he didn't say he has no
20      reason.  He just hasn't told me what reason there
21      is.
22          MS. EKL:  That's his reason.  He doesn't --
23      he's not putting it on.  That's his reason.
24          MR. AINSWORTH:  Ms. Ekl, I'm very happy to
```

```
 1      accept, you know, to question you, but I'd rather
 2      question the deponent, truthfully.
 3          MS. EKL:  And you have.  And you have,
 4      Russell, and this is ridiculous.  There's not an
 5      issue with the microphone, there's no reason for
 6      you to be asking him these questions.  Let's move
 7      on.  If you're done with your questions, we'd
 8      like to leave.
 9          MR. AINSWORTH:  All he has to do is just say
10      that I'm not going to answer that question.
11          MS. EKL:  He's answered the question.
12          MR. ARGER:  Could I make a suggestion?  Why
13      don't you ask all your other questions and then
14      come back to that last question and if they're
15      not going to answer it, they'll leave and you can
16      put that on the record.  Just finish all your
17      other questions.  I'm just trying to move this
18      thing along.
19          MR. AINSWORTH:  Well, I've got a pending
20      question and I --
21          MS. EKL:  And he's refusing to answer, so
22      there you've got your answer.
23          MR. AINSWORTH:  No, he's not refusing to
24      answer.  He's just giving me silence.  You're
```

1    saying he's refusing to answer.  I need to hear
2    it from the deponent.
3        MS. EKL:  He has already answered the
4    question.
5        MR. AINSWORTH:  And correct me if I'm wrong,
6    but it's my understanding that in order to, you
7    know, that the attorney can't speak for the
8    client.  The client has to then say I'm not going
9    to answer the question based on my attorney's
10   advice, based on whatever.  I just need to hear
11   it from the deponent.
12       MS. EKL:  But he's already answered it.  He
13   hasn't refused.  He's already answered it.
14       MR. AINSWORTH:  Right.  But now he's not
15   doing anything.  So I'm just --
16   Q   Sir, do you remember what the question is?
17       MS. EKL:  Are you done?  Because we're going
18   to leave.  If you're done, we're going to leave.
19       MR. AINSWORTH:  I've got more questions for
20   him.
21       MS. EKL:  Okay.  Well, then ask the
22   questions.  But if you continue on this, we're
23   going to assume that you're done.  Do whatever
24   you want with it.  He's not going to be answering

1    the question.  Move on or we're going to leave.
2    It's up to you.  You can have a stare down or ask
3    a question.  At this point you're being
4    completely harassing.  Let's go.
5        MR. AINSWORTH:  Please tell me, Ms. Ekl, what
6    is harassing about asking a witness to put a
7    microphone on their lapel?
8        MS. EKL:  There's no reason to put a -- it's
9    his own personal desire not to have a microphone
10   on him.  There's no need for it, I verified with
11   the videographer, he's picking up the sound.
12   There's no need for it to be on his lapel.  Why
13   is it your desire to have it on his lapel?  Why
14   do you have to know why he won't put it on his
15   lapel?  What does it matter?  Tell me where in
16   the rules it requires that he put a microphone
17   attached to his person.
18       MR. AINSWORTH:  Oh, it doesn't.
19       MS. EKL:  Right.
20       MR. AINSWORTH:  But it allows me to record,
21   however we choose, including by stenographic
22   means, audio means and video means.
23       MS. EKL:  And you're getting it by audio
24   means.  It's picking it up.  It doesn't say audio

1    means attached to his person.
2    BY MR. AINSWORTH:
3    Q   Turn to Exhibit 5, please, if you have that
4    there.  Please read the first line of this GPR.
5    A   I assert my Fifth Amendment rights under the
6    Constitution not to answer your question.
7    Q   Does it say Saigon, open paren, south
8    Chicago, closed paren?
9        MS. EKL:  Objection, foundation.
10   A   I assert my Fifth Amendment rights under the
11   Constitution not to answer your question.
12   BY MR. AINSWORTH:
13   Q   Did you write that?
14   A   I assert my Fifth Amendment rights under the
15   Constitution not to answer your question.
16   Q   Why did you write that?
17       MS. EKL:  Objection, assumes facts not in
18   evidence.
19   A   I assert my Fifth Amendment rights under the
20   Constitution not to answer your question.
21   BY MR. AINSWORTH:
22   Q   Read the second line of this document.
23   A   I assert my Fifth Amendment rights under the
24   Constitution not to answer your question.

1    Q   Does it say made the ninja move?
2        MS. EKL:  Objection, foundation.
3    A   I assert my Fifth Amendment rights under the
4    Constitution not to answer your question.
5    BY MR. AINSWORTH:
6    Q   Did you write that?
7    A   I assert my Fifth Amendment rights under the
8    Constitution not to answer your question.
9    Q   Why did you write that?
10       MS. EKL:  Objection, assumes facts not in
11   evidence.
12   A   I assert my Fifth Amendment rights under the
13   Constitution not to answer your question.
14   BY MR. AINSWORTH:
15   Q   Read the next line on this document.
16       MR. ARGER:  Is that a question?
17   A   I assert my Fifth Amendment rights under the
18   Constitution not to answer your question.
19   BY MR. AINSWORTH:
20   Q   Does it say I took control, I knew what I had
21   to do?
22       MS. EKL:  Objection, foundation.
23   A   I assert my Fifth Amendment rights under the
24   Constitution not to answer your question.

William Marley    May 29, 2012

Page 116

1    BY MR. AINSWORTH:
2        Q    Did you write that?
3        A    I assert my Fifth Amendment rights under the
4    Constitution not to answer your question.
5        Q    Why did you write that?
6            MS. EKL:  Objection, assumes facts not in
7        evidence.
8        A    Same answer, my Fifth Amendment rights under
9    the Constitution not to answer your question.
10   BY MR. AINSWORTH:
11       Q    Why are you asserting your Fifth Amendment
12   rights not to answer the questions here today?
13           MS. EKL:  Objection.  He does not have to
14       state why he -- it's completely improper to ask
15       him the basis for his Fifth Amendment rights at
16       this stage.
17       A    I assert my Fifth Amendment rights under the
18   Constitution not to answer your question.
19   BY MR. AINSWORTH:
20       Q    Do you have a good faith basis to believe
21   that a truthful response to questions here today
22   would subject you to criminal liability?
23       A    I assert my Fifth Amendment rights under the
24   Constitution and decline to answer your question.

---

William Marley    May 29, 2012

Page 117

1        Q    Have you decided to assert your Fifth
2    Amendment right in consultation with any attorneys?
3        A    I assert my Fifth Amendment right under the
4    Constitution and decline to answer your questions.
5        Q    Which attorneys have you consulted with on
6    that topic?
7            MS. EKL:  Objection, assumes facts not in
8        evidence.
9        A    I assert my Fifth Amendment rights under the
10   Constitution not to answer your questions.
11   BY MR. AINSWORTH:
12       Q    Pause before you answer this question.  What
13   did those attorneys that you consulted with tell you
14   with regard to whether or not to assert your Fifth
15   Amendment rights?
16           MS. EKL:  Objection, assumes facts not in
17       evidence and also attorney-client privileged,
18       confidential.  I'm going to instruct him not to
19       answer that question based on attorney-client
20       privilege on the one hand, but also assert the
21       other objection.  You don't have to answer that.
22   BY MR. AINSWORTH:
23       Q    Are you going to take your attorney's advice
24   and not answer that question?

---

William Marley    May 29, 2012

Page 118

1            MS. EKL:  I can't tell you to answer yes or
2        no.
3        A    Yes.
4    BY MR. AINSWORTH:
5        Q    Can you read the next line of this document?
6            MS. EKL:  Just for the record, what line are
7        you referring to?
8            MR. AINSWORTH:  The one right below I took
9        control, I knew what I had to do.
10       A    I assert my Fifth Amendment rights under the
11   Constitution and decline to answer your question.
12       Q    Does it say secure the situation?
13           MS. EKL:  Objection, foundation.
14       A    I assert my Fifth Amendment rights under the
15   Constitution and decline to answer your question.
16   BY MR. AINSWORTH:
17       Q    Did you write that?
18       A    I assert my Fifth Amendment rights under the
19   Constitution and decline to answer your question.
20       Q    Why did you write that?
21           MS. EKL:  Objection, assumes facts not in
22       evidence.
23       A    Same answer.  I assert my Fifth Amendment
24   rights under the Constitution and decline to answer

---

William Marley    May 29, 2012

Page 119

1    your question.
2    BY MR. AINSWORTH:
3        Q    Who's your supervisor currently?
4        A    I assert my Fifth Amendment rights under the
5    Constitution and decline to answer your question.
6        Q    Does your supervisor know that you're giving
7    a deposition here today?
8            MS. EKL:  Objection, foundation.
9        A    I assert my Fifth Amendment rights under the
10   Constitution and decline to answer your question.
11   BY MR. AINSWORTH:
12       Q    Have you spoken to anyone within the Cook
13   County state's attorney's office about any
14   investigation into potential misconduct by Area 2
15   police detectives?
16           MS. EKL:  Objection, form, foundation.
17       A    I assert my Fifth Amendment rights under the
18   Constitution and decline to answer your question.
19   BY MR. AINSWORTH:
20       Q    Can you read the next line on this document?
21       A    I decline to answer your question, citing my
22   Fifth Amendment rights under the Constitution.
23       Q    Does it say scoped out the whole crib?
24           MS. EKL:  Objection, foundation.

William Marley    May 29, 2012

```
 1        A   I assert my Fifth Amendment rights under the
 2   Constitution and decline to answer your question.
 3   BY MR. AINSWORTH:
 4        Q   Did you write that?
 5        A   I assert my Fifth Amendment rights under the
 6   Constitution and decline to answer your question.
 7        Q   Why did you write that?
 8        MS. EKL:  Objection, assumes facts not in
 9   evidence.
10        A   I assert my Fifth Amendment rights under the
11   Constitution and decline to answer your question.
12        MR. SHELTON:  I'm going to have to change
13   tapes real soon.
14        MR. AINSWORTH:  Why don't you change tapes.
15        MR. SHELTON:  Going off the record.  This
16   concludes tape one of the deposition of William
17   Marley.  The time is 12:31 p.m.
18        (Whereupon a brief interruption occurred.)
19        MR. AINSWORTH:  Mark this as 6.
20        (Documents marked as Marley Deposition Group
21          Exhibit 6 for identification.)
22        MR. SHELTON:  We are back on the record.
23   This is the beginning of tape two of the
24   deposition of William Marley.  The time is
```

William Marley    May 29, 2012

```
 1   12:33 p.m.
 2   BY MR. AINSWORTH:
 3        Q   Did you question a person named Marva Hall in
 4   the course of the Sanchez homicide investigation?
 5        A   I assert my Fifth Amendment privilege under
 6   the Constitution and decline to answer your question.
 7        Q   Isn't it true that you knew that Marva Hall
 8   was not telling the truth about Aaron Patterson
 9   having something to do with the Sanchez murders when
10   you questioned Marva Hall?
11        MS. EKL:  Objection, form, foundation,
12   assumes facts not in evidence.
13        A   I assert my Fifth Amendment rights under the
14   Constitution and decline to answer your question.
15   BY MR. AINSWORTH:
16        Q   I'm showing you what's been marked as Exhibit
17   No. 6.  This is a nine page document Bates numbered
18   X72930 through 72938.  Sir, did you prepare any
19   portion of this document?
20        A   I assert my Fifth Amendment rights under the
21   Constitution and decline to answer your question.
22        Q   Did you provide any information that was used
23   to compile this report?
24        A   I'm asserting my Fifth Amendment rights under
```

William Marley    May 29, 2012

```
 1   the Constitution.  I decline to answer the question.
 2        Q   Which portions of this report did you provide
 3   information about?
 4        A   I decline to answer your question, citing my
 5   Fifth Amendment privilege.
 6        Q   Are you going to assert your Fifth Amendment
 7   privilege in response to the questions I ask you
 8   about Exhibit No. 6?
 9        A   Yes.
10        Q   Let's go back to Exhibit No. 5.  Can you read
11   the next line that starts with coward?
12        A   I assert my Fifth Amendment privilege and
13   decline to answer your question.
14        Q   Does it say coward ran off, Caine the pussy?
15        MS. EKL:  Objection, foundation.
16        A   I assert my Fifth Amendment rights under the
17   Constitution and decline to answer your question.
18   BY MR. AINSWORTH:
19        Q   Did you write that?
20        A   I assert my Fifth Amendment rights under the
21   Constitution and decline to answer your question.
22        Q   Why did you write that?
23        MS. EKL:  Objection, assumes facts not in
24   evidence.
```

William Marley    May 29, 2012

```
 1        A   Same answer.  I assert my Fifth Amendment
 2   rights under the Constitution and decline to answer
 3   your question.
 4   BY MR. AINSWORTH:
 5        Q   How many times have you been sued?
 6        A   Citing my Fifth Amendment privilege, I would
 7   decline to answer your question.
 8        Q   Did you know that Aaron Patterson was a son
 9   of a police officer when you questioned him?
10        MS. EKL:  Objection, assumes facts not in
11   evidence.
12        A   Asserting my Fifth Amendment rights under the
13   Constitution, I decline to answer your question.
14   BY MR. AINSWORTH:
15        Q   Did you ever learn that Aaron Patterson's son
16   was a police officer?
17        MS. EKL:  Objection to form.  I think you
18   misspoke.  You might want to rephrase that.
19        A   I don't understand your question.
20   BY MR. AINSWORTH:
21        Q   Did you ever learn that Aaron Patterson's
22   father was a police officer?
23        A   Asserting my Fifth Amendment rights under the
24   Constitution, I decline to answer your question.
```

William Marley    May 29, 2012

Page 124

```
1     Q   Sir, between the years of 1980 and 1989 you
2   knew that Area 2 detectives would strike suspects in
3   the side of their head to cause a painful injury to
4   their ears in an effort to get them to provide
5   involuntary and false confessions, is that correct?
6         MS. EKL:  Objection.
7         MR. ARGER:  In addition to my standing
8     objections which still apply.  I think these have
9     been asked and answered.
10        MS. EKL:  And objection, form, foundation,
11    assumes facts not in evidence.
12    A   I'm asserting my Fifth Amendment rights under
13  the Constitution and decline to answer your question.
14  BY MR. AINSWORTH:
15    Q   Isn't it true, sir, that from 1980 to 1989
16  you knew that other Area 2 detectives, including
17  yourself, would use suffocation as a tool to get
18  criminal suspects to provide false and involuntary
19  confessions?
20        MS. EKL:  Objection, form, foundation,
21    assumes facts not in evidence.
22    A   Asserting my Fifth Amendment rights under the
23  Constitution, I decline to answer your question.
24
```

William Marley    May 29, 2012

Page 125

```
1   BY MR. AINSWORTH:
2     Q   Isn't it true, sir, that you knew that other
3   Area 2 detectives, including yourself, from 1980 to
4   1989 would use the tactic of having one criminal
5   suspect view another one who had been already
6   previously beaten in an effort to intimidate the
7   first criminal suspect into providing a false and
8   involuntary statement?
9         MS. EKL:  Objection, form, foundation,
10    assumes facts not in evidence.
11    A   Asserting my Fifth Amendment rights, I
12  decline to answer your question.
13  BY MR. AINSWORTH:
14    Q   Isn't it true that you withheld exculpatory
15  evidence from the prosecution and from Eric Caine's
16  defense team as part of a widespread practice that
17  was used in Area 2 to withhold exculpatory evidence
18  from criminal suspects?
19        MS. EKL:  Objection, form, foundation,
20    assumes facts not in evidence.
21        MR. ARGER:  Join.
22    A   Asserting my Fifth Amendment rights, I
23  decline to answer your question.
24
```

William Marley    May 29, 2012

Page 126

```
1   BY MR. AINSWORTH:
2     Q   How do you know Detective McWeeny?
3     A   I assert my Fifth Amendment rights under the
4   Constitution and decline to answer your question.
5     Q   How do you know Detective Pederson?
6     A   Same answer.  I assert my Fifth Amendment
7   rights under the Constitution and decline to answer
8   your question.
9     Q   How do you know Detective Burge?
10    A   Same answer.  I decline to answer your
11  question, citing my Fifth Amendment privilege.
12    Q   How do you know Detective Pienta?
13    A   Again I assert my constitutional privilege.
14  I decline to answer your question.
15    Q   When was the last time you saw Detective
16  Burge?
17    A   I assert my Fifth Amendment rights under the
18  Constitution and decline to answer your question.
19    Q   When was the last time you spoke with Jon
20  Burge?
21    A   I assert my Fifth Amendment rights under the
22  Constitution and decline to answer your question.
23    Q   Between 1980 and 1989 did you socialize with
24  Jon Burge?
```

William Marley    May 29, 2012

Page 127

```
1     A   Citing my Fifth Amendment privilege, I
2   decline to answer your question.
3     Q   When was the last time you socialized with
4   Jon Burge?
5         MS. EKL:  Objection, assumes facts not in
6     evidence.
7     A   Citing my Fifth Amendment privilege, I
8   decline to answer your question.
9   BY MR. AINSWORTH:
10    Q   When was the last time you socialized with
11  Detective Pienta?
12        MS. EKL:  Objection, assumes facts not in
13    evidence.
14    A   Asserting my Fifth Amendment rights under the
15  Constitution, I decline to answer your question.
16  BY MR. AINSWORTH:
17    Q   When was the last time you socialized with
18  Detective McWeeny?
19        MS. EKL:  Objection, assumes facts not in
20    evidence.
21    A   Asserting my Fifth Amendment rights under the
22  Constitution, I decline to answer your question.
23  BY MR. AINSWORTH:
24    Q   When was the last time you socialized with
```

1  Detective Madigan?
2      MS. EKL:  Objection, assumes facts not in
3  evidence.
4      A  Asserting my Fifth Amendment rights under the
5  Constitution, I decline to answer your question.
6  BY MR. AINSWORTH:
7      Q  Let's go back to Exhibit No. 5.  Can you read
8  the next line, the line that begins with the chump?
9      A  Citing my Fifth Amendment rights, I decline
10  to answer your question.
11      Q  Does it say the chump first stated -- started
12  backing up?
13      MS. EKL:  Objection, foundation.
14      A  I assert my Fifth Amendment privilege not to
15  answer your question under the Constitution.
16  BY MR. AINSWORTH:
17      Q  Did you write that?
18      A  I assert my Fifth Amendment rights under the
19  Constitution not to answer your question.
20      Q  Why did you write that?
21      MS. EKL:  Objection, assumes facts not in
22  evidence.
23      A  Same answer.  I assert my Fifth Amendment
24  rights under the Constitution not to answer your

1  question.
2  BY MR. AINSWORTH:
3      Q  Have you ever been on Jon Burge's boat?
4      MS. EKL:  Objection, assumes facts not in
5  evidence.
6      A  I assert my Fifth Amendment right to the
7  Constitution and decline to answer your question.
8  BY MR. AINSWORTH:
9      Q  Can you read the next line on Exhibit No. 5?
10      A  I decline to answer your question, citing my
11  Fifth Amendment privilege.
12      Q  Does it say I moved on him till I got the job
13  done?
14      MS. EKL:  Objection, foundation.
15      A  I assert my Fifth Amendment rights under the
16  Constitution not to answer your question.
17  BY MR. AINSWORTH:
18      Q  Did you write that?
19      A  I assert my Fifth Amendment rights under the
20  Constitution not to answer your question.
21      Q  Why did you write that?
22      MS. EKL:  Objection, assumes facts not in
23  evidence.
24      A  I assert my Fifth Amendment rights under the

1  Constitution not to answer your question.
2  BY MR. AINSWORTH:
3      Q  When did you write that?
4      MS. EKL:  Objection, assumes facts not in
5  evidence.
6      A  Same answer, I avail myself of the Fifth
7  Amendment and decline to answer your question.
8  BY MR. AINSWORTH:
9      Q  Isn't it true that you know Aaron Patterson
10  had nothing to do with the Sanchez murders?
11      A  I assert my Fifth Amendment rights under the
12  Constitution not to answer your question.
13      Q  Is it your assertion that the allegations
14  lodged against you by Aaron Patterson are false?
15      MS. EKL:  Objection, form.
16      A  I assert my Fifth Amendment rights under the
17  Constitution not to answer your question.
18  BY MR. AINSWORTH:
19      Q  Tell me every witness and every piece of
20  paper that you can point to that would show that the
21  allegations against you by Aaron Patterson are false.
22      MS. EKL:  Objection, form.
23      A  I assert my Fifth Amendment rights under the
24  Constitution not to answer your question.

1  BY MR. AINSWORTH:
2      Q  Is it your position that the allegations
3  lodged against you by Eric Caine are false?
4      MS. EKL:  Objection, form.
5      A  I assert my Fifth Amendment rights under the
6  Constitution not to answer your question.
7  BY MR. AINSWORTH:
8      Q  Tell me every person who will testify on your
9  behalf that the allegations are false and every piece
10  of paper that you can point to that would show that
11  the allegations are false.
12      MS. EKL:  Objection, form.
13      A  I assert my Fifth Amendment rights under the
14  Constitution not to answer your question.
15  BY MR. AINSWORTH:
16      Q  Why won't you wear the microphone?
17      MS. EKL:  Objection.  We are not going down
18  this road again.  I'm instructing him not to
19  answer the question.
20  BY MR. AINSWORTH:
21      Q  Are you going to take your attorney's advice
22  and not answer the question?
23      MS. EKL:  Are you done with your other questions?
24      MR. AINSWORTH:  I am.

```
 1        MS. EKL:  Okay.  Well, we're done today.
 2        MR. AINSWORTH:  Are you reserving signature?
 3        MS. EKL:  I am waiving signature.
 4        MR. AINSWORTH:  Are you going to answer the
 5   question, sir?
 6        MS. EKL:  We're done.  We're done.
 7        MR. ARGER:  Just for the record, I do not have
 8   any questions.
 9        MR. SHELTON:  Going off the record.  This
10   concludes tape two and concludes the deposition of
11   William Marley.  The time is 12:46 p.m.
12        MR. AINSWORTH:  Thank you very much for your
13   time.
14             (WITNESS EXCUSED.)
15
16
17
18
19
20
21
22
23
24
```

```
 1   STATE OF ILLINOIS   )
                         ) SS.
 2   COUNTY OF C O O K   )
 3        I, LYDIA B. PINKAWA, CSR and Notary Public in
 4   and for the County of Cook and State of Illinois, do
 5   hereby certify that on May 29, 2012, at 10:26 a.m.,
 6   at Suite 100, 312 North May Street, Chicago,
 7   Illinois, the deponent WILLIAM MARLEY personally
 8   appeared before me.
 9        I further certify that the said William Marley
10   was by me first duly sworn to testify and that the
11   foregoing is a true record of the testimony given by
12   the witness.
13        I further certify that the deposition
14   terminated at 12:46 p.m.
15        I further certify that I am not counsel for nor
16   related to any of the parties herein, nor am I
17   interested in the outcome hereof.
18        In witness whereof, I have hereunto set my hand
19   and seal of office this 1st day of August, 2012.
20
21
22                        Notary Public
23   CSR No. 084-002342 - Expiration Date: May 31, 2013
24
```

**A**
Aaron 36:3,20 37:5
40:10,17,24 74:6,14
45:18 46:5,14,15,23
47:6,13,21 48:3,11
48:21,21,22 50:15,22
51:8,9,17,24 56:6,16
57:1,8,16,22,23 58:9
58:16,24 59:9,11,12
59:19,20 60:4,6,6,14
60:15,16,24 61:1,2
61:10,12,19,20 62:4
62:11,19 63:3,11,19
64:3,10 65:10 66:2,9
66:18,24 67:7,17,23
68:8,15,24 69:9,18
70:3,11,20 71:5,14
72:23,24,74:6,14
73:6,13,24 74:6,14
74:23 75:1,7,15,23
76:6,15,21 77:5,10
77:16,18 78:1,2,12
78:21 79:5,11,21
80:4,12,21,23 81:9
81:17,19,20,22 82:5
82:11,20 83:6,8,15
84:4,5,14,23 85:10
85:18 86:2,11,21,22
86:5 89:6,11,18
121:8 123:8,15,21
130:9,14,21
able 6:2 14,23 17:15
18:21 22:22
absolutely 20:16
abuse 89:1
accept 111:1
access 94:7 100:22
102:22
accommodations
16:14
accurately 6:2
accused 27:20
acted 32:19 33:6,19
34:5
acting 6:10 28:2
action 105:7,16
activities 104:3,12
actual 23:4
addition 124:7
additional 53:12 73:21
adopting 6:16
advice 6:10 108:3,24
112:10 117:23
131:21
Affairs 104:11
afforded 6:12
African-American
102:5,13
agree 5:8,12,12 19:19
85:12
agreed 5:4
agreement 4:21,23
9:16 78:11 92:20
ahead 16:12 109:13
Ainsworth 2:2 3:5
4:15,15 5:8,20 6:18
6:20 7:11 8:24 9:4
9:19 11:21 12:8,16
12:20 13:12 14:3,15
15:3,9,15,21 16:2,18
17:2,16,19 18:1,8,16
19:4,19 20:1,4,12,19
21:4,13 22:5,10 23:5
24:6 25:11 27:19
28:18 29:9 30:3,10
30:18 31:3,10,21
32:1,11 33:1,13 34:1
34:10,18 35:3,16,22
36:8,16 37:1,13 38:1
38:12,19 39:5,12,16
40:8,14,21 41:4,12
42:1,9,16,23 43:6,19
44:16,23 45:16 46:3
46:12,21 47:5,12,19
48:2,10,18 49:4,11
50:21 51:6,16,23
52:7,15,23 53:6,18
54:2,11,19 55:2,10
55:19 56:4,13,21
57:6,14,21 58:6,14
58:22 59:8,17 60:2
60:12,22 61:8,17
62:2,9,17 63:1,9,17
64:1,9,17 65:1,9,16
66:1,8,16,23 67:6,14
67:21 68:5,13,22
69:7,15 70:1,10,18
71:3,12,20 72:4,12
72:20 73:4,12,20
74:5,12,20 75:6,14
75:22 76:5,14,20
77:3,9,15,23 78:9
79:3,10,18 80:3,11
80:19 81:7,15 82:3
82:10,19 83:4,14,19
83:1,20
anew 43:11
annoying 43:10
answer 6:11 7:12
11:19 14:4,18 15:12
16:19,22 17:22,23
18:9 19:1,5 21:17,23
22:18,22 27:11,18,24
29:19 30:2,9,17 31:2
31:9,17 32:10,15,23
33:12,24 34:9,17
35:2,8,15,21 36:7,15
36:24 37:12,18,23
38:11,18,22 39:4,11
39:21 40:1,7,13,20
41:3,11,17,23 42:8
42:15,22 43:5,18
44:3,9,15,22 45:8,15
46:2,11,20 47:4,11
47:18 48:1,9,17 49:3
49:10,15,19,22 50:2
50:9,13,20 51:5,15
51:22 52:6,14,22
53:8,9,17 54:1,10,18
55:1,9,18 56:3,12,20
57:5,13,20 58:5,13
58:21 59:7,16 60:1
60:11,21 61:7,16
62:1,8,16,24 63:8,16
63:24 64:8,16,23
65:8,15,23 66:7,15
66:22 67:5,13,20
68:4,12,21 69:6,14
69:22,23 70:9,17
71:2,11,19 72:3,11
72:19 73:3,11,19
74:4,11,18 75:5,13
75:21 76:4,13,19
77:2,8,14,22 78:8,18
78:23,24 79:2,9,17
79:24 80:2,10,18
80:24 81:6,14,23
82:9,13,21 83:3,13
83:21 84:11,18,24
84:1,20 90:5,18,24
90:5,15 91:1,10,16
92:2,10,18 93:5,13
93:21 94:3,11,19
95:1,5,11,18 96:2,11
96:20 97:5,14,22
98:3,9,14,16,19 99:2
99:11,17,23 100:10
100:19 101:1,9,17
102:2,10,19 103:2,7
103:13,23 104:8,17
104:24 105:11,19,24
106:10,19,24 107:12
107:13,17,19,23,24
108:1,4,8,10,15,18
108:21,22 109:1,9,13
109:18,21 110:4,6,9
110:17 111:10,15,21
113:13
```

```
80:2,9,17 81:5,13
82:1,8,17 83:2,12,17
84:1,9,17 85:4,15,23
86:7,17 87:2,11,18
88:2,12,22 89:3,7
90:4,14,24 91:9,17
92:1,9,17 93:4,12,20
94:2,10,18,24 95:9,10
95:17 96:1,10,19
97:4,13,21 98:2,8,13
98:15,22 99:5,10,16
99:22 100:9,18,24
101:8,16 102:1,9,18
103:1,6,12,22 104:7
104:16,23 105:10,18
105:24 106:9,18,23
107:11,18 108:7,14,17
108:23 109:8,17,20
110:3,5,16,23 111:9
111:14,20 112:7,13
113:12
anew 43:11
anybody 24:22,24
anywhere 31:11
413:3,11,17,23 42:8
42:15,22 43:5,18
44:3,9,15,22 45:8,15
46:2,11,20 47:4,11
47:18 48:1,9,17 49:3
49:10,15,19,22 50:2
50:9,13,20 51:5,15
51:22 52:6,14,22
53:8,9,17 54:1,10,18
55:1,9,18 56:3,12,20
57:5,13,20 58:5,13
58:21 59:7,16 60:1
60:11,21 61:7,16
62:1,8,16,24 63:8,16
63:24 64:8,16,23
65:8,15,23 66:7,15
66:22 67:5,13,20
68:4,12,21 69:6,14
69:22,23 70:9,17
71:2,11,19 72:3,11
72:19 73:3,11,19
74:4,11,18 75:5,13
75:21 76:4,13,19
77:2,8,14,22 78:8,18
78:23,24 79:2,9,17
79:24 80:2,10,18
80:24 81:6,14,23
82:9,13,21 83:3,13
83:21 84:11,18,24
84:1,20 85:1,7 90:5,18,24
86:8,18 87:3,12,19
88:8,18 89:2,4,6
88:13,17,20 89:13
90:10,14,6,9
anew 43:11
annoying 43:10
answer 6:11 7:12 14:12,13
answered 9:4 14:12,13
14:13 15:10,13 16:24
21:2 22:2 43:2 69:3
69:23 70:16,20
90:3,12,22 98:20
108:5,10 109:19
110:8 111:9 118:8
112:12,13 124:9
answering 9:5 109:23
110:2 112:24
Anthony 24:22,24
anybody 24:2
appeared 2:5,10,15
133:8
application 24:9,11
71:6
applied 24:16 25:3,6
25:10
apply 124:8
appreciate 16:12
approximate 49:16
April 31:5,13 38:20,24
39:6 40:22 45:5,22
47:8,14 48:13 49:5
49:12,16,20,24 50:3
50:6,10 62:11 67:17
79:13,21,22 87:15,22
95:3,7 97:24 104:19
105:4,15
111:22,24 112:1,9
114:6,11,15,20,24
115:4,8,13,18,24
116:4,8,9,12,18,24
117:4,10,12,19,21,24
118:1,11,15,19,23,24
119:5,10,18,21 120:2
120:6,11 121:6,14,21
122:1,4,13,17,21
123:1,2,7,13,24
124:13,23 125:12,23
126:4,6,7,10,10,14
126:18,22 127:2,8,15
127:22 128:5,10,15
128:19,23,24 129:7
130:1,6,11,21 131:5
131:14,19,22 132:4
132:8
application 24:9,11
71:6
applied 24:16 25:3,6
25:10
appeared 2:5,10,15
approximate 49:16
area 6:4,7,23 7:20 8:1
8:7,13 9:8 21:18
25:19,22 26:16 35:24
36:11 38:7 43:13
45:5,11,21 46:7,23
47:20 48:5,12 61:20
77:4 80:21 83:6
86:11 88:18 89:2,6
90:18 94:6 95:20
96:5,22 97:7,9
100:12 101:5,11
104:4,13 105:14
109:14 124:2,16
125:3,17
Arger 2:12 4:17,17
8:17 9:14 12:6,17,9
17:13,18 20:2 31:18
31:23 111:12 115:16
124:7 125:21 132:7
arguing 19:16
arm 100:4,13
armored 89:21
Army 89:14,22
Arnone 102:4 105:5
artillery 89:21
asked 11:18 13:5
14:12 15:10,15 16:24
20:20 21:2 22:2 38:3
43:2 45:1 51:24
66:18 69:3 90:2,11
90:22 93:17 98:20
100:4 108:5 110:17
124:9
asking 8:18 17:5 21:7
22:23 23:6 111:6
113:6
ass 51:1,8
assert 6:15,24 7:3,13
7:17,22 8:4,10 9:17
9:22 10:2,7,11,15,19
10:23 21:16,20 27:10
27:17,23 28:5,11,16
28:24 29:7,13,18
30:1,8,16 31:1,8,16
```

32:9,14,22 33:11,23
34;8,16 35:1,7,14,20
36:6,14,23 37:11,17
37:22 38:2,10,17,21
39:3,10,20,24 40:6
40:12,19 41:2,10,16
41:22 42:7,14,21
43:4,17 44:8,13,21
45:7,14 46:1,10,19
47:3,10,17,24 48:8
48:16 49:2,9,14,18
49:21 50:1,8,12,19
51:4,14,21 52:5,13
52:21 53:8,16,24
54:9,17,24 55:8,17
56:2,11,19 57:4,12
57:19 58:4,12,20
59:6,15,24 60:10,20
61:6,15,24 62:7,15
62:23 63:7,15,23
64:7,15,22 65:7,14
65:22 66:6,14,21
67:4,12,19 68:3,11
68:20 69:5,13,22
70:8,16 71:1,10,18
72:2,10,18 73:2,10
73:18 74:3,10 75:4
75:12,20 76:3,12,18
77:1,7,13,21 78:7,17
79:1,8,16 80:9,17
81:5,13 82:1,8,17
83:2,12,17 84:1,9,17
85:4,15,23 86:7,17
87:2,11,18 88:2,12
89:3,7 90:4,14,24
91:9 92:1,9,17 93:4
93:12,20 94:2,10,24
95:4,10,17 96:1,10
96:19 97:4,13,21
98:2,8,13,15 99:10
99:16,22 100:9,18,24
101:8,16 102:1,9,18
104:16,23 105:10,18
114:5,10,14,19,23
115:3,7,12,17,23

116:3,17,23 117:1,3
117:9,14,20 118:10
118:14,18,23 119:4,9
119:17 120:1,5,10
121:5,13,20 122:6,12
122:16,20 123:1
126:3,6,13,17,21
128:14,18,23 129:6
129:15,19,24 130:11
130:16,23 131:5,13
asserted 98:21
asserting 44:24 74:18
80:1 88:21 94:18
99:5 116:11 121:24
123:12,23 124:12,22
125:11,22 127:14,21
127:23 128:2,9
assertion 8:20 130:13
assignments 22:11,16
22:20 23:4
assist 56:6,15,24
assistant 41:6 98:12
assisted 55:20 56:22
assisting 40:3
association 4:4
assume 112:23
assumes 7:9 29:5,23
30:6,14,24 31:6 32:8
32:21 33:10,22 34:7
34:15 35:12 36:4,13
36:21 37:10 38:9,15
39:1,8 40:4 41:9,20
42:5,12,19 43:3,15
44:19 45:12,24 46:8
46:17 47:1,15,22
48:6,14 49:1,7 50:17
51:2,13,19 52:4,11
52:19 53:4,14,22
54:7,15,22 55:6,15
55:24 56:9,17 57:2
57:11,17 58:3,10,19
59:5,14,23 60:9,19
61:5,14,22 62:6,13
62:21 63:5,13,21
64:5,13,20 65:5,12
65:20 66:4,13,19

67:2,10 68:2,10,19
69:4,12,21 70:7,15
70:24 71:9,17 72:1,9
72:17 73:1,9,17 74:1
74:9,16 75:2,10,18
76:2,10,24 77:20
78:6,16,23 79:6,14
79:23 80:8,15 81:3
81:11,24 82:6,16
83:1,11,23 84:7,15
85:3,14,21 86:5,15
87:1,10,24 88:11
90:23 91:8,24 92:8
92:16 93:3,11,18
94:8 95:3 96:8,18
97:3,12 99:4 100:8
100:16,23 101:7,15
104:5,14 105:8
114:17 115:10 116:6
117:7,16 118:21
120:8 121:12 122:23
123:10 124:11,21
125:10,20 127:5,12
127:19 128:2,8
129:4,22 130:4
basis 116:5,20
143:17 144:1

attorney-client 117:17
117:19
audio 16:4 23:17
113:22,23,24
avail 112:12 12:3
133:19
avail 130:6
available 32:5
aware 104:19
a.m 1:18 4:2 101:20
133:5

**B**

B 1:16 133:3
back 12:19 25:8 31:5
36:2,19 37:4 43:8
45:18 49:24 55:14,23
56:7,16 57:1 67:23
100:4,13 106:19
111:4 120:12
122:10 128:7
backing 128:12
bad 43:8
bag 52:10
bar 5:2 106:1
based 6:11 107:3
112:9,10 117:19
bases 116:5,20
Bates 3:8,9,10,11,12
28:23 39:17 43:24
94:21 98:5 121:17
bearing 4:8
beaten 125:6
becoming 26:5,8
began 12:10 20:20
beginning 120:23
begins 4:6 128:8
behalf 2:5,10,15 4:15
4:18 131:9
belief 105:1
believe 25:4,12 27:6
116:20
bench 85:19 86:13
best 16:4 25:15
better 13:13,13,18
14:2,24 22:9 76:22

77:11
beyond 108:16
Bill 10:17 45:19
bit 59:1
boat 129:3
body 13:6 15:18,22
16:11,13,16 63:19
71:5 72:6
bottom 39:18 44:2
bourbon 76:16,22
77:5,11
branch 89:13
breaches 23:1
breathe 59:21 60:7,17
61:3,11 68:8,17 69:1
69:19 70:5,22 71:7
breathing 58:17 59:12
brief 88:16 120:18
bring 5:10 86:21
brought 82:7 87:6
build 50:11
bullshit 50:16,24
Burge 1:6 2:10 4:8
10:13 60:14 63:11
70:20 71:5 77:17
78:1,11 81:8,16,18
84:22 85:8 92:21
101:4 126:9,16,20,24
127:4
Burge's 129:3
Burnette 3:7 38:6,13

**C**

C 133:2
Caine 1:3 4:8 40:9,15
40:23 41:19 42:3
80:6,14,22 81:1
82:12,21 83:7 86:21
87:6,7,15,22 88:7
89:24 90:8,9,18,19
91:3,5,13,20,21 92:4
92:12,23 93:8,17,23
94:6 95:15,20 96:5
96:14 98:7 122:14
131:3
close 19:17
closed 57:24 114:8

34:13 37:7 79:4
125:15
California 23:15
call 16:9 92:5
called 1:13
calling 54:21 55:4
car 36:2,19 37:5 45:10
case 4:8
cases 22:23 23:4,8
26:15
cause 124:3
caused 107:4
causing 107:4
certainly 15:2
certify 133:5,9,13,15
chance 22:22
change 120:12,14
Charles 35:5,9
chest 57:8 63:3 87:15
87:22 88:8
Chicago 1:8,9,19 2:3
2:13,16 4:12,17
10:21 11:2 104:12,20
104:21 114:8 133:6
childish 109:19
children 106:5,7
choking 102:6
choose 6:10 113:21
chump 128:8,11
citing 119:21 122:4
123:6 126:11 127:1,7
128:9 129:10
civil 1:7,8 2:15 4:17
8:20,21
Civil 1:14
civilians 27:8
claim 8:19
clap 42:11
Clarence 24:21
clear 13:19 16:6 25:7
27:3 31:18
clearly 12:22 16:16
client 112:8,8
clock 13:9 14:14
close 19:17

closer 17:13
code 43:12
coil 101:14,22
color 49:20
combat 89:22
come 18:13 38:6
111:14
comfortably 18:21
coming 59:2
comment 5:8
committed 30:5,12,21
32:18 33:5,16,20
34:4 40:17 54:6,13
74:7 80:5,13,22,24
82:14,23 96:7
comparison 19:13
compile 121:23
complaints 27:7,12
completely 20:9,15
108:14 113:4 116:14
completing 17:8
concerns 23:1
concludes 120:16
132:10,10
concocted 85:9
condition 15:23 18:19
18:20 19:1,7,8 20:6
conditions 5:24 6:1
conduct 37:15
confession 78:14
92:24 96:16 103:19
confessions 97:10
124:5,19
confidential 22:14
117:18
confidentiality 23:2
confirm 18:8,9,16
99:23 100:10,19
101:1,9,17 102:2,10
102:19 104:4,8,18
105:19 114:6,11,15
114:20,24 115:4,8,13
115:18,24 116:4,9,18
116:24 117:4,10
118:11,15,19,24

36:7,15,24 37:12,18
37:23 38:11,18,22
39:4,11,21 40:7,13
40:20 41:3,11,17,23
42:8,15,22 43:5,18
44:5,9,14 45:8,15
46:2,11,20 47:4,11
47:18 48:1,9,17 49:3
49:10,15,19,22 50:8
50:20 51:15,22 52:6
52:14,22 53:17 54:1
54:10,18 55:1,9,18
56:3,12,20 57:5,13
57:20 58:5,13,21
59:7,16 60:1,11
61:16 62:1,8,16,24
63:8,16,24 64:8,16
64:23 65:8,15,23
66:7,15,22 67:5,13
67:20 68:4,12,21
69:6,14,23 70:9,17
71:2,11,19 72:11,19
73:3,11,19 74:4,11
75:5,13 76:4,13,19
77:2,8,14 78:8,18
79:2,9,17 80:2,10,18
81:6,14 82:2,9,18
83:3,13,18 84:2,10
84:18 85:5,16,24
86:8,18 87:3,12,19
88:3,13,22 89:4,8
90:5,15 91:1,10,17
92:2,10,18 93:5,13
93:21 94:3,11,19
95:1,5,11,18 96:2,11
96:20 97:5,14,22
98:3,9,14 99:11,17
99:23 100:10,19
101:1,9,17 102:2,10
104:8,17,24 105:11
105:19 114:6,11,15
114:20,24 115:4,8
115:18,24 116:4,9,18
116:24 117:3,10
118:11,15,19,24

119:5,10,18,22 120:2
120:6,11 121:6,14,21
122:1,17,21 123:2,13
123:24 124:13,23
126:4,7,18,22 127:15
127:22 128:5,15,19
128:24 129:6,20
130:1,12,17,24 131:6
131:14
constitutional 74:19
126:13
consult 78:1
consultation 117:2
consulted 117:5,13
contained 32:3 37:15
context 21:10
continue 113:22
continued 66:11
control 115:20 118:9
conversation 41:5
81:19
Cook 1:17 11:5,7,10
11:13,17,22 12:1,9
23:24 24:3,8,11,14
25:2,9,16,22 26:5,9
26:13,20,23 27:5,8
27:13,21 28:3,8
119:12 133:4
cool 88:8
corner 39:19 44:2
correct 5:7 6:5 12:23
14:7,8 15:5 112:5
124:5
counsel 4:12 133:15
County 1:17 11:5,7,11
11:13,17,22 12:2,9
23:24 24:3,8,11,15
25:2,9,16,22 26:5,9
26:13,20,23 27:5,9
27:13,21 28:3,8
119:13 133:2,4

course 29:3,11,16 35:5
41:7 78:20 121:4
916
created 76:8,9 90:19,21
5:14 14:20 23:10
95:16 98:7 106:1
109:12
Courts 1:15
cover 52:18 53:1,11,21
54:4 58:9,16,24
59:11 60:5,15 61:1
61:10,18 64:3 67:23
68:7,15,24 69:9,17
70:3,20 71:6 72:21
73:5,14 78:2
covers 31:19
coward 122:11,14
co-workers 27:13
crabs 42:11
crazy 64:11
create 39:22 44:6
created 94:22 95:13
98:6,10
crib 119:23
crime 74:14
criminal 7:7,21 8:3,8
8:14,15 9:10 43:14
116:22 124:18 125:4
125:7,18
CSR 1:16 133:3,23
cuffed 55:14
cup 77:5
cupped 92:6
current 22:11
currently 11:14 119:3
cut 58:17 59:12

**D**

D 3:1
Dan 26:2,8 27:1
Daniel 1:7 2:11
Danzel 26:2,4
deposed 4:20 111:2
112:2,11 133:7
deposition 1:12 4:1
4:22 7:16 13:9 16:3
19:3 20:20 28:19
29:18 133:8 143:2
124:16 125:3
detector 99:13 100:5

dead 46:16
death 76:8,9 90:19,21
916
describe 49:23 50:10
desire 113:9,13
decided 117:1
decision 99:12
decline 44:3 74:18
80:1 81:6 88:13,21
89:4,8 91:16 93:5,13
93:21 94:3,11,19
95:1,18 96:2,11
97:22 98:3,9,14
99:11,17,23 100:10
101:1 102:2,10,19
103:2,7,13,23 104:8
104:17,24 105:24
106:2 116:24 117:4
118:11,15,19,24
119:5,10,18,22 120:2
121:23 122:1 123:13
123:24 124:23 126:4
126:18,22 127:15,22
128:5,15,19,24
129:20 130:1,12,17
130:24 131:6,14
defendant 2:15 78:11
81:18
defendants 1:10 2:10
4:19,24 5:10
defense 3:10 32:3
32:6 33:8 34:13 37:7
118:11,15,19,24
122:11,22,24 82:6,21
92:11,22,22 94:5,21
121:13 123:6 126:12
126:24
deleted 93:23 117:23
denied 93:23 100:21
deny 37:20
department 10:21
11:2 32:5 104:12,21
deponent 4:20 111:2
deposed 7:2
deposition 1:12 4:1
4:22 7:16 13:9 16:3
19:3 20:20 28:19
133:8

120:20,24 132:10
133:13
describe 49:23 50:10
desire 113:9,13
detective 6:4,7 7:20
8:1,7 9:8,24 10:4,9
10:13,17 21:18 26:16
31:5 36:1,10,18 37:3
38:23 39:7 45:17
46:4,13 48:19 49:6
50:14 51:7 52:1,9,16
52:24 53:2,2,10,13
53:19 54:3,20,21
55:3,5,11,20 56:6
56:14,15,22,24 57:16
57:18 58:23 59:3,9
59:20 60:3,8,16,18
61:8,18 62:3,20 63:2
63:10,17,23 64:19
65:4,11,18 66:3,17
66:23 67:18 68:1,23
70:2,19 71:4,13,21
72:5,13,23 73:1,22
74:13,16,23 75:9,17
76:1,12,18,23 77:19
77:24 78:2,24 79:13
79:23 80:7,14,22,24
82:13 83:6,22 84:14
85:13 86:11 87:21
88:7 93:7,16,22 94:5
103:17 119:17 124:6
124:16 125:3
detector 99:13 100:5

developed 85:8
device 107:10
Devon 2:7
DIRECT 5:19
disciplining 105:15
disciplined 104:21
105:6
Discussion 12:18
discussions 86:10
disseminate 5:5,9,12
disseminated 4:24 5:3
dissemination 5:11
District 1:1,1,15 4:9
4:10 46:6
division 1:2 4:10
22:12 104:11
divorced 106:10
document 28:19,22,23
39:14,17,19,22 43:24
44:7,10 94:20 95:16
95:13 97:17,23 98:5
98:7,11,22,23 99:2
99:8 123:6 126:12
128:2,14 129:11
document 30:11 31:16
33:7 34:2,12 37:3,6
documentation 30:20
33:7 34:2,12 37:3,6
documented 30:11
33:3 36:9,18
documents 7:15 31:12
43:21 94:12,19
45:12,23 46:8,17
47:1,9,15,22 48:6,13
48:24 49:7 50:17
112:15
door 57:24 59:2 86:3
86:11
drink 76:16
Drive 2:13
driver 45:9
driving 35:23 36:11
duly 5:17 133:10
Dykema 27:1,4
duties 23:3,7 88:18
89:20
Dykema 2:12

**E**

E 3:1
ear 92:13

earlier 79:13
ears 124:4
East 2:7
Eastern 1:2 4:10
eek#@jsotoslaw.com
2:9
effort 78:3,13 84:24
87:7 96:14 103:18
128:4 128:20 90:22
90:11,22 91:7,15,23
92:7,15 93:2,10,18
94:1,8,23 95:8,23
96:9,17 97:2,11 98:1
98:18 99:14,21 100:7
100:16,23 101:6,15
101:23 102:7,14,23
103:6,11,20 104:3,7
104:16 105:18 106:3
109:16,24 110:8,15
111:21 112:14 113:1
113:8,11,19 114:4,9
114:14,22 115:2,7,12
115:17,23 116:3,8,17
116:23 117:2,9,16
117:18,21,23 118:1,9
118:13,17,23 119:3,9
119:16,22 120:1,9,16
120:24 121:11,22,23
122:5,16,22 123:5,12
123:23 124:12,22
125:11,22 126:3,11
126:17,23 127:6,14
127:21 128:4,13,19
128:24 129:9,19
130:2,11,16,23 131:5
131:13 133:2,4
doing 64:12 87:7
112:15
door 57:24 59:2 86:3
86:11
drink 76:16
Drive 2:13
driver 45:9
driving 35:23 36:11
duly 5:17 133:10
Dykema 2:12

76:7,15,22 88:7
77:12,19 78:5,15,23
79:6,14,23 80:7,15
81:3,14,22 82:6,15
92:12,23 93:8,16,23
94:6,15 95:9,17,23
96:5,14 97:2,11,23
98:1,18 99:15,22
100:7,16,23 101:5,15
101:23 102:6,13,23
103:5,11,20 104:2,7
104:16,23 105:17
106:3 109:15,23
110:8,15 111:20
112:14,24 113:7,11
113:18 114:4,9,14,22
115:2,7,12,17,23
116:3,8,17,23 117:1
117:8,15 118:1,8,16
118:23 119:2,9,16
119:23 120:9,16,23
121:11,21 122:5,16
122:22 123:5,11,22
124:12,22 125:10,22
126:2,10,17,23 127:6
127:13,20 128:3,12
128:18,23 129:9,18
130:2,10,16,23 131:4
131:12

87:6,7,15,22 88:7
89:24 90:8,9,18,24
91:4,13,18 92:4,14
92:22 93:10,18 94:1
94:9,23 95:8 96:9,18
96:14 98:17 99:13,21
100:7,16,22 101:6,14
101:22 102:7,14,23
103:6,11 104:3,7
104:16,23 105:18
Elizabeth 2:7 4:18
EMPLOYEES 1:9
employment 11:1,4
12:3
entered 54:4
entitled 13:18,19
15:19 16:1
Eric 1:3 4:7 30:22
33:8 34:13 37:7 40:9
40:15,22 41:19 42:3
79:4 80:5,13,22 81:1
82:12,21 83:7 86:21
87:6 88:7 90:8,18
91:3,13 93:8,17,23
94:5,15 95:9,15,20
96:5,14 97:23 98:7
99:13,21 100:7,16,22
101:6,14,22 102:7,14
102:23 103:6,11
104:3,7,16,23 105:18

100:17 101:7,24
102:8,17,24 103:21
104:6,15 105:9
114:18 115:11 116:7
117:8,17 118:22
120:9 121:12 122:24
123:11 124:11,21
125:10,15,17,20
127:6,13,20 128:3,22
129:5,23 130:5
**examination** 1:13 5:19
**examined** 3:4 5:17
**exculpatory** 32:3
  125:14,17
**EXCUSED** 121:14
**Exhibit** 3:7,8,9,10,11
  3:12 28:18,20,21
  37:16 38:4 39:12,15
  39:16,23 43:19,22,23
  44:7 45:2 94:12,15
  94:16,20,22 95:6,14
  97:15,18,19 98:6,10
  98:17 99:6 114:3
  120:21 121:16 122:8
  122:10 128:7 129:9
**EXHIBITS** 3:6
**experience** 89:22
**Expiration** 133:23
**explain** 22:21
**expressed** 4:24
**extent** 8:18 98:23

**F**
**face** 19:14 46:6 58:17
  59:1,11,20 60:6,16
  61:2,11,19 62:19
  64:4 67:24 68:8,16
  69:1,10,18 70:4,22
  71:7 72:22 73:6,15
  105:15
**facial** 50:4,7
**fact** 3:2 30:11,20
  33:4,18 34:3 36:9,18
  37:3 42:3 107:7
**facts** 7:9 25,24 30:7
  30:15,24 31:6 32:8

32:21 33:10,22 34:7
34:15 35:13 36:5,13
36:22 37:10 38:9,15
39:1,8 40:4 41:9,20
42:5,12,19 43:3,16
44:20 45:13,24 46:9
46:17 47:2,15,22
48:6,15 49:1,8 50:18
51:3,13,19 52:4,12
52:20 53:5,15,23
54:8,15,22 55:7,16
56:1,10,18 57:3,11
57:18 58:3,11,19
59:5,14,23 60:9,19
61:5,14,23 62:6,14
62:22 63:6,14,22
64:6,13,21 65:6,13
65:21 66:5,13,20
67:3,11 68:2,10,19
69:4,12,21 70:7,15
70:24 71:9,17 72:1,9
72:17 73:1,9,17 74:2
74:9,17 75:3,11,19
76:2,11,24 77:20
78:6,16,24 79:7,15
79:23 80:8,16 81:4
81:12,24 82:7,16
83:1,11,23 84:7,13
84:15 85:3,14,21
86:5,18 87:1,10,24
88:11 90:23 91:8,24
92:8,16 93:3,11,18
94:8 95:8,24 96:9,18
97:3,12 99:14 100:8
100:17 101:7,23
102:7,17,24 103:21
104:5,14 105:8
114:17 115:10 116:6
117:7,16 118:21
120:8 121:11 122:23
123:10 124:11,21
125:10,20 127:5,12
127:19 128:2,21
129:4,22 130:4
**faith** 116:20
**false** 78:13 87:8 91:14

92:24 93:8 96:15
97:10 103:19 124:5
124:18 125:7 130:14
130:21 131:3,9,11
**falsely** 82:22 83:8
**familiar** 84:12
**family** 105:22
**father** 123:22
**fed** 42:18 43:1,7,12
**federal** 88:17
**fellow** 96:22 97:7
  101:11
**Fifth** 6:12,15,24 7:3
  7:13,17,22 8:4,10,20
  9:17,22 10:2,7,11,15
  10:19,23 21:16,20
  27:10,17,23 28:5,11
  28:16,24 29:7,13,18
  30:1,8,16 31:1,8,16
  32:9,14,23 33:11,23
  34:8,16 35:1,7,14,20
  36:6,14,23 37:11,17
  37:22 38:2,10,17,23
  39:3,10,20,24 40:6
  40:12,19 41:2,10,16
  41:22 42:7,14,21
  43:4,17 44:4,8,13,21
  45:1,7,14 46:1,10,19
  47:3,10,17,24 48:8
  48:16 49:2,9,14,18
  49:23 50:1,12,19
  51:4,14,21 52:5,13
  52:21 53:9,16,24
  54:9,17,24 55:8,17
  56:2,11,19 57:4,12
  57:19 58:4,12,20
  59:6,15,24 60:10,20
  61:6,15,24 62:7,15
  62:23 63:7,15,23
  64:7,15,22 65:7,14
  65:22 66:6,14,21
  67:4,12,19 68:3,11
  68:20 69:5,13 70:8
  70:16 71:1,10,18
  72:2,10,18 73:2,10
  73:18 74:3,10,21

75:4,12,20 76:3,12
76:18 77:1,7,13,21
78:7,17 79:1,8,16
80:2,9,17 81:5,13
82:1,8,17 83:2,12,17
84:1,9,17 85:4,15,23
86:7,17 87:2,11,18
88:2,12,21 89:3,7
90:4,14,24 91:9,16
92:1,9,17 93:4,12,20
94:2,10,18,24 95:10
95:17 96:1,10,19
97:4,13,18 98:9
98:18 99:7 101:2
101:18,23 119:4,9
101:24 121:18
122:12,14 128:11,18
129:11,13 133:10
**filed** 5:4
**final** 21:22
**find** 42:10 107:11
**fine** 13:23 106:24
  109:17
**FIRM** 2:6
**first** 5:17 44:6 114:4
  125:7 128:11 133:10
**five** 45:24 108:6
**fixed** 14:1

---

**folder** 53:20
**follows** 5:18
**follow-up** 57:14
**foot** 14:22 15:8 16:8
**force** 6:22 7:7,20 8:2,8
  8:14 9:10 27:20 28:2
  28:9 43:13 77:16,24
  78:12 92:23 96:14,24
  97:8 103:15,17
  104:22 105:5,14
**forced** 101:12
**foregoing** 133:11
**form** 9:2,13 12:4
  22:17 27:16 28:15
  30:23 31:15 32:7,20
  33:9,21 34:6,14,24
  36:12 37:9,21 38:8
  40:4 41:8 44:12
  45:23 48:24 51:12
  52:3 57:10 58:2,18
  59:4,13,22 60:8,18
  61:4,13,22 66:12
  67:18 68:1,9 69:8
**found** 46:15
**foundation** 9:2,13
  24:4 29:23 30:6,14
  30:23 31:15 32:7,20
  33:9,21 34:6,14
**frame** 86:3,13
**frankly** 19:2
**front** 45:19 81:22
**fucking** 65:19
**full** 6:16

35:12,19 36:4,12,21
37:9 38:8,16 40:11
40:18 41:1,8 42:13
43:15 44:12,19 45:12
45:23 46:8 47:1,9
48:14 49:7,23 50:17
51:2,12,20 52:3,11
52:19 53:4,14,22
54:7,16,22 55:6,15
55:24 56:9,17 57:2
57:10,17 58:2,10,18
59:4,13 60:7,17 61:3
61:12,22 62:5,14,21
63:5,14,22 64:6,14
64:21 65:6,13,21
66:5,13,20 67:3,11
67:18 68:2,10,19
69:4,12,21 70:7,15
70:24 71:9,17 72:1,9
72:17 73:1,9,17 74:2
74:9,17 75:3,11,19
76:2,11,24 77:5,11
77:18 78:5,15,23
79:6 87:17 107:4
107:21 124:3,17
125:6,19 130:13,22
131:2,8,10 132:4,9
133:4,12 135:3,22
**full** 6:16

**fully** 22:18,22
**full-time** 11:13,16
**further** 5:12 107:20
  110:17 133:9,13,15

**G**
**general** 12:15 23:7
**generally** 22:15 23:3,6
**George** 24:21
**Germany** 89:16,18
**getting** 9:1 24:2,7
  48:20 65:18 66:3
  113:23
**give** 8:15 21:22 23:13
  31:21 75:16 78:13
  110:16
**given** 88:24 133:11
**giving** 87:8 111:24
  119:6
**go** 16:12 24:7 51:11
  77:18 106:14 109:13
  109:16,19 113:4
  122:10 128:7
**goes** 108:16
**going** 4:1 8:19 12:17
  12:24 14:17 16:10,23
  18:23,24 21:22 22:17
  38:2 44:24 48:22
  51:9 57:9 66:18 67:1
  67:8 98:15 99:4
  100:5,14 105:23
  106:15 107:13,17,19
  107:23 108:3,8,16,18
  108:21,24 109:9,16
  110:11,15,18,21
  112:18,23,24 113:1
  117:18,23 120:12,15
  122:6 131:17,21
  132:4,9
**good** 4:1 84:23 116:20
**GOSSETT** 2:12
**GPR** 3:8,9,10,11,12
  79:13,20 94:21 114:4
**grab** 57:16 102:5,13
**grabbed** 57:23

**grand** 88:24
**grandchildren** 106:8
**grandson** 106:8
**grant** 8:24
**Group** 43:21 94:14
  120:20
**guaranteed** 44:4,14
**guess** 40:2
**gun** 75:8 81:10

**H**
**hair** 49:20,24 50:4,7
**Hall** 121:3,7,10
**halfway** 59:3
**hand** 92:6,13 117:20
  133:18
**handcuff** 56:6,15
**handcuffed** 38:13 48:3
**handcuffing** 57:1
**handgun** 81:22
**hands** 56:7,16 57:1
**handwriting** 94:16
  97:20
**handwritten** 41:18
**happy** 110:24
**harassing** 14:18 15:17
  19:3 20:9,16 21:11
  22:3 108:14 113:4,6
**harassment** 107:19
  109:6,15
**hard** 1:5.1
**harger@dykema.com**
  2:14
**Harris** 99:9,13,19
  100:4,13,21 101:4,12
  101:19 102:5,13,22
  103:4,10,16,18
  132:4,9
**heard** 13:5,6,17
  46:13 50:14,22
**heavyset** 49:6
**height** 49:12

---

**held** 4:11 12:12 59:9
  59:10,20 60:5,15
  61:1,10,19 72:22
**hereof** 133:17
**hereunto** 133:18
**Hill** 35:18 36:1,10,19
  37:4 45:10,19 46:6
**Hines** 26:19
**hold** 58:16 59:19 60:4
  60:14,24
**holding** 92:13
**hope** 29:21 75:1,9
**homicide** 10:1,6,10,14
  10:18 121:4
**homicides** 9:21 29:4
  29:12,17 40:10,24
  83:9 84:13
**hooked** 55:22
**hour** 55:1
**hypothetical** 83:24
  84:8

**I**
**ideally** 15:3
**identification** 28:20
  39:15 43:22 94:15
  97:18 120:21
**identify** 4:13 82:5,22
  83:8
**Illinois** 1:1,17,19 2:3,8
  2:13 4:10,12 133:1,4
  133:7
**Illya** 80:6,14,23 81:1
  82:12,21 83:7
**immunity** 89:5
**improper** 116:14
**include** 42:2
**including** 4:20 113:21
  124:16 125:3
**incomplete** 21:9,10
  83:23 94:8
**inculpatory** 91:13,14
  93:9
**indicate** 106:23
**indicated** 13:1,7,10,21
  13:24

**individual** 49:6
**individually** 4:19
**individuals** 44:17
**information** 32:3
  33:18 37:15 121:22
  122:3
**informed** 32:16
**initial** 25:8 48:5
**injury** 124:3
**inside** 6:23 29:21
  101:5 105:14
**instruct** 14:17 18:24
  117:18
**instructed** 74:6
**instructing** 108:15,22
  131:18
**intent** 5:1 9:11
**inter** 63:4
**interested** 113:17
**Internal** 104:11
**interrogate** 47:21 99:8
  99:19
**interrogated** 46:22
  47:6 84:14
**interrogating** 47:13
  62:4 77:18
**interrogation** 48:5,12
  52:17 78:21 79:5,21
  81:9 84:5 85:19 86:4
  86:14,22 101:5,13
  104:22 105:6
**interruption** 88:16
  120:18
**interview** 3:7 23:23
  32:12
**interviewed** 29:2
  104:10
**interviewing** 23:10
  62:11
**interviews** 23:17
**intimidate** 87:1,16,24
**investigate** 28:14
**investigated** 104:2
**investigating** 9:21
  24:24 40:10
**investigation** 10:1,6

10:10,14,18 29:3,11
29:16 31:1 33:6
37:14 40:3 41:7 85:1
89:1 119:14 121:4
**investigator** 11:24
  12:13 22:12 23:24
  25:3,17,23 26:5,9,13
  26:20 27:4,9,15,22
  28:3 41:13
**investigators** 24:14
  25:5,8,18 28:8 88:18
  90:10
**invoking** 91:16
**involuntarily** 8:16
  9:12
**involuntary** 28:4,10
  78:4,13 87:8 92:24
  96:15 97:1 103:19
  124:5,18 125:8
**Irizarry** 25:2 26:7,11
  43:10
**Isaac** 26:8
**issue** 108:13 111:5
**Itasca** 2:8

**J**
**J** 4:7 5:23
**Jack** 26:19
**jag-off** 55:4
**James** 1:6 2:10 10:9
  35:18 36:1,10,19
  37:4 45:10,17,18
  46:5
**job** 24:2,7,11 129:12
**Joe** 26:2
**John** 2:19 4:3
**Join** 125:21
**joined** 25:22 26:6,10
**Jon** 1:6 2:10 4:8 10:13
  77:17 78:1 81:8
  126:19,24 127:4
  129:3
**judge** 15:2 16:9,10,11
**jury** 89:1

**K**
**K** 133:3
**Katalinic** 24:22,24

**keep** 31:11
**Kevin** 27:1,3
**kick** 51:1
**kicking** 51:8
**killed** 29:22 75:17,24
**kind** 19:8 23:1
**kinds** 8:23
**Kip** 41:6,15
**knew** 25:6,12,14 66:9
  67:16 78:20 87:5
  91:12 96:13 103:17
  115:20 118:9 121:7
  124:2,16 125:2
**know** 9:4 15:1,5,24
  16:1,5,15 18:11
  19:22 22:13,18,22
  23:21 24:14,18,22,24
  25:2,12,14,20
  130:9
**knowing** 76:8
**knowledge** 6:23 25:8
  40:16,23 42:4
**known** 44:11

**L**
**lapel** 12:22 13:14,14
  14:7 15:4,7,11,14,16
  16:7,21 17:17 18:3
  18:12,22 19:10 20:7
  20:7,14,22 21:1
  107:16 108:11,18
  113:7,12,13,15
**LAW** 2:6
**lawyer** 48:21,22 51:18
  52:16,24 53:6 54:12
**learn** 85:18 86:2
  121:15,21
**learned** 86:11
**leave** 111:8,15 112:18
  112:18 113:11

---

**leaving** 35:10 52:17
**led** 59:2
**left** 52:1 69:16 73:22
  73:23
**left-hand** 39:19 44:2
**legal** 4:3,4
**Let's** 15:8,20 16:16
  17:18 18:13 26:18
  39:12 43:19 94:12,13
  97:15 106:14 109:19
  111:6 113:4 122:7
  128:7
**liability** 116:22
**liar** 54:21 55:5
**lie** 99:13 103:1
**Lieutenant** 84:21
  92:21 101:4
**light** 59:2
**lights** 58:1 64:4 67:9
  67:22 68:6
**line** 20:8 107:3 114:4
  114:22 115:15 118:5
  118:6 119:20 122:11
  128:8,8 129:9
**list** 79:19
**listening** 50:24
**little** 59:1
**live** 106:12
**loaded** 81:10
**located** 107:1,17
**lodged** 130:14 131:3
**LOEVY** 2:2,2
**Long** 14:17,16 28:23
  108:19 110:8
**look** 33:6 55:3
  78:22 80:13,22 81:1
  82:14,23 90:1 93:1
  95:22 96:17,16 121:9
  130:10
**M-a-r-l-e-y** 5:23

92:14,22 128:1
**manila** 53:20
**manner** 13:8
**mark** 28:18 39:12
  43:19 94:12 97:15
  120:19
**marked** 3:6 28:19,21
  39:14,22 43:21,23
  44:7 94:14,22 95:14
  97:17,19 120:20
  121:16
**Marva** 121:3,7,10
**matter** 4:7 113:15
**Mays** 24:21 25:13
**McWEENY** 1:7 2:11
  118:6 119:20 122:11
  128:8,8 129:9
**McWeeney** 1:7 2:11
  84:22 85:9,10 92:22
  126:2 127:20
**mean** 22:21 24:5 40:2
  42:24 44:10
**meaning** 22:19
**means** 113:22,22
  113:24 114:1
**medical** 5:24 15:22
  18:17,19,20 19:1,7,8
  118:19 110:6
**member** 104:3,11
**members** 44:11 79:12
**mentioned** 76:8
**mentioning** 23:7
**Merrill** 4:4
**mic** 22:6
**Michael** 80:6,14,23
  81:1 82:12,21 83:7
**microphone** 12:21
  14:6,22 15:4,11
  16:20 17:11,14,16

18:3,21 19:9,13,17
20:7,13,21 21:24
107:16 108:11 113:7,12
13:16 131:16
**military** 89:9
**mind** 9:5
**minutes** 72:23
**misconduct** 119:14
**misrepresent** 13:15
**misspoke** 123:18
**misstated** 13:22
**Monell** 8:19 31:18
**money** 74:24
**morning** 4:1
**mother** 65:18
**motion** 5:1,4,6,10,13
  7:5
**mouth** 14:23 15:8 16:9
  19:18
**move** 14:14 15:8,20
  16:17 17:1 19:16
**moved** 129:12
**moving** 18:14
**multiple** 110:9
**murder** 41:7 80:5 90:9
**murders** 28:14 30:5
  30:13,21 32:18 33:6
  33:17,19 34:5,20,23
  35:6 40:16 42:4 54:6
  118:5
**Murphy** 126:16 128:3
  127:18 129:3
**myself** 111:8

**N**
**N** 2:12 3:1
**naked** 101:4
**name** 4:3 5:21 32:21
  35:4,17 62:10 79:4
  99:8

**named** 4:19 29:10
  122:1,5
**names** 6:8 24:20 25:5
  79:20
**necessity** 11:24 12:14
  102:14
**need** 11:2,10 113:10
  113:12
**needed** 74:24 75:8
**Never** 23:19
**night** 71:23 90:10,12,14
  101:21
**nine** 121:17
**ninja** 115:1
**North** 1:18 2:3 4:12
  133:6
**Northern** 1:1 4:10
**nose** 59:10,19 60:4,14
  60:24
**Notary** 1:16 133:22
**noticing** 4:14
**number** 4:9
**numbered** 28:23
  39:17 43:24 94:21

**O**
**O** 133:2,2
**oath** 133:9
**object** 8:21 9:2 12:6
  12:24 17:7 18:23
**objection** 7:9 8:17,22
  9:1,13,14 12:4 14:12
  14:24 17:6 18:23
  21:6,8,9 22:11 107:3

37:9,21 38:8,15 39:1
39:8 40:4,11,18 41:1
41:8,20 42:5,12,19
43:2,15 44:12,19
45:12,23 46:8,17
47:1,9,15,22 48:6,14
48:24 49:7 50:17
51:2,12,19 52:3,11
52:19 53:4,14,22
54:7,15,22 55:6,15
55:24 56:9,17 57:2
57:10,17 58:2,10,18
59:4,13,22 60:8,18
61:4,13,22 62:5,13
62:21 63:5,13,21
64:5,13,20 65:5,12
65:20 66:4,12,19
67:2,10,18 68:1,9,18
69:3,11,20 70:6,14
70:23 71:8,16,24
72:8,16,24 73:8,16
74:1,8,16 75:2,10,18
76:1,10,17,23 77:6
77:12,19 78:5,15,23
79:6,14,23 80:7,15
81:3,11,23 82:6,15
82:24 83:10,16,22
84:7,15 85:2,13,21
86:5,15,24 87:9,17
87:24 88:10,20 90:2
90:11,22 91:7,15,23
92:7,15 93:2,10,18
94:1,8,23 95:8,23
96:8,17 97:2,11 98:1
99:14,21 100:7,16,23
101:6,15,23 102:7,16
104:5,14 105:8,17
114:9,17 115:2,10,22
116:6,13 117:7,16,21
118:13,21 119:8,16
119:24 120:8 121:11
122:15,23 123:10,17
124:6,10,20 125:9,19
127:5,12,19 128:2,13
128:21 129:4,14,22

130:4,15,22 131:4,12
131:17
objections 124:8
observe 77:4
observed 8:2,12 9:9
28:7 46:4 52:8 56:5
56:14,23 57:7,15
58:7,15 59:18 60:3
60:13,23 61:20 62:3
62:11,18 63:2,10,18
68:14,23 69:8,17
70:2,19 71:4,13,21
72:5,13 80:20 83:5
86:20 87:21 88:5,7
90:7,17 91:19 92:4
92:12 94:5 100:12
101:19 102:4,12
obviously 22:24
occurred 88:16 120:18
October 99:9 101:14
101:20
offered 89:5
Offhand 26:2
office 11:6,8,11,14,17
11:23 12:2,10,15
22:16 24:3,8,12,15
25:9,17,23 26:6,10
26:14,23 27:5,14
28:9 41:14 119:13
133:19
officer 4:19 26:4 33:15
46:15 57:24 123:9,16
123:22
officers 53:12 73:22
official 32:4
Oh 113:18
okay 17:7 20:3 22:8
112:21 132:1
once 5:4
ones 25:13 26:3
open 114:7
opposed 23:4
OPS 104:3
order 5:1 8:9,14 28:3
28:9,13 96:24 97:10
112:6

ordered 101:4 109:12
outcome 133:17
overseas 89:17
Owens 41:6,15

P
page 3:4,6 28:23 39:17
43:24 44:6 94:20
97:20 121:17
painful 124:3
paper 130:20 131:10
paren 114:7,8
part 85:7 125:16
particular 9:3
parties 133:16
partner 38:20,24
partnered 39:7
partners 6:8
party 4:14
passenger 45:20
Patter 57:22 88:6
Patterson 56:3,20
37:5 42:10,17,24
45:4,10,18 46:5,14
46:15,23 47:7,14,21
48:4,11,21,22 50:15
50:22 51:9,17,24
54:5,12 55:12,21
57:8,16,23 59:21
60:6,16 61:2,12,21
62:4,11,19 63:3,11
63:19 64:10 65:10
66:3,10,18,24 67:7
67:17 70:12 71:5,14
71:22 72:6,14 73:13
73:24 74:7,14,23
76:4,17,23 80:21 81:2
76:21 77:5,11,17,18
78:1,3,12,21 79:5,12
79:22 80:5,12,21,24
81:9,17,19,20,22
82:5,11,20 83:6,8,15
84:4,6,14,24 85:10
85:18 86:2,12,22
96:6 98:11 121:18

123:8 130:9,14,21
Patterson's 48:22 51:8
56:7,16 57:1 58:9,16
59:1,10,11,12,19
60:4,6,14,16,24 61:2
61:11,19 64:3 67:24
68:8,16 69:1,10,18
70:4,21 72:22 73:6
86:21 123:15,21
Pause 117:12
Pederson 1:7 2:11
10:17 45:19 46:23
53:3,13 56:6 58:8,15
58:24 59:10,20 60:5
60:15 61:1 63:19
64:2 68:15 72:6
73:23 84:21 85:9
92:22 126:5
pending 4:8 109:4
people 82:14,23 83:9
perfect 110:5
period 5:11 31:13
person 6:21 29:2,10
32:12 35:4,17 99:8
107:6,7 108:12
113:17 114:1 121:3
131:8
personal 113:9
personally 133:7
persons 83:9
photographs 82:4,12
82:21 83:6,15,20,21
83:4,6
phrase 21:5,6,7,14,19
40:2 43:12
physical 6:22 7:7,20
8:2,8,14 9:10 27:20
28:2 43:13 77:16,24
78:12
pick 13:24 14:23
82:13
picked 13:11,20
pickling 13:2 113:11
113:24
piece 69:16 130:19

131:9
Pienta 1:6 2:10 10:9
36:1,10,18 37:3
38:20,23 39:7 45:17
46:5,14,24 47:7
48:19 49:6 50:14
51:7 52:1,9,16,24
53:2,10,19 54:3,20
55:3,12,21 56:6,15
56:24 57:8,16,23
60:24 64:18 65:2,11
65:17 66:17 68:24
71:14 73:22 78:10
84:20 85:8 86:21
92:21 126:12 127:11
pin 121:21
Pinkawa 1:16 4:6
133:3
pinned 20:13
place 56:9 68:15,24
69:9,17 70:3,20
plaintiff 1:4,13 2:5
4:16 5:3,8,11
plaintiff's 48:3 51:8
56:6 77:16 84:13
93:8
prison 23:10
privilege 117:20 121:5
122:5,7,12 123:6
126:11,13 127:1,7
128:14 129:11
privileged 117:17
Probably 26:17
problem 106:24 107:5
problems 107:9
Procedure 1:14
proceedings 106:18
prosecuted 26:15
prosecution 30:22
32:6 33:8 34:13 37:7
125:15
prosecutors 26:14
Protective 5:1
provide 8:9 9:12 28:4

28:10 66:10 77:5
78:3 90:8 92:23
96:15 97:1,10 103:19
121:22 122:2 124:4
124:18
provided 74:13 90:9
93:8 95:15 98:7
providing 125:7
Public 1:16 133:3,22
punch 62:19 63:3,19
71:5,14,22 72:6,14
87:22 88:7
punched 61:12 70:11
87:15
pursuant 1:13,14
pussy 122:14
put 4:21 13:23 14:6
108:11,12,17 111:16
113:6,8,14,16
putting 24:10 108:13
110:13,23
P.C 2:6
p.m 130:17 121:1
132:11 133:14

Q
question 9:3,7 12:5,7
13:9 14:4,13,13 15:9
16:19 17:9 18:3,9
19:5,12 21:17 25:8
27:11,18,24 28:6,12
28:17 29:1,8,10,14
29:15,19 30:2,9,17
31:2,9,17 32:10,15
32:23 33:12,24 34:9
34:17,21 35:2,4,8,15
35:17,21 36:7,15,17
36:24 37:12,18,23
38:3,11,18,22 39:4
39:11,21 40:1,7,13
40:20 41:3,11,17,23
42:8,15,22 43:5,11
43:18 44:9,15,22
45:1,8,15 46:2,11,20
46:14,9,18,24 114:6

47:4,11,18 48:1,9,17
49:3,10,15,19,22
50:2,9,13,20 51:5,15
51:22 52:6,14,22
53:9,17 54:1,10,18
55:1,9,18 56:1,3,20
60:11,21 61:7,16
62:1,8,16,24 63:8,16
63:24 64:8,16,23
65:8,15,23 66:7,15
66:22 67:5,13,20
68:4,12,21 69:6,14
69:23 70:9 71:2 72:1
73:1,11,19 74:4,11
74:18 75:5,13,21
76:6,18 87:3,12,19
95:20 118:8 119:12,2
90:11 91:10 92:2
93:2 98:20 99:5,11,17
99:23 100:10,19
101:1,9,17 102:2,10
102:19 103:2,7,9,23
104:8,17,24 105:2,3
105:11,19 107:23
108:4,8,16 109:1
109:4,5,10,13,18,21
109:22,24 110:1,2,6
110:8,11,111:1,2,18
111:11,14,20 112:4,9
112:16 113:1,3 114:6
114:11,15,20,24
115:6,8,13,16,18,24
116:4,9,18,24 117:4

117:19,24 118:11,15
118:19 119:1,5,10,18
119:21 120:2,6,11
121:3,6,14,21 122:1
122:4,13,17,21 123:3
123:7,13,19,24
124:13,23 125:12,23
126:4,8,11,14,18,22
127:2,8,15,22 128:5
128:10,15,19 129:1,7
129:10,16,20 130:1,7
130:12,17,24 131:6
131:14,19,22 132:5
questioned 38:14
88:17 121:10 123:9
questioning 20:9
41:19 66:11 67:16
79:11 107:4
questions 61:1 8:8,23
22:23 90:13 98:16,17
98:20 105:23,24
refusal 13:4 98:19
refuse 94:6 98:16
refused 75:16 91:21
102:21 112:13
refusing 12:21 14:6
16:19 111:21,23
112:1
regard 8:22 37:15
88:18 98:16 104:3
117:14
recorded 13:20 14:19
15:19 16:14,15
recording 107:9
referenced 79:13
referring 25:7 118:7
refusal 13:4 98:19
refuse 94:6 98:16
refused 75:16 91:21
102:21 112:13
refusing 12:21 14:6
16:19 111:21,23
112:1
regard 8:22 37:15
88:18 98:16 104:3
117:14
regarding 89:1
related 31:12 133:16
relevance 12:6 26:16
remember 112:16
removed 64:3
repairman 89:21
repeat 14:5 19:6 34:21
rephrase 123:18
report 121:23 122:2
reported 95:16 98:7
reporter 4:5 14:20
reports 32:4
represent 4:14
request 44:17 48:20
requested 48:11
requires 113:16
reserving 132:2
respond 44:24 99:4

responded 48:19
51:17 65:18
response 38:3 116:21
122:7
rest 50:23
retire 10:21
retirement 11:2
returned 52:17,18
53:1,20
review 7:15
re-ask 9:7
re-enter 52:9
re-entered 53:11
re-handcuffed 55:13
re-handcuffing 55:21
Richard 38:6,13
ride 45:20 46:6
ridiculous 111:4
riding 36:2,20 37:4,5
45:18,19
right 93:24 100:4
109:13 110:10
112:10 113:10 117:2
117:3 118:8 129:6
rights 6:11,16,24 7:3
7:13,17,22 8:4,10,21
9:17,22 10:2,7,11,15
10:19,23 21:16,20
27:10,17,23 28:5,11
28:16,24 29:7,13,18
30:1,8,16 31:1,8,16
32:9,14,22 33:11,23
34:8,16 35:1,7,14,20
36:6,14 37:11,17,22
38:2,10,17,23 39:3,3
39:10,20 41:2,10,16
41:22 42:7,14,21
43:4,17 44:8,8,13,22
45:1,7,14 46:1,10,19
47:3,10,17,24 48:8
48:16 49:2,9,14,18
49:21 50:1,8,12,19
51:4,14,21 52:5,13
52:21 53:8,16,24
54:9,17,24 55:8,17

56:2,11,19 57:4,12
57:19 58:4,12,20
59:6,15,24 60:10,20
61:6,15,24 62:7,15
62:23 63:7,15,23
64:7,15,22 65:7,14
65:22 66:6,14,21
67:4,12,19 68:3,11
68:20 69:5,13,22
70:8,16 71:1,10,18
72:2,10,18 73:2,10
73:18 74:3,10,19
75:4,12,20 76:3,12
76:18 77:1,7,13,21
78:7,17 79:1,8,16
79:24 80:7,15 81:1
81:8,15 82:3,10,17
82:24 83:7,14,18,20
84:5,15 85:9,12 86:1
86:11,18,23 87:2,8,16
86:11,18,23 87:2,8,16
87:14,16 88:4,13,21
89:6 90:3,11,21
91:6,14,22 92:6,14
92:23 93:10 94:20
94:20 95:7,14,22
95:10,17 96:1,10,17
97:4,13,21 98:2,8,13
98:16,22 99:5,10,16
99:22 100:9,18,24
101:8,16 102:1 9,18
101:8,16 102:1,9,18
103:1,5,11,21 104:6
104:16,23 105:8,18
114:5,10,14,19,23
115:5,7,12,15,17,23
116:3,8,17,23 117:3
ring 55:13,22 56:7
road 34:19,22 40:10

R
R 3:7
ran 122:14
Ray 123:16 133:4,15
34:4
Raymond 1:6 2:10
Ray's 34:12
reach 46:5 58:8
reached 78:11 92:20
93:7
recall 67 105:3 114:4
114:21 115:15 118:5
119:20 122:10 128:7
129:9
ready 54:1
read 123:1
really 85:11 109:16
reason 13:8 16:6
110:13,15,20,20,22

99:12
roles 12:1,5
room 47:20 52:2,9,17
53:2,11 54:4 73:23
81:9 85:20 86:4,14
86:22 87:6 101:5,13
101:22
Rowland 80:6,14,23
81:2 82:13,22 83:7
rude 43:9
rule 23:22 110:3
ruled 5:14
rules 1:14 113:16
run 44:18
running 31:11
Russell 2:2 4:15 13:1
14:14 17:7 18:13
108:6 109:18 111:4
russell@loevy.com
2:4

S
Saigon 114:17
Sanchez 9:21,24 10:5
10:10,14,18 28:14
29:4,12,16,21 30:5
30:13,21 32:18 33:5
33:17 34:4,20,23
35:6 40:10,16,24
41:7 42:4 54:6,13
74:7 75:16 76:7
78:22 80:13,22 82:14
82:23 83:9 84:13
90:1 92:24 95:21
96:16 121:4,9 130:10
silence 110:4 121:24
simply 16:3 43:8
sir 6:21 7:19,24 8:6,12
9:5,8,20 12:23 13:16
14:16 15:6 16:23
17:5,12,20 18:9 19:5
21:7 23:6 28:1,7,22
32:2,16 33:2,3,14
39:18 43:9 44:1
74:22 89:11 94:16
74:23 89:19 105:21

106:3 107:23 108:21
112:16 121:18 124:1
124:15 125:2 132:5
sit 108:18 109:16
sitting 14:19 19:15
101:13
situation 118:12
six 22:3
slap 46:5 57:8
slapped 36:1,10,18
37:4
socialize 126:23
socialized 127:3,10,17
127:24
Solutions 4:5
sole 123:8,15
soon 120:13
sorry 24:23 27:1 56:23
105:1
sort 107:5
SOTOS 2:6
sound 13:2,4,5,10,19
13:24 106:23,24
113:11
sounds 22:8,8
south 2:13 114:7
speak 24:10 26:4,8
77:17 84:23 93:17,24
112:7
speaking 22:15
specific 18:5 22:23
23:8 26:17
specifically 12:5 98:19
spell 5:21
spend 101:12
spent 123:23
spoke 118:18 119:16
spoken 119:12
SS 133:1
stabbed 76:7,9 90:19
90:20 91:4,6
stage 116:16
stand 22:7
standing 8:22 9:1,14
31:20,21 43:8 124:7
start 108:19 113:2
start 11:10 43:11

47:13 102:6
started 35:16,20,21
106:21 128:11
starting 4:14 26:12
starts 12:14
stat 1:7 43:13 5:21
6:15 44:19 49:20
116:14 133:1,4
stated 13:5 54:8 128:11
statement 6:17 7:6 8:9
8:15 9:12 21:10
34:12 66:10 78:4
87:8 88:24 91:13,14
93:9 95:16 98:7
94:9 113:18
statements 28:4,10
86:12 89:5 97:1
States 1:1,15 6:13
state's 11:5,8,11,14,17
11:22 12:2,9 22:16
25:24 26:6,13 26:23
27:6,8 29:2,8,19,24
26:13,20,23 27:5,9
29:15,21,22 30:3,11
31:10,21 33:2 36:24
37:12 98:3,14,18
39:3 47:13 102:6
stated 11:10 43:11
stenographic 133:10
step 28:13 106:7,7
steps 37:19
stipulate 6:1,4,8,18
story 85:9
strangulated 10:15
stream 1:13 2:3,4,12
31:12,19 32:2 45:5
45:11,20,21 133:6
stretch 33:3 35:24 43:7
strike 56:23 58:13
116:9
strip 101:4
struck 86:23 92:5,14
stuff 31:19 116:16

William Marley    May 29, 2012

**subject** 116:22
**submitted** 32:5
**subpoena** 32:6
**sued** 123:5
**suffocate** 78:2
**suffocated** 62:30 63:4
    63:12,20 70:12 71:15
    71:23 72:7,15 86:23
**suffocation** 124:17
**suggested** 80:4
**suggestion** 111:12
**Suite** 1:18 2:3,7,13
    133:6
**supervisor** 119:3,6
**suppress** 7:6
**sure** 24:5
**suspect** 7:8 43:14
    105:14 125:5,7
**suspects** 7:21 8:3,8,14
    8:15 9:11,11 96:24
    97:9 124:21,18 125:18
**swear** 5:15
**swore** 103:4
**sworn** 5:17 133:10

**T**

**table** 22:9 81:22
**tactic** 125:4
**take** 19:15 23:13
    37:19 41:18 99:13
    100:5,14 108:3,24
    117:23 131:21
**taken** 1:15 4:7 73:6,15
    99:20 106:17
**talk** 24:2
**talking** 23:2
**taller** 22:6
**tallest** 67:15
**tape** 120:16,23 132:10
**tapes** 130:13,14
**team** 30:22 33:8 34:13
    37:8 125:16
**tell** 6:8 12:11 15:11
    27:12 23:10 22:13
    28:13 29:2,20 41:5
    50:15 58:23 62:3,10

**tired** 50:15,24
**today** 4:5,22 6:2 8:23
    116:12,21 119:7
    132:1
**Today's** 4:2
**told** 17:21 18:6 30:4
    30:12,21 32:17 33:4
    33:5,15,17 34:3 35:9
    36:1 40:9,15,23 42:3
    48:23 54:5 64:10
    65:10 74:23 75:7,15
    75:23 76:6,16 80:12
    81:8,16,18,20 87:14
    89:24 91:3,5 95:20
    96:5 108:9,11 110:15
    110:20
**tool** 124:17
**topic** 117:6
**topics** 106:2
**torture** 86:12
**touch** 66:3
**tough** 20:22 21:1,5,8
    21:14,19
**transport** 45:4
**transported** 45:10
**transporting** 23:9
**Travis** 24:21 25:13
**trial** 105:22
**trials** 23:13
**true** 7:19,24 8:6,12 9:7
    9:20 28:1,7 30:4,11
    30:19 31:11 32:2,16
    33:2,3,14 34:2,11
    35:9,23,24 36:9,17
    37:22 40:9,15,22 42:2
    45:9,17 46:4,13,22
    47:6 48:3,11,19 49:5
    50:14,22 51:7,17,24
    52:8,16,24 53:7,10
    53:19 54:3,12,20
    55:3,11,20 56:5,14
    56:22,23 57:7,15,22
    58:7,15,23 59:9,18
    60:3,13,23 61:9,18
    62:18 63:2,10,18

**64**:2,10,18 65:2,10
    65:17 66:2,9,17,24
    67:7,22 68:6,14,23
    69:8,16 70:2,11,19
    71:4,13,21 72:5,13
    72:21 73:5,13,21
    74:6,13,23 75:7,15
    75:23 76:6,15,21
    78:10,20 79:11,19
    80:4,12,20 81:8,16
    81:18 82:4,11,20
    83:5 84:12,20 85:7
    86:20 87:5,14,21
    88:5,6,15 89:24 90:7
    90:17 91:3,12,19
    92:4,12,20 93:7,16
    93:23 94:5 95:13,19
    96:4,13,22 97:7 98:5
    98:10 100:2,3,12,21
    101:3,11,19 102:4,12
    102:21 103:4,9,15,16
    105:13 121:7 124:15
    125:2,14 130:9
    133:11
**truth** 121:8
**truthful** 116:21
**truthfully** 6:11 111:2
**try** 8:20
**trying** 16:2 22:5
    111:17
**turn** 46:14 114:3
**turned** 87:24 64:4
    67:9
**turning** 19:21
**twice** 86:23
**twist** 100:13
**twisted** 100:2,3
**two** 72:22 94:20
    120:23 132:10
**typewriter** 52:18 53:1
    53:11,21 54:4 58:8
    58:16,24 59:11 60:5
    60:15 61:1,10,18
    67:23 68:7,15,24
    69:9,17 70:3,20 71:6
    72:21 73:5,14 78:2

(312) 386-2000

---

William Marley    May 29, 2012

**typically** 49:23 50:3,6

**U**

**uncomfortable** 19:9
    20:6
**underneath** 59:2
**understand** 12:7 18:2
    24:5 50:5 123:19
**understanding** 4:23
    112:6
**understands** 22:19
**underwear** 101:13,21
**unit** 89:21
**United** 1:1,15 6:12
**un-handcuffed** 55:12
**use** 8:2,14,19,20 9:10
    21:5,8,19 22:6 28:9
    78:12 92:23 96:14
    103:9 124:17 125:4
**U.S.4** 4:9

**V**

**vague** 27:16 28:15
**various** 12:11
**vault** 23:11,12,14
**verified** 113:10
**victims** 75:24 76:7,9
**video** 4:2 5:3 113:22
**videographer** 2:19 4:4
    13:1,10,12,21,23
    14:20,21 15:3 17:10
    106:22 113:11
**videotape** 4:22 5:5,9
    5:13 19:13,16
**videotaped** 1:12 4:6
**view** 125:5
**violence** 103:10
**visible** 19:14
**volunteered** 74:14
**vs** 1:5 4:8

**W**

**Wacker** 2:13
**waiving** 132:3
**wall** 48:4 55:13 56:8

**want** 13:22 14:10,11
    14:16 15:10,13,16,18
    15:21,24 16:20,22,23
    17:3,4,5,18,20,22,23
    18:2,4,6,10,11,15
    21:24 66:10 106:22
    108:11,12,19 109:12
    110:16 112:24
    123:18
**wanted** 51:18 65:11
    102:6
**Washing** 33:2
**Washington** 29:11,15
    29:20 30:4,12,20
    32:17,18,19 33:5,6
    33:16,17,19 34:3,4
    35:10 37:20
**wasn't** 88:8
**wasted** 100:5,14
**watching** 96:7
**water** 76:22 77:11
**watered** 42:18 43:1,12
**watering** 41:9
**way** 20:24 43:9
**Wayne** 29:15 32:17,18
    33:2,6,17,18 34:3,5
**wear** 18:2,11,21 50:3
    50:6 131:16
**wearing** 101:20
    107:12
**weight** 49:16
**went** 67:22 68:6 74:24
    75:8 74:19 81:8
**we'll** 65:3 105:24
    107:11 109:17
**we're** 19:15 112:17,18
    112:22 113:1 132:1,6
**we've** 14:1 16:7,14
    64:19,19
**whatsoever** 40:16,23
    42:4 90:1
**whereof** 133:18
**widespread** 125:16
**William** 1:6,7,12 2:10
    2:11 3:3 4:7,20 5:16

**5**:23 120:16,24
    132:11 133:7,9
**Willie** 29:10,20 30:4
    30:12,20 32:17 33:4
    33:16 34:4 35:10
    37:20
**willing** 73:7
**wishes** 13:3
**withdraw** 43:10
**withheld** 30:19 33:7
    34:2,11 37:2,6
    125:14
**withhold** 32:2 125:17
**witness** 3:2 5:15 11:18
    113:6 130:19 132:14
    133:12,18
**witnesses** 23:9,11,18
    28:2,4,9
**wore** 49:24
**work** 11:5,13 23:11
    26:14,19 27:1,3
    **worked** 11:7 25:4
    26:15 41:14
**working** 11:10,16
    22:24
**worse** 65:3 81:21 88:9
**wouldn't** 51:10 81:17
    105:15 107:5
**wrist** 48:4
**wrists** 55:14,22
**write** 114:13,16 115:6
    115:9 116:2,5 118:17
    118:20 120:4,7
    122:19,22 128:17,20
    129:18,21 130:3
**written** 24:9 91:22
**wrong** 112:5

**X**

**X** 3:1
**X72930** 121:18
**X72930-38** 3:12
**X72960** 3:8 39:17
**X72961** 3:11
**X72962** 94:21
**X72962-63** 3:10

**X72982** 44:1
**X72982-86** 3:9
**X73001** 28:23

**Y**

**years** 6:9 8:1,7,13 9:9
    11:9,20 12:14 89:11
    96:23 97:9 124:1

**0**

**084-002342** 133:23

**1**

**1** 3:7 28:18,20,22
    37:16 38:4
**1st** 133:19
**1:11-cv-08996** 1:5
**10** 2:13
**10:26** 1:18 4:2 133:5
**10:34** 12:17
**10:36** 12:19
**11:00** 1:18 2:3 133:6
**103rd** 45:5,11,20,21
**11th** 99:19
**11-CV-8996** 4:9
**12** 44:11,17
**12:10** 106:16
**12:17** 106:20
**12:33** 121:1
**12:46** 132:11 133:14
**12:53** 132:12
**13** 2:7
**18** 11:9,20
**19** 44:12
**150** 2:7
**18** 11:9,20
**1950** 89:12
**1960** 89:12
**1980** 6:9 8:1,7,13 9:9
    96:23 97:9 124:1,15
    125:3 126:23
**1984** 99:9 101:14,20
**1986** 6:4 31:5,5,13,14
    34:20,23 38:20,24
    39:6 40:22 45:6,22
    47:8,14 48:13 49:6

(312) 386-2000

---

William Marley    May 29, 2012

49:13,17,20,24 50:3
50:6,10 62:12 67:17
79:13,21 87:16,23
97:24 104:19 105:4
105:15
**1989** 6:9 8:1,7,13 9:9
    96:23 97:9 124:1,15
    125:4 126:23
**1993** 11:12 12:3,10
    41:14

**2**

**2** 3:8 6:4,7,23 7:20 8:1
    8:7,13 9:8 21:18
    25:19,22 26:16 35:24
    36:11 38:7 39:13,15
    39:16,23 43:13 45:5
    45:11,21 46:7,23
    47:20 48:5,12 61:20
    77:4 80:21 83:6
    86:11 88:18 89:2,6
    90:18 94:6 95:20
    96:5,22 97:7,9
    100:12 101:5,11
    104:4,13 105:14
    119:14 124:2,16
    125:3,17
**2012** 1:18 4:3 133:5,19
**2013** 133:23
**23** 38:20,24 79:13,21
**2300** 2:13
**243-5900** 2:4
**26th** 23:14
**28** 3:7
**29** 1:17 4:2 99:9
    101:14 133:5

**3**

**3** 3:9 43:20,22,24 44:7
    45:2
**30** 4:24 5:9 45:5,22
    47:8,14 48:13 62:11
    67:17 79:22 87:15,22
    101:20
**31** 40:22 95:3 97:24
    133:23

**31st** 95:7
**312** 1:18 2:3,4,14 4:11
    133:6
**39** 3:8

**4**

**4** 3:10 46:6 94:13,15
    94:17,20,22 95:6,14
    99:6
**43** 3:9

**5**

**5** 3:5,11 97:16,18,20
    98:6,10,17 114:3
    122:10 128:7 129:9
**550** 2:7

**6**

**6** 3:12 120:19,21
    121:17 122:8
**60143** 2:8
**60606** 2:13
**60607** 2:3
**627-2102** 2:14
**63** 94:21
**630** 2:8

**7**

**7** 101:20
**72938** 121:18
**735-3300** 2:8

**9**

**9** 4:3:10
**97** 3:11
**986** 44:1

(312) 386-2000

**In The Matter Of:**

*Eric Caine*

*vs.*

*Jon Burge*

---

*James  Pienta*

*May 22, 2012*

---

**MERRILL CORPORATION**
LegaLink, Inc.
311 South Wacker Drive
Suite 300
Chicago, IL 60606
Phone: 312.386.2000
Fax: 312.386.2275

EXHIBIT
13

---

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
ERIC CAINE,                       )
                                  )
               Plaintiff,         )
                                  )
     -vs-                         ) No. 1:11-cv-08996
                                  )
JON BURGE, JAMES PIENTA,          )
RAYMOND MADIGAN, WILLIAM          )
MARLEY, WILLIAM PEDERSON,         )
DANIEL McWEENY, CITY OF           )
CHICAGO and UNIDENTIFIED          )
EMPLOYEES OF THE CITY OF          )
CHICAGO,                          )
                                  )
               Defendants.        )
```

        The deposition of JAMES PIENTA, called by the
plaintiff for examination, pursuant to notice and
pursuant to the Rules of Civil Procedure for the
United States District Courts, taken before Lydia B.
Pinkawa, CSR and Notary Public in and for the County
of Cook and State of Illinois, on May 22, 2012, at
10:25 a.m., at Suite 100, 312 North May Street,
Chicago, Illinois.

---

```
 1    PRESENT:
 2       LOEVY & LOEVY
         By MR. RUSSELL AINSWORTH
 3       312 North May Street, Suite 100
         Chicago, Illinois  60607
 4       (312) 243-5900
         russell@loevy.com
 5
           appeared on behalf of plaintiff,
 6
         THE SOTOS LAW FIRM, P.C.
 7       By MS. ELIZABETH A. EKL
         550 East Devon, Suite 150
 8       Itasca, Illinois  60143
         (630) 735-3300
 9       eekl@jsotoslaw.com
10         appeared on behalf of defendants Jon Burge,
         James Pienta, Raymond Madigan, William
11       Marley, William Pederson and Daniel McWeeny,
12       DYKEMA GOSSETT, PLLC
         By MR. PAUL A. MICHALIK
13       10 South Wacker Drive, Suite 2300
         Chicago, Illinois  60606
14       (312) 627-2102
         pmichalik@dykema.com
15
           appeared on behalf of defendant City of
16       Chicago.
17
18
19
20
21
22
23
24
```

---

```
 1                I N D E X
 2    WITNESS
 3       James Pienta
 4    EXAMINED BY                         PAGE
 5       Mr. Ainsworth                       4
 6    EXHIBITS MARKED                     PAGE
 7       Exhibit 1 (GPR Bates X73003)        6
 8       Exhibit 2 (GPR Bates X72982-86)    12
 9       Exhibit 3 (interview of R. Burnette) 15
10       Exhibit 4 (GPR Bates X72960)       16
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

1         JAMES PIENTA,

2  having been first duly sworn, was examined and

3  testified as follows:

4              DIRECT EXAMINATION

5  BY MR. AINSWORTH:

6     Q   Sir, would you please state and spell your

7  name for the record?

8     A   James Pienta, P-i-e-n-t-a.

9     Q   And sir, I understand that you were a

10 detective at Area 2 for some period of time, is that

11 correct?

12    A   It is my desire to answer your questions

13 fully.  However, I'm aware that merely answering your

14 questions might lead to my prosecution for a criminal

15 offense.  Acting on the advice of my attorney, I

16 choose not to answer your question based on the

17 rights afforded me in the Fifth Amendment to the

18 United States Constitution.

19       MS. EKL:  And counsel, would you stipulate

20    that if he were to answer any other questions in

21    which he asserted his Fifth Amendment rights and

22    just stated I assert my Fifth Amendment rights,

23    that he would adopt this statement as is stated

24    in full?

1        MR. AINSWORTH:  I so stipulate.

2        MS. EKL:  Thank you.

3  BY MR. AINSWORTH:

4     Q   Were you a detective at Area 2 as far back as

5  1973?

6     A   I stand on my Fifth Amendment right.

7     Q   And you refuse to answer the question?

8     A   I stand on my Fifth Amendment right.

9     Q   And when did you stop being an Area 2 -- a

10 detective at Area 2?

11    A   I stand on my Fifth Amendment right.

12    Q   How old are you, sir?

13    A   I stand on my Fifth Amendment right.

14    Q   In 1986 -- well, strike that.  Would you

15 describe your appearance in 1986?

16    A   I stand on my Fifth Amendment right.

17    Q   What color hair did you have in April or May

18 of 1986?

19    A   I stand on my Fifth Amendment right.

20    Q   How tall were you in April or May of 1986?

21    A   I stand on my Fifth Amendment right.

22    Q   And how much did you weigh in April or May

23 of 1986?

24    A   I stand on my Fifth Amendment right.

1     Q   How did you learn about the fact that the

2  Sanchezes had been killed?

3     A   I stand on my Fifth Amendment right.

4     Q   Please tell me what steps you took to

5  investigate the Sanchez murders.

6        MS. EKL:  Objection, assumes facts not in

7     evidence.

8     A   I stand on my Fifth Amendment right.

9  BY MR. AINSWORTH:

10    Q   Isn't it true that you did investigate the

11 Sanchez murders?

12    A   I stand on my Fifth Amendment right.

13    Q   Please tell me every witness you questioned

14 in regard to the Sanchez murders.

15       MS. EKL:  Objection, assumes facts not in

16    evidence.

17    A   I stand on my Fifth Amendment right.

18       MR. AINSWORTH:  Let's mark this as Exhibit

19    No. 1 to your deposition.

20       (Document marked as Pienta Deposition

21        Exhibit 1 for identification.)

22    Q   Showing you what's been marked as Exhibit

23 No. 1, which for the record is a one page document

24 Bates numbered X73003, sir, did you create this

1  report that's been marked as Exhibit No. 1?

2     A   I stand on my Fifth Amendment right.

3     Q   Did you interview a 16-year-old girl named

4  Marva Hall?

5     A   I stand on my Fifth Amendment right.

6     Q   What did Marva Hall tell you?

7        MS. EKL:  Objection, assumes facts not in

8     evidence.

9     A   I stand on my Fifth Amendment right.

10 BY MR. AINSWORTH:

11    Q   Did you tell Marva Hall details about the

12 Sanchez homicides before Marva Hall volunteered any

13 of those details to you?

14    A   I stand on my Fifth Amendment right.

15    Q   Isn't it true that you told Marva Hall how

16 the Sanchezes were killed before Marva Hall told you

17 anything about her own knowledge of how the Sanchezes

18 were killed?

19    A   I stand on my Fifth Amendment right.

20    Q   Isn't it true that you told Marva Hall that

21 the Sanchezes had been stabbed before she said

22 anything to you about knowing that the Sanchezes had

23 been stabbed?

24    A   I stand on my Fifth Amendment right.

```
 1      Q   Were there details that Marva Hall told you
 2  that did not match with your understanding of how the
 3  Sanchez homicides had been committed?
 4      A   I stand on my Fifth Amendment right.
 5      Q   Did you conduct any followup to find out why
 6  Marva Hall was telling you details about the Sanchez
 7  homicides that didn't match the actual homicides?
 8      MS. EKL:  Objection, assumes facts not in
 9  evidence.
10      A   I stand on my Fifth Amendment right.
11  BY MR. AINSWORTH:
12      Q   Did you determine whether or not a shotgun
13  had been stolen from the Sanchezes the night that
14  they were killed?
15      A   I stand on my Fifth Amendment right.
16      Q   Did you tell Marva Hall that if she
17  implicated Aaron Patterson, that her cousin, Dale
18  Wood White, would not be implicated in the crime?
19      A   I stand on my Fifth Amendment right.
20      Q   Where did you interview Marva Hall?
21      A   I stand on my Fifth Amendment right.
22      Q   Isn't it true that you interviewed Marva Hall
23  while she was alone?
24      A   I stand on my Fifth Amendment right.
```

```
 1      Q   Showing you the second line of Exhibit No. 1,
 2  would you please tell us what appeared on this
 3  document underneath where it says, where a 19 is
 4  written in before APR, dot, 86?
 5      MS. EKL:  Objection, foundation.
 6      A   I stand on my Fifth Amendment right.
 7  BY MR. AINSWORTH:
 8      Q   Isn't it true that originally under the 19
 9  and then APR.86 it was typed 20, two zero?
10      MS. EKL:  Objection, foundation.
11      A   I stand on my Fifth Amendment right.
12  BY MR. AINSWORTH:
13      Q   Who typed this report that's Exhibit No. 1?
14      A   I stand on my Fifth Amendment right.
15      Q   Were handwritten notes of the interview of
16  Marva Hall taken?
17      A   I stand on my Fifth Amendment right.
18      Q   What happened to the notes, the handwritten
19  notes that were taken of the interview of Marva Hall?
20      MS. EKL:  Objection, assumes facts not in
21  evidence.
22      A   I stand on my Fifth Amendment right.
23  BY MR. AINSWORTH:
24      Q   Isn't it true that the handwritten notes of
```

```
 1  the interview of Marva Hall were destroyed?
 2      MS. EKL:  Objection, assumes facts not in
 3  evidence.
 4      A   I stand on my Fifth Amendment rights.
 5  BY MR. AINSWORTH:
 6      Q   Isn't it true that Marva Hall provided
 7  information to you and your fellow detectives that is
 8  not contained in this typewritten report?
 9      MS. EKL:  Objection, foundation, assumes
10  facts not in evidence.
11      A   I stand on my Fifth Amendment right.
12  BY MR. AINSWORTH:
13      Q   Isn't it true that you wrote, you handwrote
14  the fact that you had provided details of the Sanchez
15  homicides, including the fact that they had been
16  stabbed, to Marva Hall before she volunteered any of
17  those facts?
18      MS. EKL:  Objection, assumes facts not in
19  evidence.
20      A   I stand on my Fifth Amendment right.
21  BY MR. AINSWORTH:
22      Q   Isn't it true that you withheld any
23  handwritten notes that were taken of the interview
24  with Marva Hall on April 26th and that you withheld
```

```
 1  them from prosecution and from Eric Caine's defense
 2  team?
 3      MS. EKL:  Objection to form.
 4      A   I stand on my Fifth Amendment right.
 5  BY MR. AINSWORTH:
 6      Q   Are you going to assert your Fifth Amendment
 7  rights and refuse to answer any other questions that
 8  I ask you about Exhibit No. 1?
 9      A   Yes.
10      Q   Did Marva Hall describe the third male black
11  to you who supposedly committed the Sanchez murders?
12      A   I stand on my Fifth Amendment rights.
13      Q   Did you ask her to describe the third male
14  black to you?
15      A   I stand on my Fifth Amendment rights.
16      Q   Did she tell you that the third male black
17  was tall?
18      A   I stand on my Fifth Amendment rights.
19      Q   Isn't it true that Marva Hall told you the
20  third male black was a tall person?
21      A   I stand on my Fifth Amendment rights.
22      MR. AINSWORTH:  Let's mark this as Exhibit
23  No. 2, please.
24
```

```
 1          (Documents marked as Pienta Deposition
 2          Exhibit 2 for identification.)
 3     Q   Showing you what's been marked as Exhibit
 4   No. 2, this is a five page document Bates numbered
 5   X72982 through 986. Sir, did you create the first
 6   page of Exhibit No. 2?
 7     A   I stand on my Fifth Amendment rights.
 8     Q   Who created the first page of Exhibit No. 2?
 9     A   I stand on my Fifth Amendment rights.
10     Q   Looking at the bottom line of the narrative
11   portion of Exhibit No. 2, what does the phrase 12
12   known members of the tribe mean?
13          MS. EKL:  Objection, foundation.
14     A   I stand on my Fifth Amendment rights.
15   BY MR. AINSWORTH:
16     Q   Who are the 12 known members of the tribe?
17          MS. EKL:  Objection, foundation.
18     A   I stand on my Fifth Amendment right.
19   BY MR. AINSWORTH:
20     Q   Please tell us why the 12 individuals who are
21   listed on pages X72983 through 986 were included in
22   the request for latent fingerprint comparison.
23          MS. EKL:  Objection, foundation.
24     A   I stand on my Fifth Amendment rights.
```

```
 1   BY MR. AINSWORTH:
 2     Q   Did you question Willie Washington in regard
 3   to the Sanchez murders?
 4     A   I stand on my Fifth Amendment rights.
 5     Q   Isn't it true that Willie Washington told you
 6   that he had committed the Sanchez murders, with his
 7   brother Wayne acting as a lookout?
 8     A   I stand on my Fifth Amendment rights.
 9     Q   Tell me every step that you took to locate
10   Willie Washington.
11          MS. EKL:  Objection, assumes facts not in
12     evidence.
13     A   I stand on my Fifth Amendment rights.
14   BY MR. AINSWORTH:
15     Q   Isn't it true that you documented the fact
16   that Willie Washington told you that he committed the
17   Sanchez homicides while his brother Wayne acted as a
18   lookout?
19          MS. EKL:  Objection, assumes facts not in
20     evidence.
21     A   I stand on my Fifth Amendment rights.
22   BY MR. AINSWORTH:
23     Q   Isn't it true that you withheld from the
24   prosecution and from Eric Caine's defense team the
```

```
 1   fact that Willie Washington, or the documentation
 2   that showed that Willie Washington had told you that
 3   he had committed the Sanchez murders while his
 4   brother Wayne acted as a lookout?
 5          MS. EKL:  Objection, form, assumes facts not
 6     in evidence.
 7     A   I stand on my Fifth Amendment rights.
 8   BY MR. AINSWORTH:
 9     Q   Are you going to assert your Fifth Amendment
10   rights and not answer any other questions about
11   Exhibit No. 2?
12     A   Yes.
13          MS. EKL:  I just, I know this is a late
14     objection, but I just object to the form of the
15     question to the extent that it implies that he's
16     refusing to answer any questions.  I believe your
17     question was are you going to assert your Fifth
18     Amendment rights and continue to refuse to answer
19     questions.  He has answered every question that
20     you have asked him.  He has asserted his rights.
21     So I just object to the form of that question.
22   BY MR. AINSWORTH:
23     Q   So I'll rephrase it.  Are you going to assert
24   your Fifth Amendment rights in response to any
```

```
 1   question I ask you about Exhibit No. 2?
 2     A   Yes.
 3          MS. EKL:  Thank you.
 4          MR. AINSWORTH:  Let's mark this as Exhibit
 5     No. 3, please.
 6          (Document marked as Pienta Deposition
 7          Exhibit 3 for identification.)
 8     Q   Showing you what's been marked as Pienta
 9   Exhibit No. 3, this is a one page document Bates
10   numbered X73001. Sir, did you create this document,
11   Exhibit No. 3?
12     A   I stand on my Fifth Amendment rights.
13     Q   If your name is listed first in the bottom
14   left corner where it says reporting officer's
15   signature, does that mean that you're the person who
16   prepared this document?
17     A   I stand on my Fifth Amendment rights.
18     Q   Isn't it true that Richard Burnette told you
19   that Willie Washing -- that he had heard that Willie
20   Washington committed the Sanchez murders?
21     A   I stand on my Fifth Amendment rights.
22     Q   After you spoke to Richard Burnette, did you
23   take any steps to try and locate Willie Washington?
24          MS. EKL:  Objection, assumes facts not in
```

James  Pienta   May 22, 2012

Page 16

```
 1        evidence.
 2        A   I stand on my Fifth Amendment rights.
 3   BY MR. AINSWORTH:
 4        Q   Who was your regular partner in April
 5   of 1986?
 6        A   I stand on my Fifth Amendment rights.
 7        Q   Did you have a regular partner in April
 8   of 1986?
 9        A   I stand on my Fifth Amendment rights.
10        MR. AINSWORTH:  Let's mark this as Exhibit
11   No. 4.
12        (Document marked as Pienta Deposition
13         Exhibit 4 for identification.)
14        Q   Before we go to No. 4, sir, are you going to
15   assert your Fifth Amendment rights in response to any
16   questions that we ask you or that I ask you about
17   Exhibit No. 3?
18        A   Yes.
19        Q   Turning to Exhibit No. 4, which is a one page
20   document Bates numbered X72960, sir, did you type
21   this document?
22        A   I stand on my Fifth Amendment rights.
23        Q   Would you please describe room number 3 or
24   interrogation room number 3 as it existed in Area 2
```

James  Pienta   May 22, 2012

Page 17

```
 1   back in 1986?
 2        A   I stand on my Fifth Amendment right.
 3        Q   Isn't it true that Eric Caine was handcuffed
 4   while he was at Area 2?
 5        MS. EKL:  Objection, foundation.
 6        A   I stand on my Fifth Amendment right.
 7   BY MR. AINSWORTH:
 8        Q   Who created this document that is marked as
 9   Exhibit No. 4?
10        A   I stand on my Fifth Amendment rights.
11        Q   Why is this document dated April 31, 1986?
12        MS. EKL:  Objection, foundation.
13        A   I stand on my Fifth Amendment right.
14   BY MR. AINSWORTH:
15        Q   The conversations that are documented on
16   Exhibit No. 4, did they occur on April 30th or on
17   May 1st?
18        MS. EKL:  Objection, foundation.
19        A   I stand on my Fifth Amendment right.
20   BY MR. AINSWORTH:
21        Q   Are you going to assert your Fifth Amendment
22   rights in response to any question I ask you about
23   Exhibit No. 4?
24        A   Yes, sir.
```

James  Pienta   May 22, 2012

Page 18

```
 1        Q   Isn't it true that you arrested Aaron
 2   Patterson?
 3        A   I stand on my Fifth Amendment right.
 4        Q   Isn't it true that you assisted other
 5   detectives in transporting Aaron Patterson to the
 6   police station?
 7        A   I stand on my Fifth Amendment rights.
 8        Q   Isn't it true that you assisted -- strike
 9   that.  Isn't it true that when you transported Aaron
10   Patterson to the police station, you also transported
11   a man by the name of James Hill?
12        MS. EKL:  Objection, assumes facts not in
13        evidence.
14        A   I stand on my Fifth Amendment rights.
15   BY MR. AINSWORTH:
16        Q   Isn't it true that when you transported Aaron
17   Patterson to Area 2, that you transported him with a
18   man named James Hill?
19        MS. EKL:  Objection, assumes facts not in
20        evidence.
21        A   I stand on my Fifth Amendment rights.
22   BY MR. AINSWORTH:
23        Q   Isn't it true that while driving in a car to
24   Area 2 with Aaron Patterson, you reached across Aaron
```

James  Pienta   May 22, 2012

Page 19

```
 1   Patterson and slapped James Hill in the face?
 2        MS. EKL:  Objection, assumes facts not in
 3        evidence.
 4        A   I stand on my Fifth Amendment rights.
 5   BY MR. AINSWORTH:
 6        Q   Isn't it true that you then told Aaron
 7   Patterson that if you had been the officer who found
 8   him, that he, Aaron Patterson would be dead?
 9        MS. EKL:  Objection, assumes facts not in
10        evidence.
11        A   I stand on my Fifth Amendment rights.
12   BY MR. AINSWORTH:
13        Q   Isn't it true that Detectives Marley and
14   Pederson were also in the car with you when you were
15   transporting Aaron Patterson and James Hill to
16   Area 2?
17        MS. EKL:  Objection, assumes facts not in
18        evidence.
19        A   I stand on my Fifth Amendment right.
20   BY MR. AINSWORTH:
21        Q   Isn't it true that you then interrogated
22   Aaron Patterson inside an interrogation room at
23   Area 2?
24        MS. EKL:  Objection, assumes facts not in
```

James Pienta   May 22, 2012

Page 20

```
 1        evidence.
 2        A   I stand on my Fifth Amendment rights.
 3   BY MR. AINSWORTH:
 4        Q   Isn't it true that you told other officers in
 5   the room, I don't know about the rest of you, but I'm
 6   tired of listening to this bullshit, I'm ready to
 7   kick his ass?
 8        MS. EKL:  Objection, assumes facts not in
 9        evidence.
10        A   I stand on my Fifth Amendment rights.
11   BY MR. AINSWORTH:
12        Q   Isn't it true that you then left the room and
13   you talked to other Area 2 detectives about using
14   force against Aaron Patterson to get him to give a
15   confession?
16        MS. EKL:  Objection, foundation, assumes
17        facts not in evidence.
18        A   I stand on my Fifth Amendment rights.
19   BY MR. AINSWORTH:
20        Q   Isn't it true that you returned with four
21   other officers to the interrogation room?
22        MS. EKL:  Objection, assumes facts not in
23        evidence, foundation.
24        A   I stand on my Fifth Amendment right.
```

James Pienta   May 22, 2012

Page 21

```
 1   BY MR. AINSWORTH:
 2        Q   Isn't it true that one of those detectives
 3   that you returned with was Detective Madigan?
 4        MS. EKL:  Objection, assumes facts not in
 5        evidence.
 6        A   I stand on my Fifth Amendment right.
 7   BY MR. AINSWORTH:
 8        Q   Isn't it true that you brought a gray plastic
 9   typewriter cover with you when you returned to the
10   interrogation room where Aaron Patterson was?
11        MS. EKL:  Objection, assumes facts not in
12        evidence.
13        A   I stand on my Fifth Amendment right.
14   BY MR. AINSWORTH:
15        Q   Isn't it true that you talked to Detective
16   Madigan about placing the typewriter cover over Aaron
17   Patterson's head so as to coerce him to give a false
18   confession prior to the time that you returned to the
19   room with the typewriter cover?
20        MS. EKL:  Objection, assumes facts not in
21        evidence.
22        A   I stand on my Fifth Amendment rights.
23   BY MR. AINSWORTH:
24        Q   Isn't it true that you then, when you
```

James Pienta   May 22, 2012

Page 22

```
 1   returned to the room with the typewriter cover,
 2   handcuffed Aaron Patterson's hands behind his back?
 3        MS. EKL:  Objection, assumes facts not in
 4        evidence.
 5        A   I stand on my Fifth Amendment rights.
 6   BY MR. AINSWORTH:
 7        Q   Isn't it true that another officer then
 8   turned out the lights to the interrogation room?
 9        MS. EKL:  Objection, assumes facts not in
10        evidence.
11        A   I stand on my Fifth Amendment right.
12   BY MR. AINSWORTH:
13        Q   Isn't it true that you then struck Aaron
14   Patterson in the chest?
15        MS. EKL:  Objection, assumes facts not in
16        evidence.
17        A   I stand on my Fifth Amendment right.
18   BY MR. AINSWORTH:
19        Q   Isn't it true that you then placed your hands
20   around Aaron Patterson's neck?
21        MS. EKL:  Objection, assumes facts not in
22        evidence.
23        A   I stand on my Fifth Amendment right.
24
```

James Pienta   May 22, 2012

Page 23

```
 1   BY MR. AINSWORTH:
 2        Q   Isn't it true that you held Aaron Patterson
 3   by his neck while Detective Pederson took the
 4   typewriter cover and placed it over Aaron Patterson's
 5   face?
 6        MS. EKL:  Objection, assumes facts not in
 7        evidence.
 8        A   I stand on my Fifth Amendment right.
 9   BY MR. AINSWORTH:
10        Q   Isn't it true that Detective Pederson then
11   held the typewriter cover over Aaron Patterson's head
12   so that Aaron Patterson couldn't breathe?
13        MS. EKL:  Objection, assumes facts not in
14        evidence.
15        A   I stand on my Fifth Amendment rights.
16   BY MR. AINSWORTH:
17        Q   Isn't it true that while the typewriter cover
18   was held over Aaron Patterson's face, preventing him
19   from breathing, you struck Aaron Patterson in the
20   chest?
21        MS. EKL:  Objection, assumes facts not in
22        evidence.
23        A   I stand on my Fifth Amendment rights.
24
```

James  Pienta   May 22, 2012

Page 24

```
 1    BY MR. AINSWORTH:
 2        Q   Isn't it true that while you observed Officer
 3    Pederson holding the typewriter cover over Aaron
 4    Patterson's face so that Aaron Patterson couldn't
 5    breathe, you observed Detective Madigan strike Aaron
 6    Patterson in the chest?
 7            MS. EKL:  Objection, assumes facts not in
 8        evidence.
 9        A   I stand on my Fifth Amendment right.
10    BY MR. AINSWORTH:
11        Q   Isn't it true that when you observed
12    Detective Pederson holding the typewriter cover over
13    Aaron Patterson's face, you observed other detectives
14    strike Aaron Patterson in the chest?
15            MS. EKL:  Objection, assumes facts not in
16        evidence.
17        A   I stand on my Fifth Amendment right.
18    BY MR. AINSWORTH:
19        Q   Isn't it true that the typewriter cover was
20    held over Aaron Patterson's face for approximately
21    one minute?
22            MS. EKL:  Objection, assumes facts not in
23        evidence, foundation.
24        A   I stand on my Fifth Amendment rights.
```

James  Pienta   May 22, 2012

Page 25

```
 1    BY MR. AINSWORTH:
 2        Q   Isn't it true that after a detective removed
 3    the typewriter cover from Aaron Patterson's face,
 4    another detective turned on the lights?
 5            MS. EKL:  Objection, foundation, assumes
 6        facts not in evidence.
 7        A   I stand on my Fifth Amendment right.
 8    BY MR. AINSWORTH:
 9        Q   Isn't it true that Aaron Patterson then
10    requested to speak to a lawyer?
11            MS. EKL:  Objection, assumes facts not in
12        evidence, foundation.
13        A   I stand on my Fifth Amendment rights.
14    BY MR. AINSWORTH:
15        Q   Isn't it true that you then told Aaron
16    Patterson no, you're not getting a mother fucking
17    attorney?
18            MS. EKL:  Objection, assumes facts not in
19        evidence.
20        A   I stand on my Fifth Amendment rights.
21    BY MR. AINSWORTH:
22        Q   Isn't it true that you then asked Aaron
23    Patterson if he was ready to cooperate?
24            MS. EKL:  Objection, assumes facts not in
```

James  Pienta   May 22, 2012

Page 26

```
 1        evidence.
 2        A   I stand on my Fifth Amendment right.
 3    BY MR. AINSWORTH:
 4        Q   Isn't it true that you then heard another
 5    detective ask Aaron Patterson if he was ready to
 6    cooperate?
 7            MS. EKL:  Objection, assumes facts not in
 8        evidence.
 9        A   I stand on my Fifth Amendment right.
10    BY MR. AINSWORTH:
11        Q   Isn't it true that Aaron Patterson then told
12    you and the detectives in that room that he had said
13    all he was going to say?
14            MS. EKL:  Objection, assumes facts not in
15        evidence.
16        A   I stand on my Fifth Amendment rights.
17    BY MR. AINSWORTH:
18        Q   Isn't it true then that an officer, that a
19    detective then turned the lights off?
20            MS. EKL:  Objection, assumes facts not in
21        evidence.
22        A   I stand on my Fifth Amendment rights.
23    BY MR. AINSWORTH:
24        Q   Isn't it true that when the lights went off
```

James  Pienta   May 22, 2012

Page 27

```
 1    the second time, you then placed the typewriter cover
 2    over Aaron Patterson's face?
 3            MS. EKL:  Objection, assumes facts not in
 4        evidence.
 5        A   I stand on my Fifth Amendment rights.
 6    BY MR. AINSWORTH:
 7        Q   Isn't it true that you then observed
 8    Detective Madigan place the typewriter cover over
 9    Aaron Patterson's face after the second time the
10    lights went off?
11            MS. EKL:  Objection, assumes facts not in
12        evidence.
13        A   I stand on my Fifth Amendment right.
14    BY MR. AINSWORTH:
15        Q   Isn't it true you observed another detective
16    place a typewriter cover over Aaron Patterson's face
17    after the lights went off for a second time?
18            MS. EKL:  Objection, assumes facts not in
19        evidence.
20        A   I stand on my Fifth Amendment right.
21    BY MR. AINSWORTH:
22        Q   Isn't it true that you placed the typewriter
23    cover over Aaron Patterson's face the second time in
24    a manner that would prevent him from breathing?
```

James Pienta   May 22, 2012

Page 28

1       MS. EKL:  Objection, foundation, assumes
2    facts not in evidence.
3       A   I stand on my Fifth Amendment rights.
4  BY MR. AINSWORTH:
5       Q   Isn't it true that you held the typewriter
6  cover over Aaron Patterson's face for approximately
7  one to two minutes?
8       MS. EKL:  Objection, assumes facts not in
9    evidence.
10      A   I stand on my Fifth Amendment rights.
11 BY MR. AINSWORTH:
12      Q   Isn't it true that you observed another
13 detective hold the typewriter cover over Aaron
14 Patterson's face for approximately one to two
15 minutes, preventing Aaron Patterson from breathing
16 during that time?
17      MS. EKL:  Objection, foundation, assumes
18    facts not in evidence.
19      A   I stand on my Fifth Amendment rights.
20 BY MR. AINSWORTH:
21      Q   Isn't it true that you saw Detective Madigan
22 hold the typewriter cover over Aaron Patterson's face
23 for approximately one to two minutes in a manner that
24 would prevent Aaron Patterson from breathing?

James Pienta   May 22, 2012

Page 29

1       MS. EKL:  Objection, foundation, assumes
2    facts not in evidence.
3       A   I stand on my Fifth Amendment rights.
4  BY MR. AINSWORTH:
5       Q   Isn't it true that you then provided Aaron
6  Patterson with a cup containing bourbon?
7       MS. EKL:  Objection, foundation.
8       A   I stand on my Fifth Amendment right.
9  BY MR. AINSWORTH:
10      Q   Isn't it true that you then told Aaron
11 Patterson that he was to tell an assistant state's
12 attorney that he had killed the Sanchezes?
13      MS. EKL:  Objection, foundation, assumes
14    facts not in evidence.
15      A   I stand on my Fifth Amendment rights.
16 BY MR. AINSWORTH:
17      Q   Isn't it true that you heard another
18 detective tell Aaron Patterson that he was to tell an
19 assistant state's attorney that he killed the
20 Sanchezes?
21      MS. EKL:  Objection, foundation.
22      A   I stand on my Fifth Amendment rights.
23 BY MR. AINSWORTH:
24      Q   Isn't it true that you then left Aaron

James Pienta   May 22, 2012

Page 30

1  Patterson alone for a period of approximately one
2  hour after he was told that he was to confess to an
3  assistant state's attorney?
4       MS. EKL:  Objection, assumes facts not in
5    evidence.
6       A   I stand on my Fifth Amendment right.
7  BY MR. AINSWORTH:
8       Q   Isn't it true that you consulted with Jon
9  Burge during the course of your interrogation of
10 Aaron Patterson?
11      MS. EKL:  Objection, form, foundation.
12      A   I stand on --
13      MS. EKL:  I'm sorry, assumes facts not in
14    evidence.
15      A   I stand on my Fifth Amendment rights.
16 BY MR. AINSWORTH:
17      Q   Isn't it true that you, Jon Burge and
18 Detective Madigan agreed to use a typewriter cover
19 over Aaron Patterson's face in an effort to get Aaron
20 Patterson to give a false confession?
21      A   I stand on my Fifth Amendment rights.
22      Q   Isn't it true that Jon Burge told you he was
23 going to talk to Aaron Patterson and show him a gun
24 to get -- in an effort to get him to confess?

James Pienta   May 22, 2012

Page 31

1       MS. EKL:  Objection, form, foundation.
2       A   I stand on my Fifth Amendment right.
3  BY MR. AINSWORTH:
4       Q   Isn't it true that you used physical force
5  against Aaron Patterson in an effort to get him to
6  give a false confession?
7       A   I stand on my Fifth Amendment rights.
8       Q   Isn't it true that your intent on April 30th
9  and May 1st of 1986 was to get Aaron Patterson to
10 give a false confession?
11      A   I stand on my Fifth Amendment rights.
12      Q   Isn't it true that you also interrogated Eric
13 Caine on April 30, 1986?
14      MS. EKL:  Objection, assumes facts not in
15    evidence.
16      A   I stand on my Fifth Amendment rights.
17 BY MR. AINSWORTH:
18      Q   Isn't it true that you brought Eric Caine to
19 the room where Aaron Patterson was being held on
20 April 30, 1986?
21      A   I stand on my Fifth Amendment rights.
22      Q   Isn't it true that sometime during the night
23 of April 30th to the morning of May 1, 1986, you
24 brought Eric Caine into Aaron Patterson's

James  Pienta  May 22, 2012

Page 32

1  interrogation room?

2      A   I stand on my Fifth Amendment rights.

3      Q   Isn't it true that you brought Eric Caine

4  into Aaron Patterson's room in an effort to

5  intimidate Eric Caine?

6      A   I stand on my Fifth Amendment rights.

7      Q   Isn't it true that at the time that Eric

8  Caine viewed Aaron Patterson, Aaron Patterson

9  appeared to be disheveled?

10     A   I stand on my Fifth Amendment rights.

11     Q   Isn't it true that you did not allow Eric

12  Caine to speak with Aaron Patterson?

13         MS. EKL:  Objection, foundation.

14     A   I stand on my Fifth Amendment rights.

15  BY MR. AINSWORTH:

16     Q   Isn't it true that when you brought Eric

17  Caine in to view Aaron Patterson, you did not allow

18  Eric Caine to speak with Aaron Patterson?

19         MS. EKL:  Objection, form.

20     A   I stand on my Fifth Amendment rights.

21  BY MR. AINSWORTH:

22     Q   Isn't it true that you then returned Eric

23  Caine to his interrogation room and then struck Eric

24  Caine in the chest?

James  Pienta  May 22, 2012

Page 33

1         MS. EKL:  Objection, form, assumes facts not

2      in evidence.

3      A   I stand on my Fifth Amendment rights.

4  BY MR. AINSWORTH:

5      Q   Isn't it true that you struck Eric Caine in

6  the chest and told him that he would get the same

7  treatment as Aaron Patterson unless he was cool?

8      A   I stand on my Fifth Amendment rights.

9      Q   Isn't it true that the reason that you told

10  Eric Caine -- strike that.  Isn't it true that the

11  reason that you struck Eric Caine in the chest and

12  told him that he would get the same treatment as

13  Aaron Patterson unless he was cool was to coerce him

14  to give a false confession?

15         MS. EKL:  Objection, assumes facts not in

16      evidence.

17     A   I stand on my Fifth Amendment rights.

18  BY MR. AINSWORTH:

19     Q   Isn't it true that you talked with Detective

20  Madigan about what Eric Caine's confession should

21  look like before Eric Caine provided a confession?

22         MS. EKL:  Objection, form, foundation,

23      assumes facts not in evidence.

24     A   I stand on my Fifth Amendment rights.

James  Pienta  May 22, 2012

Page 34

1  BY MR. AINSWORTH:

2      Q   Isn't it true that you talked with Detective

3  Madigan about making sure that Eric Caine and Aaron

4  Patterson's confession did not match up identically

5  so as to defeat a claim that their confessions had

6  been coerced prior to the time that Eric Caine

7  provided any confession?

8         MS. EKL:  Objection, form, foundation,

9      assumes facts not in evidence.

10     A   I stand on my Fifth Amendment rights.

11  BY MR. AINSWORTH:

12     Q   Isn't it true that Aaron Patterson never

13  confessed in your presence?

14     A   I stand on my Fifth Amendment rights.

15     Q   Isn't it true that you provided details of

16  the Sanchez murders to Aaron Patterson?

17     A   I stand on my Fifth Amendment rights.

18     Q   Isn't it true that when you went to go get

19  the typewriter cover, you also brought back a manila

20  envelope that provided details of the crime?

21         MS. EKL:  Objection, assumes facts not in

22      evidence.

23     A   I stand on my Fifth Amendment rights.

24

James  Pienta  May 22, 2012

Page 35

1  BY MR. AINSWORTH:

2      Q   Isn't it true that you provided details to

3  Aaron Patterson about the murders such as the fact

4  that the victims had been stabbed to death before

5  Aaron Patterson volunteered any of those details to

6  you?

7         MS. EKL:  Objection, assumes facts not in

8      evidence.

9      A   I stand on my Fifth Amendment right.

10  BY MR. AINSWORTH:

11     Q   Isn't it true that you provided details of

12  the Sanchez murders to Eric Caine such as the fact

13  that the victims had been stabbed to death before

14  Eric Caine volunteered any of those details to you?

15         MS. EKL:  Objection, assumes facts not in

16      evidence.

17     A   I stand on my Fifth Amendment right.

18  BY MR. AINSWORTH:

19     Q   Isn't it true that Detective Madigan told you

20  that he had struck Eric Caine in the side of the head

21  when Eric Caine refused to sign his notes?

22         MS. EKL:  Objection, form, foundation,

23      assumes facts not in evidence.

24     A   I stand on my Fifth Amendment rights.

James  Pienta   May 22, 2012

Page 36

```
1    BY MR. AINSWORTH:
2        Q   Isn't it true that on May 1, 1986, Detective
3    Madigan told you that Eric -- that he struck Eric
4    Caine in the side of the head when Eric Caine refused
5    to sign his notes?
6            MS. EKL:  Objection, assumes facts not in
7        evidence.
8        A   I stand on my Fifth Amendment rights.
9    BY MR. AINSWORTH:
10       Q   In 1986, how long had you known Detective
11   Madigan?
12       A   I stand on my Fifth Amendment rights.
13       Q   Do you currently socialize with Detective
14   Madigan?
15       A   I stand on my Fifth Amendment rights.
16       Q   When was the last time you spoke with
17   Detective Madigan?
18       A   I stand on my Fifth Amendment right.
19       Q   In 1986 did you socialize with Jon Burge?
20       A   I stand on my Fifth Amendment right.
21       Q   When was the last time you saw Jon Burge?
22       A   I stand on my Fifth Amendment right.
23       Q   When was the last time you had a drink with
24   Jon Burge?
```

James  Pienta   May 22, 2012

Page 37

```
1            MS. EKL:  Objection, assumes facts not in
2        evidence.
3        A   I stand on my Fifth Amendment rights.
4    BY MR. AINSWORTH:
5        Q   Have you visited Jon Burge in Florida?
6        A   I stand on my Fifth Amendment rights.
7        Q   Has Jon Burge visited you in Illinois since
8    the time that Jon Burge moved to Florida?
9        A   I stand on my Fifth Amendment right.
10       Q   Have you ever stayed at Jon Burge's house?
11       A   I stand on my Fifth Amendment right.
12       Q   Has Jon Burge ever stayed at your house?
13       A   I stand on my Fifth Amendment right.
14       Q   Did you ever speak to a man named Mack Ray?
15       A   I stand on my Fifth Amendment rights.
16       Q   Isn't it true that Mack Ray told you that
17   Wayne Washington had told him that Willie Washington
18   was the actual perpetrator of the Sanchez murders and
19   that Wayne Washington had acted as a lookout for
20   Willie?
21           MS. EKL:  Objection, foundation.
22       A   I stand on my Fifth Amendment rights.
23   BY MR. AINSWORTH:
24       Q   When did Mack Ray tell you that Willie
```

James  Pienta   May 22, 2012

Page 38

```
1    Washington was the true perpetrator and that Wayne
2    Washington had acted as a lookout for Willie
3    Washington?
4            MS. EKL:  Objection, assumes facts not in
5        evidence.
6        A   I stand on my Fifth Amendment right.
7    BY MR. AINSWORTH:
8        Q   Isn't it true that you documented the fact
9    that Mack Ray told you that Wayne Washington had told
10   him that Willie Washington committed the Sanchez
11   murders while Wayne acted as a lookout?
12           MS. EKL:  Objection, assumes facts not in
13       evidence.
14       A   I stand on my Fifth Amendment rights.
15   BY MR. AINSWORTH:
16       Q   Isn't it true that you withheld the
17   documentation from -- strike that.  Isn't it true
18   that you withheld the documentation of Mack Ray's
19   statements to you from the prosecution as well as the
20   defense team for Eric Caine?
21           MS. EKL:  Objection, assumes facts not in
22       evidence.
23       A   I stand on my Fifth Amendment rights.
24
```

James  Pienta   May 22, 2012

Page 39

```
1    BY MR. AINSWORTH:
2        Q   At the time that Mack Ray told you about
3    Willie Washington's involvement in the Sanchez
4    murders, did you know that Willie Washington had been
5    convicted of other burglaries?
6            MS. EKL:  Objection, assumes facts not in
7        evidence.
8        A   I stand on my Fifth Amendment.
9            MS. EKL:  Foundation.
10   BY MR. AINSWORTH:
11       Q   Can you tell us the good faith basis that you
12   have for asserting your Fifth Amendment rights here
13   today?
14       A   I stand on my Fifth Amendment.
15       Q   Have you consulted with attorneys in deciding
16   whether to assert your Fifth Amendment rights?
17           MS. EKL:  I object to that on the basis of
18       attorney-client privilege.
19           MR. AINSWORTH:  Are you going to instruct the
20       client not to answer that question based on that
21       objection?
22           MS. EKL:  Yes.
23   BY MR. AINSWORTH:
24       Q   Are you going to take your attorney's advice
```

1   and not answer that question?

2       A   Yes, I am.

3       Q   Are you relying on any attorney's advice as

4   the basis for asserting your Fifth Amendment rights

5   here today?

6           MS. EKL:  Objection, form and same objection

7       as to attorney-client privilege.  I'm instructing

8       the client not to answer.

9   BY MR. AINSWORTH:

10      Q   Are you going to follow your attorney's

11  advice and not answer?

12      A   Yes, I am.

13      Q   What are the names of the attorneys whose

14  advice you relied upon in deciding to assert your

15  Fifth Amendment rights here today?

16          MS. EKL:  Objection, assumes facts not in

17      evidence and again I'm going to instruct my

18      client not to answer on the basis of

19      attorney-client privilege.

20  BY MR. AINSWORTH:

21      Q   Are you going to follow your attorney's

22  advice and not answer that question?

23      A   Yes, I am.

24      Q   And what advice did those attorneys provide

1   you with respect to whether to assert your Fifth

2   Amendment rights?

3           MS. EKL:  Again I'm going to object on the

4       basis of attorney-client privilege and instruct

5       my client not to answer that question.

6   BY MR. AINSWORTH:

7       Q   Are you going to take your attorney's advice

8   and not answer that question?

9       A   Yes, I am.

10      Q   And just to be clear, my question to you,

11  sir, is would you please tell me what each attorney

12  told you about whether or not to take your

13  attorney's -- whether or not to assert your Fifth

14  Amendment rights.

15          MS. EKL:  Objection, form, assumes facts not

16      in evidence and also I object on the basis of

17      attorney-client privilege and instruct my client

18      not to answer.

19  BY MR. AINSWORTH:

20      Q   Are you going to take your attorney's advice

21  and not answer that question?

22      A   Yes, I am.

23      Q   Isn't it true that you arrested a man named

24  Michael Arbuckle on April 22, 1986?

1       A   I stand on my Fifth Amendment rights.

2       Q   Isn't it true that you were present for the

3   interrogation of Michael Arbuckle the night of April

4   22nd?

5       A   I stand on my Fifth Amendment rights.

6       Q   Isn't it true that you were present for

7   Michael Arbuckle's interrogation at Area 2 the night

8   of April 22, 1986?

9       A   I stand on my Fifth Amendment rights.

10      Q   Isn't it true that you told Michael Arbuckle

11  that you and the other detectives really wanted to

12  get Aaron Patterson?

13          MS. EKL:  Objection, foundation, assumes

14      facts not in evidence.

15      A   I stand on my Fifth Amendment rights.

16  BY MR. AINSWORTH:

17      Q   Isn't it true that you tried to get Michael

18  Arbuckle to say that Aaron Patterson was involved in

19  the Sanchez murders?

20          MS. EKL:  Objection, form, foundation,

21      assumes facts not in evidence.

22      A   I stand on my Fifth Amendment rights.

23  BY MR. AINSWORTH:

24      Q   Isn't it true that Michael Arbuckle told you

1   that he had no knowledge of the Sanchez murders?

2           MS. EKL:  Objection, foundation, assumes

3       facts not in evidence.

4       A   I stand on my Fifth Amendment rights.

5   BY MR. AINSWORTH:

6       Q   Isn't it true that you observed or you heard

7   another detective tell Aaron -- tell Michael Arbuckle

8   that they really wanted to get Aaron Patterson?

9           MS. EKL:  Objection, foundation.

10      A   I stand on my Fifth Amendment rights.

11  BY MR. AINSWORTH:

12      Q   Isn't it true that you heard other detectives

13  present in the interrogation room tell Michael

14  Arbuckle, or try to get Michael Arbuckle to implicate

15  Aaron Patterson in the Sanchez murders?

16          MS. EKL:  Objection, form, foundation.

17      A   I stand on my Fifth Amendment rights.

18  BY MR. AINSWORTH:

19      Q   Isn't it true that Michael Arbuckle asked for

20  a lawyer during that interrogation on the night of

21  April 22nd at Area 2?

22          MS. EKL:  Objection, form, foundation,

23      assumes facts not in evidence.

24      A   I stand on my Fifth Amendment right.

James Pienta   May 22, 2012
Page 44

```
 1  BY MR. AINSWORTH:
 2     Q   Isn't it true that when Michael Arbuckle
 3  asked for a lawyer, Lieutenant Jon Burge then
 4  threatened Michael Arbuckle that he would get the
 5  electric chair or lethal injection?
 6         MS. EKL:  Objection, form, foundation,
 7     assumes facts not in evidence.
 8     A   I stand on my Fifth Amendment right.
 9  BY MR. AINSWORTH:
10     Q   Isn't it true that you heard Jon Burge tell
11  Michael Arbuckle that this wasn't some TV show and
12  that he would cooperate one way or another?
13         MS. EKL:  Objection, foundation.
14     A   I stand on my Fifth Amendment rights.
15  BY MR. AINSWORTH:
16     Q   Isn't it true that you heard Jon Burge tell
17  Michael Arbuckle that if he didn't cooperate and give
18  them information about the Sanchez murders, he would
19  beat Michael Arbuckle?
20         MS. EKL:  Objection, foundation.
21     A   I stand on my Fifth Amendment rights.
22  BY MR. AINSWORTH:
23     Q   Isn't it true that Jon Burge, you heard Jon
24  Burge tell Michael Arbuckle that if he didn't
```

James Pienta   May 22, 2012
Page 45

```
 1  cooperate and implicate Aaron Patterson, he meaning
 2  Jon Burge would get some drug dealers to testify
 3  against him on the Sanchez murders?
 4         MS. EKL:  Objection, foundation.
 5     A   I stand on my Fifth Amendment right.
 6  BY MR. AINSWORTH:
 7     Q   Isn't it true that you knew that Eric Caine's
 8  supposed confession was false?
 9         MS. EKL:  Objection, form, foundation,
10     assumes facts not in evidence.
11     A   I stand on my Fifth Amendment rights.
12  BY MR. AINSWORTH:
13     Q   Isn't it true that you told Illya Rowland
14  that Eric Caine had made up a story?
15         MS. EKL:  Objection, foundation.
16     A   I stand on my Fifth Amendment rights.
17  BY MR. AINSWORTH:
18     Q   Isn't it true that you talked to Detective
19  Madigan about beating Aaron Patterson after --
20         MS. EKL:  I'm sorry, I missed it.
21         MR. AINSWORTH:  I'll restart the question.
22     Q   Isn't it true that you talked to Detective
23  Madigan about using physical force against Aaron
24  Patterson after Aaron Patterson had refused to give a
```

James Pienta   May 22, 2012
Page 46

```
 1  confession to the state's attorney?
 2         MS. EKL:  Objection, form, foundation,
 3     assumes facts not in evidence.
 4     A   I stand on my Fifth Amendment rights.
 5  BY MR. AINSWORTH:
 6     Q   Isn't it true that you talked to Detective
 7  McWeeny about being a good cop or playing the role of
 8  a good cop in getting, trying to get Aaron Patterson
 9  to give a false confession?
10         MS. EKL:  Objection, form, foundation,
11     assumes facts not in evidence.
12     A   I stand on my Fifth Amendment rights.
13  BY MR. AINSWORTH:
14     Q   Isn't it true that you knew that Aaron
15  Patterson's oral statement implicating himself in the
16  Sanchez murders was false?
17         MS. EKL:  Objection, form, assumes facts not
18     in evidence.
19     A   I stand on my Fifth Amendment rights.
20  BY MR. AINSWORTH:
21     Q   Isn't it true that on May 1, 1986 you knew
22  that Aaron Patterson's oral statement implicating
23  Eric Caine in the Sanchez murders was false?
24         MS. EKL:  Objection, form, assumes facts not
```

James Pienta   May 22, 2012
Page 47

```
 1     in evidence.
 2     A   I stand on my Fifth Amendment rights.
 3  BY MR. AINSWORTH:
 4     Q   Isn't it true that on February 24, 1980, you
 5  interrogated a man named Michael Coleman?
 6     A   I stand on my Fifth Amendment rights.
 7     Q   Isn't it true that you interrogated Michael
 8  Coleman at a police station on Cottage Grove?
 9         MS. EKL:  Objection, assumes facts not in
10     evidence.
11     A   I stand on my Fifth Amendment rights.
12  BY MR. AINSWORTH:
13     Q   Isn't it true that during the course of
14  Michael Coleman's interrogation, you observed
15  Detective Dwyer kick Michael Coleman in the groin?
16         MS. EKL:  Objection, assumes facts not in
17     evidence.
18     A   I stand on my Fifth Amendment rights.
19  BY MR. AINSWORTH:
20     Q   Isn't it true that you observed Detective
21  Dwyer punch Michael Coleman during the course of his
22  interrogation on or about February 24, 1980?
23         MS. EKL:  Objection, assumes facts not in
24     evidence.
```

James Pienta   May 22, 2012

Page 48

1    A   I stand on my Fifth Amendment rights.
2  BY MR. AINSWORTH:
3    Q   Isn't it true that when he, when Michael
4  Coleman tried to ball up and get away from Detective
5  Dwyer, Detective Dwyer kept hitting and kicking
6  Michael Coleman?
7       MS. EKL:  Objection, form, assumes facts not
8    in evidence.
9    A   I stand on my Fifth Amendment rights.
10 BY MR. AINSWORTH:
11   Q   Isn't it true that during Michael Coleman's
12 interrogation you withheld water, food and access to
13 the bathroom from him?
14      MS. EKL:  Objection, form, assumes facts not
15   in evidence.
16   A   I stand on my Fifth Amendment rights.
17 BY MR. AINSWORTH:
18   Q   Isn't it true that you observed another
19 detective deprive Michael Coleman of water, food and
20 access to a bathroom during his interrogation?
21      MS. EKL:  Objection, form, assumes facts not
22   in evidence.
23      MR. MICHALIK:  And vague.
24   A   I stand on my Fifth Amendment rights.

James Pienta   May 22, 2012

Page 49

1  BY MR. AINSWORTH:
2    Q   Isn't it true that you grabbed Michael
3  Coleman by the neck during his interrogation on or
4  about February 24, 1980?
5       MS. EKL:  Objection, assumes facts not in
6    evidence.
7    A   I stand on my Fifth Amendment right.
8  BY MR. AINSWORTH:
9    Q   Isn't it true that you told Mr. Coleman,
10 while grabbing him by the neck, that you wanted him
11 to say more of what you wanted him to say?
12      MS. EKL:  Objection, assumes facts not in
13   evidence.
14   A   I stand on my Fifth Amendment rights.
15 BY MR. AINSWORTH:
16   Q   Isn't it true that while you held Mr. Coleman
17 in a choke hold, Detective Dwyer then pulled out some
18 stitches that were in Michael Coleman's face with a
19 pair of tweezers?
20      MS. EKL:  Objection, assumes facts not in
21   evidence.
22   A   I stand on my Fifth Amendment rights.
23 BY MR. AINSWORTH:
24   Q   Isn't it true that you struck Michael Coleman

James Pienta   May 22, 2012

Page 50

1  with your feet and with your hands during his
2  interrogation on or about February 24, 1980?
3       MS. EKL:  Objection, assumes facts not in
4    evidence.
5    A   I stand on my Fifth Amendment rights.
6  BY MR. AINSWORTH:
7    Q   Isn't it true that you used force against
8  Michael Coleman in an effort to get him to provide a
9  false confession?
10      MS. EKL:  Objection, assumes facts not in
11   evidence.
12   A   I stand on my Fifth Amendment rights.
13 BY MR. AINSWORTH:
14   Q   Isn't it true that on February 23, 1980, you
15 interrogated a man named Derrick King?
16      MS. EKL:  Objection, assumes facts not in
17   evidence.
18   A   I stand on my Fifth Amendment rights.
19 BY MR. AINSWORTH:
20   Q   Isn't it true that during your interrogation
21 of Mr. King at a police station, you struck him with
22 a baseball bat?
23      MS. EKL:  Objection, assumes facts not in
24   evidence.

James Pienta   May 22, 2012

Page 51

1    A   I stand on my Fifth Amendment right.
2  BY MR. AINSWORTH:
3    Q   Isn't it true that you struck Mr. King in the
4  chest with a baseball bat?
5    A   I stand on my Fifth Amendment rights.
6    Q   Isn't it true that you struck Mr. King on his
7  kneecaps with a baseball bat?
8    A   I stand on my Fifth Amendment rights.
9    Q   Isn't it true that you also struck Mr. King
10 with a police book while he was being interrogated?
11      MS. EKL:  Objection, assumes facts not in
12   evidence.
13   A   I stand on my Fifth Amendment rights.
14 BY MR. AINSWORTH:
15   Q   Isn't it true that Derrick King was seated
16 handcuffed to the wall while he was being struck with
17 objects?
18      MS. EKL:  Objection, assumes facts not in
19   evidence, form, vague.
20   A   I stand on my Fifth Amendment rights.
21 BY MR. AINSWORTH:
22   Q   Isn't it true that you observed another
23 Area 2 detective strike Mr. King in the chest with a
24 baseball bat?

1    MS. EKL:  Objection, foundation, assumes
2    facts not in evidence.
3        MR. MICHALIK:  And vague.
4    A   I stand on my Fifth Amendment rights.
5  BY MR. AINSWORTH:
6    Q   Isn't it true that you observed another
7  Area 2 detective strike Mr. King in the kneecaps with
8  a baseball bat?
9        MS. EKL:  Objection, foundation, assumes
10    facts not in evidence.
11        MR. MICHALIK:  And vague.
12    A   I stand on my Fifth Amendment rights.
13  BY MR. AINSWORTH:
14    Q   Isn't it true that you observed Mr. King to
15  be struck 30 to 40 times -- well, strike that.  Isn't
16  it true that you observed Mr. King to be struck 20 to
17  40 times during the course of his interrogation on or
18  about February 23, 1980?
19        MS. EKL:  Objection, foundation, assumes
20    facts not in evidence.
21    A   I stand on my Fifth Amendment rights.
22  BY MR. AINSWORTH:
23    Q   Isn't it true that you interrogated a man by
24  the name of Maron Diggins on or about October 10,

1  1985?
2    A   I stand on my Fifth Amendment rights.
3    Q   Isn't it true that you interrogated Maron
4  Diggins at Area 2 on or about October 10, 1985?
5        MS. EKL:  Objection, asked and answered.
6        MR. AINSWORTH:  I'll withdraw it.  I thought
7    I did arrest first.
8        MS. EKL:  Maybe I missed it.  If you did, go
9    ahead and ask it again.  I thought you asked the
10    same exact question.
11  BY MR. AINSWORTH:
12    Q   Just to be clear, is it true you interrogated
13  Maron Diggins at Area 2 at 111th and Cottage Grove on
14  October 10, 1985?
15    A   I stand on my Fifth Amendment rights.
16    Q   Isn't it true that during the interrogation
17  of Maron Diggins, you observed Detective Paladino
18  strike Maron Diggins in the back with a flashlight?
19        MS. EKL:  Objection, assumes facts not in
20    evidence.
21    A   I stand on my Fifth Amendment right.
22  BY MR. AINSWORTH:
23    Q   Isn't it true that you observed Detective
24  Paladino strike Mr. Diggins on his legs and thighs

1  with the flashlight?
2        MS. EKL:  Objection, form, foundation,
3    assumes facts not in evidence.
4    A   I stand on my Fifth Amendment right.
5  BY MR. AINSWORTH:
6    Q   Isn't it true that you observed Mr. Diggins
7  trying to block some of the blows with his arm while
8  he was handcuffed to a ring on the wall?
9        MS. EKL:  Objection, form, foundation,
10    assumes facts not in evidence.
11    A   I stand on my Fifth Amendment rights.
12  BY MR. AINSWORTH:
13    Q   Isn't it true that you heard Mr. Diggins
14  yelling while he was being struck?
15        MS. EKL:  Objection, assumes facts not in
16    evidence.
17    A   I stand on my Fifth Amendment right.
18  BY MR. AINSWORTH:
19    Q   Isn't it true that you withheld food, water
20  and access to a bathroom from Mr. Diggins?
21        MS. EKL:  Objection, form, foundation,
22    assumes facts not in evidence.
23    A   I stand on my Fifth Amendment right.
24

1  BY MR. AINSWORTH:
2    Q   Isn't it true that you observed Detective
3  Burge also striking Mr. Diggins during his
4  interrogation?
5        MS. EKL:  Objection, foundation, assumes
6    facts not in evidence.
7    A   I stand on my Fifth Amendment rights.
8  BY MR. AINSWORTH:
9    Q   Isn't it true that you also observed
10  Detective Burge or Lieutenant Burge striking
11  Mr. Diggins on or about October 10, 1985?
12        MS. EKL:  Objection, assumes facts not in
13    evidence.
14    A   I stand on my Fifth Amendment rights.
15  BY MR. AINSWORTH:
16    Q   Isn't it true that you interrogated a man by
17  the name of Anthony Holmes on or about May 29, 1973?
18    A   I stand on my Fifth Amendment right.
19    Q   Do you have an alibi for May 29, 1973 that
20  would place you somewhere other than Area 2?
21        MS. EKL:  Objection, form, foundation,
22    assumes facts not in evidence.
23    A   I stand on my Fifth Amendment right.
24

```
 1   BY MR. AINSWORTH:
 2       Q   Isn't it true that -- where was Area 2 back
 3   in 1973?
 4       A   I stand on my Fifth Amendment right.
 5       Q   Isn't it true that you observed Detective
 6   Burge slap Anthony Holmes out of his chair?
 7           MS. EKL:  Objection, foundation, form,
 8       assumes facts not in evidence.
 9       A   I stand on my Fifth Amendment rights.
10   BY MR. AINSWORTH:
11       Q   Isn't it true that you observed Jon Burge
12   slap Anthony Holmes while Mr. Homes was handcuffed
13   with enough force to move Anthony Holmes out of his
14   chair?
15           MS. EKL:  Objection, form, foundation,
16       assumes facts not in evidence.
17       A   I stand on my Fifth Amendment rights.
18   BY MR. AINSWORTH:
19       Q   Isn't it true that you observed Jon Burge
20   enter the interrogation room with a brown paper bag?
21           MS. EKL:  Objection, form, foundation,
22       assumes facts not in evidence.
23       A   I stand on my Fifth Amendment rights.
24
```

```
 1   BY MR. AINSWORTH:
 2       Q   Isn't it true that you observed Jon Burge
 3   pull a flat box with a motor and a wire, and wires
 4   coming out of it from that paper bag?
 5           MS. EKL:  Objection, form, foundation,
 6       assumes facts not in evidence.
 7       A   I stand on my Fifth Amendment right.
 8   BY MR. AINSWORTH:
 9       Q   Isn't it true that you observed a plastic bag
10   placed over Anthony Holmes' head during that
11   interrogation?
12           MS. EKL:  Objection, form, foundation,
13       assumes facts not in evidence.
14           MR. MICHALIK:  And vague.
15       A   I stand on my Fifth Amendment right.
16   BY MR. AINSWORTH:
17       Q   Isn't it true you placed a typewriter cover
18   over Anthony Holmes' head during his interrogation on
19   or about May 29, 1973?
20           MS. EKL:  Objection, foundation, assumes
21       facts not in evidence.
22       A   I stand on my Fifth Amendment rights.
23   BY MR. AINSWORTH:
24       Q   Isn't it true that you held the plastic bag
```

```
 1   over Anthony Holmes' head in an effort to prevent him
 2   from breathing?
 3           MS. EKL:  Objection, foundation, assumes
 4       facts not in evidence.
 5       A   I stand on my Fifth Amendment rights.
 6   BY MR. AINSWORTH:
 7       Q   Isn't it true that you turned the crank on
 8   the little metal box that would send electricity from
 9   the wires into Anthony Holmes' body?
10           MS. EKL:  Objection, form, foundation,
11       assumes facts not in evidence.
12       A   I stand on my Fifth Amendment right.
13   BY MR. AINSWORTH:
14       Q   Isn't it true that after Anthony -- after
15   electricity was run through Anthony Holmes' body, he
16   started crying and hollering?
17           MS. EKL:  Objection, foundation, form,
18       assumes facts not in evidence.
19   BY MR. AINSWORTH:
20       Q   Isn't it true that Anthony Holmes then passed
21   out during his interrogation?
22           MS. EKL:  Objection, assumes facts not in
23       evidence.
24       A   I stand on my Fifth Amendment right.
```

```
 1   BY MR. AINSWORTH:
 2       Q   Isn't it true that you observed Jon Burge
 3   also taking a typewriter cover and placing it over
 4   Anthony Holmes' head so as to prevent him from
 5   breathing?
 6           MS. EKL:  Objection, form, foundation,
 7       assumes facts not in evidence.
 8       A   I stand on my Fifth Amendment rights.
 9   BY MR. AINSWORTH:
10       Q   How many times did you and Jon Burge repeat
11   the cycle of placing a typewriter cover over Anthony
12   Holmes' head and applying electricity to him?
13           MS. EKL:  Objection, form, foundation,
14       assumes facts not in evidence.
15       A   I stand on my Fifth Amendment rights.
16   BY MR. AINSWORTH:
17       Q   Isn't it true that electricity was applied to
18   Anthony Holmes' body in your presence about four to
19   five times?
20           MS. EKL:  Objection, form, foundation,
21       assumes facts not in evidence.
22       A   I stand on my Fifth Amendment rights.
23   BY MR. AINSWORTH:
24       Q   Isn't it true that you observed Jon Burge
```

James Pienta   May 22, 2012

Page 60

1  turn the crank on the little box to send electricity
2  through Anthony Holmes' body?
3       MS. EKL:  Objection, form, foundation,
4       assumes facts not in evidence.
5       A  I stand on my Fifth Amendment rights.
6  BY MR. AINSWORTH:
7       Q  Isn't it true that you observed Detective
8  Yusitis force electricity through Anthony Holmes'
9  body?
10      MS. EKL:  Objection, form, foundation,
11      assumes facts not in evidence.
12      A  I stand on my Fifth Amendment rights.
13 BY MR. AINSWORTH:
14      Q  Isn't it true that you interrogated Andrew
15 Wilson on February 14, 1982?
16      A  I stand on my Fifth Amendment rights.
17      Q  Isn't it true that you placed a typewriter
18 cover over Andrew Wilson's head during his
19 interrogation on February 14, 1982?
20      MS. EKL:  Objection, assumes facts not in
21      evidence.
22      A  I stand on my Fifth Amendment rights.
23 BY MR. AINSWORTH:
24      Q  Isn't it true that you observed another

James Pienta   May 22, 2012

Page 61

1  detective place a typewriter cover over Andrew
2  Wilson's head to prevent him from breathing on
3  February 14, 1982?
4       MS. EKL:  Objection, foundation, assumes
5       facts not in evidence.
6       MR. MICHALIK:  And vague.
7       A  I stand on my Fifth Amendment rights.
8  BY MR. AINSWORTH:
9       Q  Isn't it true that you placed a typewriter
10 cover over Andrew Wilson's head in an effort to
11 prevent him from breathing on February 14, 1982?
12      MS. EKL:  Objection, form, foundation,
13      assumes facts not in evidence.
14      A  I stand on my Fifth Amendment rights.
15      (Whereupon Mr. Arger entered the room.)
16      MR. AINSWORTH:  Let's take a break.
17      (A recess was taken, after which the
18      following proceedings were had with Mr. Michalik
19      not present!)
20      Q  Isn't it true that you placed a portion of
21 Andrew Wilson's body against a radiator in an effort
22 to burn his skin on February 14, 1982?
23      MS. EKL:  Objection, form, foundation,
24      assumes facts not in evidence.  And Russell, I'd

James Pienta   May 22, 2012

Page 62

1  ask that you provide a good faith basis for
2  asking these questions about Andrew Wilson.  This
3  is the second deposition you've asked
4  questions on which there's absolutely no basis in
5  the world for asking questions about why this
6  particular detective would be present for any
7  interrogation or any of the other things that
8  you're saying happened to this particular
9  suspect.
10      MR. AINSWORTH:  I don't have to give a good
11 faith basis, but for this particular question I
12 will and that's simply because the Illinois
13 Supreme Court decision states that the only
14 detectives involved in both the abuse of Andrew
15 Wilson and abuse of Aaron Patterson were Jon
16 Burge and James Pienta, so --
17      MS. EKL:  Well, I'd ask --
18      MR. AINSWORTH:  -- that's a good faith basis
19 for asking questions.  But I don't need to have a
20 good faith basis, I don't need to provide a good
21 faith basis for asking questions at a deposition.
22 If you think I'm proceeding in an unduly
23 burdensome or harassing manner, by all means
24 provide a motion to the Court for a protective

James Pienta   May 22, 2012

Page 63

1  order.  But I think that asking -- you know, I've
2  limited the questions I've asked about each of
3  these people to about ten minutes, tops.  So I
4  think it would be a lot faster just for me to ask
5  my ten minutes of questions and we move on.
6       MS. EKL:  I don't object that it's overly
7  burdensome and that the length of the questions
8  or the number of the questions is excessive.  I
9  do object to the fact that I know, because of my
10 involvement in certain other civil cases, that
11 some of the questions you're asking about certain
12 detectives are not even things that those
13 particular individuals are claiming happened to
14 them or that those detectives were present for.
15      So I'm just objecting to the extent you're
16 asking questions knowing that these witnesses are
17 going to assert their Fifth Amendment rights to
18 all questions without any basis for believing
19 that they had any participation in any aspect of
20 the interrogation or investigation.  So I'm just
21 making that of record.
22 BY MR. AINSWORTH:
23      Q  Okay.  Sir, isn't it true that you observed
24 another detective place Andrew Wilson's body or skin

James Pienta   May 22, 2012

Page 64

```
 1   against a radiator so as to burn his skin?
 2        MS. EKL:  Objection, form, foundation,
 3     assumes facts not in evidence.
 4     A   I stand on my Fifth Amendment rights.
 5   BY MR. AINSWORTH:
 6     Q   Isn't it true that you observed Jon Burge
 7   place Andrew Wilson's body against a radiator in an
 8   effort to burn his skin on February 14, 1982?
 9        MS. EKL:  Objection, form, foundation, assumes
10     facts not in evidence.
11     A   I stand on my Fifth Amendment rights.
12   BY MR. AINSWORTH:
13     Q   Isn't it true that you observed Jon Burge
14   apply electrical current to Andrew Wilson's body?
15     A   I stand on my Fifth Amendment right.
16     Q   Isn't it true that you applied electrical
17   current to Andrew Wilson's body on February 14, 1982?
18        MS. EKL:  Objection, form, foundation,
19     assumes facts not in evidence.
20     A   I stand on my Fifth Amendment rights.
21   BY MR. AINSWORTH:
22     Q   Isn't it true that you punched Andrew Wilson
23   on February 14, 1982?
24        MS. EKL:  Objection, foundation, assumes
```

James Pienta   May 22, 2012

Page 65

```
 1     facts not in evidence.
 2     A   I stand on my Fifth Amendment right.
 3   BY MR. AINSWORTH:
 4     Q   Isn't true that you kicked Andrew Wilson on
 5   February 14, 1982?
 6        MS. EKL:  Objection, foundation, assumes
 7     facts not in evidence.
 8     A   I stand on my Fifth Amendment right.
 9   BY MR. AINSWORTH:
10     Q   Isn't it true that you observed another
11   Area 2 detective punch Andrew Wilson on February 14,
12   1982?
13        MS. EKL:  Objection, form, foundation,
14     assumes facts not in evidence.
15     A   I stand on my Fifth Amendment rights.
16   BY MR. AINSWORTH:
17     Q   Isn't did true that you kicked Andrew Wilson
18   on February 14, 1982?
19        MS. EKL:  Objection, form, foundation,
20     assumes facts not in evidence.
21     A   I stand on my Fifth Amendment rights.
22   BY MR. AINSWORTH:
23     Q   Isn't it true that you heard Andrew Wilson
24   calling for help during his interrogation on
```

James Pienta   May 22, 2012

Page 66

```
 1   February 14, 1982?
 2        MS. EKL:  Objection, form, foundation,
 3     assumes facts not in evidence.
 4     A   I stand on my Fifth Amendment right.
 5   BY MR. AINSWORTH:
 6     Q   Tell me everybody who was present for each of
 7   the interrogations of Andrew Wilson on February 14,
 8   1982.
 9        MS. EKL:  Objection, form, foundation,
10     assumes facts not in evidence.
11     A   I stand on my Fifth Amendment right.
12   BY MR. AINSWORTH:
13     Q   Can you tell me whether any of the other
14   detectives who are defendants in this litigation were
15   present for the interrogation of Andrew Wilson on
16   February 14, 1982?
17        MS. EKL:  Objection, form, foundation,
18     assumes facts not in evidence.
19     A   I stand on my Fifth Amendment rights.
20   BY MR. AINSWORTH:
21     Q   Do you have an alibi for February 14, 1982
22   that would place you at some location other than
23   where Andrew Wilson was on that day?
24        MS. EKL:  Objection, form, assumes facts not
```

James Pienta   May 22, 2012

Page 67

```
 1     in evidence.
 2     A   I stand on my Fifth Amendment rights.
 3   BY MR. AINSWORTH:
 4     Q   Isn't it true that you used force against
 5   Andrew Wilson in an effort to get him to give a
 6   confession?
 7        MS. EKL:  Objection, form, foundation,
 8     assumes facts not in evidence.
 9     A   I stand on my Fifth Amendment rights.
10   BY MR. AINSWORTH:
11     Q   Isn't it true that you used force against
12   Michael Coleman in an effort to get him to provide a
13   confession?
14        MS. EKL:  Objection, form, foundation,
15     assumes facts not in evidence.
16     A   I stand on my Fifth Amendment right.
17   BY MR. AINSWORTH:
18     Q   Isn't it true that you used force against
19   Derrick King in an effort to coerce him to give a
20   confession?
21        MS. EKL:  Objection, form, foundation,
22     assumes facts not in evidence.
23     A   I stand on my Fifth Amendment rights.
24
```

James  Pienta  May 22, 2012
Page 68

```
 1   BY MR. AINSWORTH:
 2      Q   Isn't it true that you used force against
 3   Maron Diggins to get him to provide a confession?
 4         MS. EKL:  Objection, form, foundation,
 5      assumes facts not in evidence.
 6      A   I stand on my Fifth Amendment rights.
 7   BY MR. AINSWORTH:
 8      Q   Isn't it true that you provided force or you
 9   used force against Anthony Holmes to coerce him to
10   give a confession?
11         MS. EKL:  Objection, form, foundation,
12      assumes facts not in evidence.
13      A   I stand on my Fifth Amendment rights.
14   BY MR. AINSWORTH:
15      Q   Were you involved in the interrogation of a
16   man named Terrence Houston* on or about October 3,
17   1986?
18      A   I stand on my Fifth Amendment rights.
19      Q   Isn't it true that you observed Terrence --
20   Detective Lotito use force against Terrence Houston
21   during his interrogation on or about October 3, 1986?
22         MS. EKL:  Objection, foundation, assumes
23      facts not in evidence.
24      A   I stand on my Fifth Amendment right.
```

Merrill Corporation - Chicago
(312) 386-2000          www.merrillcorp.com/law

James  Pienta  May 22, 2012
Page 69

```
 1   BY MR. AINSWORTH:
 2      Q   Isn't it true that you observed another
 3   detective strike Terrence Houston in the stomach and
 4   the side of the face during his interrogation?
 5         MS. EKL:  Objection, form, foundation,
 6      assumes facts not in evidence.
 7      A   I stand on my Fifth Amendment right.
 8   BY MR. AINSWORTH:
 9      Q   Isn't it true that on January 8, 1990, you
10   were present for the interrogation of a man named
11   Miguel Fluker?
12      A   I stand on my Fifth Amendment right.
13      Q   Were you ever partners with a man named
14   Detective Pesavento, P-e-s-a-v-e-n-t-o?
15      A   I stand on my Fifth Amendment right.
16      Q   How would you describe your ethnicity?
17      A   I stand on my Fifth Amendment right.
18      Q   Isn't it true that you when you entered a
19   room containing Miguel Fluker and Detective
20   Pesavento, you told Mr. Fluker that he was wasting
21   your partner's time, all he has to do is say he was
22   present and then he can leave?
23         MS. EKL:  Objection, form, foundation,
24      assumes facts not in evidence.
```

Merrill Corporation - Chicago
(312) 386-2000          www.merrillcorp.com/law

James  Pienta  May 22, 2012
Page 70

```
 1      A   I stand on my Fifth Amendment rights.
 2   BY MR. AINSWORTH:
 3      Q   Isn't it true that Miguel Fluker then told
 4   you that he didn't shoot Jesse Hudson?
 5         MS. EKL:  Objection, foundation, form,
 6      assumes facts not in evidence.
 7      A   I stand on my Fifth Amendment right.
 8   BY MR. AINSWORTH:
 9      Q   Isn't it true that you then told Miguel
10   Fluker that if he tells you what you want to hear,
11   you will let him go?
12         MS. EKL:  Objection, foundation, assumes
13      facts not in evidence.
14      A   I stand on my Fifth Amendment right.
15   BY MR. AINSWORTH:
16      Q   Isn't true that you then left Detective
17   Pesavento alone in the room with Miguel Fluker?
18         MS. EKL:  Objection, foundation, assumes
19      facts not in evidence.
20      A   I stand on my Fifth Amendment right.
21   BY MR. AINSWORTH:
22      Q   Isn't it true that when you left Miguel
23   Fluker alone with Detective Pesavento, you knew that
24   Detective Pesavento would use physical force against
```

Merrill Corporation - Chicago
(312) 386-2000          www.merrillcorp.com/law

James  Pienta  May 22, 2012
Page 71

```
 1   Miguel Fluker?
 2         MS. EKL:  Objection, form, foundation,
 3      assumes facts not in evidence.
 4      A   I stand on my Fifth Amendment rights.
 5   BY MR. AINSWORTH:
 6      Q   Isn't it true that before you began your
 7   interrogation of Miguel Fluker, you and Detective
 8   Pesavento reached an agreement to use force, that
 9   Detective Pesavento would be the one who would use
10   force against Miguel Fluker?
11         MS. EKL:  Objection, form, foundation,
12      assumes facts not in evidence.
13      A   I stand on my Fifth Amendment right.
14   BY MR. AINSWORTH:
15      Q   And isn't it true that you and Detective
16   Pesavento, before interrogating Miguel Fluker, agreed
17   to use force against Miguel Fluker in an effort to
18   coerce Miguel Fluker to give a confession?
19         MS. EKL:  Objection, form, foundation,
20      assumes facts not in evidence.
21      A   I stand on my Fifth Amendment rights.
22   BY MR. AINSWORTH:
23      Q   Isn't it true that after you left Miguel
24   Fluker alone with Detective Pesavento, you returned
```

Merrill Corporation - Chicago
(312) 386-2000          www.merrillcorp.com/law

## Page 72

James  Pienta   May 22, 2012

```
1    to the interrogation room and told Detective
2    Pesavento to leave Mr. Fluker alone?
3         MS. EKL:  Objection, assumes facts not in
4      evidence.
5      A  I stand on my Fifth Amendment right.
6    BY MR. AINSWORTH:
7      Q  Isn't it true that Detective Pesavento then
8    left the room and you told Mr. Fluker that if he
9    would say he was just there, they would let him go?
10        MS. EKL:  Objection, form, foundation,
11     assumes facts not in evidence.
12     A  I stand on my Fifth Amendment right.
13   BY MR. AINSWORTH:
14     Q  Isn't it true that Miguel Fluker again denied
15   having anything to do with shooting the victim?
16        MS. EKL:  Objection, foundation, assumes
17     facts not in evidence.
18     A  I stand on my Fifth Amendment right.
19   BY MR. AINSWORTH:
20     Q  Isn't it true that Detective Pesavento then
21   returned and in your presence told Mr. Fluker that he
22   was going to tell what you guys wanted to hear?
23        MS. EKL:  Objection, form, foundation,
24     assumes facts not in evidence.
```

## Page 73

James  Pienta   May 22, 2012

```
1      A  I stand on my Fifth Amendment right.
2    BY MR. AINSWORTH:
3      Q  Isn't it true then observed Detective
4    Pesavento jamming his fists into Miguel Fluker's head
5    and his kidneys?
6         MS. EKL:  Objection, form, assumes facts not
7      in evidence.
8      A  I stand on my Fifth Amendment right.
9    BY MR. AINSWORTH:
10     Q  Isn't it true that you also observed
11   Detective Pesavento twisting Miguel Fluker's head?
12        MS. EKL:  Objection, assumes facts not in
13     evidence.
14     A  I stand on my Fifth Amendment right.
15   BY MR. AINSWORTH:
16     Q  Isn't it true you took no action at that
17   point to stop Detective Pesavento from either
18   striking Miguel Fluker's head, his kidneys or
19   twisting Miguel Fluker's head?
20        MS. EKL:  Objection, form, foundation,
21     assumes facts not in evidence.
22     A  I stand on my Fifth Amendment right.
23   BY MR. AINSWORTH:
24     Q  Isn't it true that you provided or that you
```

## Page 74

James  Pienta   May 22, 2012

```
1    observed physical force being applied to Mr. Fluker's
2    head throughout the night of January 8th into the
3    morning of January 9, 1990?
4         MS. EKL:  Objection, form, foundation,
5      assumes facts not in evidence.
6      A  I stand on my Fifth Amendment right.
7    BY MR. AINSWORTH:
8      Q  Isn't it true that you told Miguel Fluker
9    that you knew he didn't shoot the victim but just --
10   but that he should just say that he fired a gun in
11   the air so he could go home?
12        MS. EKL:  Objection, foundation, assumes
13     facts not in evidence.
14     A  I stand on my Fifth Amendment right.
15   BY MR. AINSWORTH:
16     Q  Isn't it true that you heard Detective
17   Pesavento tell Miguel Fluker that he knew he did not
18   shoot the victim but that he was to say that he had
19   fired the gun in the air so that he could go home?
20        MS. EKL:  Objection, foundation, assumes
21     facts not in evidence.
22     A  I stand on my Fifth Amendment rights.
23   BY MR. AINSWORTH:
24     Q  Did you have blond or light colored hair in
```

## Page 75

James  Pienta   May 22, 2012

```
1    January of 1990?
2      A  I stand on my Fifth Amendment right.
3      Q  Was Detective Pesavento taller than you in
4    January of 1990?
5         MS. EKL:  Objection, foundation.
6      A  I stand on my Fifth Amendment right.
7    BY MR. AINSWORTH:
8      Q  Did Detective Pesavento have black hair in
9    January of 1990?
10        MS. EKL:  Objection, foundation.
11     A  I stand on my Fifth Amendment right.
12   BY MR. AINSWORTH:
13     Q  Did you interrogate a man named Sean Whirl on
14   April 20, 1990?
15     A  I stand on my Fifth Amendment rights.
16     Q  Did you interrogate Sean Whirl on April 20,
17   1990 at Area 2?
18     A  I stand on my Fifth Amendment right.
19     Q  Isn't it true that when you entered the
20   interrogation room where Sean Whirl was, he was
21   sleeping at the time?
22        MS. EKL:  Objection, assumes facts not in
23     evidence.
24     A  I stand on my Fifth Amendment right.
```

1   BY MR. AINSWORTH:
2       Q   Isn't it true that you then stepped on Sean
3   Whirl's foot?
4           MS. EKL:  I object, assumes facts not in
5       evidence.
6       A   I stand on my Fifth Amendment right.
7   BY MR. AINSWORTH:
8       Q   Isn't it true that when you stepped on Sean
9   Whirl's foot, you told him to wake up, nigger?
10          MS. EKL:  Objection, assumes facts not in
11      evidence.
12      A   I stand on my Fifth Amendment rights.
13  BY MR. AINSWORTH:
14      Q   Isn't it true that you then slapped Sean
15  Whirl and then repeated the phrase wake up, nigger to
16  him?
17          MS. EKL:  Objection, form, assumes facts not
18      in evidence.
19      A   I stand on my Fifth Amendment right.
20  BY MR. AINSWORTH:
21      Q   Did you ever use the N word when
22  interrogating persons at Area 2?
23          MS. EKL:  Objection, form, foundation.
24      A   I stand on my Fifth Amendment right.

1   BY MR. AINSWORTH:
2       Q   Did you ever use the N word even in a
3   non-threatening way to Area 2 suspects?
4           MS. EKL:  Objection, form, foundation.
5       A   I stand on my Fifth Amendment right.
6   BY MR. AINSWORTH:
7       Q   Did you use the N word when speaking with
8   other Area 2 detectives?
9           MS. EKL:  Objection, form, foundation.
10      A   I stand on my Fifth Amendment rights.
11  BY MR. AINSWORTH:
12      Q   Did you hear other Area 2 detectives using
13  the N word around Area 2?
14          MS. EKL:  Objection, foundation.
15      A   I stand on my Fifth Amendment right.
16  BY MR. AINSWORTH:
17      Q   Did you hear Jon Burge using the N word
18  during interrogations at Area 2?
19          MS. EKL:  Objection, form, foundation.
20      A   I stand on my Fifth Amendment right.
21  BY MR. AINSWORTH:
22      Q   Did you hear Jon Burge using the N word when
23  talking with other detectives at Area 2?
24          MS. EKL:  Objection, form, foundation.

1       A   I stand on my Fifth Amendment right.
2   BY MR. AINSWORTH:
3       Q   Do you understand when I'm using the word or
4   when I say the N word in this deposition, I'm using
5   that as a euphemism for nigger?  Do you understand
6   that, sir?
7       A   Yes, I do.
8       Q   Did you hear Raymond Madigan using the N word
9   to criminal suspects at Area 2?
10          MS. EKL:  Objection, form, foundation.
11      A   I stand on my Fifth Amendment rights.
12  BY MR. AINSWORTH:
13      Q   Did you hear Detective Madigan using the N
14  word when talking with other detectives at Area 2?
15          MS. EKL:  Objection, form, foundation.
16      A   I stand on my Fifth Amendment rights.
17  BY MR. AINSWORTH:
18      Q   Did you hear Detective Marley using the
19  N word when interrogating suspects at Area 2?
20          MS. EKL:  Objection, form, foundation.
21      A   I stand on my Fifth Amendment right.
22  BY MR. AINSWORTH:
23      Q   Did you hear Detective Marley using the N
24  word when talking to other detectives at Area 2?

1           MS. EKL:  Objection, form, foundation.
2       A   I stand on my Fifth Amendment right.
3   BY MR. AINSWORTH:
4       Q   Did you hear Detective Pederson using the
5   N word when interrogating suspects at Area 2?
6           MS. EKL:  Objection, form, foundation.
7       A   I stand on my Fifth Amendment right.
8   BY MR. AINSWORTH:
9       Q   Did you hear Detective Pederson using the
10  N word when talking to other detectives at Area 2?
11          MS. EKL:  Objection, form, foundation.
12      A   I stand on my Fifth Amendment right.
13  BY MR. AINSWORTH:
14      Q   Did you hear Detective McWeeny using the
15  N word when interrogating suspects at Area 2?
16          MS. EKL:  Objection, form, foundation.
17      A   I stand on my Fifth Amendment right.
18  BY MR. AINSWORTH:
19      Q   Isn't it true that you heard Detective
20  McWeeny using the N word when talking to other
21  detectives at Area 2?
22          MS. EKL:  Objection, form, foundation,
23      assumes facts not in evidence.
24      A   I stand on my Fifth Amendment rights.

James  Pienta   May 22, 2012

Page 80

```
 1   BY MR. AINSWORTH:
 2      Q   Isn't it true that you heard each of Jon
 3   Burge, Raymond Madigan, Bill Marley, Bill Pederson
 4   and Dan McWeeny using the N word when interrogating
 5   suspects at Area 2?
 6         MS. EKL:  Objection, form, foundation,
 7      assumes facts not in evidence.
 8      A   I stand on my Fifth Amendment rights.
 9   BY MR. AINSWORTH:
10      Q   Isn't it true that you heard each of Jon
11   Burge, Ray Madigan, Bill Marley, Bill Pederson and
12   Dan McWeeny using the N word when talking to other
13   detectives at Area 2?
14         MS. EKL:  Objection, foundation, assumes
15      facts not in evidence.
16      A   I stand on my Fifth Amendment rights.
17   BY MR. AINSWORTH:
18      Q   Isn't it true that when you slapped Sean
19   Whirl, his right hand was handcuffed to the wall?
20         MS. EKL:  Objection, form, assumes facts not
21      in evidence.
22      A   I stand on my Fifth Amendment rights.
23   BY MR. AINSWORTH:
24      Q   Isn't it true that you then un-handcuffed
```

James  Pienta   May 22, 2012

Page 81

```
 1   Sean Whirl but then handcuffed both of his hands to a
 2   pair of handcuffs through a ring in the wall?
 3         MS. EKL:  Objection, form, foundation,
 4      assumes facts not in evidence.
 5      A   I stand on my Fifth Amendment rights.
 6   BY MR. AINSWORTH:
 7      Q   Isn't it true that Mr. Whirl then asked you
 8   if he could get something to eat?
 9         MS. EKL:  Objection, form, vague, assumes
10      facts not in evidence.
11      A   I stand on my Fifth Amendment right.
12   BY MR. AINSWORTH:
13      Q   Isn't it true you told Sean Whirl that he
14   could get something to eat after he cooperated with
15   the investigation?
16         MS. EKL:  Objection, form, foundation,
17      assumes facts not in evidence.
18      A   I stand on my Fifth Amendment right.
19   BY MR. AINSWORTH:
20      Q   Isn't it true that you told Sean Whirl that
21   the statement he had given previously disclaiming any
22   involvement in the murder just wouldn't do?
23         MS. EKL:  Objection, form, foundation, assumes
24      facts not in evidence.
```

James  Pienta   May 22, 2012

Page 82

```
 1      A   I stand on my Fifth Amendment rights.
 2   BY MR. AINSWORTH:
 3      Q   Isn't it true that you told Sean Whirl that
 4   his girlfriend Tanya was at the station?
 5         MS. EKL:  Objection, foundation, assumes
 6      facts not in evidence.
 7      A   I stand on my Fifth Amendment rights.
 8   BY MR. AINSWORTH:
 9      Q   Isn't it true you told Sean Whirl that if he
10   cooperated, you wouldn't put Tanya, his girlfriend in
11   the interrogation -- in another interrogation room?
12         MS. EKL:  Objection, foundation, assumes
13      facts not in evidence.
14      A   I stand on my Fifth Amendment rights.
15   BY MR. AINSWORTH:
16      Q   Isn't it true that you told Sean Whirl that
17   if he cooperated, that he would get an I-bond, be
18   able to go home and see Tanya and get something to
19   eat?
20         MS. EKL:  Objection, form, foundation,
21      assumes facts not in evidence.
22      A   I stand on my Fifth Amendment rights.
23   BY MR. AINSWORTH:
24      Q   Isn't it true that you told Sean Whirl to
```

James  Pienta   May 22, 2012

Page 83

```
 1   just repeat after you and there wouldn't be any
 2   problem?
 3         MS. EKL:  Objection, foundation, assumes
 4      facts not in evidence.
 5      A   I stand on my Fifth Amendment rights.
 6   BY MR. AINSWORTH:
 7      Q   Isn't it true that you then started feeding
 8   Sean Whirl details of the crime?
 9         MS. EKL:  Objection, form, foundation,
10      assumes facts not in evidence.
11      A   I stand on my Fifth Amendment rights.
12   BY MR. AINSWORTH:
13      Q   Isn't it true that you then began feeding
14   Sean Whirl details of the crime before Sean Whirl had
15   mentioned any of those details to you?
16         MS. EKL:  Objection, form, foundation,
17      assumes facts not in evidence.
18      A   I stand on my Fifth Amendment rights.
19   BY MR. AINSWORTH:
20      Q   Isn't it true that when Sean Whirl didn't
21   agree to go along and say the things that you wanted
22   him to say, you slapped him again?
23         MS. EKL:  Objection, form, foundation,
24      assumes facts not in evidence.
```

James  Pienta   May 22, 2012

Page 84

1      A   I stand on my Fifth Amendment rights.

2   BY MR. AINSWORTH:

3      Q   When Sean Whirl insisted, isn't it true when

4   Sean Whirl insisted he hasn't done anything, that you

5   continued slapping him?

6          MS. EKL:  Objection, form, foundation,

7      assumes facts not in evidence.

8      A   I stand on my Fifth Amendment rights.

9   BY MR. AINSWORTH:

10     Q   Isn't it true that you asked Sean Whirl if he

11  wanted to see Tanya, his girlfriend, and he said that

12  he did?

13         MS. EKL:  Objection, foundation.

14     A   I stand on my Fifth Amendment right.

15  BY MR. AINSWORTH:

16     Q   Isn't it true that you asked Sean Whirl about

17  a wound that was on Sean Whirl's leg?

18         MS. EKL:  Objection, foundation, assumes

19     facts not in evidence.

20     A   I stand on my Fifth Amendment right.

21  BY MR. AINSWORTH:

22     Q   Isn't it true that you began coaching Sean

23  Whirl on what to say but Sean Whirl was getting it

24  wrong?

James  Pienta   May 22, 2012

Page 85

1          MS. EKL:  Objection, form, foundation,

2      assumes facts not in evidence.

3      A   I stand on my Fifth Amendment right.

4   BY MR. AINSWORTH:

5      Q   Isn't it true that when Sean Whirl was

6   getting the facts wrong, you started to get real mad?

7          MS. EKL:  Objection, form, foundation,

8      assumes facts not in evidence.

9      A   I stand on on my Fifth Amendment right.

10  BY MR. AINSWORTH:

11     Q   Isn't it true that you then told Sean Whirl

12  to put his leg down?

13         MS. EKL:  Objection, form, foundation,

14     assumes facts not in evidence.

15     A   I stand on my Fifth Amendment right.

16  BY MR. AINSWORTH:

17     Q   Isn't it true that you then stepped on Sean

18  Whirl's foot and scraped the wound on Sean Whirl's

19  leg with a key?

20         MS. EKL:  Objection, form, foundation,

21     assumes facts not in evidence.

22     A   I stand on my Fifth Amendment right.

23  BY MR. AINSWORTH:

24     Q   Isn't it true that you continued to tell Sean

James  Pienta   May 22, 2012

Page 86

1   Whirl what to say but whenever Sean -- well, strike

2   that.  Isn't it true that you told Sean Whirl what to

3   say but if Sean Whirl would not get it right, that

4   you would slap him and scrape his wound on his leg

5   with a key?

6          MS. EKL:  Objection, form, foundation,

7      assumes facts not in evidence.

8      A   I stand on my Fifth Amendment right.

9   BY MR. AINSWORTH:

10     Q   Isn't it true that Sean Whirl was yelling

11  while you were applying the key to the wound on his

12  leg?

13         MS. EKL:  Objection, foundation, assumes

14     facts not in evidence.

15     A   I stand on my Fifth Amendment right.

16  BY MR. AINSWORTH:

17     Q   Isn't it true that when Sean Whirl asked for

18  some food, you took a bag of potato chips and smashed

19  them into Sean Whirl's face, covering his nose and

20  mouth and breaking the bag?

21         MS. EKL:  Objection, form, foundation,

22     assumes facts not in evidence.

23     A   I stand on my Fifth Amendment rights.

24

James  Pienta   May 22, 2012

Page 87

1   BY MR. AINSWORTH:

2      Q   Isn't it true that you then coached Sean

3   Whirl on what you wanted him to say?

4          MS. EKL:  Objection, foundation, assumes

5      facts not in evidence.

6      A   I stand on my Fifth Amendment rights.

7   BY MR. AINSWORTH:

8      Q   Isn't it true that after Sean Whirl agreed to

9   say what you wanted him to say, you took him to see

10  Tanya through a one way glass?

11         MS. EKL:  Objection, form, foundation,

12     assumes facts not in evidence.

13     A   I stand on my Fifth Amendment right.

14  BY MR. AINSWORTH:

15     Q   Isn't it true that you didn't let Sean Whirl

16  speak to Tanya through the one way glass, just

17  observe her?

18         MS. EKL:  Objection, form, foundation,

19     assumes facts not in evidence.

20     A   I stand on my Fifth Amendment rights.

21  BY MR. AINSWORTH:

22     Q   Isn't it true that Sean Whirl told you that

23  he couldn't really read?

24         MS. EKL:  Objection, foundation, assumes

James  Pienta   May 22, 2012

Page 88

```
 1      facts not in evidence.
 2      A  I stand on my Fifth Amendment rights.
 3  BY MR. AINSWORTH:
 4      Q  Isn't it true that you offered to get Sean
 5  Whirl some food if he would just give a statement?
 6      MS. EKL:  Objection, foundation, assumes
 7      facts not in evidence.
 8      A  I stand on my Fifth Amendment right.
 9  BY MR. AINSWORTH:
10      Q  Isn't it true that you caused injury to Sean
11  Whirl's previous injury on his leg and Michael
12  Coleman's previous injury to his face in an effort to
13  coerce both of those individuals to give a false
14  confession?
15      MS. EKL:  Objection, form, foundation,
16      assumes facts not in evidence.
17      A  I stand on my Fifth Amendment right.
18  BY MR. AINSWORTH:
19      Q  Isn't it true that Aaron Patterson told you
20  that he had no involvement in the Sanchez murders?
21      MS. EKL:  Objection, foundation.
22      A  I stand on my Fifth Amendment right.
23  BY MR. AINSWORTH:
24      Q  Isn't it true that Eric Caine told you that
```

James  Pienta   May 22, 2012

Page 89

```
 1  he had no involvement in the Sanchez murders?
 2      MS. EKL:  Objection, foundation.
 3      A  I stand on my Fifth Amendment rights.
 4  BY MR. AINSWORTH:
 5      Q  Isn't it true that you nevertheless told Eric
 6  Caine that he had committed the Sanchez murders and
 7  told him details of the crime such as how the victims
 8  had been killed and when they had been killed?
 9      MS. EKL:  Objection, form, foundation.
10      A  I stand on my Fifth Amendment rights.
11  BY MR. AINSWORTH:
12      Q  Isn't it true that you had a practice of
13  coercing confessions from suspects at Area 2 from
14  1980 to 1990?
15      MS. EKL:  Objection, form, foundation.
16      A  I stand on my Fifth Amendment rights.
17  BY MR. AINSWORTH:
18      Q  Isn't it true that you followed the practice
19  of coercing false confessions from suspects at Area 2
20  with other Area 2 detectives between 1980 and 1990?
21      MS. EKL:  Objection, form, foundation,
22      assumes facts not in evidence.
23      MR. ARGER:  I'll also join the objection and
24      also state that your statement attributes his
```

James  Pienta   May 22, 2012

Page 90

```
 1      invocation of the Fifth Amendment as somehow
 2      supporting the Monell claim.  I think it's
 3      objectionable.
 4      A  I stand on my Fifth Amendment right.
 5  BY MR. AINSWORTH:
 6      Q  Isn't it true that you had conversations with
 7  your superior, Jon Burge, about following a practice
 8  of using force against suspects in an effort to get
 9  them to confess to crimes they didn't commit?
10      MS. EKL:  Objection, form, foundation.
11      MR. ARGER:  I join that objection and make
12      the same objection on Monell.
13      A  I stand on my Fifth Amendment rights.
14  BY MR. AINSWORTH:
15      Q  Tell me the name of every person who filed a
16  motion to suppress a statement that you were one of
17  the detectives involved in obtaining that statement.
18      MS. EKL:  Objection, form, foundation.
19      A  I stand on my Fifth Amendment right.
20  BY MR. AINSWORTH:
21      Q  Tell me the name of every person who filed a
22  complaint with the city regarding physical abuse
23  against them by you during their interrogation.
24      MS. EKL:  Objection, form, foundation,
```

James  Pienta   May 22, 2012

Page 91

```
 1      assumes facts not in evidence.
 2      A  I stand on my Fifth Amendment rights.
 3  BY MR. AINSWORTH:
 4      Q  Did the city ever take any disciplinary
 5  action against you during your career as a Chicago
 6  police officer?
 7      A  Just one minute.
 8      Q  Well, hang on a second.  Can you answer the
 9  question?
10      A  I stand on my Fifth Amendment rights.
11      Q  If you need to consult with your attorney,
12  you may do so.
13      A  I stand on my Fifth Amendment rights.  I
14  don't need --
15      Q  I'm just saying if you need to consult with
16  your attorney, please just let us know and we'll take
17  a break and you can do it.
18      A  Okay.
19      Q  Were you ever questioned by any agent for the
20  Office of Professional Standards in regard to any
21  complaints of you using force against a suspect?
22      A  I stand on my Fifth Amendment right.
23      Q  Between 1980 and 1990 did you know that you
24  could use force against a criminal suspect without
```

James  Pienta   May 22, 2012
Page 92

```
 1    any fear that the city would discipline you?
 2         MS. EKL:  Objection, form, foundation,
 3    assumes facts not in evidence.
 4         MR. ARGER:  I'll join that objection.  And
 5    also, can we have a standing objection to all
 6    these questions that are objectionable on the use
 7    of this witness' Fifth Amendment rights?
 8         MR. AINSWORTH:  Yes.
 9    A  I stand on my Fifth Amendment right.
10    Q  Isn't it true that you withheld exculpatory
11    documentation from Eric Caine and the prosecution?
12         MS. EKL:  Objection, form, foundation.
13    A  I stand on my Fifth Amendment rights.
14    BY MR. AINSWORTH:
15    Q  Isn't it true that you withheld exculpatory
16    documentation from Eric Caine and the prosecution in
17    conjunction with a practice of withholding
18    exculpatory information between the years 1980 and
19    1990 and withholding that information from the
20    prosecution and from criminal defendants?
21         MS. EKL:  Objection, form, foundation,
22    assumes facts not in evidence.
23         MR. ARGER:  And we have a standing objection,
24    so I'm going to stop talking now, but I object to
```

James  Pienta   May 22, 2012
Page 93

```
 1       that question.
 2         MS. AINSWORTH:  I understand.
 3    A  I stand on my Fifth Amendment rights.
 4    BY MR. AINSWORTH:
 5    Q  Tell me the name of every criminal suspect
 6    that you used force against while that suspect was in
 7    police custody.
 8         MS. EKL:  Objection, form, foundation,
 9    assumes facts not in evidence.
10    A  I stand on my Fifth Amendment rights.
11    BY MR. AINSWORTH:
12    Q  Tell me the name of every criminal suspect
13    you used force against while that suspect was inside
14    a police station.
15         MS. EKL:  Objection, form, foundation,
16    assumes facts not in evidence.
17    A  I stand on my Fifth Amendment right.
18         MR. AINSWORTH:  Let's take a short break.
19    I'll review my notes and see where we're at.
20         (A recess was taken, after which the
21    following proceedings were had:)
22    Q  Sir, are the allegations of physical abuse
23    lodged by Aaron Patterson and Eric Caine against you
24    false?
```

James  Pienta   May 22, 2012
Page 94

```
 1         MS. EKL:  Objection, form, vague.
 2    A  I stand on my Fifth Amendment right.
 3    BY MR. AINSWORTH:
 4    Q  Tell me every reason you can think of that
 5    would prove that Eric Caine and Aaron Patterson's
 6    allegations of physical force against you are false?
 7         MS. EKL:  Objection, form, vague.
 8    A  I stand on my Fifth Amendment rights.
 9    BY MR. AINSWORTH:
10    Q  Are there any witnesses or documentary
11    evidence that you can point to that would support a
12    claim by you that the allegations against you are
13    false?
14         MS. EKL:  Objection, form, vague.
15    A  I stand on my Fifth Amendment rights.
16    BY MR. AINSWORTH:
17    Q  If you're going to testify about your family
18    members or any family members at trial, then I would
19    ask you about those people now during this
20    deposition.  If you refuse to answer any questions
21    about your family members, I've got no problem with
22    that, but then I would just simply move to bar you
23    from talking about any family members at trial.
24         MS. EKL:  Are you just making a statement?
```

James  Pienta   May 22, 2012
Page 95

```
 1         MR. AINSWORTH:  Well, I'm putting you on
 2    notice.  I'm going to ask him the questions.  But
 3    you know how some people get up and say I'm
 4    married, I've got so many kids.
 5         MS. EKL:  At this point in time we'd object
 6    because he has not formulated a decision as to
 7    whether or not he's going to put those things
 8    into evidence.  If he decides to testify and if
 9    he does decide to testify about those particular
10    matters, we would agree to reopen his deposition
11    so you could ask him questions about that.  But
12    at this point in time obviously issues regarding
13    his family members are the subject of a
14    protective order and also may not -- he has not
15    decided whether he would be testifying to those
16    at trial.
17         MR. AINSWORTH:  But I'm not agreeing to --
18    this is his time to be deposed.
19         MS. EKL:  I'm putting that on the record.
20    Just as you made your statement on the record,
21    I'm making my statement on the record and you can
22    ask whatever questions you want.
23    BY MR. AINSWORTH:
24    Q  What's your wife's name?
```

James  Pienta    May 22, 2012

Page 96

```
 1      A   I stand on my Fifth Amendment right.
 2      Q   And do you have any children?
 3      A   I stand on my Fifth Amendment right.
 4      Q   Do you have any grandchildren?
 5      A   I stand on my Fifth Amendment rights.
 6      Q   And what are your children's names and
 7   occupations?
 8      A   I stand on my Fifth Amendment rights.
 9      Q   How many times have you been sued?
10      A   I stand on my Fifth Amendment right.
11      Q   How many times have you been deposed?
12      A   I stand on my Fifth Amendment right.
13      Q   Tell me the names of every case in which
14   you've been deposed.
15      A   I stand on my Fifth Amendment right.
16      Q   Tell me the name of every case in which
17   you've been sued.
18      A   I stand on my Fifth Amendment right.
19      Q   Has a judgment ever been entered against you
20   in a civil case?
21      A   I stand on my Fifth Amendment right.
22      Q   Have you had any employment post retirement
23   from the Chicago police department?
24      A   I stand on my Fifth Amendment right.
```

James  Pienta    May 22, 2012

Page 97

```
 1      Q   Are you retired from the Chicago police
 2   department?
 3      A   I stand on my Fifth Amendment right.
 4      Q   Do you socialize with, in the past year have
 5   you socialized with either Detectives Madigan,
 6   Marley, McWeeny or Pederson?
 7      A   I stand on my Fifth Amendment right.
 8      Q   When was the last time you saw Detective
 9   Pederson?
10      A   I stand on my Fifth Amendment right.
11      Q   Where was the last time you saw Detective
12   Pederson?
13      A   I stand on my Fifth Amendment right.
14      Q   When was the last time you saw Detective
15   McWeeny?
16      A   I stand on my Fifth Amendment rights.
17      Q   Where was the last time you saw Detective
18   McWeeny?
19      A   I stand on my Fifth Amendment rights.
20      Q   When was the last time you saw Detective
21   Marley?
22      A   I stand on my Fifth Amendment rights.
23      Q   Where was the last time you saw Detective
24   Marley?
```

James  Pienta    May 22, 2012

Page 98

```
 1      A   I stand on my Fifth Amendment rights.
 2      Q   When the last time you saw Detective Madigan?
 3      A   I stand on my Fifth Amendment rights.
 4      Q   Where was the last time you saw Detective
 5   Madigan?
 6      A   I stand on my Fifth Amendment rights.
 7      MR. AINSWORTH:  I don't have any further
 8   questions for you.
 9      MR. ARGER:  I don't have any questions.
10      MS. EKL:  I don't have questions.  We'll waive
11   signature.
12      MR. AINSWORTH:  Thank you for your time.
13              (WITNESS EXCUSED.)
14
15
16
17
18
19
20
21
22
23
24
```

James  Pienta    May 22, 2012

Page 99

```
 1   STATE OF ILLINOIS)
                       ) SS.
 2   COUNTY OF C O O K)
 3      I, LYDIA B. PINKAWA, CSR and Notary Public in
 4   and for the County of Cook and State of Illinois, do
 5   hereby certify that on May 22, 2012, at 10:25 a.m.,
 6   at Suite 100, 312 North May Street, Chicago,
 7   Illinois, the deponent JAMES PIENTA personally
 8   appeared before me.
 9      I further certify that the said James Pienta
10   was by me first duly sworn to testify and that the
11   foregoing is a true record of the testimony given by
12   the witness.
13      I further certify that the deposition
14   terminated at 12:08 p.m.
15      I further certify that I am not counsel for nor
16   related to any of the parties herein, nor am I
17   interested in the outcome hereof.
18      In witness whereof, I have hereunto set my hand
19   and seal of office this 1st day of August, 2012.
20
21
22              Notary Public
23   CSR No. 084-002342 - Expiration Date: May 31, 2013
24
```

**A**

Aaron 8:17 18:1,5,9
18:16,24,24 19:6,8
19:15,22 20:14 21:10
21:16 22:2,13,20
23:2,4,11,12,18,19
24:3,4,5,13,14,20
25:3,9,15,22 26:5,11
27:2,9,16,23 28:6,13
28:15,22,24 29:5,10
29:18,24 30:10,19,19
30:23 31:5,9,19,24
32:4,8,8,12,17,18
33:7,13 34:3,12,16
35:3,5,42:12,18 43:7
43:8,15 45:1,19,23
45:24 46:8,14,22
62:15 88:19 93:23
94:5
able 82:18
absolutely 62:4
abuse 62:14,15 90:22
93:22
access 48:12,20 54:20
acted 13:17 14:4 37:19
38:2,11
acting 4:15 17
action 7:3:16 91:5
actual 8:7 37:18
adopt 4:23
advice 4:15 39:24 40:3
40:11,14,22,24 41:7
41:20
afforded 4:17
agent 91:19
agree 83:21 95:10
agreed 30:18 71:16
87:8
agreeing 95:17
agreement 71:8
ahead 53:9
Ainsworth 2:2 3:5 4:5
5:1,3 6:9,18 7:10
8:11 9:7,12,23 10:5
10:12,21 11:5,22
12:15,19 13:1,14,22

14:8,22 15:4 16:3,10
17:7,14,20 18:15,22
19:5,12 20:3,11
20:19 21:1,7,14,23
22:6,12,18 23:1,9,16
24:1,10,18 25:1,8,14
25:21 26:3,10,17,23
27:6,14,21 28:4,11
28:20 29:4,9,16,23
30:7,16 31:3,17
32:15,21 33:4,18
34:1,11 35:1,10,18
36:1,9 37:4,23 38:7
38:15 39:1,10,19,23
40:9,20 41:6,19
42:16,23 43:5,11,18
44:1,9,15,22 45:6,12
45:17,21 46:5,13,20
47:3,12,19 48:2,10
48:17 49:1,8,15,23
50:6,13,19 51:2,14
51:21 52:5,13,22
53:6,11,22 54:5,12
54:18 55:1,8,15 56:1
56:10,18 57:1,8,16
57:23 58:6,13,19
59:1,9,16,23 60:6,13
60:23 61:8,16 62:10
62:18 63:22 64:5,12
64:21 65:3,9,16,22
66:5,12,20 67:3,10
67:17 68:1,7,14 69:1
69:8 70:2,8,15,21
71:5,14,22 72:6,13
72:19 73:2,9,15,23
74:7,15,23 75:7,12
76:1,7,13,20 77:1,6
77:11,16,21 78:2,12
78:17,22 79:3,8,13
79:18 80:1,9,17,23
81:6,12,19 82:2,8,15
82:23 83:6,12,19
84:2,9,15,21 85:4,10
85:16,23 86:9,16
87:1,7,14,21 88:3,9
88:18,23 89:4,11,17

90:5,14,20 91:3 92:8
92:14 93:2,4,11,18
94:3,9,16 95:1,17,23
98:7,12
air 74:11,19
alibi 55:19 66:21
allegations 93:22 94:6
94:12
allow 32:11,17
Amendment 4:17,21
4:22 5:6,8,11,13,16
5:19,21,24 6:3,8,12
6:17 7:2,5,9,14,19,24
8:4,10,15,19,21,24
9:6,11,14,17,22 10:4
10:11,20 11:4,6,12
11:15,18,21 12:7,9
12:14,18,24 13:4,8
13:13,21 14:7,9,18
14:24 15:12,17,21
16:2,6,9,15,22 17:2,6
17:10,13,19,21 18:3
18:6,14,21 19:4,11
19:19 20:2,10,18,24
21:6,13,22 22:5,11
22:17,23 23:8,15,23
24:9,17,24 25:7,13
25:20 26:2,9,16,22
27:5,13,20 28:3,10
28:19 29:3,8,15,22
30:6,15,21 31:2,7,11
31:16,21 32:2,6,10
32:14,20 33:3,8,17
33:24 34:10,14,17,23
35:9,17,24 36:8,12
36:15,18,20,22 37:3
37:6,9,11,13,15,17
37:19,21 38:6,12
38:24 39:3,9,18 40:2
40:8,18,22 41:5,12,17
41:20 42:5,11,18
43:4,10 44:14,16,22
45:5,16 46:4,12,19
48:16,24 49:7,14,22
50:5,12,18 51:1,5,8

51:13,20 52:4,12,21
53:2,15 54:1,7,14,11
54:17,23 55:7,14,18
55:23 56:4,17,18
57:7,15,22 58:4,19
58:24 59:8,15,22
60:5,12,16,22 61:1,7
61:14 63:17 64:4,11
64:15,20 65:2,8,15
65:21 66:4,11,19
67:2,9,16,23 68:6,13
68:18,24 69:7,12,15
69:17 70:1,7,14,20
71:4,13,21 72:5,12
72:18 73:1,8,14,22
73:24 74:6,14,21
75:2,6,11,18 76:5,13
76:19,24 77:5,10,15
77:20 78:1,6,11,16
78:21 79:2,7,12,17
79:22 80:7,16,22 81:4
81:11,18 82:1,7,14
82:21 83:4,10,17
83:23 84:1,7,13,20
84:22 85:2,8,14
85:20 86:3,10,17,24
86:15 87:12,20 92:11
91:9 94:20
answered 14:19 53:5
answering 4:13
Anthony 55:17 56:6

56:12,13 57:10,18
58:1,9,14,15,20 59:4
59:11,18 60:2,8 68:9
appearance 5:15
appeared 2:5,10,15
9:2 32:9 99:8
apprised 59:17 64:16
74:1
apply 64:14
applying 59:12 86:11
approximately 24:20
28:6,14,23 30:1
APR 9:4
April 5:17,20,22 10:24
16:4,7 17:11,16 31:8
31:13,20,23 41:24
57:16
APR.86 9:9
Arbuckle 41:24 42:3
42:10,18,24 43:7,14
43:14,19 44:2,4,11
44:17,19,24
Arbuckle's 42:7
Area 4:10 5:4,9,10
16:24 17:4 18:17,24
19:16,23 20:13 42:7
43:21 51:23 52:7
53:4,13 55:20 56:2
65:11 75:17 76:22
77:3,8,12,13,18,23
78:9,14,19,24 79:5
79:10,15,21 80:5,13
89:13,19,20
Arger 61:15 89:23
90:11 92:4,23 98:9
arm 54:7
arrest 53:7
arrested 18:1 41:23
asked 14:20 25:22
43:19 44:3 53:5,9
62:3 63:2 81:7 84:10
84:16 86:17
asking 62:2,5,19,21
63:1,11,16
aspect 63:19

as 20:7
assert 4:22 11:6 14:9
14:17,23 16:15 17:21
39:16 40:14 41:1,13
63:17
asserted 4:21 14:20
asserting 39:12 40:4
assistant 29:11,19
30:3
assisted 18:4,8
assumes 6:6,15 7:7 8:8
9:20 10:2,9,18 13:11
13:19 14:5 15:24
18:12,19 19:2,9,17
19:24 20:8,16,22
21:4,11,20 22:3,9,15
22:21 23:6,13,21
24:7,15,22 25:5,11
25:18,24 26:7,14,20
27:3,11,18 28:1,8,17
29:1,13 30:4,13
31:14 33:1,15,23
34:9,21 35:7,15,23
36:6,10 37:1 38:4,22
38:23 39:6,16 39:14
40:23 41:3,10,15,22
42:13 43:3,23
44:7 45:10 46:3,10
46:17,24 47:9,16,23
48:7,14,21 49:5,12
49:20 50:3,10,16,23
51:11,18 52:1,9,19
53:19 54:3,10,15,22
55:5,12,22 56:8,16
56:22 57:6,13,20
58:3,11,18,22 59:7
59:14,21 60:4,11,20
61:4,13,24 64:3,19 66
66:3,10,18,24 67:8
67:15,22 68:5,12,22
68:17,23 69:6,14,21
69:6,24 70:6,12,18
71:3,12,20 72:3,11
72:16,24 73:6,12,23
73:23 74:4,20 75:5
80:7,14,20 81:4,9,17

81:23 82:5,12,21
83:3,10,17,24 84:7
84:18 85:7,8,14,21
86:7,13,22 87:4,12
87:19,24 88:6,16
88:23 91:9 92:3,22
93:9,16
attorney 4:15 25:17
29:12,19 30:3 41:11
46:1 91:11,16
attorneys 39:15 40:13
40:24
attorney's 29:24 40:3
40:10,21 41:7,13,20
attorney-client 39:18
40:7,19 41:4,17
attributes 89:24
August 99:19
aware 4:13
a.m 1:18 99:5

**B**

B 1:15 99:3
back 5:4 17:1 22:2
34:19 53:18 56:2
bag 56:20 57:4,9,24
86:18,20
ball 48:4
bar 94:22
baseball 50:22 51:4,7
51:24 52:8
based 4:16 39:20
basis 39:11,17 40:4,18
41:4,16 62:1,4,11,18
bat 50:22 51:4,7,24
52:8
Bates 3:7,8,10 6:24
12:4 15:9 16:20
bathroom 48:13,20
54:20
beat 44:19
beating 45:19
began 71:6 83:13
84:22
behalf 2:5,10,15

believe 14:16
believing 63:18
Bill 80:3,3,11,11
black 11:10,14,16,20
75:8
block 54:7
blond 74:24
blows 54:7
body 58:9,15 59:18
60:2,9 61:21 63:24
64:7,14,17
book 51:10
bottom 12:10 15:13
bourbon 29:6
box 57:3 58:8 60:1
break 61:16 91:17
93:18
breaking 86:20
breathe 23:12 24:5
breathing 23:19 27:24
28:15,24 58:2 59:5
61:2,11
brother 13:7,17 14:4
brought 21:8 31:18,24
32:3,16 34:19
brown 56:20
bulldshit 20:6
burdensome 62:23
63:7
bureau 6:2 10:30:9
30:17,22 36:19,21,24
37:5,7,8,12 44:3,10
44:16,23,24 45:2
55:3,10,10 56:6,11
56:19 57:2 59:2,10
59:24 62:16 64:6,13
64:17 71:17,22 80:1,1
80:11
Burge's 37:10
burglaries 39:5
Burnette 59:15 18:22

**C**

C 99:2
Caine 1:3 17:3 31:13

31:18,24 32:3,5,8,12
32:17,18,23,24 33:5
33:10,11,21 34:3,6
35:12,14,20,21 36:4
36:4 38:20 45:14
46:23 88:24 89:6
92:11,16 93:23 94:5
Caine's 1:1 13:24
33:20 45:7
called 1:12
calling 65:24
car 18:23 19:14
career 91:5
case 96:13,16,20
cases 63:10
caused 51:10
certain 63:10,11
certify 99:5,9,13,15
chair 44:5 56:6,14
chest 22:14 23:20 24:6
24:14 32:24 33:6,11
33:16 34:3
Chicago 1:8,9,19 2:3
97:1 99:6
children 96:2
children's 96:6
chips 86:18
choke 49:17
choose 4:16
city 1:7,8 2:6 90:20
91:4 92:1
civil 1:1 64:3:10 96:20
claim 34:5 90:2 94:12
claiming 63:13
clear 41:10 53:12
client 39:20 40:8,18
41:5,17
coached 87:22
coaching 84:22
coerce 21:17 33:13
67:19 68:9 71:18
81:8
coerced 34:6
coercing 89:13,19
Coleman 47:5,8,15,21

48:4,6,19 49:3,9,16
49:24 50:8 67:12
Coleman's 47:14
48:11 49:18 88:12
color 5:17
colored 74:24
coming 57:4
commit 90:9
committed 8:3 11:11
13:6,16 14:3 15:20
38:10 89:6
comparison 12:22
complaint 90:22
complaints 91:21
conduct 8:5
confess 30:2,24 90:9
confessed 34:13
confession 20:15
21:18 30:20 31:6,10
31:24 34:5 45:4:7
45:8 46:1,9 50:9
67:6,13,20 68:8,10
71:18 88:14
confessions 34:5 89:13
89:19
conjunction 92:17
Constitution 4:18
consult 91:11,15
consulted 30:8 39:15
contained 10:8
containing 29:6 69:19
continue 14:18
continued 84:5 85:24
conversations 17:15
90:6
convicted 39:5
Cook 1:17 99:4
cool 33:13
cooperate 25:23 26:6
44:12,17 45:1
cooperated 81:14
82:10,17
cop 46:7,8
corner 15:14
correct 4:11
Cottage 53:13

counsel 4:19 99:15
County 1:16 99:2,4
course 30:9 47:13,21
52:17
Court 1:1 62:13,24
Courts 1:15
cousin 8:17
cover 21:9,16,19 22:1
23:4,11,17 24:3,12
24:19 25:3 27:1,8,16
27:23 28:6,13,22
30:18 34:19 57:17
59:3,11 60:18 61:1
61:10
covering 86:19
crank 58:7 60:1
create 6:24 12:5 15:10
created 12:8 17:8
crime 8:18 34:20 83:8
83:14 89:7
crimes 90:9
criminal 4:14 78:9
91:24 92:20 93:5,12
crying 58:16
CSR 1:16 99:3,23
cup 29:6
current 64:14,17
currently 36:13
custody 93:7
cycle 59:11

**D**

D 3:1
Dale 8:17
Dan 80:4,12
Daniel 1:7 2:11
Date 99:23
dated 17:11
day 66:23 99:19
dealt 89:8
dealers 45:2
death 35:4,13
decide 95:9
decided 95:15
deciding 39:15 40:14

decision 62:13 95:6
defeat 34:5
defendant 2:15
defendants 1:10 2:10
Court 1:1 62:13,24
defense 11:1 13:24
38:20
denied 72:14
department 96:23
97:2
deponent 99:7
deposed 95:18 96:11
96:14
deposition 1:12 6:19
6:20 12:1 15:6 16:12
62:3,21 78:4 94:20
95:10,19 98:10
deprive 48:19
Derrick 50:15 51:15
67:19
describe 5:15 11:10,13
16:23 69:16
desire 4:12
destroyed 10:1
details 7:11,13 8:1,6
10:14 34:15,20 35:2
35:5,11,14 83:8,14
83:15 89:7
detective 4:10 5:4,18
21:15 23:3,10,14 22:1
34:18 52:23 54:4,5,6
detective's 54:4
Devon 2:7
disbelief 91:4
disclaimer 91:21
dishevelled 32:9
District 1:1,1,15
DIVISION 1:2
document 6:20,23 9:3
12:4 15:6,9,10,16
16:12,20,21 17:8,11
35:7:15,22 36:6,17,1
37:21 38:4,12,21
39:6,9,17,22 40:6,16
41:3,15 42:13,20
43:2,9,16,22 44:6,13

eekl@jsotoslaw.com
97:20,23 98:2,4
effort 30:19,24 31:5
32:4 50:8 58:1 61:10
61:21 64:8 67:6,13
67:19 71:18 88:12
68:14 83:8:23 89:6
68:13 71:6 91:20
80:14,20 81:9,16
82:18,22 83:13,16,20
89:2,13,20 90:16,19
90:20 91:2,8,19
97:5
either 73:17 97:5
EKL 2:7 4:19 5:2 6:6
6:15 7:7 8:8 9:5,10
9:20 10:2,9,18 11:3
12:13,17,23 13:11,19
14:5,13 15:3,24 17:5
17:12,18 18:12,19
19:2,9,17,24 20:8,16
20:22 21:4,11,20
22:3,9,15 23:6,13,21
24:7,15,22 25:5,11
25:18,24 26:7,14,20
27:3,11,18 28:1,8,17
29:1,13 30:4,13
31:14 33:1,15,23
34:9,21 35:7,15,23
36:6,10 37:1 38:4,22
39:6,14 40:6,16,23
41:3,10,15,22 42:13
42:20 43:2,9,16,22
44:6,13 46:3,10,17
46:24 47:9,16,23
48:7,14,21 49:5,12
49:20 50:3,10,16,23
51:11,18 52:1,9,19
53:19 54:3,10,16,22
55:5,12,22 56:8,16
56:22 57:6,13,20
58:3,11,18 59:7,14
59:21 60:4,11,20
61:4,13,24 64:3,19
66:3,10,18 67:8,15
67:22 68:5,12 69:6

79:19 97:8,11,14,17
97:20,23 98:2,4
detectives 10:7 18:5
19:13 20:13 21:2
24:13 26:12,42:11
64:14 77:8,12,23
78:14,24 79:10,21
80:13 89:20 90:17
97:5
determine 8:12
Devon 2:7
Diggins 52:24 53:4,13
53:17,18,24 54:6,13
54:20 55:3,11 68:3
DIRECT 3:4,1
disciplinary 91:4
discipline 92:1
disclaiming 81:21
disclosed 32:9
District 1:1,1,15
DIVISION 1:2
document 6:20,23 9:3
12:4 15:6,9,16 16:12
16:12,20,21 17:8,11
documentary 94:10
documentation 14:1
38:17,18 92:11,16
documented 13:15
17:15 38:8
Documents 12:1
doing 47:6
drink 36:23
Drive 2:13
driving 18:23
drug 45:2
duly 42:9 99:10
Dwyer 47:15,21 48:5,5
49:17
DYKEMA 2:12

**E**

E 3:1
East 2:7
EASTERN 1:2
eat 81:8,14 82:19

72:3,10,16,23 73:6
73:12,20 74:4,22
75:5,23 76:2,10,17
76:7,23 77:4,9,16
79:1,6,11,16,22 80:3
80:14,20 81:4,9,16,23
82:5,12,13,22 83:3,10
83:17,23 84:7,18 85:2
85:8,14,21 86:7,13,22
87:4,11,20 88:1,6,16
88:22 91:9,23 92:3,22
93:5,9,16 95:18 97:5
electric 44:5
electrical 64:14,16
electricity 58:8,15
59:12,17 60:1,8
ELIZABETH 2:7
EMPLOYEES 1:8
employment 96:22
enter 56:20
entered 61:15 69:18
75:19 96:19
envelope 34:20
Eric 11:3 11:13 24:2
17:3 31:12,18,24
32:3,5,7,11,16,18,22
32:23 33:5,10,11,20
33:21 34:3,6 35:14
35:14,20,21 36:3,14
38:24 34:18 39:24
45:7,24 46:10,15,22
46:23,88:24 89:6,14
86:21,24 87:19 91:4
92:1,3,9,10,22 91:10
93:3,22 93:5,16,20
94:1:15,8
94:11:10,9
exact 53:10
examination 1:3 4:4
examined 3:4 4:2
excessive 44:8
exculpatory 10:15
92:18
EXCUSED 98:3
Exhibit 3:7,8,9,10
6:18,21,22 7:1 9:1,13
11:8,22 12:2,3,6,8,11

24:23 25:6,12,19
26:1,8,15,21 27:4,12
27:19 28:2,9,18 29:2
29:14 30:5,14 31:15
31:15 33:2,16 34:10
33:2:16,22 37:2 38:5
38:5,13,23 39:7
40:17,11 41:2,4,16,24
42:14,21 43:3,9,17
43:23 44:7 46:3,11,18
46:3:11,18 47:10,17
47:24 48:8,15,22 49:6
49:13,21 50:4,11,17
51:1,12,19 52:2,10,20
51:12:19 53:20 54:4
54:11,17,23 55:6,13
55:23 56:9,17,23
57:14,21 58:4,12,19
58:23 59:8,15,22
60:5,12 61:5,14,23
62:9,23 63:4:8 64:4
64:20 66:4,11,19 67:9
67:16 68:6,13,23
69:7 71:6,13,21 72:4
72:11 72:17 83:16,20
84:2:13,17 86:12,24
86:22,24 87:19,24
88:1,17 91:23 93:5
95:18
examination 1:4:4
examined 3:4 4:2
excessive 44:8

14:11 15:1,4,7,9,11
16:10,13,17,19 17:9
17:16,23
**EXHIBITS** 3:6
existed 16:24
Expiration 99:23
extent 14:15 63:15

**F**
face 19:1 23:5,18 24:4
24:13,20 25:3 27:2,9
27:16,23 28:6,14,22
30:19 49:18 69:4
86:19 88:12
fact 6:1 10:14,15
13:15 14:1 35:1,32
38:8 63:9
facts 6:6,15 7:7 9:8
9:20 10:2,10,17,18
13:11,19 14:5 15:24
18:12,19 19:2,9,17
19:24 20:8,17,22
21:4,11,20 22:3 9:15
22:21 23:6,13,21
24:7,15,22 25:6,11
25:18,24 26:7,14,20
27:3,11,18 28:2,8,18
29:2,14 30:4,13
31:14 33:1,15,23
34:9,21 35:7,15,23
36:6 37:1 38:4,12,21
39:6 40:16 41:15
42:14,21 43:1,23
44:7 45:10 46:3,11
46:17,24 47:9,16,23
48:7,14,21 49:5,12
49:20 50:3,10,16,23
51:11,18 52:2,10,20
53:19 54:3,10,15,22
55:6,12,22 56:8,16
56:22 57:6,13,21
58:4,11,18,22 59:7
59:14,21 60:4,11,20
61:5,13,24 64:3,10
64:19 65:1,7,14,20
66:3,10,18,24 67:8

67:15,22 68:5,12,23
69:6,24 70:6,13,19
71:3,12,20 72:3,11
72:17,24 73:6,12,21
74:5,13,21 75:22
76:4,10,17 79:23
80:7,15,20 81:4,10
81:17,24 82:6,13,21
83:4,10,17,24 84:7
84:19 85:2,6,8,14,21
86:7,14,22 87:5,12
87:19 88:1,7,16
89:22 91:1 92:3,22
93:9,16
faith 39:11 62:1,11,18
62:20,21
false 21:17 30:20 31:6
31:10 33:14 45:8
46:9,16,23 50:9
88:13 89:19 93:24
94:6,13
family 94:17,18,21,23
95:13
far 5:4
faster 63:4
fear 92:1
February 47:4,22 49:4
50:2,14 52:18 60:15
60:19 61:3,11,22
64:8,17,23 65:5,11
65:18 66:1,7,16,21
feeding 83:7,13
feet 50:1
fellow 10:7
Fifth 4:17,21,22 5:6,8
5:11,13,16,19,21,24
6:3,8,12,17 7:2,5,9
7:14,19,24 8:4,10,15
8:19,21,24 9:6,11,14
9:17,22 10:4,11,20
11:4,6,12,15,18,21
12:7,9,14,18,24 13:4
13:8,13,21 14:7,9,17
14:24 15:12,17,21
16:2,6,9,15,23 17:2,6
17:10,13,19,21 18:3

83:18 84:1,8,14,20
85:3,9,15,22 86:8,15
86:23 87:6,13,20
88:2,8,17,23 89:3,10
89:16 90:1,4,13,19
91:2,10,13,22 92:7,9
92:13 93:3,10,17
94:2,8,15 96:1,5,8,9
96:10,12,15,18,21,24
97:3,7,10,13,19
97:22 98:1,3,6
filed 90:15,21
find 8:5
fingerprint 12:22
fine 21:11
FIRM 2:6
first 4:2 12:5,8 15:13
53:7 99:10
fists 73:4
Five 12:4 59:19
flashlight 53:18 54:1
flat 57:3
Florida 37:5,8
Fluker 69:11,19,20
70:3,10,17,23 71:1,7
71:10,16,17,18,24
72:2,8,14,21 74:8,17
Fluker's 73:4,11,18,19
74:1
follow 40:10,21
followed 89:18
following 61:18 90:7
93:21
follows 4:3
followup 8:5
food 48:12,19 54:19
86:18 88:5
force 20:14 31:4 45:23
50:7 56:13 60:8 67:4
67:11,18 68:2,8,9,20
70:24 71:8,10,17
74:1 90:8 91:21,24
93:6,13 94:6
foregoing 99:11
form 11:3 14:5,14,21

30:11 31:1 32:19
33:1,22 34:8 35:22
40:6 41:15 42:20
43:16,22 44:6 45:9
46:2,10,17,24 48:7
48:14,21 51:19 54:2
54:9,21 55:21 56:7
56:15,21 57:5,12
58:10,17 59:6,13,20
60:3,10 61:12,23
62:4,10 63:15,19
66:2,9,17,24 67:7,14
67:21 68:4,11 69:5
69:23 70:5 71:2,11
71:19 72:10,23 73:6
73:20 74:4 76:17,23
77:4,19,24 78:10,15
78:20 79:1,6,11,16
79:22 80:6,14 81:3
81:16,23 82:5,12,20
83:3,9,16,23 84:6,13
84:18 85:1,7,13,20
86:6,13,21 87:4,11
87:18,24 88:6,15,23
89:2,9,15 90:10,18
91:9,12,21 92:21,24
93:8,15
62:10,18,20,20
70:5,12,18 71:2,11
71:19 72:10,22 73:5
73:20 74:4,76:17,23

68:4,11,22 69:5,23
70:5,12,18 71:2,11
71:19 72:10,16,23
73:20 74:4 76:17
76:23 77:4,11,16,18
78:20 79:1,6,11,16
78:20 79:1,6,11,16
79:23 80:6,14 81:3
78:6 79:2,8,14
76:19,24 77:5,10,15
77:20 78:1,11,16,20
79:2,7,13,22,24
80:6,14 81:3 82:1,8
82:17 84:22 85:3,11
82:6,9,17 67:7,14,21

62:10,18,20,20
GOSSETT 2:12
GPR 3:7,8,10
grabbed 49:2
grabbing 49:10
grandchildren 96:4
gray 21:8
groin 47:15
Grove 47:8 53:13
gun 30:23 74:10,19
guys 72:22

**H**
hair 5:17 74:24 75:8
Hall 7:4,6,11,12,15,16
7:20 8:1,6,16,20,22
9:6,16,23 10:9,16
11:10,19
hand 80:19 99:18
handcuffed 17:3 22:2
51:16 54:8 56:12
80:19 81:1
handcuffs 81:2
hands 22:2,19 50:1
81:1
handwritten 9:15,18
9:24 10:23
handwrote 10:13
hang 91:8
happened 9:18 62:8
63:13
harassing 62:23
head 21:17 23:1
35:20 36:4 57:10,18
58:1 59:4,12 60:18
61:2,10 73:4,11,18
73:19 74:2
hear 70:10 72:22
77:12,17,22 78:8,13
78:18,23 79:4,9,14
heard 15:19 26:4
29:17 43:6,12 44:10
44:16,23 54:13 65:23
74:16 79:19 80:2,10
held 23:2,11,18 24:20
28:5 31:19 49:16

57:24
help 65:24
hereof 99:17
hereupon 99:18
Hill 18:11,18 19:1,15
hitting 48:5
hold 28:13,22 49:17
holding 24:3,12
hollering 58:16
Holmes 55:17 56:6,12
56:13 57:10,18 58:1
58:9,15,20 59:4,12
59:18 60:2,8 68:9
home 74:11,19 82:18
Homes 56:12
homicides 7:12 8:3,7,7
13:19,19 15:11
hour 30:2
house 37:10,12
Houston 68:16,20
69:3
Hudson 70:4

**I**
identically 34:4
identification 6:21
13:17 19:2:3,8
Illinois 1:1,17,19 2:3,8
2:13 37:7 62:12 99:1
99:4,7
Illya 45:13
implicate 43:14 45:1
implicated 8:17,18
implicating 46:15,22
implies 14:15
included 12:21
including 10:15
individuals 12:20
63:13 88:13
information 10:7
44:18 92:18,19
injection 44:5
injury 88:10,11,12
inside 19:22 93:13
insisted 84:3,4
instruct 39:19 40:17

41:4,17
instructing 40:7
intent 31:8
interested 99:17
interrogate 75:13,16
interrogated 19:21
31:12 47:5,7 50:15
51:10 52:23 53:3,12
55:16 60:14
interrogating 71:16
76:22 78:19 79:5,15
80:4
interrogation 16:24
19:22 20:21 21:10
22:8 30:9 32:1,23
42:3,7 43:13,20
47:14,22 48:1,22,20
49:3 50:2,20 52:17
53:16 55:4 56:20
57:11,18 58:21 60:19
62:7 63:20 65:24
66:15 68:1,23 69:4
69:10 71:7 72:1
75:20 82:11,1 90:23
interrogations 66:7
77:18
interview 3:9 7:3 8:20
9:15,19 10:1,23
interviewed 8:22
intimidate 32:5
investigate 6:5,10
investigation 8:20
81:15
invocation 90:1
involved 42:18 62:14
68:15 90:17
involvement 39:3
63:10 81:22 88:20
89:1
issues 95:12
Itasca 2:8
I-bond 82:17

**J**
James 1:16,12 2:10 3:3
4:1,8 18:11,18 19:1

19:15 62:16 99:7,9
jamming 73:4
January 69:14 74:2,3
75:1,4,9
Jesse 70:4
join 89:23 90:11 92:4
Jon 1:6 2:10 30:8,17
30:22 36:19,21,24
37:5,7,8,10,12 44:3
44:10,16,23,23 45:2
56:11,19 57:2 59:2
59:10,24 62:15 64:6
64:13 77:17,22 80:2
80:10 90:7
judgment 96:19

**K**
K 99:2
kept 48:5
key 85:19 86:5,11
kick 20:7 47:15
kicked 65:4,17
kicking 48:5
kidneys 73:5,18
kids 95:4
killed 6:2 7:16,18 8:14
29:12,19 89:8,8
King 50:15,21 51:3,6
51:9,15,23 52:1,14
52:16 67:19
kneecaps 51:7 52:5
knew 45:7 46:14,21
70:23 74:9,17
know 14:13 20:5 39:4
63:1,9 91:16,23 95:9
knowing 7:22 63:16
knowledge 7:17 43:1
known 12:12,16 36:10

**L**
L
late 14:13
latent 12:22
LAW 2:6
lawyer 25:10 43:20
44:3
lead 4:14

learn 6:1
leave 69:22 72:2
left 15:14 20:12 29:24
70:16,22 71:23 72:8
leg 84:17 85:12,19
86:4,12 88:11
legs 53:24
length 63:7
lethal 44:5
Let's 6:18 11:22 15:4
16:10 61:16 63:10
Lieutenant 44:3 55:10
light 74:24
lights 22:8 25:4 26:19
26:24 27:10,17
limited 63:2
line 9:1 12:10
listed 12:21 15:13
listening 20:6
litigation 66:14
little 58:8 60:1
locate 13:9 15:23
location 66:22
lodged 93:23
LOEVY 2:2,2
long 96:10
look 33:21
Looking 12:10
looked 13:7,18 14:4
37:19 38:2,11
lot 63:4
Lotito 68:20
Lydia 1:15 99:3

**M**
Mack 37:14,16,24
38:9,18 39:2
mad 85:6
Madigan 1:6 2:10
21:3,16 24:5 27:8
28:21 30:18 33:20
34:19 35:19 36:3,11
44:17,19,24 47:5,7
47:14,15,21 48:3,6
48:11,19 49:2,18,24
50:8 67:12 88:11
98:2,5
Michalik 2:12 48:10
52:3,11 57:14 61:6

94:24 95:21
male 1:1 10:13,16,20
man 18:11,18 37:14
41:23 47:5 50:15
52:23 55:16 68:16
69:10,13 75:13
manila 34:19
manner 27:24 28:23
62:23
mark 6:18 11:22 15:4
16:10
marked 3:6 6:20,22
7:1 12:1,3 15:6,8
16:12 17:8
Marley 1:7 2:11 19:13
78:18,23 80:3,11
97:6,21,24
Maron 52:24 53:3,13
53:17,18 68:3
married 95:4
Marva 7:4,6,11,12,15
7:16,20 8:1,6,16,20
8:22 9:16,19 10:1,6
10:16,24 11:10,19
match 8:2,7 34:4
matters 95:10
McWEENY 1:7 2:11
46:7 79:14,20 80:4
80:12 97:6,15,18
mean 12:12 15:15
meaning 45:1
means 62:23
members 12:12,16
94:18,18,21,23 95:13
mentioned 83:15
merely 4:13
metal 58:8
Michael 41:24 42:3,7
42:10,17,24 43:7,13
43:14,18 44:2,4,11
44:17,19,24 47:5,7
47:14,15,21 48:3,6
48:11,19 49:2,18,24
50:8 67:12 88:11
narrative 12:10
needs 22:20 23:3 49:3
41:15 42:13,20 43:3
43:9,16,22 44:6,13
44:20 45:4,9,19 46:2
46:10,17,24 47:9,16

61:18
Miguel 69:11,19 70:3
70:9,17,22 71:1,7,10
71:16,17,18,23 72:14
non-threatening 77:3
North 1:18 2:3 99:6
**NORTHERN** 1:1
nose 86:19
Nosey 16:19 39:2,22
notes 9:15,18,19,24
10:23 35:21 36:5
93:19
notice 1:13 95:2
notion 62:24 90:6
motor 57:3
mouth 86:20
move 56:13 63:5 94:22
moved 37:8
murder 81:22
murders 6:5,11,14
11:11 13:3,6 14:3
15:20 34:16 35:3,12
37:18 38:11 39:4
42:19 43:1,15 44:18
45:3 46:16,23 88:00
89:1,6

**N**
N 3:1 76:21 77:2,7,13
77:17,22 78:4,8,13
78:19,23 79:5,10,15
79:20 80:4,12
name 4:7 15:13 18:11
52:24 55:17 90:15,21
93:5,12 95:24 96:16
96:23 97:11
nameed 7:3 18:18
37:14 41:23 47:5
50:15 68:16 69:10,13
71:14 33:12,18 34:17
33:15,22 34:8,22
names 40:13 96:6,13
needed 62:19,20 91:1
91:14,15
never 34:12

nevertheless 89:5
nigger 76:9,15 78:5
night 8:13 31:22 42:3
42:7 43:20 74:2
71:16,17,18,23 72:14
minute 24:21 91:7
minutes 28:7,15,23
63:3,5
missed 45:20 53:8
Monell 90:2,12
morning 31:23 74:3
mother 25:16
motion 62:24 90:16
number 16:23,24 63:8
numbered 6:24 12:4
13:12

**O**
O 99:2,2
object 14:14,21 39:17
41:3,16 63:6,9 76:4
92:24 95:5
objecting 63:15
objection 6:15,15 7:7
8:8 9:5,10,20 10:2,9
10:18 11:3 12:6,13,17
12:23 13:11,19 14:5
14:14 15:24 17:5,12
17:18 18:12 19:19,2
19:9,17,24 20:8,16
20:22 21:4,11,20
22:3,9,15,21 23:6,13
23:21 24:7,15,22
25:6 26:5,11 27:2,9
27:16 28:6,14,22
28:23 29:22,23 49:3
41:15 42:13,20 43:3
43:9,16,22 44:6,13
44:20 45:4,9,19 46:2
46:10,17,24 47:9,16

47:23 48:7,14,21
49:5,12,20 50:3,10
50:16,23 51:11,18
52:1,9,19 53:3,19
54:2,9,15,21 55:6,12
55:21 56:7,15 57:5
57:5,12,20 58:3,10
58:17 59:6,13,20
60:3,10 61:4,11
61:22 64:2,16,23
65:4,10 66:2,9,17
66:24 67:6,13,20
68:4,11,22 69:5,23
70:5,12,18 71:2,11
71:19 72:10,16,23
73:5,20 74:4,16,23
74:20 75:22 76:4
76:10,17,23 77:4,9
78:15 79:6,11 80:8
81:3,9,16,23 82:5,12
82:20 83:3,9,16,23
84:6,13,18 85:1,7,13
85:20 86:6,13,21
87:4,11,18,24 88:6
88:15,23 89:9,15,23
90:23,24 92:4,5,12
92:18 92:5,11
objectionable 90:3
92:6
objects 51:17
observe 87:17
observed 24:2,5,11,13
28:18 37:1,3 43:6
44:7 48:14,20 82:6,9
82:14 23:2,18,23
83:6 41:22,24 42:3,4
54:6 55:2,9 56:5,11
56:19 57:2,9 58:7,14
60:7,24 61:8,22 62:4
64:14,23 65:5,11,18
69:2 73:3,10 74:1
obtaining 90:17
obviously 95:12

occupations 96:7
occur 17:16
October 52:24 53:4,14
55:11 68:16,21
offered 88:4
office 91:20 99:19
officer 19:7 22:7 24:2
26:18 91:6
officers 20:4,21
officer's 15:14
Okay 63:23 91:18
old 5:12
oral 46:15,22
order 63:1 95:14
originally 8:19
outcome 99:17
overly 63:6

**P**
page 3:4,6 6:23 12:4,6
12:8 15:9 16:19
pages 12:21
pair 49:19 81:2
Paladino 53:17,24
paper 56:20 57:4
participation 63:19
particular 6:2,6,8,11
63:13 95:9
parties 99:16
partner 34:4,7
partners 69:13
partner's 69:20
passed 58:20
Patterson 8:17 18:2,5
18:10,17,24 19:1,7,8
19:13,22 20:14 21:10
22:14 23:2,12,19
24:4,6,14 25:9,16,23
26:5,11 28:15,24
29:6,11,18 30:1,10
30:20,23 31:5,9,19
32:8,12,17,18 33:5
33:13 34:12,16 35:3
35:12 43:14,20,24
43:15 45:1,19,24,24

46:8 62:15 88:19
93:23
Patterson's 21:17 22:2
22:20 23:4,11,18
24:4,13,20 25:3 27:2
27:9,16,23 28:6,14
28:22 30:19 31:24
32:4 34:4 46:15,22
94:5
PAUL 2:12
Pederson 1:7 2:11
19:14 23:3,10 24:3
24:12 79:4,9 80:3,11
97:6,9,12
people 63:3 94:19 95:3
period 4:10 30:1
perpetrator 37:18
38:1
person 11:20 15:15
90:15,21
personally 99:7
persons 76:22
Pesaverento 69:14,20
70:17,23,24 71:8,9
71:16,24 72:2,7,20
73:4,11,17 74:17
75:3,8
phrase 12:11 76:15
physical 31:4 45:23
70:24 74:1 90:22
93:22 94:6
Pienta 1:6,12 2:10 3:3
4:1,8 6:20 12:1 15:6
15:8 16:12 62:16
99:7,9
Pinkawa 1:16 99:3
place 27:8,16 55:20
61:1 63:24 64:7
66:22
placed 22:19 23:4 27:1
27:2 57:20,17 60:17
61:9,20
placing 21:16 59:5,11
plaintiff 1:4,13 2:5
plastic 21:8 57:9,24
playing 46:7

please 4:6 6:4,13 9:2
11:23 12:20 15:5
18:24 62:11 90:16
PLLC 2:12
pmichalik@dykem...
2:14
point 73:17 94:11 95:5
95:12
police 18:6,10 47:8
50:21 51:10 91:6
93:7,14 96:23 97:1
portion 12:11 61:20
post 96:22
potato 86:18
practice 89:12,18 90:7
92:17
prepared 15:16
presence 34:13 59:18
72:21
present 2:1 42:2,6
43:13 61:19 62:6
63:14 66:6,15 69:10
69:22
prevent 27:24 28:24
58:1 59:4 61:2,11
preventing 23:18
28:15
previous 88:11,12
previously 81:21
prior 21:18 34:6
privilege 39:18 40:7
40:19 41:4,17
problem 83:2 94:21
Procedure 1:14
proceeding 62:2
proceedings 61:18
93:21
Professional 91:20
prosecution 4:14 11:1
13:24 38:19 92:11,16
prosecutor 90:20
protective 62:24 95:14
prove 94:5
provide 40:24 50:8
62:1,20,24 67:12
68:3

provided 10:6,14 29:5
33:21 34:7,15,20
35:2,11 68:8 73:24
95:19,20,21 99:11
pull 57:3
pulled 49:17
punch 47:21 65:11
punched 64:22
pursuant 1:13,14
put 82:10 85:12 95:7
putting 95:1,19
P-e-s-a-v-e-n-t-o
69:22
P-i-e-n-t-a 69:23
P.C 2:6
p.m 99:14

Q
question 4:16 5:7 13:2
14:15,17,19,21 15:1
17:22 39:20 40:1,22
41:5,8,10,21 45:21
53:10 62:11 91:9
93:1
questioned 6:13 91:19
questions 4:12,14,20
11:7 14:10,16,19
16:16 62:2,4,5,19,21
63:2,5,7,8,11,16,18
92:6 94:20 95:2,11
95:22 98:8,9,10

R
R 3:9
radiator 61:21 64:1,7
Ray 37:14,16,24 38:9
39:2 80:11
Raymond 1:6 2:10
78:8 80:3
Ray's 38:18
reached 18:24 71:8
read 87:23
ready 20:6 25:23 26:5
real 85:6
really 42:11 43:8
87:23

reason 33:9,11 94:4
recess 61:17 93:20
record 4:7 6:23 63:21
95:19,20,21 99:11
refuse 5:7 11:7 14:18
94:20
refused 35:21 36:4
refusing 14:16
regard 61:14 13:2
91:20
regarding 90:22 95:12
regular 16:4,7
related 99:16
relied 40:14
relying 40:3
removed 25:2
reopen 95:10
repeat 59:10 83:1
repeated 76:15
rephrase 14:23
report 7:1 9:13 10:8
reporting 15:14
request 12:22
requested 25:10
respect 41:1
response 14:24 16:15
17:17
rest 20:5
restart 45:21
retired 97:1
retirement 96:22
returned 20:20 21:3,9
21:18 22:1 32:22
71:24 72:21
review 93:19
Richard 15:18,22
right 5:6,8,11,13,16,20
5:21,24 6:3,8,12,17
7:2,5,9,14,19,24 8:4
8:10,15,19,21,24 9:6
9:11,14,17,22 10:11
10:20 11:4 12:9,18
17:2,6,13,19 18:3
19:19 20:24 21:6,13
22:11,17,23 23:8

24:9,17 25:7 26:2,9
27:13,20 29:8 30:6
31:2 35:9,17 36:18
36:20,22 37:9,13,15
38:6 43:24 44:8 45:5
49:7 51:1 53:21 54:4
54:17,23 55:18,23
56:4 57:7,15 58:12
58:24 64:15 65:2,8
66:4,11 67:16 68:24
69:7,12,15,17 70:7
70:14,20 71:13 72:5
72:12,18 73:1,8,14
73:22 74:6,14 75:2,6
75:11,18,24 76:6,19
76:24 77:5,15,20
78:1,21 79:2,7,12,17
80:19 81:11,18 84:14
84:20 85:3,9,15,22
86:3,8,15 87:13 88:8
88:17,22 90:4,19
91:22 92:9 93:17
94:2 96:1,10,12,15
96:18,21,24 97:3,7
97:10,13

45:11,16 46:4,12,19
47:2,6,11,18 48:1,9
48:16,24 49:14,22
50:5,12,18 51:5,8,13
51:20 52:4,12,21
53:2,15 54:11 55:7
55:14 56:9,17,23
57:22 58:5 59:8,15
59:22 60:5,12,16,22
61:7,14 63:17 64:4
64:11,20 65:15,21
66:19 67:2,9,23 68:6
68:13,18 70:1 71:4
71:21 72:2 73:6 75:9
76:20 77:8,11,18,24
78:9 80:2,7,17,21
81:5,10 82:3 83:10
83:16,23 84:1,8,16
85:1 86:2,6,11 87:2
87:10,22 88:9 89:4
89:11,16 90:2,9,15
91:2 92:9,19 93:17
97:10,13

rights 4:17,21,22 10:4
11:7,12,15,18,21
12:7,14,24 13:4,8,13
13:21 14:7,10,18,20
14:24 15:12,17,21
16:2,6,9,15,22 17:10
17:22 18:7,14,21
19:4,11 20:2,10,18
21:22 22:5 23:15,23
24:24 25:13,20 26:16
26:22 27:5 28:3,10
28:19 29:3,15,22
30:15,21 31:7,11,16
31:21 32:2,6,10,14
32:20 33:8,17,24
34:10,14,17,23 35:24
36:8,12,15 37:3,6,11
37:22 38:14,23 39:12
39:16 40:4,15 41:2
41:14 42:1,5,9,15,22
43:4,10,17 44:14,21
role 46:7
room 16:23,24 19:22
20:5,12,21 21:10,19
22:1,8 26:12 31:19
32:1,4,23 43:13
56:20 61:15 69:19
70:17 72:1,8 75:20
82:11
Rowland 45:13
Rules 1:14
Russell 2:2 61:24
russell@loevy.com
2:4

S
Sanchez 6:5,11,14
7:12 8:3,6 10:14
11:11 13:3,6,17 14:3
15:20 34:16 35:12
37:18 38:10 39:3

skin 61:22 63:24 64:1
64:8
slap 56:6,12 86:4
slapped 19:1 76:14
80:18 83:22
slapping 84:5
sleeping 75:21
smashed 86:18
socialize 36:13,19 97:4
socialized 97:5
sorry 30:13 45:20
SOTOS 2:6
South 2:13
speak 25:10 32:12,18
37:14 87:16
speaking 77:7
spell 4:6
spoke 15:22 36:16
SS 99:1
stabbed 7:21,23 10:16
35:4,13
stand 5:6,8,11,13,16
5:19,21,24 6:3,8,12
6:17 7:2,5,9,14,19,24
8:4,10,15,19,21,24
9:6,11,14,17,22 10:4
10:11,20 11:4,12,15
11:18,21 12:7,9,14
12:18,24 13:4,8,13
13:21 14:7 15:12,17
15:21 16:2,6,9,22
17:2,6,10,13,19 18:4
18:7,14,21 19:4,11
19:19 20:2,10,18,24
21:6,13,22 22:5,11
22:17,23 23:8,15,23
24:9,17,24 25:7,13
25:20 26:2,9,16,22
27:5,13,20 28:3,10
28:19 29:3,8,15,22
30:6,12,15,21 31:2,7
31:11,16,21 32:2,6
32:10,14,20 33:3,8
33:17,24 34:10,14,17
34:23 35:9,17,24
36:8,12,15,18,20,22

37:3,6,9,11,13,15,22
38:6,14,23 39:8,14
42:1,5,9,15,22 43:4
43:10,17,24 44:8,14
44:21 45:5,11,16
46:4,12,19 47:2,6,11
47:18 48:1,9,16,24
49:7,14,22 50:5,12
50:18 51:1,5,8,13,20
52:4,12,21 53:2,15
53:21 54:4,11,17,23
55:7,14,18 55:6,9,15
56:6,16,23 57:7,15
57:20,17 59:5,11 59:3,11
66:6,13,19,21 67:2,6
67:10,14,21,24 68:11
69:2,4,10,22,24 70:2
70:5,8,13 71:16
72:5,6,10,12,14,18
73:24 74:1,9 75:7,10
75:18,22 78:11,16,20
81:5,13,21 82:24
Standards 91:20
standing 92:5,23
started 58:16 83:7
85:6
state 1:17 4:6 89:24

99:1,4
stated 4:22,23
statement 4:23 46:15
46:22 81:21 88:5
89:24 90:16,17 94:24
95:20,21
statements 38:19
states 1:1,15 4:18
62:13
state's 29:11,19 30:3
46:1
station 18:6,10 47:8
50:21 82:4 93:14
stayed 37:10,12
step 13:9
stepped 76:2,8 85:17
steps 6:4 15:23
stipulate 4:19 5:1
stitches 49:18
stolen 8:13
stomach 69:3
stop 5:9 73:17 92:24
story 45:14
Street 1:18 2:3 99:6
strike 5:14 18:8 24:5
24:14 33:10 38:17
51:23 52:7,15 53:18
53:24 69:3 86:1
striking 55:3,10 73:18
struck 22:13 23:19
32:23 33:5,11 35:20
36:3 49:24 50:21
51:3,6,9,16 52:15,16
54:14
subject 95:13
Sued 96:19,23
sufficient 15:18
support 94:11
supporting 90:2
supposed 45:8
supposedly 11:11
suppress 90:16
Supreme 62:13
sure 34:3

suspect 62:9 91:21,24
93:5,6,12,13
suspects 77:3 78:9,19
79:5,15 80:5 89:13
89:19 90:8
sworn 4:2 99:10

T
take 15:23 39:24 41:7
41:12,20 61:16 91:4
91:16 93:18
taken 1:15 9:16,21
10:23 61:17 93:20
talk 30:23
talked 20:13 21:15
33:19 34:2 45:18,22
46:6
talking 77:23 78:14,24
79:10,20 80:12 92:24
94:23
tall 5:20 11:17,20
taller 75:3
Tanya 82:4,10,18
84:11 87:10,16
team 1:12 13:24 38:20
tell 6:4,13 7:6,11 8:16
9:2 11:16 12:20 13:9
29:11,18,18 37:24
39:11 41:11 43:7,17
43:13 44:10,16,24
66:6,13 72:22 74:17
85:24 90:15,21 93:5
93:12 94:9 96:13,16
telling 8:6
tells 70:10
ten 63:3,5
terminated 99:14
Terrence 68:16,19,20
69:3
testified 4:3
testify 45:2 94:17 95:8
95:9 99:10
testifying 95:15
testimony 99:11
Thank 5:23 15:2 98:12
thighs 53:24

things 62:7 63:12
83:21 95:7
think 62:22 63:1,4
90:2 94:4
third 11:13,16 13:10,20
89:19 90:8
thought 53:6,9
threatened 44:4
time 4:10 21:18 27:1,9
27:17,23 28:16 32:7
34:6 36:16,21,23
37:8 39:2 69:21
75:21 95:5,12,18
97:8,11,14,17,20,23
98:2,4,12
times 52:15,17 59:10
59:19 96:9,11
tired 20:6
today 39:13 40:5,15
told 7:15,16,20 8:1
11:19 13:5,16 14:2
15:18 19:6 20:4
20:22 33:4 65:1,2
51:3,6,9,22 52:16
59:3,11 60:17 61:6
61:24 65:4 67:19
68:2,8,19 69:2,9,18
70:3,9,16,22 71:6,15
71:23 72:7,14,20
73:3,10,16,24 74:8
74:16 75:19 76:2,8
76:14 79:19 80:2,10
80:18,24 81:7,13,20
82:3,9,16,24 83:7,13
83:20 84:3,10,16,22
85:5,11,16 86:2,4,10
86:17 87:3,8,15,22
88:5

20:4,12,20 21:2,8,15
21:24 22:7,13,19
23:2,10,17 24:2,11
24:19 25:2,9,15,22
26:4,11,18,24 27:7
27:15,22 28:5,12,21
29:5,10,17,24 30:8
30:17,22 31:4,8,12
32:16,22 33:6,13,22
33:19 34:2,12,21
35:2,11,19 36:2
try 15:23 43:14
trying 46:8 54:7

turn 60:1
turned 22:8 25:4
26:19 58:7
Turning 16:19
TV 44:11
tweezers 49:19
twice 49:19
two 16:19 87:7,14,23
two 16:20
typed 9:9,13
typewriter 21:9,16,19
22:1 23:4,11,17 24:3
24:12,19 25:3 27:1,8
27:16,22 28:5,13,22
30:18 34:19 57:17
59:3,11 60:17 61:6,14
typewritten 10:8

U
underneath 9:3
understand 4:9 78:3,5
93:2
understanding 8:2
unduly 62:22
UNIDENTIFIED 3:18
United 1:1,15 4:18
un-handcuffed 80:24
use 30:18 68:20 70:24
71:8,9,17 76:21 77:2
77:7 91:24 92:6

V
vague 48:23 51:19
52:3,11 57:14 61:6
81:9 94:1,7,14
victim 72:15 74:9,18
victims 35:4,13 89:7
view 32:17
viewed 32:8
visited 37:5,7
volunteered 7:12
vs 1:5

W
Wacker 2:13

waive 98:10
waive 76:9,15
wall 51:16 54:8 80:19
81:2
want 70:10 95:22
wanted 42:11 43:8
49:10,11 72:22 83:21
84:11 87:3,9
Washing 15:19
Washington 13:2,5,10
13:16 14:1,2 15:20
15:23 37:17,17,19
38:1,2,3,9,10 39:4
Washington's 39:3
wasn't 44:11
wasting 69:20
water 48:12,19 54:19
way 44:12 77:3 87:10
87:16
Wayne 13:7,17 14:4
37:17,19 38:1,9,11
wear 92:5
went 26:24 27:10,17
34:18
we'll 91:16 98:10
we're 93:19
whereof 99:18
Whirl 75:13,16,20
76:15 80:19 81:1,7
81:13,20 82:3,9,16
82:24 83:4,14,22
83:8,14,22 84:3,8,14
85:5,11 86:1,2,3,20
88:5
Whirl's 76:3,9 84:17
85:18,18 86:19 88:11
White 8:18
wife's 95:24
William 1:6,7 2:10,11
Willie 13:2,5,10,16
14:1,2 15:19,19,23
37:17,20,24 38:2,10
39:3,4
Wilson 60:15 61:2,15
64:22 65:4,11,17,23

66:7,15,23 67:5
Wilson's 60:18 61:2
61:10,21 63:24 64:7
64:14,17
wires 57:3
wires 57:3 58:9
withdraw 53:6
withheld 10:22,24
13:23 38:16,18 48:12
54:19 92:10,15
withholding 92:17,19
witness 3:2 6:13 92:7
98:13 99:12,18
witnesses 63:16 94:10
Wood 8:18
word 76:21 77:2,7,13
77:17,22 78:1,3,8,14
78:19,24 79:5,10,15
79:20 80:4,12
world 62:5
wouldn't 81:22 82:10
83:1
wound 84:17 85:18
86:4,11
written 9:4
wrong 84:24 85:6
wrote 10:13

X
X 3:1
X72960 3:10 16:20
X72982 12:5
X72982-86 3:8
X72983 12:21
X73001 15:10
X73003 3:7 6:24

Y
year 97:4
years 92:18
yelling 54:14 86:10
Yusitis 60:8

Z
zero 9:9

0

**084-002342** 99:23

---
**1**

**1** 3:7 6:19,21,23 7:1
  9:1,13 11:8 31:23
  36:2 46:21
**1st** 17:17 31:9 99:19
**1:11-cv-08996** 1:5
**10** 2:13 52:24 53:4,14
  55:11
**10:25** 1:18 99:5
**100** 1:18 2:3 99:6
**111th** 53:13
**12** 3:8 12:11,16,20
**12:08** 99:14
**14** 60:15,19 61:3,11,22
  64:8,17,23 65:5,11
  65:18 66:1,7,16,21
**15** 3:9
**150** 2:7
**16** 3:10
**16-year-old** 7:3
**19** 9:3,8
**1973** 5:5 55:17,19 56:3
  57:19
**1980** 47:4,22 49:4 50:2
  50:14 52:18 89:14,20
  91:23 92:18
**1982** 60:15,19 61:3,11
  65:5,12,18 66:1,8,16
  66:21
**1985** 53:1,4,14 55:11
**1986** 5:14,15,18,20,23
  16:5,8 17:1,11 31:9
  31:13,20,23 36:2,10
  36:19 41:24 42:8
  46:21 68:17,21
**1990** 69:9 74:3 75:1,4
  75:9,14,17 89:14,20
  91:23 92:19

---
**2**

**2** 3:8 4:10 5:4,9,10
  11:23 12:2,4,6,8,11
  14:11 15:1 16:24

17:4 18:17,24 19:16
  19:23 20:13 42:7
  43:21 51:23 52:7
  53:4,13 55:20 56:2
  65:11 75:17 76:22
  77:3,8,12,13,18,23
  78:9,14,19,24 79:5
  79:10,15,21 80:5,13
  89:13,19,20
**20** 9:9 52:16 75:14,16
**2012** 1:17 99:5,19
**2013** 99:23
**22** 1:17 41:24 42:8
  99:5
**22nd** 42:4 43:21
**23** 50:14 52:18
**2300** 2:13
**24** 47:4,22 49:4 50:2
**243-5900** 2:4
**26th** 10:24
**29** 55:17,19 57:19

---
**3**

**3** 3:9 15:5,7,9,11 16:17
  16:23,24 68:16,21
**30** 31:13,20 52:15
**30th** 17:16 31:8,23
**31** 17:11 99:23
**312** 1:18 2:3,4,14 99:6

---
**4**

**4** 3:5,10 16:11,13,14
  16:19 17:9,16,23
**40** 52:15,17

---
**5**

**550** 2:7

---
**6**

**6** 3:7
**60143** 2:8
**60606** 2:13
**60607** 2:3
**627-2102** 2:14
**630** 2:8

---
**7**

**735-3300** 2:8

---
**8**

**8** 69:9
**8th** 74:2
**86** 9:4

---
**9**

**9** 74:3
**986** 12:5,21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC CAINE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  11 C 08996 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| JON BURGE, et al., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**DEFENDANT JON BURGE'S ANSWERS TO**
**PLAINTIFF'S FIRST SET OF OF INTERROGATORIES**

Defendant Jon Burge, by his attorneys, JAMES G. SOTOS and ELIZABETH A. EKL of

THE SOTOS LAW FIRM, P.C., responds to Plaintiff's First Set of Interrogatories, as follows:

**OBJECTIONS TO PLAINTIFF'S "DEFINITIONS AND INSTRUCTIONS"**

1.      Defendant Burge objects to Plaintiff's definition of the term "Document" because

it specifically includes materials not within Defendant's possession, custody, and control.

2.      Defendant Burge objects to Instruction "4," as it is overly broad, unduly

burdensome, and seeks to impose requirements beyond those contemplated by the Federal Rules

of Civil Procedure.

3.      Defendant Burge objects to Plaintiff's Instructions because they are vague and

ambiguous.  Plaintiff's Instructions are also overly broad and unduly burdensome.  Defendant

Burge will respond to Plaintiff's Interrogatories as required by the Federal Rules of Civil

Procedure.

EXHIBIT
14

## GENERAL OBJECTIONS

1.      Defendant Burge asserts the General Objections with respect to each and every Interrogatory.

2.      No disclosure by Defendant Burge of any information, document, or other material shall constitute a waiver of any objection asserted in response to specific Interrogatories or a waiver of the General Objections.

3.      Defendant Burge reserves the right to at any time revise, correct, add to, amend, or clarify any response.  Similarly, Defendant Burge reserves the right to assert additional specific objections and General Objections.

4.      Defendant Burge's decision, now or in the future, to provide information or produce documents or other materials in response to Plaintiff's Interrogatories should not be construed as: (a) a stipulation that the information, documents, or materials are relevant or admissible; (b) a waiver of the General Objections or the objections asserted in response to specific Interrogatories, or (c) an agreement that Defendant will treat requests for similar information, documents, or materials in an identical fashion.

5.      Defendant Burge objects to providing information or producing documents or other materials that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege, and/or any other applicable privilege or protection.  An inadvertent production of privileged or protected information, documents, or other materials shall not constitute a waiver of any privilege or protection.

6.      Defendant Burge objects to Plaintiff's Interrogatories to the extent they assume the existence of facts that have not been proven in this case.

2

7.    Defendant Burge objects to Plaintiff's Interrogatories to the extent they impose burdens exceeding the requirements of the Federal Rules of Civil Procedure and/or any other applicable rules.

8.    Defendant Burge objects to Plaintiff's Interrogatories' use of the words "ever," "any," and "all," as these terms make the Interrogatories overly broad and too encompassing to permit literal compliance.

9.    Defendant Burge objects to Plaintiff's Interrogatories to the extent that, including all discreet subparts, they exceed 25 in number.

## INTERROGATORIES

1.    State your name, address and phone number, and identify every other Person who participated in answering these Interrogatories and responding to the accompanying Document Requests, indicating which particular Interrogatories and Requests were answered by which other Person.

**ANSWER**:    My name is Jon G. Burge.  No one else participated in answering these interrogatories other than my lawyers.  Defendant Burge objects to providing his home address and telephone number based on privacy and safety concerns.  His address and phone number are the subject of Defendants' proposed Confidential Matter and HIPAA Protective Order.  He can be contacted through his counsel, the undersigned attorney.

2.    Under oath, please identify by name and address all Persons who, to the best of your understanding, have knowledge of facts that relate to any of the claims or defenses in this action, including, but not limited to, all Persons who are not listed in Defendants' Rule 26 Initial disclosures.

**ANSWER**:    Subject to and without waiving any of the General Objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

3.     For each Person with knowledge responsive to the previous Interrogatory, please describe with particularity any categories of facts known by each such Person relating to the claims or defenses in this action, including all categories of facts about which the Person may be competent to testify at trial.  If this Interrogatory is answered by incorporating Documents, please state under oath whether there are any categories of facts known to any witness relating to the claims or defenses in this action which are not reflected in the documents upon which you rely; in the event you fail to do so, Plaintiff will assume the substance of the witnesses' testimony is strictly limited to what is contained in such documents.

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

4.     Under oath, please state whether there have ever been any Complaints ever made against you (including Plaintiff's civil complaint or any civil complaints which presently remain pending) which are not listed on the disciplinary print-out (s) produced by you in this litigation, including, but not limited to, any and all lawsuits in which you are a defendant, Internal Affairs Complaints, OPS Complaints, IPRA Complaints, and all Complaints alleging dishonest behavior, such as lying under oath, concealing or withholding evidence, falsifying or planting evidence; the use of improperly suggestive, coercive, or torturous methods on suspects, arrestees, or witnesses; the use of unduly suggestive visual and/or voice identification procedures, and the destruction or withholding of police reports or notes from the State's Attorney's Office or criminal defendants.  For all Complaints responsive to this Interrogatory, please provide the CR number, case number,  or other identifying information.

**ANSWER**:     Defendant Burge objects to Interrogatory No. 4 because this request is overly broad, vague, ambiguous and seeks information that is neither relevant nor

4

reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

5.      State whether you ever communicated with any Person in the Cook County State's Attorney's Office regarding Plaintiff and/or any of the events described in Plaintiff's complaint.  For each such Communication state: (a) the date of the Communication; (b) with whom the Communication occurred; and (c) a summary of the nature of the Communication, including any statements made by Chicago Police Department employees and agents, and/or the Person with the State Attorney's Office.  If you intend to answer by reference to documents, please state under oath that the documents contain all of the information responsive to this Interrogatory, and provide the relevant Bates Numbers.

**ANSWER**:    Defendant Burge objects to Interrogatory No. 5 because this request is overly broad, vague and ambiguous.  Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

6.      For any Document requested in Plaintiff's discovery requests which have been lost, discarded or destroyed, please identify each document as completely as possible and state the approximate date it was lost, discarded or destroyed; the circumstances and manner in which it was lost, discarded or destroyed, including the identities of all persons involved; the reasons for disposing of the Document; the identity of any persons with knowledge of its content; and the identity of the last person known to have seen it.

**ANSWER**:    Subject to and without waiving any of the General Objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

5

7.     Please state whether you have ever been convicted of a criminal charge, and for each such responsive conviction, identify: (a) the nature of the conviction; (b) the date of the conviction; (c) the sentence or other disposition of the matter, and (d) the identity of the court or other tribunal which heard the matter.

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

8.     Please state whether you have ever acted inconsistently with any of the policies and practices of the City of Chicago or the Chicago Police Department (formal or informal, written or unwritten) at any time during the entire course of dealing or involvement with Plaintiff.  If the answer is in the affirmative, please identify (a) any particular Department policy or Department practice which you believe was violated; and (b) whether any discipline resulted from that violation.

**ANSWER**:     Defendant Burge objects to Interrogatory No. 8 because this request is overly broad, vague and ambiguous.  Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

9.     For any Affirmative Defenses pled in this matter, please describe the entire factual basis or bases supporting those defenses.  The information sought by this Interrogatory is not a mere recitation of the statutory sections invoked.  Plaintiff requests that you provide a detailed description of every fact and legal basis on which any defense, such as immunity, for example, is asserted so that Plaintiff may have the opportunity to investigate by way of additional discovery requests.  For instance, if there are any physical, documentary, or testimonial evidence which supports any such defense, please identify it specifically.

6

**ANSWER**:     Defendant Burge objects to Interrogatory No. 9 because this request is overly broad, vague and ambiguous.  Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

10.     State whether you ever spoke with Plaintiff at any time, and state with particularity the substance of that discussion/conversation, and the identify (*sic*) every other agent or employee of the City of Chicago involved in that conversation.  If you intend to answer by reference to documents, please state under oath that the documents contain all of the information responsive to this Interrogatory, and provide the relative Bates Numbers.

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

11.     Is it your position that the Plaintiff was present at the time the Sanchez murders were committed?  If so, please state with specificity every fact and identify every witness on whose testimony you may rely to support your position that Plaintiff was present at the time the Sanchez murders were committed.

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

12.     State whether you have ever created Street Files in connection with any criminal investigation.  For each such investigation in which you created Street Files and the defendant was ultimately prosecuted, state (1) the RD number of the investigation or the name of the individual(s) who was/were the subject of the investigation; (2) whether you shared those street files with any member of the State's Attorney's Office; (3) what you did with the Street Files at

7

the conclusion of your investigation; (4) where you last saw those Street Files, and (5) where

those Street Files are presently.

**ANSWER**:    Defendant Burge objects to Interrogatory No. 12 because this request is overly broad, vague and ambiguous.  Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

Dated: May 9, 2012

_____

ELIZABETH A. EKL, Attorney No. 6242840
*One of the Attorneys for Defendant Jon Burge*

James G. Sotos
Elizabeth A. Ekl
Christina S. Gunn
eekl@jsotoslaw.com
**THE SOTOS LAW FIRM, P.C.**
550 East Devon, Suite 150
Itasca, Illinois 60143
630-735-3300
630-773-0980 (fax)

8

## **ATTESTATION**

Under penalties of perjury pursuant to 28 U.S.C.A. § 1746, I, Jon G. Burge, affirm I am a defendant in the above-captioned matter, that I have read the foregoing document and the answers made herein are true, correct and complete to the best of my knowledge and belief.

_____
Jon G. Burge

## PROOF OF SERVICE

I, Bahar Azari, a non-attorney, certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that a copy of the attached **Defendant Jon Burge's Answers to Plaintiff's First Set of Interrogatories** was served upon the attorneys listed on the attached service list by electronic mail and by placing same in a U.S. Post Office Mail Box in Itasca, Illinois with postage fully prepaid before 5:00 p.m. on May 14, 2012.

10

**SERVICE LIST**
*Caine v. Burge, et al.*
**Case No.:11 CV 08996**

**Attorneys for Plaintiff**
Russell R. Ainsworth
Arthur R. Loevy
Jonathan I. Loevy
Michael I. Kanovitz
Pier O. Petersen
Loevy & Loevy
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902
russell@loevy.com
loevylaw@loevy.com
jon@loevy.com
mike@loevy.com
pier@loevy.com

**Attorney for Defendant Jon Burge**
Richard M. Beuke
Law Offices of Richard M. Beuke
115 W. 55th Street, Suite 400
Clarendon Hills, IL 60514
312-427-3050
Fax: 312-427-1215
richardbeuke@gmail.com

**Attorneys for City of Chicago**
Harry N. Arger
Terrence M. Burns
Daniel M. Noland
Paul A. Michalik
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
312-876-1700
Fax: 866-557-7773
harger@dykema.com
tburns@dykema.com
dnoland@dykema.com
pmichalik@dykema.com
methompson@dykema.com

11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC CAINE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  11 C 08996 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| JON BURGE, et al., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**DEFENDANT JON BURGE'S ANSWERS TO**
**PLAINTIFF'S SECOND SET OF OF INTERROGATORIES**

Defendant Jon Burge, by his attorneys, JAMES G. SOTOS and ELIZABETH A. EKL of

THE SOTOS LAW FIRM, P.C., responds to Plaintiff's Second Set of Interrogatories, as follows:

**OBJECTIONS TO PLAINTIFF'S "DEFINITIONS AND INSTRUCTIONS"**

1. Defendant Burge objects to Plaintiff's definition of the term "Document" because

it specifically includes materials not within Defendant's possession, custody, and control.

2. Defendant Burge objects to Instruction "4," as it is overly broad, unduly

burdensome, and seeks to impose requirements beyond those contemplated by the Federal Rules

of Civil Procedure.

3. Defendant Burge objects to Plaintiff's Instructions because they are vague and

ambiguous.  Plaintiff's Instructions are also overly broad and unduly burdensome.  Defendant

Burge will respond to Plaintiff's Interrogatories as required by the Federal Rules of Civil

Procedure.

EXHIBIT
15

## GENERAL OBJECTIONS

1.      Defendant Burge asserts the General Objections with respect to each and every Interrogatory.

2.      No disclosure by Defendant Burge of any information, document, or other material shall constitute a waiver of any objection asserted in response to specific Interrogatories or a waiver of the General Objections.

3.      Defendant Burge reserves the right to at any time revise, correct, add to, amend, or clarify any response.  Similarly, Defendant Burge reserves the right to assert additional specific objections and General Objections.

4.      Defendant Burge's decision, now or in the future, to provide information or produce documents or other materials in response to Plaintiff's Interrogatories should not be construed as: (a) a stipulation that the information, documents, or materials are relevant or admissible; (b) a waiver of the General Objections or the objections asserted in response to specific Interrogatories, or (c) an agreement that Defendant will treat requests for similar information, documents, or materials in an identical fashion.

5.      Defendant Burge objects to providing information or producing documents or other materials that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege, and/or any other applicable privilege or protection.  An inadvertent production of privileged or protected information, documents, or other materials shall not constitute a waiver of any privilege or protection.

6.      Defendant Burge objects to Plaintiff's Interrogatories to the extent they assume the existence of facts that have not been proven in this case.

2

7.     Defendant Burge objects to Plaintiff's Interrogatories to the extent they impose burdens exceeding the requirements of the Federal Rules of Civil Procedure and/or any other applicable rules.

8.     Defendant Burge objects to Plaintiff's Interrogatories' use of the words "ever," "any," and "all," as these terms make the Interrogatories overly broad and too encompassing to permit literal compliance.

9.     Defendant Burge objects to Plaintiff's Interrogatories to the extent that, including all discreet subparts, they exceed 25 in number.

## INTERROGATORIES

13.     Did you punch, hit, kick, choke, or suffocate either Eric Caine or Aaron Patterson while they were inside a police interview room on April 30, 1986 or May 1, 1986?  If so, please state which person you hit, kicked, choked, or suffocated, and identify with particularity

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

14.     Did you ever punch, hit, kick, choke, or suffocate a criminal suspect or witness inside an interview room at a Chicago police station?  If so, please state the name of the individual, the individual's IR number or other identifying information, the date you punched, hit, kicked, choked, or suffocated a criminal suspect or witness inside an interview room, and the RD number of the case you were investigating.

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

3

15.     State whether you have ever used methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel or family members, the use of verbal and/or physical threats or intimidation, physical beatings, hangings, the use of racial slurs or profanity, the use of physical restraints, such as handcuffs, the use of photographs or polygraph testing, and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver an electric shock, and for each such use of verbal or physical coercion identify the detainee(s) and/or suspect(s), any other officers or individuals involved, the date of the incident, the specific conduct in which you or any other officer engaged, and whether you or any other officer was the subject of any complaint or discipline as a result of said conduct.

**ANSWER**:     Defendant Burge objects to Interrogatory No. 15 because this request is overly broad, vague, ambiguous and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

16.     State whether you were aware of any Chicago Police Officer, including, but not limited to, officers under your command, ever using methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel or family members, the use of verbal and/or physical threats or intimidation, physical beatings, hangings, the use of racial slurs or profanity, the use of physical restraints, such as handcuffs, the use of photographs or polygraph testing, and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or

4

machines that deliver an electric shock, and for each such use of verbal or physical coercion of

which you were aware identify the detainee(s) and/or suspect(s), any other officers or individuals

involved, the date of the incident, the specific conduct in which you or any other officer

engaged, and whether you or any other officer was the subject of any complaint.

**ANSWER**:    Defendant Burge objects to Interrogatory No. 16 because this request is overly broad, vague and ambiguous and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

17.    State whether you have ever been the subject of an investigation by the United

States Attorneys office, the Cook County States Attorneys office, or any other investigative or

law enforcement agency and, if so, state whether you have ever given any statement, written or

verbal, or testimony to any investigative or law enforcement agency or personnel, identify the

person(s) to whom any statement was given, give the date of the statement, and state in detail the

substance of the statement.

**ANSWER**:    Subject to and without waiving any of the General Objections set forth above, Defendant Burge asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

Dated: May 21, 2012                     ___ _____ _____

ELIZABETH A. EKL, Attorney No. 6242840
*One of the Attorneys for Defendant Jon Burge*

James G. Sotos
Elizabeth A. Ekl
Christina S. Gunn
eekl@jsotoslaw.com
**THE SOTOS LAW FIRM, P.C.**
550 East Devon, Suite 150
Itasca, Illinois 60143
630-735-3300
630-773-0980 (fax)

## **ATTESTATION**

Under penalties of perjury pursuant to 28 U.S.C.A. § 1746, I, Jon G. Burge, affirm I am a defendant in the above-captioned matter, that I have read the foregoing document and the answers made herein are true, correct and complete to the best of my knowledge and belief.


Jon G. Burge

## PROOF OF SERVICE

I, Bahar Azari, a non-attorney, certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that a copy of the attached **Defendant Jon Burge's Answers to Plaintiff's Second Set of Interrogatories** was served upon the attorneys listed on the attached service list by electronic mail and by placing same in a U.S. Post Office Mail Box in Itasca, Illinois with postage fully prepaid before 5:00 p.m. on May 21, 2012.

_Bahar Azari_

**SERVICE LIST**
*Caine v. Burge, et al.*
**Case No.:11 CV 08996**

**Attorneys for Plaintiff**
Russell R. Ainsworth
Arthur R. Loevy
Jonathan I. Loevy
Michael I. Kanovitz
Pier O. Petersen
Loevy & Loevy
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902
russell@loevy.com
loevylaw@loevy.com
jon@loevy.com
mike@loevy.com
pier@loevy.com

**Attorney for Defendant Jon Burge**
Richard M. Beuke
Law Offices of Richard M. Beuke
115 W. 55th Street, Suite 400
Clarendon Hills, IL 60514
312-427-3050
Fax: 312-427-1215
richardbeuke@gmail.com

**Attorneys for City of Chicago**
Harry N. Arger
Terrence M. Burns
Daniel M. Noland
Paul A. Michalik
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
312-876-1700
Fax: 866-557-7773
harger@dykema.com
tburns@dykema.com
dnoland@dykema.com
pmichalik@dykema.com
methompson@dykema.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ERIC CAINE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 08996 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| JON BURGE, et al., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

### DEFENDANT RAYMOND MADIGAN'S ANSWERS TO
### PLAINTIFF'S FIRST SET OF OF INTERROGATORIES

Defendant Raymond Madigan, by his attorneys, JAMES G. SOTOS and ELIZABETH A.

EKL of THE SOTOS LAW FIRM, P.C., responds to Plaintiff's First Set of Interrogatories, as

follows:

### OBJECTIONS TO PLAINTIFF'S "DEFINITIONS AND INSTRUCTIONS"

1.      Defendant Madigan objects to Plaintiff's definition of the term "Document"

because it specifically includes materials not within Defendant's possession, custody, and

control.

2.      Defendant Madigan objects to Instruction "4," as it is overly broad, unduly

burdensome, and seeks to impose requirements beyond those contemplated by the Federal Rules

of Civil Procedure.

3.      Defendant Madigan objects to Plaintiff's Instructions because they are vague and

ambiguous.  Plaintiff's Instructions are also overly broad and unduly burdensome.  Defendant

Madigan will respond to Plaintiff's Interrogatories as required by the Federal Rules of Civil

Procedure.

EXHIBIT

16

## GENERAL OBJECTIONS

1.     Defendant Madigan asserts the General Objections with respect to each and every Interrogatory.

2.     No disclosure by Defendant Madigan of any information, document, or other material shall constitute a waiver of any objection asserted in response to specific Interrogatories or a waiver of the General Objections.

3.     Defendant Madigan reserves the right to at any time revise, correct, add to, amend, or clarify any response.  Similarly, Defendant Madigan reserves the right to assert additional specific objections and General Objections.

4.     Defendant Madigan's decision, now or in the future, to provide information or produce documents or other materials in response to Plaintiff's Interrogatories should not be construed as: (a) a stipulation that the information, documents, or materials are relevant or admissible; (b) a waiver of the General Objections or the objections asserted in response to specific Interrogatories, or (c) an agreement that Defendant will treat requests for similar information, documents, or materials in an identical fashion.

5.     Defendant Madigan objects to providing information or producing documents or other materials that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege, and/or any other applicable privilege or protection.  An inadvertent production of privileged or protected information, documents, or other materials shall not constitute a waiver of any privilege or protection.

6.     Defendant Madigan objects to Plaintiff's Interrogatories to the extent they assume the existence of facts that have not been proven in this case.

2

7.      Defendant Madigan objects to Plaintiff's Interrogatories to the extent they impose burdens exceeding the requirements of the Federal Rules of Civil Procedure and/or any other applicable rules.

8.      Defendant Madigan objects to Plaintiff's Interrogatories' use of the words "ever," "any," and "all," as these terms make the Interrogatories overly broad and too encompassing to permit literal compliance.

9.      Defendant Madigan objects to Plaintiff's Interrogatories to the extent that, including all discreet subparts, they exceed 25 in number.

## INTERROGATORIES

1.      State your name, address and phone number, and identify every other Person who participated in answering these Interrogatories and responding to the accompanying Document Requests, indicating which particular Interrogatories and Requests were answered by which other Person.

**ANSWER**:    My name is Raymond Madigan.  No one else participated in answering these interrogatories other than my lawyers.  Defendant Madigan objects to providing his home address and telephone number based on privacy and safety concerns.  His address and phone number are the subject of Defendants' proposed Confidential Matter and HIPAA Protective Order.  He can be contacted through his counsel, the undersigned attorney.

2.      Under oath, please identify by name and address all Persons who, to the best of your understanding, have knowledge of facts that relate to any of the claims or defenses in this action, including, but not limited to, all Persons who are not listed in Defendants' Rule 26 Initial disclosures.

**ANSWER**:    Subject to and without waiving any of the General Objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

3

3. For each Person with knowledge responsive to the previous Interrogatory, please describe with particularity any categories of facts known by each such Person relating to the claims or defenses in this action, including all categories of facts about which the Person may be competent to testify at trial. If this Interrogatory is answered by incorporating Documents, please state under oath whether there are any categories of facts known to any witness relating to the claims or defenses in this action which are not reflected in the documents upon which you rely; in the event you fail to do so, Plaintiff will assume the substance of the witnesses' testimony is strictly limited to what is contained in such documents.

**ANSWER**: Subject to and without waiving any of the General Objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

4. Under oath, please state whether there have ever been any Complaints ever made against you (including Plaintiff's civil complaint or any civil complaints which presently remain pending) which are not listed on the disciplinary print-out (s) produced by you in this litigation, including, but not limited to, any and all lawsuits in which you are a defendant, Internal Affairs Complaints, OPS Complaints, IPRA Complaints, and all Complaints alleging dishonest behavior, such as lying under oath, concealing or withholding evidence, falsifying or planting evidence; the use of improperly suggestive, coercive, or torturous methods on suspects, arrestees, or witnesses; the use of unduly suggestive visual and/or voice identification procedures, and the destruction or withholding of police reports or notes from the State's Attorney's Office or criminal defendants. For all Complaints responsive to this Interrogatory, please provide the CR number, case number, or other identifying information.

**ANSWER**: Defendant Madigan objects to Interrogatory No. 4 because this request is overly broad, vague, ambiguous and seeks information that is neither relevant nor

4

reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

5.      State whether you ever communicated with any Person in the Cook County State's Attorney's Office regarding Plaintiff and/or any of the events described in Plaintiff's complaint. For each such Communication state: (a) the date of the Communication; (b) with whom the Communication occurred; and (c) a summary of the nature of the Communication, including any statements made by Chicago Police Department employees and agents, and/or the Person with the State Attorney's Office. If you intend to answer by reference to documents, please state under oath that the documents contain all of the information responsive to this Interrogatory, and provide the relevant Bates Numbers.

**ANSWER**:    Defendant Madigan objects to Interrogatory No. 5 because this request is overly broad, vague and ambiguous. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

6.      For any Document requested in Plaintiff's discovery requests which have been lost, discarded or destroyed, please identify each document as completely as possible and state the approximate date it was lost, discarded or destroyed; the circumstances and manner in which it was lost, discarded or destroyed, including the identities of all persons involved; the reasons for disposing of the Document; the identity of any persons with knowledge of its content; and the identity of the last person known to have seen it.

**ANSWER**:    Subject to and without waiving any of the General Objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

5

7.      Please state whether you have ever been convicted of a criminal charge, and for each such responsive conviction, identify: (a) the nature of the conviction; (b) the date of the conviction; (c) the sentence or other disposition of the matter, and (d) the identity of the court or other tribunal which heard the matter.

**ANSWER**:      Subject to and without waiving any of the General Objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

8.      Please state whether you have ever acted inconsistently with any of the policies and practices of the City of Chicago or the Chicago Police Department (formal or informal, written or unwritten) at any time during the entire course of dealing or involvement with Plaintiff. If the answer is in the affirmative, please identify (a) any particular Department policy or Department practice which you believe was violated; and (b) whether any discipline resulted from that violation.

**ANSWER**:      Defendant Madigan objects to Interrogatory No. 8 because this request is overly broad, vague and ambiguous. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

9.      For any Affirmative Defenses pled in this matter, please describe the entire factual basis or bases supporting those defenses. The information sought by this Interrogatory is not a mere recitation of the statutory sections invoked. Plaintiff requests that you provide a detailed description of every fact and legal basis on which any defense, such as immunity, for example, is asserted so that Plaintiff may have the opportunity to investigate by way of additional discovery requests. For instance, if there are any physical, documentary, or testimonial evidence which supports any such defense, please identify it specifically.

6

**ANSWER:** Defendant Madigan objects to Interrogatory No. 9 because this request is overly broad, vague and ambiguous. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

10. State whether you ever spoke with Plaintiff at any time, and state with particularity the substance of that discussion/conversation, and the identify (*sic*) every other agent or employee of the City of Chicago involved in that conversation. If you intend to answer by reference to documents, please state under oath that the documents contain all of the information responsive to this Interrogatory, and provide the relative Bates Numbers.

**ANSWER:** Subject to and without waiving any of the General Objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

11. Is it your position that the Plaintiff was present at the time the Sanchez murders were committed? If so, please state with specificity every fact and identify every witness on whose testimony you may rely to support your position that Plaintiff was present at the time the Sanchez murders were committed.

**ANSWER:** Subject to and without waiving any of the General Objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

12. State whether you have ever created Street Files in connection with any criminal investigation. For each such investigation in which you created Street Files and the defendant was ultimately prosecuted, state (1) the RD number of the investigation or the name of the individual(s) who was/were the subject of the investigation; (2) whether you shared those street files with any member of the State's Attorney's Office; (3) what you did with the Street Files at

7

the conclusion of your investigation; (4) where you last saw those Street Files, and (5) where

those Street Files are presently.

**ANSWER:** Defendant Madigan objects to Interrogatory No. 12 because this request is overly broad, vague and ambiguous. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

Dated: May 9, 2012

_____
ELIZABETH A. EKL, Attorney No. 6242840
*One of the Attorneys for Defendant Raymond Madigan*

James G. Sotos
Elizabeth A. Ekl
Christina S. Gunn
eekl@jsotoslaw.com
**THE SOTOS LAW FIRM, P.C.**
550 East Devon, Suite 150
Itasca, Illinois 60143
630-735-3300
630-773-0980 (fax)

8

**ATTESTATION**

Under penalties of perjury pursuant to 28 U.S.C.A. § 1746, I, Raymond Madigan, affirm I am a defendant in the above-captioned matter, that I have read the foregoing document and the answers made herein are true, correct and complete to the best of my knowledge and belief.

Raymond Madigan

9

## **PROOF OF SERVICE**

I, Bahar Azari, a non-attorney, certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that a copy of the attached **Defendant Raymond Madigan's Answers to Plaintiff's First Set of Interrogatories** was served upon the attorneys listed on the attached service list by electronic mail and by placing same in a U.S. Post Office Mail Box in Itasca, Illinois with postage fully prepaid before 5:00 p.m. on May 9, 2012.

_Bahar Azari_

10

**SERVICE LIST**
*Caine v. Burge, et al.*
**Case No.:11 CV 08996**

**Attorneys for Plaintiff**
Russell R. Ainsworth
Arthur R. Loevy
Jonathan I. Loevy
Michael I. Kanovitz
Pier O. Petersen
Loevy & Loevy
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902
russell@loevy.com
loevylaw@loevy.com
jon@loevy.com
mike@loevy.com
pier@loevy.com

**Attorneys for City of Chicago**
Harry N. Arger
Terrence M. Burns
Daniel M. Noland
Paul A. Michalik
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
312-876-1700
Fax: 866-557-7773
harger@dykema.com
tburns@dykema.com
dnoland@dykema.com
pmichalik@dykema.com
methompson@dykema.com

**Attorney for Defendant Jon Burge**
Richard M. Beuke
Law Offices of Richard M. Beuke
115 W. 55th Street, Suite 400
Clarendon Hills, IL 60514
312-427-3050
Fax: 312-427-1215
richardbeuke@gmail.com

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ERIC CAINE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 08996 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| JON BURGE, et al., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

## DEFENDANT RAYMOND MADIGAN'S ANSWERS TO
## PLAINTIFF'S SECOND SET OF OF INTERROGATORIES

Defendant Raymond Madigan, by his attorneys, JAMES G. SOTOS and ELIZABETH A.

EKL of THE SOTOS LAW FIRM, P.C., responds to Plaintiff's Second Set of Interrogatories, as

follows:

## OBJECTIONS TO PLAINTIFF'S "DEFINITIONS AND INSTRUCTIONS"

1. Defendant Madigan objects to Plaintiff's definition of the term "Document"

because it specifically includes materials not within Defendant's possession, custody, and

control.

2. Defendant Madigan objects to Instruction "4," as it is overly broad, unduly

burdensome, and seeks to impose requirements beyond those contemplated by the Federal Rules

of Civil Procedure.

3. Defendant Madigan objects to Plaintiff's Instructions because they are vague and

ambiguous. Plaintiff's Instructions are also overly broad and unduly burdensome. Defendant

Madigan will respond to Plaintiff's Interrogatories as required by the Federal Rules of Civil

Procedure.

EXHIBIT

17

## **GENERAL OBJECTIONS**

1.       Defendant Madigan asserts the General Objections with respect to each and every Interrogatory.

2.       No disclosure by Defendant Madigan of any information, document, or other material shall constitute a waiver of any objection asserted in response to specific Interrogatories or a waiver of the General Objections.

3.       Defendant Madigan reserves the right to at any time revise, correct, add to, amend, or clarify any response. Similarly, Defendant Madigan reserves the right to assert additional specific objections and General Objections.

4.       Defendant Madigan's decision, now or in the future, to provide information or produce documents or other materials in response to Plaintiff's Interrogatories should not be construed as: (a) a stipulation that the information, documents, or materials are relevant or admissible; (b) a waiver of the General Objections or the objections asserted in response to specific Interrogatories, or (c) an agreement that Defendant will treat requests for similar information, documents, or materials in an identical fashion.

5.       Defendant Madigan objects to providing information or producing documents or other materials that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege, and/or any other applicable privilege or protection. An inadvertent production of privileged or protected information, documents, or other materials shall not constitute a waiver of any privilege or protection.

6.       Defendant Madigan objects to Plaintiff's Interrogatories to the extent they assume the existence of facts that have not been proven in this case.

2

7.     Defendant Madigan objects to Plaintiff's Interrogatories to the extent they impose burdens exceeding the requirements of the Federal Rules of Civil Procedure and/or any other applicable rules.

8.     Defendant Madigan objects to Plaintiff's Interrogatories' use of the words "ever," "any," and "all," as these terms make the Interrogatories overly broad and too encompassing to permit literal compliance.

9.     Defendant Madigan objects to Plaintiff's Interrogatories to the extent that, including all discreet subparts, they exceed 25 in number.

## INTERROGATORIES

13.     Did you punch, hit, kick, choke, or suffocate either Eric Caine or Aaron Patterson while they were inside a police interview room on April 30, 1986 or May 1, 1986? If so, please state which person you hit, kicked, choked, or suffocated, and identify with particularity

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

14.     Did you ever punch, hit, kick, choke, or suffocate a criminal suspect or witness inside an interview room at a Chicago police station? If so, please state the name of the individual, the individual's IR number or other identifying information, the date you punched, hit, kicked, choked, or suffocated a criminal suspect or witness inside an interview room, and the RD number of the case you were investigating.

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

3

15. State whether you have ever used methods, procedures or techniques involving

any form of verbal or physical coercion of suspects while in detention or during interrogation,

such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel

or family members, the use of verbal and/or physical threats or intimidation, physical beatings,

hangings, the use of racial slurs or profanity, the use of physical restraints, such as handcuffs, the

use of photographs or polygraph testing, and the use of physical objects to inflict pain, suffering

or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver

an electric shock, and for each such use of verbal or physical coercion identify the detainee(s)

and/or suspect(s), any other officers or individuals involved, the date of the incident, the specific

conduct in which you or any other officer engaged, and whether you or any other officer was the

subject of any complaint or discipline as a result of said conduct.

**ANSWER**:  Defendant Madigan objects to Interrogatory No. 15 because this request is overly
broad, vague, ambiguous and seeks information that is neither relevant nor
reasonably calculated to lead to the discovery of admissible evidence. Subject to
and without waiving any of the General Objections or the specific objections set
forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth
Amendment of the United States Constitution.

16. State whether you were aware of any Chicago Police Officer, including, but not

limited to, officers under your command, ever using methods, procedures or techniques

involving any form of verbal or physical coercion of suspects while in detention or during

interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with

legal counsel or family members, the use of verbal and/or physical threats or intimidation,

physical beatings, hangings, the use of racial slurs or profanity, the use of physical restraints,

such as handcuffs, the use of photographs or polygraph testing, and the use of physical objects to

inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or

machines that deliver an electric shock, and for each such use of verbal or physical coercion of which you were aware identify the detainee(s) and/or suspect(s), any other officers or individuals involved, the date of the incident, the specific conduct in which you or any other officer engaged, and whether you or any other officer was the subject of any complaint.

**ANSWER:** Defendant Madigan objects to Interrogatory No. 16 because this request is overly broad, vague and ambiguous and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

17. State whether you have ever been the subject of an investigation by the United States Attorneys office, the Cook County States Attorneys office, or any other investigative or law enforcement agency and, if so, state whether you have ever given any statement, written or verbal, or testimony to any investigative or law enforcement agency or personnel, identify the person(s) to whom any statement was given, give the date of the statement, and state in detail the substance of the statement.

**ANSWER:** Subject to and without waiving any of the General Objections set forth above, Defendant Madigan asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

Dated: May 21, 2012

_____
ELIZABETH A. EKL, Attorney No. 6242840
*One of the Attorneys for Defendant Raymond Madigan*

James G. Sotos
Elizabeth A. Ekl
Christina S. Gunn
eekl@jsotoslaw.com
THE SOTOS LAW FIRM, P.C.
550 East Devon, Suite 150
Itasca, Illinois 60143
630-735-3300
630-773-0980 (fax)

5

## ATTESTATION

Under penalties of perjury pursuant to 28 U.S.C.A. § 1746, I, Raymond Madigan, affirm I am a defendant in the above-captioned matter, that I have read the foregoing document and the answers made herein are true, correct and complete to the best of my knowledge and belief.

Raymond Madigan

## PROOF OF SERVICE

I, Bahar Azari, a non-attorney, certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that a copy of the attached **Defendant Raymond Madigan's Answers to Plaintiff's Second Set of Interrogatories** was served upon the attorneys listed on the attached service list by electronic mail and by placing same in a U.S. Post Office Mail Box in Itasca, Illinois with postage fully prepaid before 5:00 p.m. on May 21, 2012.

7

**SERVICE LIST**
*Caine v. Burge, et al.*
**Case No.:11 CV 08996**

**Attorneys for Plaintiff**
Russell R. Ainsworth
Arthur R. Loevy
Jonathan I. Loevy
Michael I. Kanovitz
Pier O. Petersen
Loevy & Loevy
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902
russell@loevy.com
loevylaw@loevy.com
jon@loevy.com
mike@loevy.com
pier@loevy.com

**Attorneys for City of Chicago**
Harry N. Arger
Terrence M. Burns
Daniel M. Noland
Paul A. Michalik
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
312-876-1700
Fax: 866-557-7773
harger@dykema.com
tburns@dykema.com
dnoland@dykema.com
pmichalik@dykema.com
methompson@dykema.com

**Attorney for Defendant Jon Burge**
Richard M. Beuke
Law Offices of Richard M. Beuke
115 W. 55th Street, Suite 400
Clarendon Hills, IL 60514
312-427-3050
Fax: 312-427-1215
richardbeuke@gmail.com

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC CAINE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  11 C 08996 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| JON BURGE, et al., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**DEFENDANT DANIEL McWEENY'S ANSWERS TO
PLAINTIFF'S FIRST SET OF OF INTERROGATORIES**

Defendant Daniel McWeeny, by his attorneys, JAMES G. SOTOS and ELIZABETH A. EKL of THE SOTOS LAW FIRM, P.C., responds to Plaintiff's First Set of Interrogatories, as follows:

**OBJECTIONS TO PLAINTIFF'S "DEFINITIONS AND INSTRUCTIONS"**

1.      Defendant McWeeny objects to Plaintiff's definition of the term "Document" because it specifically includes materials not within Defendant's possession, custody, and control.

2.      Defendant McWeeny objects to Instruction "4," as it is overly broad, unduly burdensome, and seeks to impose requirements beyond those contemplated by the Federal Rules of Civil Procedure.

3.      Defendant McWeeny objects to Plaintiff's Instructions because they are vague and ambiguous.  Plaintiff's Instructions are also overly broad and unduly burdensome. Defendant McWeeny will respond to Plaintiff's Interrogatories as required by the Federal Rules of Civil Procedure.

EXHIBIT

18

## GENERAL OBJECTIONS

1.    Defendant McWeeny asserts the General Objections with respect to each and every Interrogatory.

2.    No disclosure by Defendant McWeeny of any information, document, or other material shall constitute a waiver of any objection asserted in response to specific Interrogatories or a waiver of the General Objections.

3.    Defendant McWeeny reserves the right to at any time revise, correct, add to, amend, or clarify any response. Similarly, Defendant McWeeny reserves the right to assert additional specific objections and General Objections.

4.    Defendant McWeeny's decision, now or in the future, to provide information or produce documents or other materials in response to Plaintiff's Interrogatories should not be construed as: (a) a stipulation that the information, documents, or materials are relevant or admissible; (b) a waiver of the General Objections or the objections asserted in response to specific Interrogatories, or (c) an agreement that Defendant will treat requests for similar information, documents, or materials in an identical fashion.

5.    Defendant McWeeny objects to providing information or producing documents or other materials that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege, and/or any other applicable privilege or protection. An inadvertent production of privileged or protected information, documents, or other materials shall not constitute a waiver of any privilege or protection.

6.    Defendant McWeeny objects to Plaintiff's Interrogatories to the extent they assume the existence of facts that have not been proven in this case.

2

7.    Defendant McWeeny objects to Plaintiff's Interrogatories to the extent they impose burdens exceeding the requirements of the Federal Rules of Civil Procedure and/or any other applicable rules.

8.    Defendant McWeeny objects to Plaintiff's Interrogatories' use of the words "ever," "any," and "all," as these terms make the Interrogatories overly broad and too encompassing to permit literal compliance.

9.    Defendant McWeeny objects to Plaintiff's Interrogatories to the extent that, including all discreet subparts, they exceed 25 in number.

## INTERROGATORIES

1.    State your name, address and phone number, and identify every other Person who participated in answering these Interrogatories and responding to the accompanying Document Requests, indicating which particular Interrogatories and Requests were answered by which other Person.

**ANSWER**:    My name is Daniel McWeeny. No one else participated in answering these interrogatories other than my lawyers. Defendant McWeeny objects to providing his home address and telephone number based on privacy and safety concerns. His address and phone number are the subject of Defendants' proposed Confidential Matter and HIPAA Protective Order. He can be contacted through his counsel, the undersigned attorney.

2.    Under oath, please identify by name and address all Persons who, to the best of your understanding, have knowledge of facts that relate to any of the claims or defenses in this action, including, but not limited to, all Persons who are not listed in Defendants' Rule 26 Initial disclosures.

**ANSWER**:    Subject to and without waiving any of the General Objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

3

3.     For each Person with knowledge responsive to the previous Interrogatory, please

describe with particularity any categories of facts known by each such Person relating to the

claims or defenses in this action, including all categories of facts about which the Person may be

competent to testify at trial. If this Interrogatory is answered by incorporating Documents,

please state under oath whether there are any categories of facts known to any witness relating to

the claims or defenses in this action which are not reflected in the documents upon which you

rely; in the event you fail to do so, Plaintiff will assume the substance of the witnesses'

testimony is strictly limited to what is contained in such documents.

**ANSWER:**     Subject to and without waiving any of the General Objections set forth above,
Defendant McWeeny asserts the rights guaranteed to him by the Fifth
Amendment of the United States Constitution.

4.     Under oath, please state whether there have ever been any Complaints ever made

against you (including Plaintiff's civil complaint or any civil complaints which presently remain

pending) which are not listed on the disciplinary print-out (s) produced by you in this litigation,

including, but not limited to, any and all lawsuits in which you are a defendant, Internal Affairs

Complaints, OPS Complaints, IPRA Complaints, and all Complaints alleging dishonest

behavior, such as lying under oath, concealing or withholding evidence, falsifying or planting

evidence; the use of improperly suggestive, coercive, or torturous methods on suspects, arrestees,

or witnesses; the use of unduly suggestive visual and/or voice identification procedures, and the

destruction or withholding of police reports or notes from the State's Attorney's Office or

criminal defendants. For all Complaints responsive to this Interrogatory, please provide the CR

number, case number, or other identifying information.

**ANSWER:**     Defendant McWeeny objects to Interrogatory No. 4 because this request is overly
broad, vague, ambiguous and seeks information that is neither relevant nor

4

reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

5.      State whether you ever communicated with any Person in the Cook County

State's Attorney's Office regarding Plaintiff and/or any of the events described in Plaintiff's

complaint. For each such Communication state: (a) the date of the Communication; (b) with

whom the Communication occurred; and (c) a summary of the nature of the Communication,

including any statements made by Chicago Police Department employees and agents, and/or the

Person with the State Attorney's Office. If you intend to answer by reference to documents,

please state under oath that the documents contain all of the information responsive to this

Interrogatory, and provide the relevant Bates Numbers.

**ANSWER**:     Defendant McWeeny objects to Interrogatory No. 5 because this request is overly broad, vague and ambiguous. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

6.      For any Document requested in Plaintiff's discovery requests which have been

lost, discarded or destroyed, please identify each document as completely as possible and state

the approximate date it was lost, discarded or destroyed; the circumstances and manner in which

it was lost, discarded or destroyed, including the identities of all persons involved; the reasons

for disposing of the Document; the identity of any persons with knowledge of its content; and the

identity of the last person known to have seen it.

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

5

7. Please state whether you have ever been convicted of a criminal charge, and for each such responsive conviction, identify: (a) the nature of the conviction; (b) the date of the conviction; (c) the sentence or other disposition of the matter, and (d) the identity of the court or other tribunal which heard the matter.

**ANSWER:** Subject to and without waiving any of the General Objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

8. Please state whether you have ever acted inconsistently with any of the policies and practices of the City of Chicago or the Chicago Police Department (formal or informal, written or unwritten) at any time during the entire course of dealing or involvement with Plaintiff. If the answer is in the affirmative, please identify (a) any particular Department policy or Department practice which you believe was violated; and (b) whether any discipline resulted from that violation.

**ANSWER:** Defendant McWeeny objects to Interrogatory No. 8 because this request is overly broad, vague and ambiguous. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

9. For any Affirmative Defenses pled in this matter, please describe the entire factual basis or bases supporting those defenses. The information sought by this Interrogatory is not a mere recitation of the statutory sections invoked. Plaintiff requests that you provide a detailed description of every fact and legal basis on which any defense, such as immunity, for example, is asserted so that Plaintiff may have the opportunity to investigate by way of additional discovery requests. For instance, if there are any physical, documentary, or testimonial evidence which supports any such defense, please identify it specifically.

6

**ANSWER:**     Defendant McWeeny objects to Interrogatory No. 9 because this request is overly broad, vague and ambiguous. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

10.     State whether you ever spoke with Plaintiff at any time, and state with particularity the substance of that discussion/conversation, and the identify (*sic*) every other agent or employee of the City of Chicago involved in that conversation. If you intend to answer by reference to documents, please state under oath that the documents contain all of the information responsive to this Interrogatory, and provide the relative Bates Numbers.

**ANSWER:**     Subject to and without waiving any of the General Objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

11.     Is it your position that the Plaintiff was present at the time the Sanchez murders were committed? If so, please state with specificity every fact and identify every witness on whose testimony you may rely to support your position that Plaintiff was present at the time the Sanchez murders were committed.

**ANSWER:**     Subject to and without waiving any of the General Objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

12.     State whether you have ever created Street Files in connection with any criminal investigation. For each such investigation in which you created Street Files and the defendant was ultimately prosecuted, state (1) the RD number of the investigation or the name of the individual(s) who was/were the subject of the investigation; (2) whether you shared those street files with any member of the State's Attorney's Office; (3) what you did with the Street Files at

7

the conclusion of your investigation; (4) where you last saw those Street Files, and (5) where

those Street Files are presently.

**ANSWER**:    Defendant McWeeny objects to Interrogatory No. 12 because this request is overly broad, vague and ambiguous. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

Dated: May 9, 2012

_____
ELIZABETH A. EKL, Attorney No. 6242840
*One of the Attorneys for Defendant Daniel McWeeny*


James G. Sotos
Elizabeth A. Ekl
Christina S. Gunn
eekl@jsotoslaw.com
**THE SOTOS LAW FIRM, P.C.**
550 East Devon, Suite 150
Itasca, Illinois 60143
630-735-3300
630-773-0980 (fax)

8

## **ATTESTATION**

Under penalties of perjury pursuant to 28 U.S.C.A. § 1746, I, Daniel McWeeny, affirm I am a defendant in the above-captioned matter, that I have read the foregoing document and the answers made herein are true, correct and complete to the best of my knowledge and belief.

_____
Daniel McWeeny

9

## **PROOF OF SERVICE**

I, Bahar Azari, a non-attorney, certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that a copy of the attached **Defendant Daniel McWeeny's Answers to Plaintiff's First Set of Interrogatories** was served upon the attorneys listed on the attached service list by electronic mail and by placing same in a U.S. Post Office Mail Box in Itasca, Illinois with postage fully prepaid before 5:00 p.m. on May 30, 2012.

10

**SERVICE LIST**
*Caine v. Burge, et al.*
**Case No.:11 CV 08996**

**Attorneys for Plaintiff**
Russell R. Ainsworth
Arthur R. Loevy
Jonathan I. Loevy
Michael I. Kanovitz
Pier O. Petersen
Loevy & Loevy
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902
russell@loevy.com
loevylaw@loevy.com
jon@loevy.com
mike@loevy.com
pier@loevy.com

**Attorneys for City of Chicago**
Harry N. Arger
Terrence M. Burns
Daniel M. Noland
Paul A. Michalik
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
312-876-1700
Fax: 866-557-7773
harger@dykema.com
tburns@dykema.com
dnoland@dykema.com
pmichalik@dykema.com
methompson@dykema.com

**Attorney for Defendant Jon Burge**
Richard M. Beuke
Law Offices of Richard M. Beuke
115 W. 55th Street, Suite 400
Clarendon Hills, IL 60514
312-427-3050
Fax: 312-427-1215
richardbeuke@gmail.com

11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC CAINE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 08996 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| JON BURGE, et al., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**DEFENDANT DANIEL McWEENY'S ANSWERS TO**
**PLAINTIFF'S SECOND SET OF OF INTERROGATORIES**

Defendant Daniel McWeeny, by his attorneys, JAMES G. SOTOS and ELIZABETH A. EKL of THE SOTOS LAW FIRM, P.C., responds to Plaintiff's Second Set of Interrogatories, as follows:

**OBJECTIONS TO PLAINTIFF'S "DEFINITIONS AND INSTRUCTIONS"**

1.      Defendant McWeeny objects to Plaintiff's definition of the term "Document" because it specifically includes materials not within Defendant's possession, custody, and control.

2.      Defendant McWeeny objects to Instruction "4," as it is overly broad, unduly burdensome, and seeks to impose requirements beyond those contemplated by the Federal Rules of Civil Procedure.

3.      Defendant McWeeny objects to Plaintiff's Instructions because they are vague and ambiguous.  Plaintiff's Instructions are also overly broad and unduly burdensome. Defendant McWeeny will respond to Plaintiff's Interrogatories as required by the Federal Rules of Civil Procedure.

EXHIBIT
19

## GENERAL OBJECTIONS

1.      Defendant McWeeny asserts the General Objections with respect to each and every Interrogatory.

2.      No disclosure by Defendant McWeeny of any information, document, or other material shall constitute a waiver of any objection asserted in response to specific Interrogatories or a waiver of the General Objections.

3.      Defendant McWeeny reserves the right to at any time revise, correct, add to, amend, or clarify any response.  Similarly, Defendant McWeeny reserves the right to assert additional specific objections and General Objections.

4.      Defendant McWeeny's decision, now or in the future, to provide information or produce documents or other materials in response to Plaintiff's Interrogatories should not be construed as: (a) a stipulation that the information, documents, or materials are relevant or admissible; (b) a waiver of the General Objections or the objections asserted in response to specific Interrogatories, or (c) an agreement that Defendant will treat requests for similar information, documents, or materials in an identical fashion.

5.      Defendant McWeeny objects to providing information or producing documents or other materials that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege, and/or any other applicable privilege or protection.  An inadvertent production of privileged or protected information, documents, or other materials shall not constitute a waiver of any privilege or protection.

6.      Defendant McWeeny objects to Plaintiff's Interrogatories to the extent they assume the existence of facts that have not been proven in this case.

2

7.      Defendant McWeeny objects to Plaintiff's Interrogatories to the extent they impose burdens exceeding the requirements of the Federal Rules of Civil Procedure and/or any other applicable rules.

8.      Defendant McWeeny objects to Plaintiff's Interrogatories' use of the words "ever," "any," and "all," as these terms make the Interrogatories overly broad and too encompassing to permit literal compliance.

9.      Defendant McWeeny objects to Plaintiff's Interrogatories to the extent that, including all discreet subparts, they exceed 25 in number.

## INTERROGATORIES

13.     Did you punch, hit, kick, choke, or suffocate either Eric Caine or Aaron Patterson while they were inside a police interview room on April 30, 1986 or May 1, 1986? If so, please state which person you hit, kicked, choked, or suffocated, and identify with particularity

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

14.     Did you ever punch, hit, kick, choke, or suffocate a criminal suspect or witness inside an interview room at a Chicago police station? If so, please state the name of the individual, the individual's IR number or other identifying information, the date you punched, hit, kicked, choked, or suffocated a criminal suspect or witness inside an interview room, and the RD number of the case you were investigating.

**ANSWER**:     Subject to and without waiving any of the General Objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

3

15.     State whether you have ever used methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel or family members, the use of verbal and/or physical threats or intimidation, physical beatings, hangings, the use of racial slurs or profanity, the use of physical restraints, such as handcuffs, the use of photographs or polygraph testing, and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver an electric shock, and for each such use of verbal or physical coercion identify the detainee(s) and/or suspect(s), any other officers or individuals involved, the date of the incident, the specific conduct in which you or any other officer engaged, and whether you or any other officer was the subject of any complaint or discipline as a result of said conduct.

**ANSWER:**     Defendant McWeeny objects to Interrogatory No. 15 because this request is overly broad, vague, ambiguous and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

16.     State whether you were aware of any Chicago Police Officer, including, but not limited to, officers under your command, ever using methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel or family members, the use of verbal and/or physical threats or intimidation, physical beatings, hangings, the use of racial slurs or profanity, the use of physical restraints, such as handcuffs, the use of photographs or polygraph testing, and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or

4

machines that deliver an electric shock, and for each such use of verbal or physical coercion of which you were aware identify the detainee(s) and/or suspect(s), any other officers or individuals involved, the date of the incident, the specific conduct in which you or any other officer engaged, and whether you or any other officer was the subject of any complaint.

**ANSWER:**     Defendant McWeeny objects to Interrogatory No. 16 because this request is overly broad, vague and ambiguous and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

17.     State whether you have ever been the subject of an investigation by the United States Attorneys office, the Cook County States Attorneys office, or any other investigative or law enforcement agency and, if so, state whether you have ever given any statement, written or verbal, or testimony to any investigative or law enforcement agency or personnel, identify the person(s) to whom any statement was given, give the date of the statement, and state in detail the substance of the statement.

**ANSWER:**     Subject to and without waiving any of the General Objections set forth above, Defendant McWeeny asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

Dated: May 30, 2012

_____
ELIZABETH A. EKL, Attorney No. 6242840
*One of the Attorneys for Defendant Daniel*
*McWeeny*

James G. Sotos
Elizabeth A. Ekl
Christina S. Gunn
eekl@jsotoslaw.com
THE SOTOS LAW FIRM, P.C.
550 East Devon, Suite 150
Itasca, Illinois 60143
630-735-3300
630-773-0980 (fax)

**ATTESTATION**

Under penalties of perjury pursuant to 28 U.S.C.A. § 1746, I, Daniel McWeeny, affirm I am a defendant in the above-captioned matter, that I have read the foregoing document and the answers made herein are true, correct and complete to the best of my knowledge and belief.

_____
Daniel McWeeny

6

**PROOF OF SERVICE**

I, Bahar Azari, a non-attorney, certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that a copy of the attached **Defendant Daniel McWeeny's Answers to Plaintiff's Second Set of Interrogatories** was served upon the attorneys listed on the attached service list by electronic mail and by placing same in a U.S. Post Office Mail Box in Itasca, Illinois with postage fully prepaid before 5:00 p.m. on May 30, 2012.

_Bahar Azari_

7

**SERVICE LIST**
*Caine v. Burge, et al.*
**Case No.:11 CV 08996**

**Attorneys for Plaintiff**
Russell R. Ainsworth
Arthur R. Loevy
Jonathan I. Loevy
Michael I. Kanovitz
Pier O. Petersen
Loevy & Loevy
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902
russell@loevy.com
loevylaw@loevy.com
jon@loevy.com
mike@loevy.com
pier@loevy.com

**Attorneys for City of Chicago**
Harry N. Arger
Terrence M. Burns
Daniel M. Noland
Paul A. Michalik
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
312-876-1700
Fax: 866-557-7773
harger@dykema.com
tburns@dykema.com
dnoland@dykema.com
pmichalik@dykema.com
methompson@dykema.com

**Attorney for Defendant Jon Burge**
Richard M. Beuke
Law Offices of Richard M. Beuke
115 W. 55th Street, Suite 400
Clarendon Hills, IL 60514
312-427-3050
Fax: 312-427-1215
richardbeuke@gmail.com

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ERIC CAINE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 08996 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| JON BURGE, et al., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

## DEFENDANT WILLIAM PEDERSEN'S ANSWERS TO
## PLAINTIFF'S SECOND SET OF OF INTERROGATORIES

Defendant William Pedersen, by his attorneys, JAMES G. SOTOS and ELIZABETH A.

EKL of THE SOTOS LAW FIRM, P.C., responds to Plaintiff's Second Set of Interrogatories, as

follows:

### OBJECTIONS TO PLAINTIFF'S "DEFINITIONS AND INSTRUCTIONS"

1.      Defendant Pedersen objects to Plaintiff's definition of the term "Document"

because it specifically includes materials not within Defendant's possession, custody, and

control.

2.      Defendant Pedersen objects to Instruction "4," as it is overly broad, unduly

burdensome, and seeks to impose requirements beyond those contemplated by the Federal Rules

of Civil Procedure.

3.      Defendant Pedersen objects to Plaintiff's Instructions because they are vague and

ambiguous.  Plaintiff's Instructions are also overly broad and unduly burdensome.  Defendant

Pedersen will respond to Plaintiff's Interrogatories as required by the Federal Rules of Civil

Procedure.

EXHIBIT

20

## GENERAL OBJECTIONS

1.     Defendant Pedersen asserts the General Objections with respect to each and every Interrogatory.

2.     No disclosure by Defendant Pedersen of any information, document, or other material shall constitute a waiver of any objection asserted in response to specific Interrogatories or a waiver of the General Objections.

3.     Defendant Pedersen reserves the right to at any time revise, correct, add to, amend, or clarify any response.  Similarly, Defendant Pedersen reserves the right to assert additional specific objections and General Objections.

4.     Defendant Pedersen's decision, now or in the future, to provide information or produce documents or other materials in response to Plaintiff's Interrogatories should not be construed as: (a) a stipulation that the information, documents, or materials are relevant or admissible; (b) a waiver of the General Objections or the objections asserted in response to specific Interrogatories, or (c) an agreement that Defendant will treat requests for similar information, documents, or materials in an identical fashion.

5.     Defendant Pedersen objects to providing information or producing documents or other materials that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege, and/or any other applicable privilege or protection.  An inadvertent production of privileged or protected information, documents, or other materials shall not constitute a waiver of any privilege or protection.

6.     Defendant Pedersen objects to Plaintiff's Interrogatories to the extent they assume the existence of facts that have not been proven in this case.

2

7.      Defendant Pedersen objects to Plaintiff's Interrogatories to the extent they impose

burdens exceeding the requirements of the Federal Rules of Civil Procedure and/or any other

applicable rules.

8.      Defendant Pedersen objects to Plaintiff's Interrogatories' use of the words "ever,"

"any," and "all," as these terms make the Interrogatories overly broad and too encompassing to

permit literal compliance.

9.      Defendant Pedersen objects to Plaintiff's Interrogatories to the extent that,

including all discreet subparts, they exceed 25 in number.

## INTERROGATORIES

13.     Did you punch, hit, kick, choke, or suffocate either Eric Caine or Aaron Patterson

while they were inside a police interview room on April 30, 1986 or May 1, 1986? If so, please

state which person you hit, kicked, choked, or suffocated, and identify with particularity

**ANSWER:**    Subject to and without waiving any of the General Objections set forth above,
               Defendant Pedersen asserts the rights guaranteed to him by the Fifth Amendment
               of the United States Constitution.

14.     Did you ever punch, hit, kick, choke, or suffocate a criminal suspect or witness

inside an interview room at a Chicago police station? If so, please state the name of the

individual, the individual's IR number or other identifying information, the date you punched,

hit, kicked, choked, or suffocated a criminal suspect or witness inside an interview room, and the

RD number of the case you were investigating.

**ANSWER:**    Subject to and without waiving any of the General Objections set forth above,
               Defendant Pedersen asserts the rights guaranteed to him by the Fifth Amendment
               of the United States Constitution.

15.     State whether you have ever used methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel or family members, the use of verbal and/or physical threats or intimidation, physical beatings, hangings, the use of racial slurs or profanity, the use of physical restraints, such as handcuffs, the use of photographs or polygraph testing, and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver an electric shock, and for each such use of verbal or physical coercion identify the detainee(s) and/or suspect(s), any other officers or individuals involved, the date of the incident, the specific conduct in which you or any other officer engaged, and whether you or any other officer was the subject of any complaint or discipline as a result of said conduct.

**ANSWER**:     Defendant Pedersen objects to Interrogatory No. 15 because this request is overly broad, vague, ambiguous and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any of the General Objections or the specific objections set forth above, Defendant Pedersen asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution.

16.     State whether you were aware of any Chicago Police Officer, including, but not limited to, officers under your command, ever using methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel or family members, the use of verbal and/or physical threats or intimidation, physical beatings, hangings, the use of racial slurs or profanity, the use of physical restraints, such as handcuffs, the use of photographs or polygraph testing, and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or

4

machines that deliver an electric shock, and for each such use of verbal or physical coercion of

which you were aware identify the detainee(s) and/or suspect(s), any other officers or individuals

involved, the date of the incident, the specific conduct in which you or any other officer

engaged, and whether you or any other officer was the subject of any complaint.

**ANSWER:** Defendant Pedersen objects to Interrogatory No. 16 because this request is overly
broad, vague and ambiguous and seeks information that is neither relevant nor
reasonably calculated to lead to the discovery of admissible evidence. Subject to
and without waiving any of the General Objections or the specific objections set
forth above, Defendant Pedersen asserts the rights guaranteed to him by the Fifth
Amendment of the United States Constitution.

17.     State whether you have ever been the subject of an investigation by the United

States Attorneys office, the Cook County States Attorneys office, or any other investigative or

law enforcement agency and, if so, state whether you have ever given any statement, written or

verbal, or testimony to any investigative or law enforcement agency or personnel, identify the

person(s) to whom any statement was given, give the date of the statement, and state in detail the

substance of the statement.

**ANSWER:** Subject to and without waiving any of the General Objections set forth above,
Defendant Pedersen asserts the rights guaranteed to him by the Fifth Amendment
of the United States Constitution.

Dated: May 21, 2012

_____
ELIZABETH A. EKL, Attorney No. 6242840
*One of the Attorneys for Defendant William
Pedersen*

James G. Sotos
Elizabeth A. Ekl
Christina S. Gunn
eekl@jsotoslaw.com
THE SOTOS LAW FIRM, P.C.
550 East Devon, Suite 150
Itasca, Illinois 60143
630-735-3300
630-773-0980 (fax)

## **ATTESTATION**

Under penalties of perjury pursuant to 28 U.S.C.A. § 1746, I, William Pedersen, affirm I am a defendant in the above-captioned matter, that I have read the foregoing document and the answers made herein are true, correct and complete to the best of my knowledge and belief.

William Pedersen

6

**PROOF OF SERVICE**

I, Bahar T. Azari, a non-attorney, certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that a copy of the attached **Defendant William Pedersen's Answers to Plaintiff's Second Set of Interrogatories** was served upon the attorneys listed on the attached service list by electronic mail and by placing same in a U.S. Post Office Mail Box in Itasca, Illinois with postage fully prepaid before 5:00 p.m. on May 21, 2012.

*Bahar Azari*

**SERVICE LIST**
*Caine v. Burge, et al.*
**Case No.:11 CV 08996**

**Attorneys for Plaintiff**
Russell R. Ainsworth
Arthur R. Loevy
Jonathan I. Loevy
Michael I. Kanovitz
Pier O. Petersen
Loevy & Loevy
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902
russell@loevy.com
loevylaw@loevy.com
jon@loevy.com
mike@loevy.com
pier@loevy.com

**Attorneys for City of Chicago**
Harry N. Arger
Terrence M. Burns
Daniel M. Noland
Paul A. Michalik
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
312-876-1700
Fax: 866-557-7773
harger@dykema.com
tburns@dykema.com
dnoland@dykema.com
pmichalik@dykema.com
methompson@dykema.com

**Attorney for Defendant Jon Burge**
Richard M. Beuke
Law Offices of Richard M. Beuke
115 W. 55th Street, Suite 400
Clarendon Hills, IL 60514
312-427-3050
Fax: 312-427-1215
richardbeuke@gmail.com

8