UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC CAINE, | ) | |
| | ) | No. 11 C 8996 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| JON BURGE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion to bar Dr. Richard Leo's expert report and testimony at trial pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). R. 184. Plaintiff Eric Caine retained Dr. Leo, a law professor and sociologist from the University of San Francisco, to opine "on the phenomenon of police-induced false confessions, risk factors for false confession, physical and psychological coercion, police contamination and corroboration of confessions, and indicia of unreliability." R. 184-1 (Leo Report) at 3-4. Dr. Leo's report discusses these issues and factors as they relate to the interrogations and confession statements of Caine and his co-defendant in the underlying criminal case, Aaron Patterson.

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert*[.]" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the

1

testimony is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)); *see also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) ("The purpose of the [*Daubert*] inquiry is to vet the proposed testimony under Rule 702's requirements that it be 'based on sufficient facts or data,' use 'reliable principles and methods,' and 'reliably appl[y] the principles and methods to the facts of the case.'") (quoting Fed. R. Evid. 702)). Whether to admit opinion testimony rests within the discretion of the district court. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley*, 689 F.3d at 810 ("we 'give the district court wide latitude in performing its gatekeeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'") (citation omitted).

District courts employ a three-part analysis before admitting opinion testimony: (1) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the witness's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the witness's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *See Myers v. Illinois Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).

First, with regard to qualifications, Rule 702 allows parties to introduce opinions if the witness has the requisite "knowledge, skill, experience, training, or education." Dr. Leo has a Ph. D. in social policy (specializing in criminology and

2

social psychology) from the University of California, Berkeley, a master's degree in social sciences from the University of Chicago, and a bachelor's degree in sociology (with honors) from the University of California, Berkeley. R. 184-1 (Leo curriculum vitae). Dr. Leo is both a professor and research scholar at the University of San Francisco, and a fellow at the Institute for Legal Research Criminal Justice Studies Program at Berkeley. *See id.* Dr. Leo has authored dozens of peer-reviewed publications in the field of police interrogation and false confessions, and has been qualified to testify as an opinion witness over 200 times. Defendants do not challenge Dr. Leo's credentials. The Court concludes that Dr. Leo's education, experience, and knowledge qualify him as a witness who can render an opinion in the field of police interrogation and false confessions.

The Seventh Circuit has recognized that "[s]ocial science in general, and psychological evidence in particular, have posed both analytical and practical difficulties for courts attempting to apply Rule 702 and *Daubert*." *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). In *Hall*, however, the Seventh Circuit held that the district court's decision to exclude opinion testimony on the subject of false confessions "overlooked the utility of valid social science." *Id.* at 1345. The court explained:

> Even though the jury may have had beliefs about the subject, the question is whether those beliefs were correct. Properly conducted social science research often shows that commonly held beliefs are in error. Dr. Ofshe's testimony, assuming its scientific validity, would have let the jury know that a phenomenon known as false confessions exists, how to recognize it, and how to decide whether it fit the facts of the case being tried.

3

*Id.*[1] The same is true here. Although jurors' common sense may suggest to them that someone would never falsely confess to committing murder, Dr. Leo's testimony will educate jurors that false confessions sometimes *do* occur. As a result, the Court believes it will be helpful for the jury to hear expert testimony on this issue. *See, e.g., United States v. Hall*, 974 F. Supp. 1198, 1206 (C.D. Ill. 1997) (concluding that Dr. Ofshe's testimony challenging the common misperception among the public that once a person confesses to his guilt, he must be guilty, would help the trier of fact determine whether the defendant falsely confessed after being subjected to coercive interrogation techniques).

Moreover, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Fed. R. Evid. 702, Advisory Committee's Note (2000 Amendments). "As the Court in *Daubert* stated: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting 509 U.S. at 595).

Here, many of Defendants' objections to Dr. Leo's testimony can be explored and challenged during cross-examination. For example, Defendants argue that Dr. Leo's methodology is not scientifically reliable because Dr. Leo relies mostly on his own research, did not use random data sets, and his research requires a subjective determination as to the truth or falsity of the confessions studied based on

---

[1] Like Dr. Leo, Dr. Ofshe has been qualified as an expert in the field of coercive police interrogation techniques and the phenomenon of false or coerced confessions. *See United States v. Hall*, 974 F. Supp. 1198, 1199 (C.D. Ill. 1997). Dr. Leo and Dr. Ofshe have co-authored several articles and given joint presentations on the subject of false confessions. R. 184-1 (Leo curriculum vitae) at 11-12, 30, 36, 39.

incomplete case information. The Court concludes that these alleged shortcomings do not provide a basis for barring Dr. Leo's testimony, but obviously provide ample areas for cross-examination.

Rule 702 allows opinion witnesses to testify if the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert applies the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The Supreme Court has set forth the following non-exhaustive list of guideposts: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the relevant scientific community. *Daubert*, 509 U.S. at 593-94.

Dr. Leo asserts that there is a well-established empirical field of research—dating back to 1908—in the academic disciplines of psychology, criminology, and sociology on the subject of police interrogation practices, psychological coercion, and false confessions. Leo Report at 4. Scientific researchers have analyzed the patterns, characteristics, and indicia of reliability in true and false confession cases, and examine the "fit" between the suspect's post-admission narrative and the underlying crime facts/evidence in order to evaluate the likely reliability or unreliability of an incriminating statement, admission, or full confession from a suspect. *Id.* at 16-17. Researchers have found that this practice, referred to as the "fit standard" in Dr. Leo's report, is susceptible to contamination by interrogators and the media, among other sources. *Id.* at 22. In addition to relying on social

5

science research regarding the contamination of post-admission narrative statements, Dr. Leo cites various studies and research on coercive interrogation techniques used by law enforcement that have been found to induce false confessions. *Id.* at 12-16.

The Court finds that Dr. Leo, through his report and its attachments, has demonstrated that the field of police interrogation practices, psychological coercion, and false confessions is sufficiently developed in its methods to constitute a reliable body of specialized knowledge under Rule 702. Accordingly, the Court denies Defendants' motion to bar Dr. Leo's testimony as unreliable. As noted, Defendants are free to test Dr. Leo's methodology on cross-examination.

Defendants next argue that Dr. Leo's testimony should be barred under Rule 702 because it will not assist the jury in its assessment of Caine's and Patterson's confessions. Specifically, Defendants point to Dr. Leo's prior testimony that, based on the studies available, it is not currently possible to reach reliable estimates of the incidence of false confessions. In other words, Dr. Leo cannot tell the jury how often a *true* confession is obtained using the same practices and techniques that Dr. Leo alleges may result in false confessions. As discussed above, the Court finds that Dr. Leo's testimony is helpful in that it informs jurors that false confessions happen and offers theories as to why someone might confess to a crime he did not commit. Again, Defendants may test the validity and reliability of Dr. Leo's opinions during cross-examination.

6

Dr. Leo will be permitted to testify to various factors that can cause false confessions, and to their presence in this case. Dr. Leo will also be permitted to generally testify that, based on his knowledge, experience, and study of confessions and police interrogation, false confessions frequently do not contain the type of crime scene knowledge that only a true perpetrator would have, and that some false confessions contain such detail because of police contamination. However, Dr. Leo will *not* be allowed to testify as to his opinion that Caine's and Patterson's confession statements were false. In particular, he will not be allowed to testify as to his comparison of the witnesses' confessions and the physical evidence of the crime. That is decidedly a jury question and allowing Dr. Leo to opine on that subject would invade the province of the jury. Specifically, the Court will not allow Dr. Leo to testify to the opinions included in his report dated January 10, 2013 at pages 31 (second full paragraph), page 32 (entirety), page 46 (second paragraph), and page 47 (first paragraph, carried over from page 46). Obviously, statements in his report beyond these paragraphs that deal with the same type of testimony are similarly disallowed (*i.e.*, the statement in his conclusion that the confessions are unreliable).

Finally, Dr. Leo will not be allowed to testify until after a proper foundation for his opinions has been set forth through the testimony of Caine, Patterson, and any other witnesses and admitted exhibits that Dr. Leo seeks to rely upon to render his opinion. Dr. Leo is free to be present in court to observe such testimony, or may

7

read transcripts of that testimony before he is called to testify. He is free to review admitted exhibits as he wishes.

     For the reasons stated above, Defendants' motion to bar the expert report and testimony of Dr. Richard Leo is denied, subject to the limitations set forth in this opinion.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: May 10, 2013